# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ORLEANS HOMEBUILDERS, INC., *et al.*,[1] | ) | Case No. 10-10684 (PJW) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | **Re: Docket Nos. 12, 193, 194, 195,** |
|  | ) | **196, 198 & 206** |
|  | ) | **Obj. Deadline: March 29, 2010 at 4:00 p.m.** |
|  | ) | **Hearing Date: April 6, 2010 at 3:30 p.m.** |

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO DEBTORS' MOTION FOR ORDER AUTHORIZING THEM (A) TO CONTRACT AND CLOSE ON SALES OF HOMES; (B) TO HONOR DEPOSITS AND OTHER CONTRACTUAL OBLIGATIONS; (C) TO SELL HOMES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (D) TO ESTABLISH PROCEDURES FOR THE RESOLUTION OF LIEN AND OTHER CLAIMS; AND (E) TO USE PROCEEDS OF HOME SALES IN ACCORDANCE WITH LIEN PROCEDURES

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Orleans Homebuilders, Inc. (4323), Brookshire Estates, L.P. (8725), Community Management Services Group, Inc. (6620), Greenwood Financial Inc. (7510), Masterpiece Homes, LLC (1971), OHB Homes, Inc. (0973), OHI Financing, Inc. (6591), OHI PA GP, LLC (2675), OPCNC, LLC (8853), Orleans Arizona Realty, LLC (9174), Orleans Arizona, Inc. (2640), Orleans at Bordentown, LLC (4968), Orleans at Cooks Bridge, LLC (4185), Orleans at Covington Manor, LLC (9891), Orleans at Crofton Chase, LLC (8809), Orleans at East Greenwich, LLC (9814), Orleans at Elk Township, LLC (6891), Orleans at Evesham, LLC (7244), Orleans at Falls, LP (2735), Orleans at Hamilton, LLC (9679), Orleans at Harrison, LLC (4155), Orleans at Hidden Creek, LLC (3301), Orleans at Jennings Mill, LLC (4693), Orleans at Lambertville, LLC (0615), Orleans at Limerick, LP (7791), Orleans at Lower Salford, LP (9523), Orleans at Lyons Gate, LLC (2857), Orleans at Mansfield LLC (1498), Orleans at Maple Glen LLC (7797), Orleans at Meadow Glen, LLC (4966), Orleans at Millstone River Preserve, LLC (8810), Orleans at Millstone, LLC (8063), Orleans at Moorestown, LLC (9250), Orleans at Tabernacle, LLC (9927), Orleans at Thornbury, L.P. (4291), Orleans at Upper Freehold, LLC (3225), Orleans at Upper Saucon, L.P. (3715), Orleans at Upper Uwchlan, LP (8394), Orleans at Wallkill, LLC (2875), Orleans at West Bradford, LP (4161), Orleans at West Vincent, LP (9557), Orleans at Westampton Woods, LLC (8095), Orleans at Windsor Square, LP (9481), Orleans at Woolwich, LLC (9215), Orleans at Wrightstown, LP (9701), Orleans Construction Corp. (0893), Orleans Corporation (8770), Orleans Corporation Of New Jersey (5325), Orleans DK, LLC (5308), Orleans RHIL, LP (1938), Parker & Lancaster Corporation (1707), Parker & Orleans Homebuilders, Inc. (5269), Parker Lancaster, Tidewater, L.L.C. (7432), Realen Homes, L.P. (8293), RHGP LLC (8197), Sharp Road Farms Inc. (1871), Stock Grange, LP (4027) and Wheatley Meadows Associates (5459).

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby respond to the objections (the "Objections") of various parties (the "Objecting Parties")[2] to the Debtors' motion (the "Motion"), pursuant to Bankruptcy Code Sections 105(a), 363(b), (c), and (f), 506(b), 541, 546(b), 1107, and 1108 for an order authorizing the Debtors (a) to contract and close on sales of homes; (b) to honor deposits and other contractual obligations; (c) to sell homes free and clear of all liens, claims, encumbrances, and other interests; (d) to establish procedures for the resolution of lien and other claims; and (e) to use proceeds of home sales in accordance with the lien procedures (Docket No. 12). In response to the Objections, and in further support for entry of an order granting the Motion on a final basis, the Debtors respectfully represent as follows:

## <u>OVERVIEW</u>

1.      The Motion should be granted on a final basis. All of the Objections are based either on unsound and/or irrelevant legal arguments, or on unfounded fears and misconceptions as to what the Motion and the procedures proposed therein to resolve certain lien claims (as amended in the proposed final order on the Motion, the "Operational Lien Procedures")[3] were designed to accomplish.

2.      First, the Debtors are not seeking to prime Operational Liens (as defined below). In order to sell homes free and clear of all interests pursuant to Bankruptcy Code Section 365(f), the Debtors propose that any such valid and enforceable liens or other interests that have attached (or were eligible to so attach) as of the date these cases commenced will

---

[2]      The Objecting Parties and the bases for their Objections are set forth on pages 7-8, below.

[3]      The Debtors will file a proposed final order granting the Motion and approving the Operational Lien Procedures in advance of the April 6, 2010 hearing on the Motion.

reattach to the proceeds of the sale of property of the Debtors' estates, with the same priority afforded them under applicable non-bankruptcy law. Thus, the interests of holders of Operational Liens are adequately protected.

3. Second, the proposed sales free and clear of interests in the ordinary course satisfy the requirements of Section 363(f). The argument of one of the Objectors, that 363(f)(3) prohibits the free and clear sale of any property until all secured creditors receive the face amount of their liens in full, in cash, at closing is unsound and, ultimately, irrelevant; in order to sell free and clear of interests the Debtors need demonstrate only that one of the five factors enumerated in Section 363(f) is met. Because valid and enforceable Operational Liens (i) can be discharged under applicable nonbankruptcy law (such as state law foreclosure proceedings), (ii) can be satisfied by a monetary payment, and/or (iii) may be subject to a bona fide dispute, at least three other Section 363(f) factors will arguably obviate the need to receive approval to sell free and clear under Section 363(f)(3).

4. Third, the Operational Lien Procedures create a transparent, fair, and efficient process to resolve the claims of holders of Operational Liens, and no due process rights of any party will be compromised.

5. Finally, the remaining Objections to the relief sought in the Motion are irrelevant at this time. Specifically, the Motion does not affect property that will not be sold subject thereto, nor does anything in the Motion affect certain surety bonds. The Motion should be granted on a final basis, and the Operational Lien Procedures should be approved.

## BACKGROUND

6. On March 1, 2010 (the "Petition Date"), each of the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On or

about March 1, 2010 the Debtors filed the Motion (Docket No. 12). On March 4, 2010, this Court entered an order granting the Motion on an interim basis (Docket No. 69). On March 3, 2010, the Court entered an order approving the joint administration of these cases (Docket No. 39).

7.      The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. On March 11, 2010, the United States Trustee appointed the official committee of unsecured creditors. No trustee or examiner has been appointed in these cases.

**Operational Liens**

8.      As part of their operations, the Debtors rely upon, routinely contract with, and are obligated to a number of third parties (each, an "Operational Lien Claimant" and collectively, the "Operational Lien Claimants"), that may be able to assert liens against or otherwise encumber the Debtors' property to secure payment for certain goods and services delivered or provided to the Debtors, or for other claims (the "Operational Lien Claims"). Many of the Operational Lien Claimants may have a right or interest, whether or not such right or interest has been exercised, under applicable law to assert and/or to perfect construction, materialman's, mechanics', or other statutory or common law liens (the "Operational Liens").

9.      The Operational Liens may attach in a number of different ways, and the time period within which the Operational Lien Claimants must assert or perfect liens varies depending on the applicable jurisdiction.

**The Motion and Interim Order**

10.     In the Motion, the Debtors requested that the Court enter interim and final orders authorizing the Debtors (a) to contract and close on sales of homes; (b) to honor deposits

and other contractual obligations as permitted by the budget approved as part of the Debtors' debtor-in-possession financing arrangement; (c) to sell homes free and clear of all liens, claims, encumbrances, and other interests; (d) to establish procedures for the resolution of lien and other claims; and (e) to use proceeds of home sales in accordance with the lien procedures. (Motion ¶ 32.)

11.     The interim order granting the Motion permitted the Debtors to sell houses in the ordinary course of business free and clear of all interests, which interests would attach to any sale or other dispositions of assets of property of the Debtors' estates, in the same order of priority as such interests attached to property that was sold or otherwise disposed of. (Interim Order at 3-4.) The interim order provided, however, that unpaid and allowed Prior Liens[4] that attached or were eligible to attach to a home sold after the Petition Date were entitled to be paid out of the proceeds of any sale of the Debtors' assets outside the ordinary course of business— ahead of the Debtors' pre-petition secured lenders and debtor-in-possession lenders. (Interim Order at 3-4.)

12.     The most critical portion of the Motion, which the Debtors require this Court to approve so that the Debtors can preserve enterprise value and survive as a going concern, is the Operational Lien Procedures. The Operational Lien Procedures were not approved in the interim order, but were requested to be (and are) part of the proposed final order on the Motion.

---

[4]     The term "Prior Liens," as such term is defined in the interim order approving the Debtors' debtor-in-possession financing arrangement (the "Interim DIP Order") [Docket No. 50], means "valid and unavoidable liens that are in existence on the Petition Date and that under applicable law are senior to, and have not been subordinated to, the liens and security interests of the Pre-Petition Lenders [as such term is defined in the Interim DIP Order]." (Interim DIP Order at 13.)

13.     The Debtors have not sought (and they do not believe the Motion is seeking) the authority to prime the Operational Liens.  In the Motion, the Debtors ask for the authority to sell homes in the ordinary course of business free and clear of liens, claims, encumbrances, and other interests (including the Operational Liens), while at the same time adequately protecting such Operational Lien Claimants' rights by granting them replacement liens in proceeds of the sale of the Debtors' assets and establishing procedures for resolving such rights.

## RESPONSE

### Summary of Objections and Responses

14.     The following table sets forth a summary of the Objections received to the entry of a final order granting the relief sought in the Motion, as well as the Debtors' responses thereto:[5]

---

[5]     The Debtors have granted certain parties extensions to object to the Motion so that the Debtors could attempt to resolve potential objections by such parties.  The Debtors reserve their rights to address such objections, if any are ultimately asserted.

| Objecting Party | Summary of Objection | Summary of Response |
|---|---|---|
| Evesham Township ("Evesham") [Docket No. 206] | • The Debtors seek to prime the Objecting Party's Operational Liens.<br>• The Debtors fail to indicate the extent payment on Operational Liens will be made. | • The Debtors do not seek to prime Operational Liens.<br>• Payment of Operational Liens that are Prior Liens will be made as soon as their status as such is established, or, in any event, out of the proceeds of the Debtors' assets sold outside the ordinary course of business.<br>• Operational Liens, other than Prior Liens, will be treated in accordance with the priority of such Operational Liens established under applicable law in due course. |
| Lakeland Building Supply, Inc. ("Lakeland") [Docket No. 198] | • Objecting Party is not adequately protected.<br>• There is no provision for payment of Operational Liens that are Prior Liens.<br>• The Operational Lien Procedures violate Bankruptcy Code Section 363(f). | • Operational Lien Claimants are adequately protected by replacement liens.<br>• Payment of Operational Liens that are Prior Liens will be made as soon as their status as such is established, or, in any event, out of the proceeds of the Debtors' assets sold outside the ordinary course of business.<br>• The Operational Lien Procedures comply with Bankruptcy Code Section 363(f). |
| Brubacher Excavating, Inc. ("Brubacher") [Docket No. 196] | • The Operational Lien Procedures do not address the resolution of Operational Liens against the Debtors' property that will not be sold pursuant to the Motion. | • The status of Operational Liens asserted against the Debtors' property not covered by the Motion will be unaffected.<br>• The Operational Lien Procedures are not applicable to the sale property that is not being sold pursuant to the Motion. |
| Carolina Sunrock, LLC ("Carolina Sunrock") [Docket No. 195] | • Objecting Party is not adequately protected.<br>• Objecting Party is deprived of due process by the Operational Lien Procedures. | • Operational Lien Claimants are adequately protected by replacement liens.<br>• The Operational Lien Procedures create a process whereby Operational Lien Claimants will have a full and fair opportunity to have the priority, status, and validity of their Operational Lien Claims determined. |

| Objecting Party | Summary of Objection | Summary of Response |
|---|---|---|
| Irdell County ("Irdell") [Docket No. 194] | • The Debtors seek to prime Objecting Party's alleged tax liens.<br>• The Operational Lien Procedures fail to indicate how Objecting Party will be paid once property is sold. | • The Debtors do not seek to prime tax liens, which are one kind of Operational Lien.<br>• Payment of Operational Liens that are Prior Liens will be made as soon as their status as such is established, or, in any event, out of the proceeds of the Debtors' assets sold outside the ordinary course of business.<br>• Operational Liens, other than Prior Liens, will be treated in accordance with the priority of such Operational Liens established under applicable law in due course. |
| Liberty Mutual Insurance Company ("Liberty Mutual") [Docket No. 193] | • The Debtors seek to modify, alter, amend or otherwise change the terms of certain surety bonds. | • The Debtors do not seek to alter, modify, amend, or otherwise change the terms of any surety bonds other than as explicitly provided for under the Bankruptcy Code, other applicable law, further order of the Court, or pursuant to the terms of such surety bonds. |

## The Debtors Do Not Seek to Prime or Alter the Priority of the Operational Liens

15.     First and foremost, the Debtors are **not** seeking to prime valid, enforceable, and unavoidable Operational Liens. The concerns expressed in the Objections of Evesham and Irdell are therefore unfounded. What the Debtors seek to do is to sell homes free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code Section 363(c) and (f). As elaborated upon more fully below, the Debtors propose to grant replacement liens in the proceeds of any sale of property of the Debtors' estates outside the ordinary course of business. Operational Liens will attach to the proceeds of sales of such property with the same priority such Operational Liens had under applicable non-bankruptcy law. No Operational Liens will be primed.

16. Further, in the event a sale is closed and an Operational Lien on the subject property is determined on a final basis to constitute a Prior Lien at the time of such closing, the Debtors will satisfy such Operational Lien out of the proceeds of such sale. Otherwise, Operational Liens that are Prior Liens will be satisfied out of the proceeds of the sale of the Debtors' assets outside the ordinary course of business. The Debtors believe that Operational Liens constitute Prior Liens in only two of the states in which they operate.

17. To the extent that Operational Liens do not constitute Prior Liens, such liens will be treated in due course in accordance with such Operational Liens' priority under applicable non-bankruptcy law.

## The Relief Requested in the Motion Satisfies Section 363(f)

18. Pursuant to Bankruptcy Code Section 363(f), a debtor may sell property free and clear of liens, claims, encumbrances, and other interests if any one of the following conditions is satisfied:

> (1)   applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2)   the [lienholder or claimholder] consents;
>
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)   such interest is in bona fide dispute; or
>
> (5)   [the lienholder or claimholder] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because Section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of homes. *See Folger Adam Sec. Inc. v. De Matties/McGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000) (discussing how Section

363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, and interests if "any one of [the] five prescribed claims is met"); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (property may be sold "free and clear" if at least one of the subsections of Section 363(f) is met); *In re DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del. 2004) (same).

19.     Each lien, claim, encumbrance, or other interest in the Debtors' homes on account of the Operational Liens satisfies at least one of the five conditions set forth in Bankruptcy Code Section 363(f). First, because "applicable nonbankruptcy law permits the sale of [the Debtors'] property free and clear" of Operational Liens pursuant to, for example, state law foreclosure statutes, the Debtors' property may be sold free and clear of Operational Liens here. 11 U.S.C. § 363(f)(1); *see also Precision Indus. Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003), *rev'g Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, No 00-0247, 2001 WL 699881 (S.D. Ind. Apr. 24, 2001) (reversing district court and finding that property sold pursuant to 363(f)(1) on account of state foreclosure law was sold free and clear of lessee's possessory interest in property).

20.     Second, because Operational Lien Claimants may be required to accept money damages in exchange for their interests, Section 363(f)(5) is satisfied. *See In re Trans World Airlines*, 322 F.3d 283, 290-91 (3d Cir. 2003) (property sold free and clear of interests when claims were subject to monetary valuation and satisfaction). This is especially true with respect to the Operational Liens, which exist solely to secure a monetary debt owed and are clearly dischargeable upon payment of such debt. *See Statsky v. United States*, 993 F. Supp. 1027, 1029 (S.D. Tex. 1998) (statutory lien is charge on property for payment of a monetary debt).

21.     Indeed, the homes will be sold for amounts the Debtors, in the exercise of their business judgment, believe approximate at least their fair market value, and the holders of liens thereon therefore could be compelled to accept money in satisfaction of their liens. *See In re WPRV-TV, Inc.*, 143 B.R. 315, 321 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992), *aff'd in part, rev'd in part on other grounds*, 983 F.2d 336 (1st Cir. 1993) (where "properties . . . sold for the best price obtainable under the circumstances, and the liens will attach to the sale proceeds, the proposed sale [satisfies Section 363(f)(5)] and may be approved").

22.     Further, in some cases, Section 363(f)(4) may apply to the extent the Debtors dispute the validity and/or enforceability of an alleged Operational Lien. Accordingly, the Debtors submit that at least one (if not more) of the subsections of Bankruptcy Code Section 363(f) will be satisfied here such that the Court should approve the sale of the homes free and clear of liens, claims, encumbrances, and other interests as requested herein.

### *Lakeland's Arguments that 363(f) Is Not Satisfied Are without Merit.*

23.     In its Objection, Lakeland argues at length that Bankruptcy Code Section 363(f)(3) prevents the Debtors from selling any encumbered property free and clear of interests unless Lakeland is paid the face amount of its liens in full, in cash, at closing, regardless of the priority of its liens or the value of the property that constitutes Lakeland's collateral.[6] (*See* Lakeland Objection ¶¶ 14-21.) Lakeland's argument fails for at least two reasons.

---

[6]     Bankruptcy Code Section 363(f)(3) provides that, in addition to each of the other four factors enumerated in Section 363(f), property can also be sold free and clear of interests if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property."

24.     First, as stated above, Section 363(f) is stated in the disjunctive, and the proposed sale free and clear of interests can also be authorized if, *inter alia*, property can be sold free and clear of an Operational Lien under applicable nonbankruptcy law, an Operational Lien is subject to a bona fide dispute, or a holder of an Operational Lien can be compelled to accept "a money satisfaction of such interest." 11 U.S.C. § 363(f)(1), (4), and (5). Such is arguably the case here with respect to all Operational Lien Claimants. *Folger Adam*, 209 F.3d at 257 (property can be sold under Section 363(f) if any one of the five 363(f) factors is met). It is beyond question, for example, that holders of liens can be compelled to accept a money judgment in satisfaction thereof, so the Debtors meet Section 363(f)(5) in any event as regards Operational Liens, including any valid and enforceable liens of Lakeland. *See Statsky v. U.S.*, 993 F. Supp. at 1029 (statutory lien is charge on property for payment of a monetary debt); *see also In re Levitt and Sons, LLC*, 384 B.R. 630, 647 (Bankr. S.D. Fla. 2008) (the court can approve the sale of homes under Section 363(f)(5) based on a hypothetical cram-down and citing case law for such proposition); *In re Gulf States Steel*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002) (rejecting proposition that full payment is required to sell free and clear under Section 363(f)(5)).

25.     On that basis alone, Lakeland's argument in paragraph 21 of the Lakeland Objection that "[t]he Debtor is barred from selling Lakeland's Collateral without providing for payment in full of its liens" is without merit and should be rejected.

26.     Second, Lakeland's argument that Section 363(f)(3) refers to the aggregate *face amount* of all liens, as opposed to the aggregate *value* of all liens, is unsound. If Congress had intended the former, it would have used such term. It did not. It is axiomatic that where a statute is unambiguous, courts must interpret the language in accordance with its plain meaning.

*Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then ... 'judicial inquiry is complete.'"); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (citations and internal quotation marks omitted); *see also Patterson v. Shumate*, 504 U.S. 753, 760 (1992) (party seeking to defeat plain meaning of Bankruptcy Code bears "an exceptionally heavy burden"). The controlling principle here is "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992).

27.     Consistent with this plain meaning of the statute, courts have repeatedly held that the "aggregate value of all liens" language contained in Section 363(f)(3) does not refer to the face amount of the liens, but rather to the *actual value* of the related collateral. *See, e.g., In re Beker Indus. Corp.*, 63 B.R. 474, 475-76 (Bankr. S.D.N.Y. 1986) (holding that the Bankruptcy Code "plainly indicate[s] that the term 'value' [as used in sections 506(a) and 363(f)(3)] means its actual value as determined by the Court, as distinguished from the amount of the lien"); *In re Bygaph, Inc.*, 56 B.R. 596, 606 (Bankr. S.D.N.Y. 1986) (authorizing sale of property subject to a lien after reviewing the "sharply disputed" value of the collateral); *accord In re Chrysler LLC*, 405 B.R. at 98 (authorizing Section 363 sale because, among other reasons, the liquidation value of the collateral was lower than the sale price and "[t]he full *value* of the collateral will be distributed to the [secured lenders]") (emphasis added).[7]

---

[7]     Such readings of Section 363(f)(3) are consistent with the Supreme Court's holding that the "value" of a "creditor's interest" under Bankruptcy Code Section 506(a) means "the value of the collateral." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372 (1988). The Debtors' reading of 363(f)(3) is also consistent with Supreme Court precedent that "the 'proposed

(continued)

-13-

28.     Numerous other courts have also recognized that the Lakeland's proposed "face amount of the lien" interpretation of Bankruptcy Code Section 363(f)(3) "ignores the [Bankruptcy] Code's focus on protecting the *value* of collateral" and impermissibly allows an "undersecured creditor to obstinately block an otherwise sensible sale." *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 712 (Bankr. W.D. Tex. 1989); *see also In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990) (holding that Section 363(f)(3) requires "that the secured creditor receives only the value of its secured claim in debtor's property, even though that may be significantly less than the face amount of the claim"); *In re WPRV-TV, Inc.*, 143 B.R. at 320 n. (the "face amount" approach has been "highly criticized" and is "unduly strict").

29.     Although there are cases, which Lakeland cites, that support the "face amount of the lien" interpretation, the weight of authority, particularly by courts that have analyzed the issue in detail, supports the Debtors' interpretation. In *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995), for example, the bankruptcy court undertook an in-depth analysis of the two viewpoints and concluded that the Debtors' interpretation "provides a better reasoned solution to this dilemma."[8]

---

disposition or use' of the collateral is of paramount importance to the valuation question." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997) (internal citations omitted).

[8]     The sole case in this Circuit to which Lakeland cites, *Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell LLC)*, 298 B.R. 527 (D.N.J. 2003), is not controlling precedent in this District, and the Debtors could find no precedent in either the U.S. Court of Appeals for the Third Circuit itself or in other courts in this District opining on the issue. But at least one other court in this Circuit has recognized "[t]he two ... contrasting views" as to what is required to sell property free and clear of interests under Section 363(f)(3) and has opined that "the sale price need only exceed the value of the property using the interpretation set forth for value in 11 U.S.C. § 506(a)." *In re Milford Group*, 159 B.R. 904, 906 (Bankr. M.D. Pa. 1992) (citing *Terrace Gardens Park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989)). *Milford Group* follows a better reasoned line of cases, which this Court should follow here.

30. Moreover, Lakeland's interpretation of Section 363(f)(3) potentially would enable vastly undersecured creditors to frustrate asset sales that provide enormous value to a debtor's estate unless they are paid in full, even on the *unsecured* portion of their claim. An interpretation that results in undersecured creditors insisting on and receiving such a windfall is illogical and runs counter to the entire framework of the Bankruptcy Code, which contemplates a strict scheme for governing the manner and priority in which claims are paid. In sum, the Debtors have met their burden of proving that property may be sold free and clear of interests in the ordinary course without all lien claimants receiving payment in full for the face amount of their liens. Lakeland's Objection should be overruled.

## The Proposed Adequate Protection Protects the Interests of Operational Lien Claimants

31. The proposed Operational Lien Procedures contemplate paying any Operational Lien Claimants whose Operational Liens are Prior Liens pursuant to a fair, orderly, and transparent process. Moreover, as adequate protection, Operational Lien Claimants with valid, enforceable Operational Liens (or the right to assert such Operational Liens) will be granted replacement liens on the proceeds of sales of the Debtors' assets outside the ordinary course of business, with the same priority such Operational Liens would have under applicable non-bankruptcy law. The Debtors therefore believe that they will not be using any cash collateral, as that term is defined in Bankruptcy Code Section 363(a), in a manner that would prejudice the Operational Lien Claimants.

32. Nevertheless, the Debtors submit that to the extent any Operational Lien Claimants are entitled to adequate protection pursuant to Section 363(c) or (e), such Operational Lien Claimants will be adequately protected by receiving replacement liens on the proceeds of the Debtors' assets outside the ordinary course of business (with the same priority such

Operational Liens had under applicable nonbankruptcy law), to the extent such Operational Lien Claimants have (or can assert and perfect) valid and enforceable Operational Liens in such assets being sold.

33.     Further, Bankruptcy Code Section 363(e) provides that, at any time on request of an entity with an interest in property to be used, sold, or leased pursuant Section 363, the bankruptcy court must condition such use, sale, or lease as is necessary to protect such entity's interest. *In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004). "In other words, section 363(e) essentially requires that where a creditor can demonstrate it has a security interest in the property, such creditor is entitled to adequate protection of such interest." *Id.*

34.     The Bankruptcy Code does not define "adequate protection," but Bankruptcy Code Section 361 provides that adequate protection may take the form of "an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property."

35.     The critical purpose of adequate protection is to guard against diminution of a secured creditor's interest in collateral during the period when such collateral is being used by the debtor. *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization"). The proposed replacement liens adequately protect the liens of Operational Lien Claimants: their Operational Liens attach to the proceeds of the Debtors' assets sold outside the ordinary course with the same priority they had under applicable nonbankruptcy law. As demonstrated above, objections to the contrary should be overruled.

**That the Motion Does Not Address Non-Home Property is No Basis for an Objection**

36.    Brubacher objects to the Operational Lien Procedures on the basis that the "Debtors do not propose any procedure for paying off lien claims asserted against Debtor owned land that is other than a building lot or home." (Brubacher Objection at ¶ 20.) Brubacher goes on to argue that the property in which it allegedly has one or more liens "will not be sold [pursuant to the Operational Lien Procedures] and there will be no sale proceeds from the Debtor Owned Land [as defined in the Brubacher Objection]." (Brubacher Objection at ¶ 20.) Such arguments are irrelevant to whether the Court should grant the relief sought in the Motion.

37.    Whether Brubacher is correct regarding the status of its alleged liens, a matter on which the Debtors take no position at this time, is irrelevant at this point since the Debtors do not seek in the Motion to sell any property on which Brubacher allegedly has liens. Arguments related to the issues raised in the Brubacher Objection are premature, and Brubacher continues to have whatever rights it has under applicable non-bankruptcy law. The Motion does not request authority to sell, nor do the Debtors currently seek to sell, property that is not a home, and Brubacher's alleged liens are unaffected by the Operational Lien Procedures or any other relief sought in the Motion.

**Parties Will Have a Full and Fair Mechanism to Address Operational Liens**

38.    The Operational Lien Procedures do not violate the due process rights (as Carolina Sunrock has asserted in paragraphs 6-9 of its objection). Rather, the Operational Lien Procedures provide for a fair, orderly, and adequate means for Operational Lien Claimants to assert and have determined their Operational Liens. Specifically, the Debtors will give notice to all parties that may have worked on a property after the closing of the sale of such property. Thereafter, all such parties receiving notice will have 30 days to assert a Demand (as defined in

-17-

the Operational Lien Procedures) to assert Operational Liens that have attached as of the Petition Date (or were eligible by law to so attach), to a home that is sold after the Petition Date.

39. The Operational Lien Procedures provide for a resolution period to resolve such Demands and determine the amount, validity, and priority of alleged Operational Liens. If the parties cannot resolve any dispute as to the amount, validity, and priority of Operational Liens, this Court (subject to all rights of the parties to appeal) will determine the issue. Any argument that the proposed Operational Lien Procedures violate due process are therefore without merit and should be rejected. *See Harada v. DBL Liquidating Trust (In re Drexel Burnham Lambert Group, Inc.)*, 160 B.R. 729, 733-34 (S.D.N.Y. 1993) (claims resolution procedures satisfied due process requirement where procedures were a "case management tool" where parties received adequate notice and chance to be heard in court of competent jurisdiction).

## The Proposed Operational Lien Procedures Will Have no Effect on Sureties

40. One of the Debtors' sureties, Liberty Mutual, has objected to the proposed Operational Lien Procedures. The Debtors do not seek (and do not believe the Motion is seeking) to affect or otherwise alter the rights of sureties such as Liberty Mutual in any way. The Debtors make it abundantly clear in their reply to the objections of certain sureties (including Liberty Mutual) that they are not attempting to force their sureties to do anything they are not required to do (or refrain from doing anything they are entitled to do) other than as provided for under the Bankruptcy Code, other applicable law, order of this Court, or the terms of the applicable surety bonds themselves.

41. This Court should overrule the Objections and grant the relief requested in the Motion on a final basis.

WHEREFORE, the Debtors respectfully request that the Court (i) overrule the Objections, (ii) enter an order granting the relief sought in the Motion on a final basis, and (iii) grant such other and further relief that may be just and proper under the circumstances.

Dated: April 1, 2010
       Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Mark A. Kearney (DE Bar No. 2601)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: mak@elliottgreenleaf.com
Email: nrl@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com

- and -

CAHILL GORDON & REINDEL LLP
Joel H. Levitin
Michael R. Carney
Maya Peleg
Eighty Pine Street
New York, New York, 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
Email: jlevitin@cahill.com
Email: mcarney@cahill.com
Email: mpeleg@cahill.com

*Proposed Attorneys for the*
*Debtors and Debtors-in-Possession*