# EXHIBIT D

# BIDDING PROCEDURES

# BIDDING PROCEDURES

The following procedures (collectively, the "Bidding Procedures") shall govern the sale (the "Sale") and auction (the "Auction") of all of the right, title, and interests in substantially all of the assets (the "Purchased Assets") of Orleans Homebuilders, Inc., and its debtor-subsidiaries and affiliates (collectively, the "Debtors"), which are debtors-in-possession in cases pending in the United States Bankruptcy Court for the District of Delaware (the "Court"). The bankruptcy cases were commenced on March 1, 2010 (the "Petition Date").

These Bidding Procedures have been approved and authorized by an order of the Honorable Peter J. Walsh, United States Bankruptcy Court Judge, dated May [__], 2010 (the "Bidding Procedures Order"), upon the motion of the Debtors, dated April 13, 2010, seeking such relief and other proposed relief in connection with the Sale (the "Sale Motion"). Any party-in-interest who wishes to receive a copy of the Sale Motion, including the APA and all other exhibits thereto, may make such request in writing to the Debtors' co-counsel, (i) Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10005-1702, Attn: Joel H. Levitin, Esq. (Telephone: 212-701-3000, Facsimile: (212) 378-2439), or (ii) Elliott Greenleaf, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801, Attn.: Rafael X. Zahralddin, Esq. (Telephone: (302) 384-9400, Facsimile: (302) 384-9399), or by downloading a copy of same from the Bankruptcy Court's website (which is located at http://www.deb.uscourts.gov) or from the website established by the Debtors' noticing agent (which is located at www.orleanshomesreorg.com).

1. The Purchased Assets

The Debtors and certain non-debtor parties, OHI PA, LLC and OHI NJ, LLC (the "Sellers"), have entered into an Asset Purchase Agreement (the "APA"),[1] dated as of April 13, 2010, with NVR, Inc. (including its permitted designees, the "Proposed Buyer"), pursuant to which the Proposed Buyer would acquire the Purchased Assets, subject to higher and better offers and Court approval. As further set forth in, and qualified by, the APA, the Purchased Assets include, among other things, the Debtors' real property as set forth on Schedule 2.1(a) to the APA; certain accounts receivable; the Controlled Jobs; inventory, supplies, and materials; certain rights in or to joint ventures, strategic alliances, or partnerships; the Purchased Contracts, the Purchased Leases, and all rights of the Debtors thereunder; deposits and prepaid charges and expenses; documents used in connection with the Debtors' real property; permits; the Debtors' intellectual property; rights in any homeowner associations or similar organizations; and all other assets used in connection with or related to the Purchased Assets listed on Schedule 2.1(p) to the APA. The Purchased Assets will be sold free and clear of all liens, claims, encumbrances, and other interests, subject to agreement to the contrary with the successful bidder therefor with respect to the Permitted Liens. The Purchased Assets do not include, among other things, (i) bankruptcy causes of action, such as avoidance actions against the Debtors' suppliers, vendors, merchants, manufacturers, or related parties, or other causes of action not related to the Purchased Assets; (ii) tax refunds; (iii) rights in respect of the Excluded Developments (which are the communities referred to as Wildflower at Walkill, in Middletown, New York and Woodside Crossing, in Rock Tavern, New York and related assets); or (iv) the Debtors' cash on hand. To the extent of any discrepancy between the description set forth in this paragraph and the terms of the APA, the latter shall govern.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APA.

The Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except to the extent expressly set forth in the APA with the Proposed Buyer or the Winning Competing Bidder, as the case may be.

2.  The Stalking Horse Agreement with the Proposed Buyer

The Base Purchase Price under the APA is $170,000,000, subject to certain post-closing adjustments (including subtracting the aggregate amount of all Sellers' Assumed Cure Amounts), and the Proposed Buyer will also assume certain liabilities, including the Assumed Cure Amount and one-half of the Transfer Taxes due.

"Assumed Cure Amount" means with respect to each Purchased Lease or Purchased Contract, any amounts required to be paid pursuant to Bankruptcy Code Section 365(b) or otherwise in order to cure any defaults existing as of the date of assumption in respect of such Purchased Lease or Purchased Contract, as approved by the Bankruptcy Court (including, for the avoidance of doubt, the Sellers' Assumed Cure Amounts).

The Proposed Buyer has agreed to provide the Debtors with a deposit in the amount of $17 million, which is 10% of the amount of the Base Purchase Price (the "Deposit"). The Proposed Buyer has already provided half of the Deposit, and will pay the balance on or prior to the Bidding Deadline.

The APA provides for the payment of a Termination Fee and/or the Expense Reimbursement to the Proposed Buyer. The Debtors would be required to pay the Termination Fee and the Expense Reimbursement upon the termination of the APA under certain circumstances as fully set forth in Section 4.6(d) of the APA. The Termination Fee represents 2% of the Base Purchase Price to be paid by the Proposed Buyer under the APA. Notwithstanding the foregoing, the Debtors would be required to pay the Expense Reimbursement (in an amount of up to $1,000,000) upon the termination of the APA under certain circumstances as more fully set forth in Section 4.6(c) thereof.

3.  Submission of Bids

The Debtors intend to deliver requests for bids to all parties who are known to have expressed an interest in acquiring the Purchased Assets.

Also, in the Auction and Hearing Notice, the Debtors will invite all potential bidders who have not previously executed a confidentiality agreement to request a copy of same from the Debtors' Chief Restructuring Officer (the "CRO") and their advisors, BMO Capital Markets Corp. ("BMOCM") and Lieutenant Island Partners LLC ("Lieutenant Island"). These advisors on their own initiative, may also send a proposed confidentiality agreement to those parties who have not yet executed one but whom they or the Debtors have identified as potentially being interested in making an offer to purchase the Purchased Assets and participating in the Auction. All parties who timely execute and return a confidentiality agreement to the CRO, BMOCM, and Lieutenant Island and who provide, in the Debtors' discretion, information demonstrating sufficient financial wherewithal to acquire the Purchased Assets, will be provided access to the due diligence materials the Debtors and their advisors have already prepared for this purpose.

Thereafter, the Debtors and the CRO, BMOCM, and Lieutenant Island will entertain any further reasonable requests for additional information and due diligence from any party who has so executed a confidentiality agreement and provided the required satisfactory evidence of financial wherewithal, and has also submitted a written non-binding expression of interest to the reasonable satisfaction of the Debtors and their advisors. The Debtors, in their discretion, may

2

deny any such requests for additional information, if, after taking into account, among other things, business factors, legal, regulatory, and other considerations, they determine that doing so would not be in the best interests of their estates and creditors or is otherwise contrary to the goals of the Auction and the Sale.

All bids for the acquisition of the Purchased Assets must in writing, comply with the Bidding Procedures, and be received by (1) BMO Capital Markets Corp., 115 South LaSalle Street, 35th Floor, Chicago, Illinois 60603, Attn: Mr. Scott W. Humphrey, Executive Managing Director and Head of U.S. M&A, (2) Lieutenant Island, 5 Leonard Road, Bronxville, New York 10708, Attn.: Mr. Richard Thaler, and (3) the Debtors' Chief Restructuring Officer, c/o PMCM, LLC, 110 Chadds Ford Commons, Chadds Ford, Pennsylvania 19317, Attn.: Mr. Mitchell Arden and Mr. Vincent Colistra, with a copy to (a) co-counsel to the Debtors, (i) Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10112-2200, Attn: Joel H. Levitin, Esq., and (ii) Elliott Greenleaf, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801, Attn.: Rafael X. Zahralddin, Esq.; (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Wilmington, Delaware 19801, Attn.: David Buchbinder, Esq.; (c) counsel to the agent for the Debtors' primary pre-petition secured lenders, (i) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn.: Mark W. Eckard, Esq., and (ii) Reed Smith LLP, One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania 19103-7301, Attn.: Claudia Z. Springer, Esq. and Scott M. Esterbrook, Esq.; (d) [proposed] counsel to the official committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the "Creditors Committee"), (i) Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn.: Richard W. Riley, Esq. and Sommer L. Ross, Esq., (ii) Duane Morris LLP, 1540 Broadway, New York, New York 10036-4086, Attn.: Gerard S. Catalanello, Esq. and James J. Vincequerra, Esq., (iii) Duane Morris LLP, 30 South 17th Street, Philadelphia, Pennsylvania 19103-4196, Attn.: Lawrence J. Kotler, Esq., and (e) co-counsel to the Proposed Buyer, (i) Hogan & Hartson LLP, 875 Third Avenue, New York, NY 10022, Attn.: Ira S. Greene, Esq. and Scott A. Golden, Esq., and (ii) Potter Anderson & Corroon LLP, 1313 North Market Street, Wilmington, Delaware 19899, Attn.: Steven M. Yoder, Esq., no later than 12:00 noon (prevailing Eastern Time) on June 16, 2010 (the "Bidding Deadline"). The Debtors reserve the right to (a) amend and/or impose additional terms and/or conditions at or prior to the Auction (other than the requirements for a Qualified Bid set forth herein and the right of the Proposed Buyer to make a revised higher or better offer at any time during the Auction) that they believe will better promote the goals of the Auction and be in the best interests of their estates, and do not otherwise conflict with the terms and requirements set forth in the APA and (b) subject to the terms of the APA, extend the deadlines set forth in the Bidding Procedures and/or adjourn the Auction at the Auction and/or the Sale Hearing in open court or on the Bankruptcy Court's calendar on the date scheduled for said hearing without further notice to creditors or parties-in-interest.

Any party interested in making a Bid must comply with these Bidding Procedures. Only Qualified Bidders will be eligible and entitled to bid at the Auction, unless the Debtors or the Bankruptcy Court determine otherwise. The Proposed Buyer will be deemed a Qualified Bidder, and the APA will be deemed a Qualified Bid, for all purposes of the Auction. Within 3 days after the Bidding Deadline, the Debtors shall notify all parties who submitted bids whether or not they constitute a Qualified Bidder.

In addition to the Proposed Buyer, a "Qualified Bidder" is one who has complied with the terms and conditions set forth herein, including, without limitation, having demonstrated the ability to close the Transactions to the reasonable satisfaction of the Debtors. In order to be considered for Qualified Bidder status, a Person must: (a) make a Bid prior to the Bidding Deadline (as such terms are defined below); (b) provide financial statements or other evidence of financial wherewithal reasonably satisfactory to the Debtors, demonstrating its ability to perform and consummate the transaction described in its Bid (including, to the extent applicable, by

providing an Adequate Assurance Package (as such term is defined below) and proof of such bidder's ability to satisfy the balance of the proposed purchase price or to provide any other consideration to be given in connection with the Sale); (c) provide a bid letter including a statement that it is willing to proceed as a buyer on a basis substantially similar to that of the Proposed Buyer with respect to the Purchased Assets and/or the Region(s) that is the subject of the Bid (including with respect to the assumption of the Assumed Liabilities, or to the extent the Bid is for fewer than for all 4 of the Regions, such Assumed Liabilities as relate to the Region(s) in question), and include a binding, definitive, and irrevocable executed copy of the APA marked with interlineations indicating any modifications thereto required by the bidder (which agreement shall not contain the provisions set forth in Section 4.6 of the APA or otherwise entitle such bidder to a Termination Fee or Expense Reimbursement); (d) complete and execute a confidentiality agreement acceptable to the Debtors and their professionals; and (e) provide an earnest money deposit of equal to 10% of the amount of its bid, upon submission of the Bid (the "Bid Deposit"). The Debtors may request additional information from a Competing Bidder in order to evaluate the bidder's ability to consummate a transaction and to fulfill its obligations in connection therewith, and such bidder will be obligated to provide such information as a precondition to participating further in the Auction.

The Bid Deposit shall be in the form of a wire transfer to the account of an escrow agent selected by the Debtors (the "Escrow Agent"), pursuant to instructions to be provided upon request. The Bid Deposit, together with any interest earned thereon, shall be returned to any Bidder whose Bid is not accepted by the Debtors within 3 business days of the conclusion of the Sale Hearing, except that in the case of the party who submits the Second Place Bid (as such term is defined below), the Debtors reserve the right to retain such bidder's Bid Deposit until 3 days after the Transactions with the Winning Competing Bidder has been consummated. If the entity that makes the Winning Competing Bid (as such term is defined below) fails to consummate the purchase of the Purchased Assets, and such failure to consummate the purchase or purchases is the result of a breach by the Winning Competing Bidder, such bidder's Bid Deposit shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

To be considered a Qualified Bid, a bid must: (a) specify the portion of the consideration to be paid in cash and the portion to be paid in any other form of value (if any), including specifying any liability of the Debtors that the Bidder intends to assume in connection with the Sale above and beyond the Assumed Liabilities; (b) if any consideration above and beyond the assumption of the Assumed Liabilities is to be provided in a form other than cash, provide information concerning such consideration to permit the Debtors to accurately assess the value of such consideration; (c) if (as described below) the bid contemplates a purchase of fewer than all of the Purchased Assets (or not all 4 of the Regions), provide sufficient detail concerning which of the Purchased Assets (and/or Regions, as applicable) would not be purchased thereby, or if the bid contemplates a purchase of any or all of the Excluded Assets, provide sufficient detail concerning which of the Excluded Assets would also be purchased thereby; (d) provide sufficient indicia that such bidder or its representative is legally empowered, by power of attorney or otherwise, and financially capable (i) to bid on behalf of the prospective bidder and (ii) to complete and sign, on behalf of the bidder, a binding and enforceable asset purchase agreement; (e) not contain any contingencies to closing that are not also set forth in Article IX of the APA, including, without limitation, any contingencies for financing, diligence, board approval, or similar contingencies or conditions; (f) identify with particularity each and every executory contract or unexpired lease the assumption and assignment of which is a condition to closing, to the extent different from the Assigned Agreements proposed to be assumed and assigned to the Proposed Buyer under the APA; and (g) require the competing bidder to consummate the Sale on substantially the same timing as set forth in the APA.

Except as otherwise set forth herein, any initial bid of a Competing Bidder (an "Initial Competing Bid") made prior to the Bidding Deadline may (a) not be less than $178,000,000, consisting of the sum of the (i) Base Purchase Price, (ii) the sum of the Termination Fee in the amount of $3,400,000 plus the Expense Reimbursement in the amount of $1,000,000, and (iii) a minimum incremental overbid of at least $3,600,000, (b) provide that the bidder will assume or pay at Closing substantially all of the Assumed Liabilities (or all of the liabilities with respect to the individual Region(s) that is the subject of such Initial Competing Bid, to the extent it is for fewer than all 4 of the Regions, as discussed below), and (c) otherwise be on terms that are substantially similar to, or more favorable to the Debtors, than those set forth in the APA with the Proposed Buyer with respect to the Purchased Assets and/or the Region(s) that is the subject of the Bid. Notwithstanding the foregoing, the Debtors may, in their discretion, consider joint or individual bids from parties who express an interest in acquiring fewer than all of the Debtors' 4 main regions of operations (North, South, Florida, and the Midwest) (each, a "Region," and collectively, the "Regions") so long as when combined, such bids together would result in the acquisition of all of the Regions for an aggregate purchase price in excess of the Initial Competing Bid, and all of the Assumed Liabilities would be assumed by the various bidders, as applicable (as so combined).

In any bid for the North Region (separate from a bid for all of the Purchased Assets), the Competing Bidder must indicate whether its bid also includes the Excluded Developments. Alternatively, the Debtors, in their discretion may consider a bid for only the Excluded Developments, solely to the extent that any bid therefor otherwise satisfies all of the other applicable requirements set forth herein for a Qualified Bid. In the event the Debtors receive an otherwise Qualified Bid for only the Excluded Developments that they would, in their discretion, consider acceptable and would not interfere with the Sale of the Purchased Assets or the North Region (as applicable), the Debtors may also submit such bid to the Bankruptcy Court for approval at the Sale Hearing. In the event any bid for the Excluded Assets would entail the assumption and assignment of any contract or lease, the Debtors would provide notice to the applicable non-debtor contract party and an opportunity to object to the proposed Cure Amount.

Each Competing Bid must fully disclose the identity of all other entities, if any, which shall be acquiring directly or indirectly after the Closing a portion of the Purchased Assets under or in connection with a Bid. Each Competing Bidder is required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale, except that different parties may (with the Debtors' permission, at their discretion (following a request therefor by the potential joint bidders upon full notification of the entities involved) combine Bids into a joint bid (as described further herein).

Bids submitted on or prior to the Bidding Deadline, as may be modified by a Bidder at the Auction, shall remain open and irrevocable until the Sale Hearing; *provided, however*, that the Winning Competing Bid and the Second Place Bid shall be deemed to remain open and irrevocable until the closing of the transaction that is the subject of such Bid (subject to the terms and conditions of the APA with respect to the Proposed Buyer). Acceptance of a Qualified Bid shall, in all respects, be subject to the entry of an order by the Bankruptcy Court that, among other things, authorizes the Debtors to consummate a sale to the Winning Competing Bidder. Following the Sale Hearing, if the Proposed Buyer or any Winning Competing Bidder (as the case may be) fails to consummate an approved sale because of a breach or failure to perform on its part, the next highest or otherwise best Qualified Bid, as disclosed at the Auction (the "Second Place Bid"), shall be deemed to be the Winning Competing Bid, and the Debtors shall be authorized, but not required (except if the Second Place Bid is made by the Proposed Buyer), to consummate the Sale with the Qualified Bidder submitting such Second Place Bid (i) without the need for further notice or order of the Bankruptcy Court and (ii) without prejudice to the Debtors' right to seek all available damages from the defaulting bidder (be it the Proposed Buyer

or the Winning Competing Bidder at the Auction, including the party that submits the Second Place Bid, as the case may be).

4.    The Auction and Selection of the Winning Bid

If one or more Qualified Bids (other than the Proposed Buyer's) are received by the Bidding Deadline (a "Competing Bid"), the Auction would be conducted at the offices of Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10005-1702, or at another location as may be timely disclosed by the Debtors to the Qualified Bidders, on or about June 23, 2010 starting at 9:30 a.m. (prevailing Eastern Time) (the "Auction Date"). If, however, (i) the only Qualified Bid the Debtors have received by the Bidding Deadline (unless the Debtors have extended such deadline in accordance with the terms of the Bidding Procedures) is the Proposed Buyer's Qualified Bid as set forth in the APA, then the Auction will not be held, and the Proposed Buyer will be deemed the Winning Bidder, and the Debtors will be authorized to seek approval thereof at the Sale Hearing.

In the event there is an Auction, all bidders must appear in person or through a duly authorized representative, or else not be eligible or entitled to participate therein. At or prior to the commencement of the Auction, the Debtors will notify the Proposed Buyer and all Qualified Bidders of the then highest and best Qualified Bid received by that time.

Initial bidding at the Auction shall begin with such then highest and best bid. If more than one Bid is submitted, each such bidder shall have the right to continue to improve its Bid at the Auction. Each subsequent bid (each, a "Subsequent Overbid") must have a purchase price that exceeds the purchase price of the previous highest bid by at least $1,000,000.

The Auction will continue in one or more rounds of bidding and shall conclude after each participating bidder has had an opportunity to submit an additional Subsequent Overbid, after being advised of the then highest bid and the identity of the party making such next highest bid. Each bid at the Auction must meet each of the criteria of a Qualified Bid, other than the requirement that it be received prior to the Bidding Deadline. All bids shall be placed on the record, which shall either be transcribed or videotaped, and each bidder shall be informed of the terms of the previous bid.

In considering bids other than the Proposed Buyer's, the Debtors shall reduce every (i) bidder's bid for the Purchased Assets, or (ii) combination of individual bids for fewer than all 4 of the Regions (provided that when so combined, all 4 Regions would be the subject of a bid), in each instance by an amount equal to (in the aggregate) the sum of the Termination Fee plus the Expense Reimbursement (or consider any Subsequent Overbid of the Proposed Buyer to be higher by an amount equal to the Termination Fee plus the Expense Reimbursement). The Proposed Buyer shall be entitled to make a revised higher or otherwise better offer at any time during the Auction.

Upon the conclusion of the Auction, the Debtors shall (i) review each Qualified Bid or bids (as and to the extent such bids were increased at the Auction) on the basis of financial and contractual terms and the factors relevant to the Sale Process, including those factors affecting the speed and certainty of consummating the Sale(s), as well as the Debtors' liability, if any, for payment of the Termination Fee and the Expense Reimbursement to the Proposed Buyer, and (ii) identify the highest and otherwise best offer(s) for the Purchased Assets as the Winning Competing Bid. The Debtors and the entity (or entities) that made the Winning Competing Bid(s) (each, a "Winning Competing Bidder") will enter into a definitive agreement(s) (which will be subject to Court approval) before the Auction is adjourned. The Debtors will submit the Winning Competing Bid(s) to the Court for approval at the Sale Hearing.

5.  The Supplement

To the extent that the Initial Bid of the Proposed Buyer embodied in the APA is not the Winning Competing Bid at the Auction, the Debtors will file with the Bankruptcy Court a supplement (the "Supplement") that will inform the Bankruptcy Court of the results of the Auction and the highest or otherwise best bid(s) for the Purchased Assets. The Supplement will identify, among other things, (a) the Winning Competing Bidder(s), as the proposed purchaser(s), (b) the consideration to be paid by such purchaser(s) for the Purchased Assets, and (c) any executory contracts and unexpired leases to be assumed and assigned to the purchaser in connection with the Sale(s) (to the extent different from the Assigned Agreements proposed to be assumed and assigned to the Proposed Buyer under the APA). In addition, the Debtors will attach to the Supplement, as exhibits, (a) any revised proposed order(s) approving the Sale(s), (b) copies of the asset purchase agreement(s) entered into by the Debtors and the Winning Competing Bidder(s), and (c) the Winning Competing Bidder's Adequate Assurance Package(s). Also, to the extent the Debtors accept a bid for the Excluded Developments at the Auction, they will include in the Supplement (to the extent then available) a copy of a proposed asset purchase agreement and sale order with respect thereto. The Debtors will file and serve the Supplement as promptly as is reasonably practicable prior to the Sale Hearing in accordance with the Notice Procedures and, in any event, to any person who submits a written request therefor to either (a) Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10005-1702, Attn: Joel H. Levitin, Esq. or (b) Elliott Greenleaf, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801, Attn.: Rafael X. Zahralddin, Esq.

6.  Notice of Proposed Assignment and Cure Amounts

No later than 10 days following the entry of the Bidding Procedures Order, the Debtors will file with the Bankruptcy Court and cause to be served on all non-debtor parties to their known executory contracts and unexpired leases a notice (the "Section 365 Notice") that will inform such parties of (A) the possibility that the Debtors may seek to assume, assign, and transfer some or all of their executory contracts and unexpired leases to the Proposed Buyer or to any Winning Competing Bidder in connection with the Sale, and, in particular, will indicate whether or not the Proposed Buyer has already expressed an interest in having that particular contract or lease assigned to it under the APA as an Assigned Agreement, (B) the amount, if any, that the Debtors believe would be required to be paid to cure any monetary default related to each such designated contract or lease if it were so assumed and assigned, in satisfaction of Bankruptcy Code Section 365(b) (the "Proposed Cure Amount"), and (C) the possibility that the Debtors will seek to reject, at the Sale Hearing, some or all executory contracts and unexpired leases that are not assumed and assigned to a purchaser(s) of the Purchased Assets in connection with a Sale.

The APA provides, and the agreement from another bidder may also provide, for the Proposed Buyer, or the Winning Competing Bidder (as the case may be), to add or remove Purchased Contracts or Purchased Leases from the Cure Schedule at any time up until Closing. As the Debtors are advised by the Proposed Buyer, or the Winning Competing Bidder (as the case may be), that it desires to assume and assign an executory contract or unexpired lease, the Debtors will file an amended or supplemental Section 365 Notice adding or removing such contracts or leases thereto (any such added contract, an "Additional Contract"), and shall provide notice of the proposed removal of an Assumed Contract or assumption and assignment of the Additional Contracts to each affected counterparty to such Additional Contracts.

7.  Objections

Objections, if any, to the remaining relief sought in the Sale Motion must be in writing, stating with particularity the grounds for such objections or other statements of positions, comply

with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and be filed and served so as to be *actually received* by co-counsel to the Debtors, counsel to the Agent, the United States Trustee, co-counsel to the Proposed Buyer, and [proposed] counsel to the Creditors Committee, by 4:00 p.m. (prevailing Eastern Time) on the date that is 7 days prior to the Sale Hearing Date.

Objections, if any, to the information contained in the Supplement must be in writing, comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and be filed and served so as to be *actually received* by co-counsel to the Debtors, counsel to the Agent, the United States Trustee, and [proposed] counsel to the Creditors Committee, by noon on the date that is one day prior to the Sale Hearing Date.

Objections, if any, that relate to (i) the proposed assumption and assignment of an Assigned Agreement (including, but not limited to, any objections relating to the validity of the Proposed Cure Amount as determined by the Debtors or otherwise to assert that any amounts, defaults, conditions, or pecuniary losses must be cured or satisfied under any of the assigned executory contracts or unexpired leases, not including accrued but not yet due obligations, in order for such contract to be assumed and/or assigned) or (ii) the rejection of a Rejected Contract, as applicable (a "Section 365 Objection") must be in writing, comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, state the basis of such objection with specificity, including, without limitation, the cure amount alleged by such counterparty (if applicable), and include contact information for such counterparty, and be filed and served so as to be actually received by co-counsel to the Debtors, counsel to the Agent, the United States Trustee, co-counsel to the Proposed Buyer, and [proposed] counsel to the Creditors Committee, so that they are *actually received* by 4:00 p.m. (prevailing Eastern Time) on the date that is 10 days prior to the Sale Hearing Date, or in the case of Additional Contracts, within 10 days after receipt of a Section 365 Notice with respect thereto (as applicable, the "Section 365 Objection Deadline").

Unless a Section 365 Objection is filed and served by a party to (a) an Assigned Agreement or a party interested in an Assigned Agreement or (b) a Rejected Contract, as applicable, by the Section 365 Objection Deadline, all interested parties that have received actual or constructive notice thereof shall be deemed to have waived and released any right to assert a Section 365 Objection and to have otherwise consented to either (i) the assignment of the applicable Assigned Agreement and shall be forever barred and estopped from asserting or claiming against the Debtors, the Purchased Assets, the Proposed Buyer, or the Winning Competing Bidder (as the case may be), or any other assignee of the applicable Assigned Agreement, that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assigned Agreement for the period prior to the Sale Hearing Date, or (ii) the rejection of a Rejected Contract, as applicable.

8. <u>Court Approval</u>

A hearing on all of the remaining relief requested in the Sale Motion and to consider the results of the Auction (the "Sale Hearing") will be held before the Honorable Peter J. Walsh, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Courtroom #2, Wilmington, Delaware 19801, on or about June 24, 2010 at [__:__ _].m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard (the "Sale Hearing Date"). The Sale will be subject to the entry of an order of the Bankruptcy Court approving same.