# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------x
:
In re:                                  :  Chapter 11
                                        :
ORLEANS HOMEBUILDERS, INC., et al.,     :  Case No. 10-10684 (PJW)
                                        :
            Debtors.                    :  Jointly Administered
                                        :
----------------------------------------:
                                        :
NVR, INC.,                              :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :  Adv. Proc. No. 10-_____
                                        :
ORLEANS HOMEBUILDERS, INC., et al.,     :
                                        :
            Defendants.                 :
                                        :
---------------------------------------x

## COMPLAINT

Plaintiff, NVR, Inc. ("*NVR*"), by its attorneys, Potter Anderson & Corroon LLP and Hogan Lovells US LLP, brings this action for damages against Defendant Orleans Homebuilders, Inc. ("*OHB*") and the 46 affiliates of OHB listed in Exhibit A to the Asset Purchase Agreement (the "*APA*" or the "*Agreement*") attached as Exhibit 1 hereto (referred to collectively in this Complaint as the "*OHB Defendants*"). For its Complaint, NVR alleges, on personal knowledge as to itself and its actions and upon information and belief as to others, as follows:[1]

---

[1] Unless otherwise defined in this Complaint, capitalized terms shall be defined as in the APA.

## JURISDICTION AND VENUE

1. OHB and certain of its affiliates (the "*Debtors*") commenced cases for relief under Chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*") on March 1, 2010 (the "*Petition Date*").

2. The Court entered an Order Directing Joint Administration of the Chapter 11 Cases on March 3, 2010.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Defendants OHI PA, LLC and OHI NJ, LLC are not Debtors. The remaining OHB Defendants are Debtors. This Court has jurisdiction over OHI PA, LLC and OHI NJ, LLC because the outcome of this proceeding could have an effect on the Debtors being administered in the Chapter 11 Cases.

5. This adversary proceeding is brought pursuant to Rules 7001(1), (7), and (9) of the Federal Rules of Bankruptcy Procedure.

## PARTIES

6. NVR is a Virginia corporation. NVR is a public company and one of the largest and most preeminent homebuilding companies in the United States. Its homebuilding operations include the construction and sale of single-family detached homes, townhomes, and condominium buildings under four trade names: Ryan Homes, NVHomes, Fox Ridge Homes, and Rymarc Homes.

7. OHB, a Delaware corporation, is a public company that builds, develops, markets, and sells single-family homes, townhouses, and condominiums to various segments of the homebuyer market. OHB's Chief Restructuring Officer ("CRO") is Mitchell Arden of PMCM, LLC, an affiliate of Phoenix Management Services Inc. ("*Phoenix*").

8. Defendant OHB and forty-four of its affiliate defendants are Debtors in the Chapter 11 Cases. The two remaining defendants, OHI PA, LLC and OHI NJ, LLC, both Delaware limited liability companies, are affiliates of OHB and parties to the APA but are not Debtors.

## **NATURE OF THE CASE**

9. Beginning shortly after the Petition Date, OHB represented to NVR that it intended to pursue the sale of substantially all of the OHB Defendants' assets at an auction sale pursuant to section 363 of the Bankruptcy Code. On or about March 15, 2010, OHB advised NVR that it would entertain a proposal from NVR to act as the "stalking horse" bidder for the OHB Defendants' assets. NVR submitted a substantial bid for the assets. OHB then advised NVR that NVR's bid was the best offer OHB had received for the assets. OHB then engaged NVR in extensive negotiations on a daily basis over several weeks with respect to the preparation of a definitive Asset Purchase Agreement, bid procedures, Bidding Procedures Order, Sale Order, Sale Motion[2] and related documents. NVR had to perform these activities on

---

[2] The term "*Sale Motion*" refers to the Motion of the Debtors for orders (A)(I) approving sale procedures and bidding protections to be employed in connection with the proposed sale of substantially all of the Debtors' assets, (II) scheduling an auction and hearing to consider approval of the sale of substantially all of the Debtors' assets, and approving notice of the respective dates, times, and places for auction and for hearing on approval of (1) sale of substantially all assets, and (2) assumption and assignment of certain executory contracts and unexpired leases; and (B)(I) authorizing and approving an Asset Purchase Agreement with NVR, Inc., or such other purchaser(s) providing a higher or otherwise better offer(s); (II) authorizing the sale of substantially all of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interest; (III) authorizing the assumption and assignment of certain executory contracts and unexpired leases and the rejection of other

3

an expeditious basis to meet OHB's extremely short time requirements for the execution of the APA and the filing of the Sale Motion. NVR was also forced to engage in extensive environmental, title and other work necessary to satisfy preclosing conditions on an expeditious basis to meet extremely tight deadlines required by OHB in the APA.

10. OHB promised to use its reasonable best efforts to seek court approval of the APA and entry of the Bidding Procedures Order (that the parties agreed should govern the auction process for the OHB Defendants' assets), and the Sale Order. OHB had obligations under the APA to expend its "reasonable best efforts" to seek Court approval of the Bidding Procedures Order, the APA and the entry of the Sale Order. Instead, just two days before the Court was scheduled to consider the Debtors' motion for Court approval of the Bidding Procedures Order, the Debtors withdrew the entire Sale Motion, in direct contradiction of repeated prior representations by OHB and its representatives to NVR and to this Court, that OHB was committed to a sale process because it believed "that creditors would receive more value through the Sale of the Purchased Assets as a going concern than through continued operations, or through a piecemeal liquidation...." Sale Motion ¶ 81. Then, OHB announced that it was pursuing a stand-alone reorganization plan process and abandoning the auction process.

11. NVR seeks damages for breach of contract, promissory estoppel and unjust enrichment to compensate it for the sums it was required to expend and did expend in connection with the negotiation and preparation of the APA, the Bidding Procedures Order and

---

executory contracts; (IV) authorizing the Debtors to consummate all transactions related to the above; and (V) granting other relief, dated April 13, 2010.

the Sale Order, the filing of a motion to approve the sale, and for other steps taken in preparation to acquire the OHB Defendants' assets in reliance on OHB's promises.

**Statement of Facts**

12. OHB began to market its business and/or assets several months prior to the Petition Date. In particular, OHB was engaged in negotiations with another prospective purchaser to acquire the OHB Defendants' assets. Upon information and belief, OHB signed a non-binding letter of intent with this prospective purchaser prior to the Petition Date. However, OHB was not able to reach an agreement with this prospective purchaser or any other buyer willing to acquire the OHB Defendants' assets outside of a Chapter 11 case. In addition, OHB was not able to obtain an extension and structural modification of its credit agreement with its Senior Secured Lenders that would have provided OHB sufficient liquidity to continue its business outside of a Chapter 11 case. Accordingly, the Debtors and their Senior Secured Lenders determined that the commencement of the Chapter 11 Cases and pursuing an asset sale pursuant to section 363 of the Bankruptcy Code would be the optimal course of action to maximize value and provide a long-term solution for the Debtors' circumstances. After the Petition Date, OHB solicited offers from prospective buyers to purchase the OHB Defendants' assets at a sale to be held pursuant to section 363 of the Bankruptcy Code.

**Negotiations Leading Up To The APA**

13. After the Debtors commenced the Chapter 11 Cases, NVR learned that OHB was open to additional bids. Beginning in approximately mid-March 2010, NVR contacted OHB's CRO, Mitchell Arden of Phoenix, and other OHB representatives. On or about March 15, 2010, OHB's representative, Vince Colistra of Phoenix, advised NVR that it would entertain a proposal from NVR to act as the "stalking horse" bidder for the OHB Defendants' assets.

14. NVR had conducted certain due diligence with respect to OHB prior to the Petition Date. As a result, NVR was in a position to promptly formulate a bid for the OHB Defendants' assets.

15. On March 23, 2010, NVR submitted its bid to OHB. OHB prepared an initial draft of the APA and provided such draft to NVR on March 25, 2010. During the following weeks, until the filing of the Sale Motion on April 13, 2010, the parties negotiated the terms of the APA, the Bidding Procedures Order and the Sale Order.

16. Following NVR's initial bid, OHB informed NVR that NVR's opening offer was substantially higher than the other prospective purchaser's bid. OHB also reiterated its intention to pursue an auction process pursuant to section 363 of the Bankruptcy Code, with NVR serving as the stalking horse for other competing bids.

17. OHB assured NVR that OHB was committed to the Section 363 auction process and that OHB would not consider offers for the OHB Defendants' assets outside of the auction process. Implicit in these representations was OHB's intention not to pursue a stand alone reorganization plan.

18. In reliance on OHB's representations and assurances, NVR continued to negotiate and refine its bid, arriving at a final bid of $170 million for the assets to be sold under the APA.

19. On or about April 12, 2010, NVR was advised that the Board of Directors of OHB had approved NVR's bid and APA.

20.     Later, on or about April 12, 2010, OHB informed NVR that OHB's Senior Secured Lenders and DIP Lenders approved NVR's bid and APA and consented to proceeding with an auction process for the sale of substantially all of the OHB Defendants' assets. As required by the terms and conditions of the Debtors' debtor-in-possession credit agreement, OHB's representatives indicated that they expected a hearing on May 4, 2010, an auction within approximately 45-60 days, and Court approval and Closing shortly thereafter.

### **The Terms of the APA**

21.     The parties entered into the APA on April 13, 2010. Pursuant to the APA, NVR agreed to buy the Purchased Assets, subject to higher and better offers to be solicited prior to and at the Auction and subject to the approval of the Court, among other terms and conditions, for a base purchase price of $170,000,000 in cash (subject to certain adjustments), plus the assumption of certain liabilities, including liabilities under the contracts and leases to be assumed and assigned in connection with the sale.

22.     On April 13, 2010, the Debtors filed the Sale Motion. In the Sale Motion, the Debtors stated that the proposed Sale pursuant to the APA was "supported by sound business justifications." Sale Motion ¶ 81. The Debtors also stated that they and their advisors "firmly believe that creditors would receive more value through the Sale of the Purchased Assets as a going concern than through continued operations, or through a piecemeal liquidation...." *Id.*

23.     On April 13, 2010, Vince Colistra of Phoenix, who had led the negotiations of the APA on OHB's behalf, sent an e-mail to various representatives of NVR, saying that there was "no 'turning back' now" from the section 363 process.

24.     OHB also made public statements regarding its commitment to the auction process. On April 14, 2010, OHB issued a press release (the "*April 14 Release*") announcing that its Board of Directors had approved, and OHB had executed, the APA with NVR. OHB quoted its Executive Vice President and Chief Financial Officer, Garry P. Herdler, as stating that the APA "fulfills the commitment we made at the outset of the Chapter 11 case to pursue potential purchasers of the Company." The April 14 Release also stated that the bidding procedures and sale motion were expected to be considered by the Court at a hearing on May 4, 2010. The April 14 Release nowhere stated or even suggested that OHB was considering a stand-alone reorganization as an alternative to an asset sale.

25.     The Debtors have stated that the APA, subject to higher and better offers and otherwise under the terms and conditions proposed in the Bidding Procedures, represents the best opportunity to address the Debtors' liquidity and operational problems and to maximize the value of the Debtors' estates for the benefit of their creditors and all other parties-in-interest. Sale Motion ¶ 8. Citing the Debtors' lack of liquidity to sustain ongoing homebuilding operations and customer concerns about buying a home from a company whose viability is in question, the Debtors told this Court that "the Debtors have determined that if they are unable to complete the proposed Sale to [NVR] (or such other entity that makes a higher and better offer for the Purchased Assets at the Auction), they will have no other choice but to ultimately cease operations and liquidate the Purchased Assets." Sale Motion ¶ 87.

26.     Pursuant to the APA, NVR agreed to provide a substantial earnest money deposit, to be applied to the Purchase Price on the Closing Date. Concurrently with signing the

APA, NVR deposited the amount required by the APA with the Escrow Agent. APA § 3.1(a), (b).

27. Approval of the APA by the Court, and entry of the Bidding Procedures Order and Sale Order, were conditions precedent to the parties' obligations to consummate the sale of OHB Defendants' assets pursuant to the APA. APA §§ 7.1(a), 9.3(b).

28. During the negotiations of the APA, NVR sought and received further assurances that OHB was committed to the auction process. In this regard, OHB agreed to use its "reasonable best efforts" to obtain entry of the Bidding Procedures Order by May 7, 2010, and entry of the Sale Order by June 30, 2010. APA § 8.9. Likewise, NVR was contractually obligated to assist OHB in obtaining Court approval of the Bidding Procedures Order and the Sale Order. APA § 7.2.

29. The APA further provided that OHB would use "commercially reasonable efforts" to cause the fulfillment at the earliest practicable date of all of the conditions to the parties' respective obligations to consummate the transactions contemplated by the APA. APA § 8.5.

30. OHB's obligation under Section 8.9 of the APA to use its reasonable best efforts to obtain entry of the Bidding Procedure Order by May 7, 2010, necessarily was not contingent on Court approval of the APA.

31. Because of the urgency of conducting an asset sale through the Auction in June 2010, OHB agreed to follow the process for obtaining bids set forth in the Bidding Procedures Order even before the Court hearing to approve the Bidding Procedures Order. APA § 7.1(a). Following announcement of the APA, OHB advised NVR that the

9

announcement had generated significant interest among potential buyers and that it was speaking to other prospective bidders for the OHB Defendants' assets.

32. OHB advised NVR that after NVR's bid became known publicly through the filing of the Sale Motion, there was increased interest in the assets by several prospective bidders.

## The Parties Partially Performed the APA

33. OHB and NVR worked together, as required under the APA, to quickly complete and file a motion for Court approval of the APA, Bidding Procedures Order and Sale Order.

34. In keeping with the parties' agreement for an expedited sale process which would benefit the Debtors' estates and as compelled by the terms of the Debtors' DIP financing facility, OHB demanded that the type, timing and number of pre-closing conditions in the APA be limited. For example, the APA set a deadline of June 1, 2010 for NVR to perform environmental investigation of the Real Property and identify issues requiring Remediation to be part of the Environmental Holdback Amount at Closing. APA § 2.9. In order to comply with this tight timeline, NVR was forced to perform the work necessary to satisfy the preclosing deadlines stipulated in the APA immediately following the execution of the APA. As a result, NVR has incurred significant expenses to conduct Environmental Diligence on the Purchased Assets on an expedited basis as required under the APA.

35. OHB also required NVR to identify any Title Objections applicable to the Individual Properties by June 1, 2010 in order to obtain any reduction in the amount of the Purchase Price allocable to such property to reflect the diminution of value of such property due

to such Title Objections. APA § 2.10. As stated above, in order to comply with this tight timeline, NVR was forced to perform the work necessary to satisfy the preclosing conditions immediately following the execution of the APA. As a result, NVR has incurred significant expenses to obtain Title Commitments and identify Title Objections on an expedited basis as required under the APA.

## NVR's Reliance On OHB's Representations

36. NVR relied on OHB's representations and assurances of its intent to pursue the auction process in accordance with the APA, Bidding Procedures Order and Sale Order. NVR expended substantial amounts of time, effort and expense in connection with negotiating with OHB, formulating and refining its bid, and negotiating and preparing the APA, Bidding Procedures Order and Sale Order.

37. NVR also spent substantial sums on Environmental Due Diligence and Obtaining Title Commitments and identifying Title Objections and other expense in preparing to acquire the assets at auction.

## OHB Repudiates The APA And Abandons The Auction Process

38.     Shortly prior to the original hearing date of May 4, 2010 to consider the Bid Procedures, NVR learned that, contrary to OHB's prior representations and assurances, and in a departure from the sale process mandated by the terms of the Debtors' debtor-in-possession financing, OHB had been negotiating with certain distressed asset investors regarding a stand-alone reorganization plan. It is evident that NVR's stalking horse bid of $170 million for the Purchased Assets served as a "floor" on the perceived value of substantially all of the OHB Defendants' assets, and stimulated interest in a stand-alone reorganization plan. Some of the banks that previously had approved the sale process then sold their interests to certain distressed asset investors that decided to pursue an alternative course and apparently persuaded the Debtors to follow their lead. On May 19, 2010, the Debtors withdrew the Sale Motion.

39.     On May 19, 2010, OHB issued a press release (the "*May 19 Release*") in which it stated that it had "terminated" the previously announced APA and entered "an agreement to pursue negotiation of a plan of reorganization with the support of the Company's senior lending group." OHB has not, however, provided NVR with written notice of termination, as would be required to effectively terminate the APA (APA § 4.5(a)), nor could it, since, absent any breach by NVR, OHB had no right to terminate the APA. APA § 4.4(e).

40.     In direct contradiction to comments representatives of OHB had made about the auction process under the APA just one month earlier, the May 19 Release quotes OHB's CRO as saying that a plan of reorganization "appears to be the best course of action for the Company . . ."

41.     OHB was required to act in good faith and use reasonable best efforts to obtain Court approval of the APA, and entry of the Bidding Procedures Order and the Sale

12

Order. Instead, without any legal basis or justification, OHB has repudiated the APA and abandoned the auction process which OHB had repeatedly assured NVR it intended to pursue.

### OHB Has Not Effectively Terminated The APA

42. Absent a breach of the APA by NVR (which is not alleged), OHB is <u>not</u> entitled to terminate the APA. OHB is entitled to terminate the APA prior to the Outside Date if the conditions precedent to its obligations to consummate the transaction, including Court approval of the APA, "shall have become incapable of fulfillment *other than as a result of a breach by [the OHB Defendants] of any covenant or agreement contained in this Agreement.*" APA § 4.4(e) (emphasis added).

43. In the event of termination of the APA by any party, the terminating party is required to provide written notice thereof to the nonterminating parties. APA § 4.5(a).

44. The Debtors have acknowledged that NVR would be entitled to certain Bidding Protections – including provisions for a Termination Fee and Expense Reimbursement – which, the Debtors stated, were intended to balance "(a) the Debtors' interest in having a baseline minimum price, in order to ensure the highest and best net result for the Debtors' estates with (b) protecting the substantial investment made and to be made by [NVR] in entering into the APA in terms of both time and money (including, without limitation, costs of due diligence, financing and professional advisors)." Sale Motion ¶ 54.

45. The APA provides that in the event the APA is terminated, the OHB Defendants will pay NVR an Expense Reimbursement (equal to $150,000 <u>plus</u> all of NVR's out-of-pocket expenses, subject to an aggregate cap for the Expense Reimbursement of $1 million) within five (5) Business Days of the termination of the APA. Payment of the Expense

13

Reimbursement does not relieve the OHB Defendants from their liability for damages as a result of their breach of the APA. APA § 4.6(b).

46. If OHB or any of the other OHB Defendants "withdraw or seek authority to withdraw their motion seeking approval of the transactions contemplated by this Agreement, or announces any stand-alone plan of reorganization or liquidation (or supports any such plan filed by another party)," then NVR *but not* OHB is entitled to terminate the APA. APA § 4.4(j). Any such termination would entitle NVR to a Termination Fee of $3.4 million plus the Expense Reimbursement (to the extent not previously paid to NVR). APA §§ 4.6(c), (d).

**NVR's Damages**

47. As a result of the foregoing, NVR has sustained substantial damages. For example, in reliance on OHB's representations and assurances, and in accordance with the provisions of the APA, NVR has spent substantial sums on consultants, advisors and attorneys and other services in connection with negotiating and preparing the APA, Bidding Procedures Order and Sale Order. NVR has also expended substantial sums on Environmental Due Diligence and obtaining Title Commitments and identifying Title Objections on an expedited schedule as required under the APA. NVR has also sustained other damages in preparation for the auction process that OHB repeatedly assured NVR it was committed to pursuing.

48. OHB has been enriched as the result of NVR having served as OHB's stalking horse bidder. The proposed Bidding Procedures Order – negotiated by the parties – acknowledged as much, stating that NVR "has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be received." Bidding Procedures Order ¶ 1. Moreover, NVR's bid and agreement

to the APA served as a catalyst for interest in OHB and the OHB Defendants' assets, which led to the purchase of bank debt by certain distressed asset investors and the discussions of a stand-alone reorganization plan OHB now claims to be pursuing.

49. NVR has been, and remains, a ready, willing and able purchaser of the OHB Defendants' assets pursuant to the APA. NVR has complied with all of its obligations under the APA.

## **CAUSES OF ACTION**

## **COUNT I**

### **(Breach of Contract)**

50. NVR repeats and realleges each and every allegation set forth above as if fully set forth herein.

51. Consistent with its representations and assurances to NVR, OHB agreed in the APA to pursue an auction sale process for the OHB Defendants' assets pursuant to section 363 of the Bankruptcy Code and to follow the procedures set forth in the Bidding Procedures Order. Pursuant to Section 7.1 of the APA, OHB was obligated to follow that process while it was using its reasonable best efforts to obtain formal court approval of that process and the APA.

52. In addition, OHB was required to "use commercially reasonable efforts to (i) take all actions necessary or appropriate to consummate the transactions contemplated by this Agreement, and (ii) cause the fulfillment at the earliest practicable date of all the conditions to their respective obligations to consummate the transactions contemplated by this Agreement." APA § 8.5.

53. OHB's abandonment of the auction process, withdrawal of the Sale Motion, and repudiation of the APA was in violation of the covenant of good faith and fair dealing, not commercially reasonable, and not the result of its best efforts to obtain Court approval of that process and the APA. Consequently, OHB is liable to NVR for breach of contract.

54. OHB has not effectively terminated the APA.

55. In the alternative, if OHB has effectively terminated the APA, OHB is liable to NVR for the Expense Reimbursement.

56. As a result of OHB's breach of contract, NVR has sustained substantial damages, in an amount to be proved at trial.

## COUNT II

### (Promissory Estoppel)

57. NVR repeats and realleges each and every allegation set forth above as if fully set forth herein.

58. OHB repeatedly promised and assured NVR – in the APA and elsewhere – that (1) OHB was committed to the auction process pursuant to section 363 of the Bankruptcy Code for its assets; (2) OHB would not consider offers for the OHB Defendants' assets outside of the auction process embodied in the APA and the Bidding Procedures Order; and (3) OHB would proceed in good faith and use its best efforts to obtain Court approval of the APA, the Bidding Procedures Order and Sale Order.

59.     NVR reasonably relied on OHB's representations and assurances, as OHB intended and expected. In reliance on OHB's representations and assurances, NVR incurred substantial expenses in competing to be chosen as the stalking horse bidder, and in negotiating and preparing the APA, the Bidding Procedures, the Sale Order and related documents.

60.     NVR also relied on OHB's representations and assurances and proceeded to spend substantial sums on Environmental Due Diligence, obtaining Title Commitments and identifying Title Objections, all of which were required under the APA to be accomplished on an expedited schedule prior to Court approval.

61.     Contrary to its representations and assurances, OHB abandoned the auction process and did not proceed in good faith or use its best efforts to obtain Court approval of the APA, the Bidding Procedures Order and the Sale Order. Instead, OHB is pursuing a stand-alone reorganization plan with third parties.

62.     OHB may pursue a stand-alone reorganization plan it perceives to be in its best interests; however, as a matter of equity, justice and fairness, the Court should require OHB to pay NVR the substantial damages that it has sustained in reliance on OHB's repeated representations and assurances concerning its commitment to the auction process and the APA and Bidding Procedures Order.

## COUNT III

### (Unjust Enrichment)

63.     NVR repeats and realleges each and every allegation set forth above as if fully set forth herein.

64. OHB was enriched as the result of NVR's having agreed to act as OHB's stalking horse bidder. In particular, OHB retains the benefit of NVR having set a "floor" value for the Purchased Assets. NVR's bid and agreement to the APA served as a catalyst for interest in the acquisition of OHB's debt and, ultimately, control of OHB and the OHB Defendants' assets, which have led to the discussions of a stand-alone reorganization plan OHB now claims to be pursuing. Moreover, the floor value likely will establish the value against which any potential plan of reorganization is measured and the minimum amount at which competing bidders will make offers for the acquisition of OHB if a reorganization plan proposed by OHB fails and OHB once again invites proposals from potential asset purchasers.

65. NVR, in contrast, has expended considerable sums in fulfilling various obligations it assumed under the parties' agreement, including negotiating and preparing the APA, Bidding Procedures Order, Sales Order and related documents, completing Environmental Due Diligence, obtaining Title Commitments and identifying Title Objections, and taking other steps in preparation for the bankruptcy auction process OHB repeatedly assured NVR it was committed to pursuing.

66. If the Court finds that the APA does not constitute a binding agreement, even in part, between the parties, NVR will be left without an adequate remedy at law and, accordingly, in the alternative, seeks equitable relief in the form of an award approximating the value of OHB's unjust enrichment.

## COUNT IV

**(Claim for Termination Fee and Expense Reimbursement)**

67. The APA provides that the OHB Defendants will pay NVR as liquidated damages a Termination Fee of 2% of the Base Purchase Price ($3.4 million) and an Expense

Reimbursement (equal to $150,000 plus all of NVR's out-of-pocket expenses subject to an aggregate cap of $1 million) at the Closing of any Competing Transaction involving disposition of all or a material portion of the Purchased Assets within 12 months of termination of the APA. APA § 4.6(d).

68. In the event OHB consummates the stand-alone reorganization plan it claims to be pursuing with third parties or otherwise disposes of the OHB Defendants' assets through Competing Transactions, as a matter of contract and in equity and fairness, in accordance with 11 U.S.C. § 503(b), the Court should award NVR the Termination Fee and Expense Reimbursement.

## **REQUEST FOR RELIEF**

WHEREFORE, NVR respectfully requests that this Court enter judgment:

i. awarding NVR damages on Count I for breach of contract in an amount to be proved at trial;

ii. in the alternative, awarding NVR damages on Count II for promissory estoppel in an amount to be proved at trial;

iii. in the alternative, awarding NVR damages on Count III for unjust enrichment in an amount to be proved at trial;

iv. in the alternative, awarding NVR the Termination Fee and/or the Expense Reimbursement on Count IV; and

v. granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
May 28, 2010

POTTER ANDERSON & CORROON LLP

By: /s/ Steven M. Yoder
Steven M. Yoder (DE Bar No. 3885)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Fascimile (302) 658-1192

-and-

Ira S. Greene
Frank T. Spano
Lisa J. Fried
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Attorneys for Plaintiff NVR, Inc.*