# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | ) Chapter 11 |
| | ) |
| In re: | ) Case No. 10-10684 (PJW) |
| | ) |
| ORLEANS HOMEBUILDERS, INC., <u>et al.</u>,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Re: Docket Nos. 1821 & 1822** |
| | ) **Obj. Deadline: September 13, 2010 at 4:00 p.m.** |
| | ) **Hearing Date: September 23, 2010 at 9:30 a.m.** |

## DEBTORS' MOTION FOR ORDER (A) APPROVING DISCLOSURE STATEMENT, (B) SCHEDULING HEARING TO CONSIDER PLAN CONFIRMATION, (C) ESTABLISHING DEADLINE FOR OBJECTING TO PLAN, (D) APPROVING FORM OF BALLOTS AND OTHER SOLICITATION FORMS, (E) APPROVING VOTING DEADLINE, VOTING PROCEDURES, TABULATION PROCEDURES, AND SOLICITATION PROCEDURES, AND (F) APPROVING FORM AND MANNER OF NOTICES

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each of the Debtors' tax identification numbers, are: Orleans Homebuilders, Inc. (4323), Brookshire Estates, L.P. (8725), Community Management Services Group, Inc. (6620), Greenwood Financial Inc. (7510), Masterpiece Homes, LLC (1971), OHB Homes, Inc. (0973), OHI Financing, Inc. (6591), OHI PA GP, LLC (2675), OPCNC, LLC (8853), Orleans Arizona Realty, LLC (9174), Orleans Arizona, Inc. (2640), Orleans at Bordentown, LLC (4968), Orleans at Cooks Bridge, LLC (4185), Orleans at Covington Manor, LLC (9891), Orleans at Crofton Chase, LLC (8809), Orleans at East Greenwich, LLC (9814), Orleans at Elk Township, LLC (6891), Orleans at Evesham, LLC (7244), Orleans at Falls, LP (2735), Orleans at Hamilton, LLC (9679), Orleans at Harrison, LLC (4155), Orleans at Hidden Creek, LLC (3301), Orleans at Jennings Mill, LLC (4693), Orleans at Lambertville, LLC (0615), Orleans at Limerick, LP (7791), Orleans at Lower Salford, LP (9523), Orleans at Lyons Gate, LLC (2857), Orleans at Mansfield LLC (1498), Orleans at Maple Glen LLC (7797), Orleans at Meadow Glen, LLC (4966), Orleans at Millstone River Preserve, LLC (8810), Orleans at Millstone, LLC (8063), Orleans at Moorestown, LLC (9250), Orleans at Tabernacle, LLC (9927), Orleans at Thornbury, L.P. (4291), Orleans at Upper Freehold, LLC (3225), Orleans at Upper Saucon, L.P. (3715), Orleans at Upper Uwchlan, LP (8394), Orleans at Wallkill, LLC (2875), Orleans at West Bradford, LP (4161), Orleans at West Vincent, LLC (9557), Orleans at Westampton Woods, LLC (8095), Orleans at Windsor Square, LP (9481), Orleans at Woolwich, LLC (9215), Orleans at Wrightstown, LP (9701), Orleans Construction Corp. (0893), Orleans Corporation (8770), Orleans Corporation of New Jersey (5325), Orleans DK, LLC (5308), Orleans RHIL, LP (1938), Parker & Lancaster Corporation (1707), Parker & Orleans Homebuilders, Inc. (5269), Parker Lancaster, Tidewater, L.L.C. (7432), Realen Homes, L.P. (8293), RHGP LLC (8197), Sharp Road Farms Inc. (1871), Stock Grange, LP (4027), and Wheatley Meadows Associates (5459).

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion") for entry of an order, substantially in the proposed form attached hereto as Exhibit 1 (the "Proposed Order"), pursuant to Bankruptcy Code §§ 105(a), 1125(b), and 1126(b), Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and Local Rule 3017-1, (a) approving the Debtors' proposed disclosure statement, dated August 12, 2010 (as the same may be amended, supplemented, or modified from time to time, the "Disclosure Statement"),[2] submitted in support of the Debtors' proposed joint plan of reorganization (as the same may be amended, supplemented, or modified from time to time, the "Plan"), (b) scheduling the Confirmation Hearing, (c) establishing the deadline for objecting to the Plan, (d) approving the form of Ballots and the other solicitation forms described below, (e) approving the Voting Deadline, Voting Procedures, Tabulation Procedures, and Solicitation Procedures, and (f) approving the form and manner of notices. In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by this Court. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 1125 and 1128, Bankruptcy Rules 2002, 3017, and 3018, and Local Rule 3017-1.

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement.

# INTRODUCTION

2. On March 1, 2010 (the "Petition Date"), each of the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3. On March 3, 2010, this Court entered an order approving the joint administration of these cases (Docket No. 39). The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in these cases.

4. On March 11, 2010, the Office of the United States Trustee appointed the members of the Official Committee of Unsecured Creditors in these cases (the "Committee").

5. As part of the relief sought in the Debtors' "first-day" motions, the Debtors filed a motion (the "DIP Motion") (Docket No. 13) seeking, among other things, interim and final orders approving post-petition financing. This Court entered an order (Docket No. 587) approving the DIP Motion on a final basis on April 16, 2010.

6. One of the conditions of the Debtors' DIP financing was that the Debtors file a motion to sell substantially all their assets and establish bidding and related procedures no later than April 30, 2010. In light of such conditions, the Debtors entered into an asset purchase agreement (the "APA") on or about April 13, 2010, with NVR, Inc. ("NVR"), pursuant to which, NVR agreed to purchase substantially all of the Debtors' assets, subject to higher and better offers, for $170 million, expressly subject to Court approval.

7. On April 13, 2010, the Debtors filed a motion (the "Sale Motion") (Docket No. 545), among other things, to approve the APA and related sale procedures and bid protections and scheduling an auction and hearing to consider approval of the APA.

8. As more fully described in the Disclosure Statement, subsequent to filing the Sale Motion but prior to consideration of the APA by this Court, the Sponsors purchased a

significant portion of the Debtors' outstanding pre- and post-petition debt, and, after discussions with the Sponsors, the Debtors withdrew the Sale Motion and elected to pursue a stand-alone plan of reorganization.

9. Working with the Sponsors and certain other parties, the Debtors negotiated the Plan and the Disclosure Statement, which were filed contemporaneously herewith.

10. Under the terms of the proposed Plan, all Administrative Claims, DIP Facility Claims, Tax Claims, Priority Claims, certain Other Secured Claims and Secured Operational Lien Claims would be paid in full or reinstated and are thus unimpaired. Holders of certain pre- and post-petition secured loan claims would receive their pro rata share of common stock in the reorganized Debtors, New Notes, and/or cash depending on their relative priority. Holders of General Unsecured Claims, including the Lenders' Deficiency Claims, would receive their pro rata share of the proceeds generated by the sales of assets unencumbered as of the Petition Date. Holders of General Unsecured Claims may also participate on a pro rata basis in certain potential recoveries from Avoidance Actions. Holders of General Unsecured Claims may elect to convert their claims to a convenience class, which provides for a 5% cash payment based on claims limited to $25,000. Holders of Junior Subordinated Notes and Trust Preferred Securities would receive a recovery comparable to the class of general unsecured creditors, which recoveries, other than certain potential recoveries from Avoidance Actions, would be turned over to certain of the Debtors' secured lenders by virtue of the subordination provisions governing these securities. All Junior Subordinated Notes and Trust Preferred Securities would be cancelled on the effective date of the Plan, as would the Old OHB Common Stock. The

Holders of the equity interests in Orleans Homebuilders, Inc., would not receive any distribution under the Plan.[3]

## **RELIEF REQUESTED AND BASES THEREFOR**

11.    The Debtors respectfully request entry of an order (a) approving the Disclosure Statement, (b) scheduling the Confirmation Hearing, (c) establishing the deadline for objecting to the Plan, (d) approving the form of Ballots and the other solicitation forms described below, (e) approving the Voting Deadline, Voting Procedures, Tabulation Procedures, and Solicitation Procedures, and (f) approving the form and manner of related notices.

<u>Disclosure Statement Contains Adequate Information</u>

12.    Bankruptcy Code § 1125(b) provides, in pertinent part, that:

> [a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

Bankruptcy Code § 1125(a), in turn, defines adequate information to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

---

[3]    The information in paragraph 10 constitutes a summary of the terms of the proposed Plan, and all parties are urged to read the proposed Plan and Disclosure Statement. To the extent the summary of the terms of the proposed Plan in paragraph 10 is inconsistent with the terms of the proposed Plan and Disclosure Statement, the proposed Plan and Disclosure Statement (as applicable) shall control.

13.     The Debtors submit that the Disclosure Statement, subject to being updated and/or amended prior to the hearing thereon (the "Disclosure Statement Hearing"), contains adequate information within the meaning of Bankruptcy Code § 1125 and, accordingly, should be approved by the Court.  Specifically, the Disclosure Statement contains descriptions and summaries of, among other things, (a) the Debtors, their assets, liabilities, and their business; (b) the Plan; (c) key events preceding the commencement of these Cases; (d) risk factors concerning the Plan; (e) a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical Chapter 7 liquidation; (f) financial information relevant to determinations of whether to vote to accept or to reject the Plan, including information concerning the projected financial performance of the Reorganized Debtors; (g) securities and tax law consequences related to the Plan; and (h) disclaimers relating to solicitation of votes on the Plan.

The Confirmation Hearing

14.     Bankruptcy Code § 1128(a) states that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  Moreover, Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."  Bankruptcy Rule 2002(b), in turn, provides, in relevant part, that creditors and others shall be given "not less than 28 days notice by mail of the time fixed ... for filing objections and the hearing to consider confirmation of a ... chapter 11 ... plan."

15.     The Debtors request that this Court schedule the hearing to confirm the Plan (the "Confirmation Hearing") on November 3, 2010, or as soon thereafter as otherwise possible.

16.     Setting a schedule as proposed will facilitate the reorganization contemplated by the Plan, minimize the administrative expenses of these Chapter 11 cases, and maximize the expected business benefits of emerging from bankruptcy in a timely manner.  In addition, this scheduling affords parties-in-interest appropriate notice of the proceedings and complies with the requirements of Bankruptcy Rules 2002(b) and 3017(c).

Objections to the Plan

17.     The Debtors also request that the Court fix October 27, 2010 (the "Plan Objection Deadline"), as the last date by which objections to Confirmation of the Plan ("Plan Objections") must be filed with the Court and received by certain parties specified below.

18.     The Debtors propose that any Plan Objections would have to be in writing and state the name of the objector, its interest in these Chapter 11 cases, and, if applicable, the amount and nature of its claim or interest, as well as state with particularity the nature of the objection and the legal basis thereof, and would have to be filed with this Court and served in a manner so as to be received by the parties listed below, together with proof of service, no later than the Plan Objection Deadline: (a) counsel for the Debtors, (i) Cahill Gordon & Reindel LLP, 80 Pine Street, New York, New York 10005 (Attn:  Joel H. Levitin, Esq., Stephen J. Gordon, Esq., Richard A. Stieglitz Jr., Esq., and Maya Peleg, Esq.) and (ii) Elliott Greenleaf, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801 (Attn:  Rafael X. Zahralddin-Aravena, Esq., Mark A. Kearney, Esq., Neil R. Lapinski, Esq., and Shelley A. Kinsella, Esq.); (b) Counsel to the Contributing Lender, Schulte Roth & Zabel LLP, 919 3rd Avenue, New York, New York 10022 (Attn:  Adam C. Harris, Esq., and Adam L. Hirsch, Esq.); (c) counsel for the Administrative Agents, Reed Smith, LLP, 2500 One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania 19103 (Attn:  Claudia Springer, Esq., and Scott Esterbrook, Esq.); (d)

counsel for the Creditors Committee, (i) Duane Morris LLP, 1540 Broadway, New York, New York 10036-4086 (Attn: Gerard S. Catalanello, Esq.), (ii) Duane Morris LLP, 30 South 17th Street, Philadelphia, Pennsylvania 19103 (Attn: Lawrence J. Kotler, Esq.), and (iii) Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Richard W. Riley, Esq., and Sommer L. Ross, Esq.); and (e) the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: David Buchbinder, Esq.).

Plan Supplement

19.     The Plan contemplates the Debtors will submit a supplement to the Plan (the "Plan Supplement").

20.     The Debtors propose that they be authorized to file such a Plan Supplement at any time up to and including five business days before the Plan Objection Deadline and that the deadline to object to any documents contained in such Plan Supplement be the Plan Objection Deadline.

Ballots

21.     In accordance with Bankruptcy Rule 3017(d), the Debtors propose to use Ballots for the five voting classes under the Plan, substantially in the forms attached to the Proposed Order as Exhibits A, B, C, D, and E respectively,[4] and they request that such forms be approved by the Court. The Ballots would be distributed to the Holders of Allowed Claims in Classes 2A (Secured Revolving Credit Facility Claims), 3A (General Unsecured Claims Against

---

[4]     The Ballots are based on Official Form B-14, but they have been modified to address the particular aspects of these Chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate with respect to the classes of claims entitled to vote. The Debtors reserve the right to prepare and distribute other or modified forms of Ballots, substantially in conformance with the attached forms of Ballots and Official Form No. 14, as the Debtors may find necessary as a result of further refinement of the procedures described herein or any modification of the Plan.

Any of the Debtors), 3B (Junior Subordinated Notes Claims and Trust Preferred Securities Claims Against Any of the Debtors), 3C (Convenience Class Claims Against Any of the Debtors), and 3D (Lenders' Deficiency Claim Against Any of the Debtors), each of which contain impaired Claims against the Debtors entitled to vote on the Plan.

22.     Class 3C provides for a convenience class, and, accordingly, the Ballot for Class 3A contains a space, consistent with Plan Section 5.3, for Creditors with Allowed Class 3A Claims to elect to have their Claim instead treated as a Convenience Class Claim in Class 3C, see Exhibit A to the Proposed Order. Any Class 3A Creditor making such election would not receive its Pro Rata share of (a) the Initial Avoidance Claims Proceeds, (b) the Excess Avoidance Claims Proceeds, and (c) the Unencumbered Asset Net Sale Proceeds, but it would instead receive a cash payment equal to 5% of its Allowed Claim. Any Creditor whose Allowed Class 3A Claim would otherwise exceed $25,000, and that elects to have its Claim instead treated as a Class 3C Claim, would be deemed to have an Allowed Claim in an amount equal to $25,000.

Solicitation Procedures

23.     In connection with voting on the Plan, the Debtors seek approval of the following solicitation procedures (the "Solicitation Procedures").[5]     First, the Debtors propose that the Claims Agent be authorized to distribute to Holders of Allowed Claims in Classes 2A, 3A, 3B, 3C, and 3D, as of the Voting Record Date, a Ballot and a copy of the Disclosure Statement and any other materials as may be directed by the Court (each a "Solicitation Package" and collectively, the "Solicitation Packages") within five business days of approval of the Disclosure Statement (the "Distribution Date").

---

[5]     The Debtors reserve the right to supplement or amend the Solicitation Procedures.

24.     Moreover, any holder of Allowed Claims in Classes 2A, 3A, 3B, 3C, and 3D would be entitled to vote on the Plan, unless its Claim has otherwise been disallowed for voting purposes by the Bankruptcy Court.

25.     Additionally, a vote would be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was not solicited or procured or made in good faith or in accordance with the provisions of the Bankruptcy Code.

26.     Finally, the Debtors also request any subcontractor or other similar vendor or service provider that employed sub-subcontractors (or similar parties) to provide goods or services to the Debtors would be directed immediately to prepare and deliver copies of any Solicitation Package received to any applicable sub-subcontractors (or similar parties) that may hold claims against the Debtors.

Voting Record Date

27.     Bankruptcy Rule 3017(d) provides that, for purposes of voting on a plan of reorganization under the Bankruptcy Code, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Bankruptcy Rule 3018(a) provides, in turn, that "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."

28.     The Debtors propose that the Court establish the date of the Disclosure Statement Hearing as the date (the "Voting Record Date") for purposes of determining which

Creditors are entitled to receive Ballots to vote on the Plan (and the claim amounts in which they are entitled to vote) or to receive notice of deemed rejection or non-voting status; provided, however, that, with respect to transfers of claims filed pursuant to Bankruptcy Rule 3001, the Holder of a Claim as of the Voting Record Date would be the transferor of such Claim, unless the documentation evidencing such transfer was docketed by the Bankruptcy Court on or before 21 days prior to the Voting Record Date, and no timely objection with respect to such transfer was filed by the transferor.

Notification of Non-Voting Status

29.    In addition, the Debtors seek approval of a proposed form of notice of non-voting status (the "Notification of Non-Voting Status") and notice of deemed rejection (the "Notification of Deemed Rejection"). True and correct copies of the proposed forms of the Notification of Non-Voting Status and the Notification of Deemed Rejection are attached to the Proposed Order as Exhibits F and G, respectively, and are incorporated herein by reference.

30.    The Debtors seek authority to send (a) the Notification of Non-Voting Status to all Holders of Administrative Claims, DIP Facility Claims, Tax Claims, Priority Claims in Class 1, Other Secured Claims Against any of the Debtors in Class 2B, or Secured Operational Lien Claims Against Any of the Debtors in Class 2C,[6] and (b) the Notification of Deemed Rejection to all Holders of Old OHB Common Stock Interests in Class 4.

31.    The Debtors request that any Holders of Old OHB Common Stock as nominee for or on behalf of another party would be directed immediately to prepare and deliver

---

[6]    Class 2C will also receive a copy of the Disclosure Statement in addition to the Notice of Non-Voting Status.

copies of any Solicitation Package received to the beneficial holder of Old OHB Common Stock registered in such nominee's or similar party's name.

Voting Procedures

32.     The Debtors propose that the following procedures (the "Voting Procedures") govern the casting of votes on the Plan,[7] which the Debtors believe have been designed effectively to solicit acceptances or rejections of the Plan.

33.     The Debtors believe that holders of certain securities of and/or claims against the Debtors will not be entitled to vote on the Plan.  Such parties are either unimpaired (Holders of Administrative Claims, DIP Facility Claims, Tax Claims, and those in Classes 1, 2B, and 2C), and they are presumed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f), or are not entitled to receive or retain any property under the Plan on account of their claims or interests and are deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g).  The Debtors are not soliciting acceptance or rejection of the Plan from any such Claim or Interest Holders, and, instead, the Debtors would serve the Notification of Non-Voting Status or Notification of Deemed Rejection on such parties, as appropriate.

34.     The Holders of Claims in Classes 2A, 3A, 3B, 3C, and 3D would be entitled to vote on the Plan and would receive a Solicitation Package.

Voting Deadline

35.     The Debtors request that the Court direct that all Ballots be received by the Claims Agent, The Garden City Group, Inc. by October 27, 2010 (the "Voting Deadline"),[8] at

---

[7]     The Debtors reserve the right to supplement or amend the Voting Procedures.

[8]     The Debtors or the Court may extend or waive the period during which votes will be accepted by the Debtors, in which case the Voting Deadline would mean the last time and date to which such deadline is extended.

either of the following addresses:

**If by mail:**
The Garden City Group, Inc.
Attn: Orleans Homebuilders, Inc.
P.O. Box 9405
Dublin, Ohio 43017-4505

**If by hand delivery or overnight courier:**
The Garden City Group, Inc.
Attn: Orleans Homebuilders, Inc.
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

<u>Tabulation Procedures</u>

36.     The Debtors propose that the following procedures (the "Tabulation Procedures") govern the tabulation of votes on the Plan.[9]

37.     Solely for purposes of voting to accept or to reject the Plan, and not for the purpose of distribution on account of any claim, the Debtors propose that each claim entitled to vote on the Plan be temporarily allowed in an amount equal to the liquidated and non-contingent amount of such claim indicated on a proof of claim filed prior to the applicable deadline for filing claims (or otherwise deemed timely filed by the Court) or, if no proof of claim has been filed, the known unliquidated, undisputed, and non-contingent amount of such claim as listed in the Schedules (as applicable, an "Authorized Voting Amount"). Notwithstanding the foregoing, any claim for which the Authorized Voting Amount is equal to $0.00 would not be eligible to vote.

---

[9]     The Debtors reserve the right to supplement or amend the Tabulation Procedures.

38. The Debtors further propose that, for purposes of the claim amount requirement under Bankruptcy Code § 1126(c), the tabulation of each properly executed Ballot would reflect such Ballot's aggregate Authorized Voting Amount, provided, however, that, in cases where a lesser amount has been indicated on a Ballot by the executor thereof, such Ballot would be tabulated at the lesser amount so indicated.

39. To the extent that any party entitled to vote in a given Class has filed duplicate claims (meaning the claims are in the same amount, with the same classification, and asserting the same basis of claim) to be voted in such Class, the Debtors propose that such Creditor would be provided, to the extent possible, only one Solicitation Package and one Ballot, which would reflect the vote of only one such claim.

40. The Claims Agent would note the date and time of receipt on each individual Ballot received by it and would review each Ballot to determine whether it satisfies the criteria specified in the Disclosure Statement for validity.

41. To the extent that the Claims Agent is not directed to cure defective Ballots, the original Ballots received by the Claims Agent and the comprehensive vote tally sheets prepared by the Claims Agent would be maintained in the possession of the Claims Agent for a period of one year after the Voting Deadline.

42. The Debtors propose that the following specific procedures be utilized in tabulating each Ballot:

    a.    any party holding or acquiring multiple claims within the same Class would be deemed to be casting a single vote on account of all such Claims in the aggregate amount thereof for purposes of Bankruptcy Code § 1126(c) and would not be deemed to be casting a separate vote on account of each such Claim;

    b.    any Ballot cast by a person or entity that does not hold a claim in a Voting Class would not be counted;

c.   all votes must be cast either to accept or to reject the Plan and may not be split;

d.   to the extent that a Creditor has filed a proof of claim that is for an unliquidated amount or is contingent, or the Schedules list such Creditor as having an unliquidated or contingent claim, the applicable Creditor would be deemed to be voting such claim for an amount equal to $1.00 for all purposes;

e.   any Ballot that partially rejects and partially accepts the Plan would be deemed to be an acceptance of the Plan;

f.   except as the Debtors may otherwise agree or the Bankruptcy Court may otherwise order, any otherwise properly-executed Ballot that either fails to indicate an acceptance or a rejection of the Plan, or which indicates both an acceptance and a rejection of the Plan, would be deemed to be a vote to accept the Plan;

g.   except as the Debtors may otherwise agree or the Bankruptcy Court may otherwise order, a Ballot received by facsimile, e-mail, or any other electronic means would not be counted;

h.   except as the Debtors may otherwise agree or the Bankruptcy Court may otherwise order, only Ballots properly executed and timely received by the Claims Agent would be counted;

i.   the Debtors may waive any defect in any Ballot at any time, whether before or after the Voting Deadline;

j.   the Debtors reserve the right either to reject any and all Ballots not in proper form or to otherwise attempt to cure any and all defective Ballots;

k.   any Ballot that is illegible or contains insufficient information to permit identification of the claimant would not be counted;

l.   except as the Debtors may otherwise agree or the Bankruptcy Court may otherwise order, only Ballots bearing an original signature on the line adjacent to the "Signature:" label in the authorization section therein would be counted;

m.   if no votes to accept or to reject the Plan are received with respect to a particular Voting Class, such Class would be deemed to have voted to accept the Plan;

n.   whenever a claimant casts more than one Ballot voting the same claim(s) prior to the Voting Deadline, only the last properly-executed ballot received by the Claims Agent on or prior to the Voting Deadline would be counted;

o.   if, prior to the Voting Deadline, the Debtors have (i) filed an objection to disallow or expunge any Proof of Claim or (ii) scheduled any Claim on their Schedules as disputed, the applicable claimant's vote would not be counted for any purpose unless and until such claimant obtains a Final Order from the Bankruptcy Court providing otherwise;

p.   if, prior to the Voting Deadline, the Debtors have filed an objection seeking to partially disallow or expunge any proof of claim, the applicable claimant's vote would be counted for all purposes with respect to the Plan or the Confirmation Hearing solely to the extent of the undisputed portion of such Claim, unless and until such claimant obtains a Final Order from the Bankruptcy Court providing otherwise; and

q.   if a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, each such person would be required to indicate such capacity when signing its Ballot and, if so requested by the Debtors, would be required submit proper evidence satisfactory to the Debtors of its authority to so act.

Withdrawal or Revocation of Ballots

43.   Ballots may be withdrawn or revoked at any time prior to October 27, 2010.  Thereafter, Ballots may be withdrawn or revoked only with the approval of the Debtors or the Bankruptcy Court.

Waivers of Defects, Irregularities, Etc.

44.   All questions as to the validity, form, eligibility (including time of receipt), acceptance, revocation, and withdrawal of Ballots would be determined by the Debtors, and their determination (unless otherwise directed by the Bankruptcy Court) will be final and binding.

45.   Neither the Debtors nor any other person would be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor would any of them incur any liabilities for failure to provide such notification.  Unless otherwise ordered by the Bankruptcy Court, delivery of such Ballots would not be deemed to have been made until

such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) would be invalid.

<u>Returned Solicitation Packages</u>

46. The Debtors anticipate that some of the Solicitation Packages may be returned as undeliverable. The Debtors request that, unless a forwarding address provided by the United States Postal Service appears on the mailing envelope of any such returned Solicitation Package, they not be required to re-mail undelivered Solicitation Packages to those entities whose addresses differ from the addresses on the claims register maintained in these cases or the Debtors' records as of the Voting Record Date.

<u>Releases and Injunctions</u>

47. The Plan provides for releases (the "Releases") against certain non-debtor entities under the Plan, as well as related and other injunctions. Although the validity and enforceability of the Releases or injunctions is an issue for confirmation that need not be addressed at this stage, the Debtors specifically request that the Court approve the disclosures set forth in the Ballots and other solicitation forms related to the Releases and injunctions as being adequate notice thereof.

<u>Form and Manner of Notice of Confirmation Hearing</u>

48. The Debtors propose that the notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and the date by which Plan Objections, if any, must be filed and served, be deemed adequate and sufficient if (I) the Confirmation Hearing Notice, substantially in the form attached to the Proposed Order as <u>Exhibit H</u>, is served within five business days following the entry of any order approving the Disclosure Statement, by first-class United States mail, email, or by hand delivery to (a) counsel for the Debtors, (i) Cahill Gordon & Reindel LLP, 80 Pine Street, New York, New York 10005 (Attn: Joel H. Levitin, Esq., Stephen J. Gordon,

Esq., Richard A. Stieglitz Jr., Esq., and Maya Peleg, Esq.) and (ii) Elliott Greenleaf, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801 (Attn: Rafael X. Zahralddin-Aravena, Esq., Mark A. Kearney, Esq., Neil R. Lapinski, Esq., and Shelley A. Kinsella, Esq.); (b) Counsel to the Contributing Lender, Schulte Roth & Zabel LLP, 919 3rd Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq., and Adam L. Hirsch, Esq.); (c) counsel for the Administrative Agents, Reed Smith, LLP, 2500 One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania 19103 (Attn: Claudia Springer, Esq., and Scott Esterbrook, Esq.); (d) counsel for the Creditors Committee, (i) Duane Morris LLP, 1540 Broadway, New York, New York 10036-4086 (Attn: Gerard S. Catalanello, Esq.), (ii) Duane Morris LLP, 30 South 17th Street, Philadelphia, Pennsylvania 19103 (Attn: Lawrence J. Kotler, Esq.), and (iii) Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Richard W. Riley, Esq., and Sommer L. Ross, Esq.); (e) the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: David Buchbinder, Esq.); (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; (h) all relevant taxing authorities in jurisdictions in which the Debtors operate; (i) all persons or entities that have (prior to service of the Confirmation Hearing Notice) served and filed notices of appearance in these Chapter 11 cases pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1; and (j) all creditors known to the Debtors and all record and beneficial holders of securities of the Debtors known to the Debtors and all holders of record of equity interests in the Debtors; and (II) a copy of the Confirmation Hearing Notice, together with the Disclosure Statement and the Plan (as may be amended, modified or supplemented), are served within five business days following the entry of any order approving the Disclosure Statement, by first-class United States mail, email, or by hand delivery to the parties listed above in sections (I)(a) – (j) of this paragraph; (III) a copy of

the Notification of Non-Voting Status, substantially in the form attached to the Motion, is sent to each known party with a claim or interest against the Debtors that is unimpaired by the Plan; (IV) a copy of the Notification of Deemed Rejection, substantially in the form attached to the Motion, is sent to each known party that is deemed to reject the Plan pursuant to Bankruptcy Code § 1126(g); and (V) pursuant to Bankruptcy Rules 2002(l) and 9008, the Debtors publish the Confirmation Hearing Notice in a format suitable for newspaper publication in *USA Today* or a similar newspaper on at least one occasion at least 28 days prior to the Confirmation Hearing.

49.     The mailing of the Confirmation Hearing Notice as described herein is reasonably calculated to provide all known creditors and equity security holders with actual notice of the Confirmation Hearing, and the time fixed for filing Plan Objections, in conforming with Bankruptcy Rules 2002(b) and 3017(a), provides more than 28 days' notice for filing any objection to confirmation. The Debtors believe that the Confirmation Hearing Notice and the service thereof to be provided is due and sufficient and that notice to any additional parties would be unnecessarily costly and burdensome.

50.     *The Debtors request that this Court consider only objections that are timely filed and served pursuant to the procedures approved by this Court, and that any party that does not file and serve a Plan Objection strictly as prescribed, be barred from objecting to confirmation of the Plan and be precluded from being heard at the Confirmation Hearing.*

Form of Cure Notice and Objection Deadline

51.     The Debtors propose to provide notice (the "Cure Notice") to all counterparties to any Executory Contracts proposed to be assumed under the Plan of (a) the proposed default amount owed (if any) under the applicable Executory Contract (the "Cure Amount"), (b) the last date by which such party may file an objection or other response with respect to the Cure Amount, and (c) the Debtors' intention to assume the Executory Contract. A

copy of the form of the Cure Notice is attached to the Proposed Order as <u>Exhibit I</u> and is incorporated herein by reference.

52.     The Debtors propose to mail the Cure Notice to such counterparties concurrently with mailing the Disclosure Statement and corresponding materials. The Debtors request that this Court deem adequate and sufficient the form and manner of the Cure Notice.

53.     The Debtors propose that objections (the "Cure Objections"), if any, that relate to the proposed assumption of any Executory Contract (including, but not limited to, any objections relating to the Cure Amount would be required to be filed and served so as to be actually received by the Debtors and the undersigned counsel to the Debtors by the Plan Objection Deadline. The Debtors further propose that, unless a Cure Objection is timely and properly filed and served, all interested parties that have received actual or constructive notice thereof would be deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assumption of such Executory Contract, *and such parties would be forever barred and estopped from asserting or claiming against the Debtors that any additional amounts are due, that other defaults exist, or that any other conditions to assumption must be satisfied.*

## NOTICE

54.     Notice of this Motion has been served upon (i) the Office of the United States Trustee, (ii) counsel to the agent for the Debtors' pre- and post petition lenders, (iii) the transfer agent for the stock of Orleans Homebuilders, Inc., (iv) counsel to the Committee, and (v) all other parties that have filed notices of appearance and requested service of papers in these cases or are otherwise entitled to receive notice of this Motion pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be given in light of the circumstances of these cases.

## NO PRIOR APPLICATION

55.     No previous request for the relief sought herein has been made to this or to any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order, granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated:  August 12, 2010
        Wilmington, Delaware

**ELLIOTT GREENLEAF**

Raffel X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
Email:  sak@elliottgreenleaf.com

- and -

CAHILL GORDON & REINDEL LLP
Joel H. Levitin
Stephen J. Gordon
Richard A. Stieglitz Jr.
Michael R. Carney
Eighty Pine Street
New York, New York, 10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
Email:  jlevitin@cahill.com
Email:  sgordon@cahill.com
Email:  rstieglitz@cahill.com
Email:  mcarney@cahill.com

*Attorneys for the Debtors and Debtors-in-Possession*