# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ORLEANS HOMEBUILDERS, INC., et al.,[1] | Case No. 10-10684 (PJW) |
|  | Jointly Administered |
| Debtors. | **Re: Docket No. 1821** |

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each of the Debtors' tax identification numbers, are: Orleans Homebuilders, Inc. (4323), Brookshire Estates, L.P. (8725), Community Management Services Group, Inc. (6620), Greenwood Financial Inc. (7510), Masterpiece Homes, LLC (1971), OHB Homes, Inc. (0973), OHI Financing, Inc. (6591), OHI PA GP, LLC (2675), OPCNC, LLC (8853), Orleans Arizona Realty, LLC (9174), Orleans Arizona, Inc. (2640), Orleans at Bordentown, LLC (4968), Orleans at Cooks Bridge, LLC (4185), Orleans at Covington Manor, LLC (9891), Orleans at Crofton Chase, LLC (8809), Orleans at East Greenwich, LLC (9814), Orleans at Elk Township, LLC (6891), Orleans at Evesham, LLC (7244), Orleans at Falls, LP (2735), Orleans at Hamilton, LLC (9679), Orleans at Harrison, LLC (4155), Orleans at Hidden Creek, LLC (3301), Orleans at Jennings Mill, LLC (4693), Orleans at Lambertville, LLC (0615), Orleans at Limerick, LP (7791), Orleans at Lower Salford, LP (9523), Orleans at Lyons Gate, LLC (2857), Orleans at Mansfield LLC (1498), Orleans at Maple Glen LLC (7797), Orleans at Meadow Glen, LLC (4966), Orleans at Millstone River Preserve, LLC (8810), Orleans at Millstone, LLC (8063), Orleans at Moorestown, LLC (9250), Orleans at Tabernacle, LLC (9927), Orleans at Thornbury, L.P. (4291), Orleans at Upper Freehold, LLC (3225), Orleans at Upper Saucon, L.P. (3715), Orleans at Upper Uwchlan, LP (8394), Orleans at Wallkill, LLC (2875), Orleans at West Bradford, LP (4161), Orleans at West Vincent, LP (9557), Orleans at Westampton Woods, LLC (8095), Orleans at Windsor Square, LP (9481), Orleans at Woolwich, LLC (9215), Orleans at Wrightstown, LP (9701), Orleans Construction Corp. (0893), Orleans Corporation (8770), Orleans Corporation Of New Jersey (5325), Orleans DK, LLC (5308), Orleans RHIL, LP (1938), Parker & Lancaster Corporation (1707), Parker & Orleans Homebuilders, Inc. (5269), Parker Lancaster, Tidewater, L.L.C. (7432), Realen Homes, L.P. (8293), RHGP LLC (8197), Sharp Road Farms Inc. (1871), Stock Grange, LP (4027), and Wheatley Meadows Associates (5459).

Submitted by:

ELLIOTT GREENLEAF
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Mark A. Kearney (DE Bar No. 2601)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399

- and -

CAHILL GORDON & REINDEL LLP

Joel H. Levitin
Stephen J. Gordon
Richard A. Stieglitz Jr.
Maya Peleg
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Attorneys for the Debtors and Debtors-in-Possession*

Dated: September 27, 2010

**Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtors or any other party in interest, and the Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to the Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the District of Delaware. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) PRIOR TO THE CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT.**

Orleans Homebuilders, Inc., and the other above-captioned debtors and debtors-in-possession, hereby propose the following first amended joint plan of reorganization pursuant to Chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

The following terms used in the Plan shall have the meanings specified below, and such meanings shall be equally applicable to both the singular and plural forms of such terms, unless the context otherwise requires. Any terms defined in the Disclosure Statement and not otherwise defined herein shall have the meanings set forth in the Disclosure Statement when used herein. Any term used in the Plan, whether or not capitalized, that is not defined in the Plan or in the Disclosure Statement, but that is defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, shall have the meaning set forth therein.

1.1.    **Additional Committee Investigation Fees**:  Such term shall have the meaning ascribed to it in Section 13.7 hereof.

1.2.    **Additional Committee Professional Fees**:  Allowed Professional Fees incurred by the Professionals for the Creditors Committee in excess of the Agreed Committee Professional Fees from August 1, 2010, through and including the Effective Date.

1.3.    **Additional Vendors**:  Those Persons who supply or provide goods, supplies, parts, materials, other tangible objects, and/or services to any of the Debtors or the Reorganized Debtors and are listed on a designated Schedule A to be kept confidential by the Debtors, the Reorganized Debtors, the Sponsors, the Creditors Committee, and the Unsecured Creditor Agent.

1.4.    **Additional Vendor Payment Amount**:  With respect to either (a) an objection to the Allowance of any Class 3 Claim of an Additional Vendor under Bankruptcy Code § 502(d), or (b) the prosecution of any Avoidance Claim against an Additional Vendor, the amount that is 60% of the reasonably estimated recovery thereon, which, with respect to a particular Avoidance Claim, shall be as set forth in the Creditors Committee Avoidance Claim Report.

1.5.    **Adequate Protection Claim**:  Shall mean the Claim of the Revolving Credit Facility Lenders in an amount equal to the Diminution in Value.

1.6.    **Adequate Protection Liens**:  Shall have the meaning ascribed to such term in paragraph 8(a) of the DIP Facility Order.

1.7.    **Administrative Agents**:  Collectively, the Revolving Credit Facility Agent and the DIP Facility Agent.

1.8.    **Administrative Claims**:  The collective reference to all Claims for costs and expenses of administration of these Cases with priority under Bankruptcy Code § 507(a)(2), costs and expenses allowed under Bankruptcy Code § 503(b) (including, without limitation, under Bankruptcy Code § 503(b)(9)), the actual and necessary costs and expenses of preserving the respective Estates of the Debtors and operating the respective businesses of the Debtors, any indebtedness or obligations incurred or assumed by any of the Debtors pursuant to Bankruptcy Code § 364 or otherwise (other than any DIP Facility Claims), Professional fees and expenses of the Debtors and the Creditors Committee (including without limitation the expenses incurred by each member of the Creditors Committee in its capacity as

such), and post-petition Indenture Trustee Fees, in each case to the extent allowed by an order of the Bankruptcy Court under Bankruptcy Code § 330(a) or § 331 or otherwise, and any fees or charges assessed against the respective Estates under 28 U.S.C. § 1930; *provided, however, that the Holder of an Administrative Claim (except for an Administrative Claim based upon (i) Professional Fees, the allowance and timing for filing of applications for Professional Fees being governed by Plan Section 13.7), (ii) DIP Facility Claims, (iii) fees or charges asserted against the respective Estates under 28 U.S.C. § 1930, and (iv) goods or services provided to the Debtors during these Cases in the ordinary course of the Debtors' businesses by non-Professionals) must file a request for payment on or before the Applicable Administrative Claims Bar Date for such Administrative Claim to be eligible to be considered an Allowed Claim.*

1.9. **Affiliate:** This term shall have the meaning assigned to it in Bankruptcy Code § 101(2); provided, however, that where the context so requires, the term "debtor" in such section shall mean that entity to which the defined term "Affiliate" refers.

1.10. **Aggregate Unsecured Claims**: Collectively, all of the General Unsecured Claims, the Junior Subordinated Notes Claims, the Trust Preferred Securities Claims, and the Convenience Class Claims.

1.11. **Aggregate Unsecured Creditor Distribution**: The balance of the Unsecured Creditor Cash Pool, after giving effect to the prior payment in full of Additional Committee Investigation Fees, the Agreed Committee Professional Fees, the Claim Resolution Fees, and any Additional Committee Professional Fees.

1.12. **Agreed Committee Professional Fees**: In consideration of the Unsecured Creditor Settlement, the Allowed amount of Professional Fees incurred by the Professionals for the Creditors Committee not to exceed $400,000 from August 1, 2010 through and including the Effective Date.

1.13. **Allowance Date:** With reference to a particular Claim, the date on which such Claim becomes an Allowed Claim; provided, however, that, if a Claim becomes an Allowed Claim pursuant to an order of the Bankruptcy Court, the Allowance Date shall be the date on which such order becomes a Final Order, and if a Claim becomes an Allowed Claim pursuant to the Plan, the Allowance Date shall be deemed the Effective Date.

1.14. **Allowed:** Such word shall mean, except as otherwise provided in the Plan (including in Section 13.6 hereof), with reference to a Claim: (a) any Claim against a Debtor that has been listed by such Debtor in the Schedules filed by such Debtor as liquidated in an amount greater than zero dollars ($0.00) and not disputed or contingent and for which no contrary Proof of Claim has been filed and as to which no timely objection has been interposed; (b) any Claim as to which a Proof of Claim has been timely filed and (i) no objection to the allowance thereof has been timely interposed on or before the Claims Objection Bar Date, and (ii) such Claim has not (as applicable) been withdrawn, paid in full, or otherwise deemed satisfied in full (pursuant to an order of the Bankruptcy Court or otherwise); (c) any Claim as to which an objection has been filed and a Final Order has been entered in favor of the respective Claim Holder with respect to all or any portion of such Claim, or any such objection has been settled, waived through payment, or withdrawn; (d) any Claim that has otherwise been allowed by a Final Order (including, without limitation, the DIP Facility Order, with respect to DIP Facility Claims); (e) any Claim as to which, upon the lifting of the automatic stay pursuant to Bankruptcy Code § 362, the liability of a Debtor, allowance, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (f) with respect to any Administrative Claim for goods or services provided to the Debtors during these Cases in the ordinary course of the Debtors' businesses by non-Professionals, such Administrative Claim has not been withdrawn, paid, or otherwise satisfied in full

(pursuant to an order of the Bankruptcy Court or otherwise in the ordinary course of the Debtors' businesses), or otherwise deemed satisfied in full in the ordinary course of the Debtors' businesses; (g) with respect to any Secured Operational Lien Claim, such Claim is determined to be an Allowed Class 2C Claim in the manner set forth in Plan Section 4.4(b); or (h) any Claim that is expressly deemed an Allowed Claim under the Plan (including the Secured Revolving Credit Facility Claims and the Lenders' Deficiency Claim). Except for the DIP Facility Claims and unless otherwise ordered by the Bankruptcy Court prior to Confirmation, or as specifically provided to the contrary in the Plan with respect to any particular Claim, an "Allowed" Claim shall not, for any purpose under the Plan, include (i) any interest on such Claim to the extent accruing or maturing on or after the Petition Date, (ii) punitive or exemplary damages, or (iii) any fine, penalty, or forfeiture.

1.15. **Allowed . . . Claims:** All Allowed Claims in the particular Class or of the specific type or nature described.

1.16. **Allowed . . . Interests:** All Allowed Interests in the particular Class or of the specific type or nature described.

1.17. **Allowed Insured Claims:** All Insured Claims that are Allowed Claims.

1.18. **Amended and Restated By-Laws:** Collectively, the respective by-laws of the Reorganized Debtors, on or after the Effective Date, a sample form(s) of which is to be included in the Plan Supplement.

1.19. **Amended and Restated Certificates of Incorporation:** Collectively, the respective certificates of incorporation of those of the Reorganized Debtors that are corporations, on or after the Effective Date, a sample form(s) of which is to be included in the Plan Supplement.

1.20. **Amended and Restated LLC Agreements:** The amended and restated limited liability company agreements of those of the Reorganized Debtors that are limited liability companies, on or after the Effective Date, a sample form(s) of which is to be included in the Plan Supplement.

1.21. **Amended and Restated Limited Partnership Agreements:** The amended and restated limited partnership agreements of those of the Reorganized Debtors that are limited partnerships, on or after the Effective Date, a sample form(s) of which is to be included in the Plan Supplement.

1.22. **Applicable Administrative Claims Bar Date:** Either (i) the Initial Administrative Claims Bar date, to the extent the applicable Administrative Claim arose prior thereto, or (ii) the Final Administrative Claims Bar Date, to the extent the applicable Administrative Claim arose on or after the Initial Administrative Claims Bar Date.

1.23. **Assets:** All of the right, title, and interest of any of the Debtors in and to any and all assets and property, whether tangible, intangible, real, or personal, that constitute property of the respective Estates within the purview of Bankruptcy Code § 541, including, without limitation, any and all claims, Causes of Action, and/or rights of the respective Debtors under federal and/or state law.

1.24. **Assumption Dispute:** Such term shall have the meaning ascribed to it in Plan Section 7.2.

1.25. **Avoidance Claims:** All of the Debtors' and the Estates' Causes of Action against any Person arising under any of Bankruptcy Code §§ 502(d), 544, 545, 547, 548, 549, 550, and/or 553, or under similar or related state or federal statutes and common law, including, without limitation, all

preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and Causes of Action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Claims.

1.26. **Ballot:** The form distributed to each Holder of a Claim in Class 2A, 3A, 3B, 3C, or 3D (as applicable), on which is to be indicated either an acceptance or rejection of the Plan.

1.27. **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, Title 11, United States Code, as amended from time to time, and made applicable to these Cases.

1.28. **Bankruptcy Court:** The United States Bankruptcy Court for the District of Delaware.

1.29. **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure, promulgated under Section 2075, Title 28, United States Code, as amended from time to time, and made applicable to these Cases.

1.30. **Business Day:** A day other than a Saturday, Sunday, "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York, New York are authorized or required by law to close.

1.31. **Capital Charge:** An amount equal to 20% of the Development Costs incurred or payable by the Debtors, the Reorganized Debtors, or a Joint Venture, as applicable, at any time from or after the Petition Date.

1.32. **(These) Cases:** The cases for the reorganization of the Debtors commenced by voluntary petitions under Chapter 11, filed on the Petition Date, in the Bankruptcy Court.

1.33. **Cash:** Legal tender of the United States of America.

1.34. **Cause of Action:** Any and all actions, proceedings, causes of action, claims, suits, accounts, controversies, rights to legal or equitable remedies, and rights to payment, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or unasserted, in law, equity, or otherwise.

1.35. **Chapter 11:** Chapter 11 of the Bankruptcy Code.

1.36. **Claim:** Any right to payment from one or more of the Debtors or otherwise relating to or arising from any of the Debtors' Assets, arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from one or more of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

1.37. **Claims Agent:** The Garden City Group, Inc., in its capacity as the claims, noticing, and balloting agent for the Debtors in these Cases.

1.38.    **Claims Filing Bar Date:**  The applicable date designated by that certain order of the Bankruptcy Court, dated June 2, 2010 (docket no. 1103), as the last date for timely filing Proofs of Claim other than with respect to (a) Administrative Claims or (b) Rejection Claims (i) arising under those Executory Contracts that will be rejected under and pursuant to the Plan or (ii) with respect to which a separate deadline for timely filing a Proof of Claim has been established by a separate order of the Bankruptcy Court.

1.39.    **Claims Objection Bar Date:**  With respect to any Claim, the date on or before the later of (i) the 90th day following the Effective Date; (ii) the 90th day after the date such Claim is timely filed; or (iii) such later date as may be established from time to time by entry of an order, prior to the expiration of the dates set forth in clauses (i) and (ii) hereof, by the Bankruptcy Court establishing the last date for filing objections to Claims.

1.40.    **Claim Resolution Fees:**  The reasonable and documented fees and expenses incurred by the Unsecured Creditor Agent and its professionals following the Effective Date, to be paid solely from the Unsecured Creditor Cash Pool.

1.41.    **Class:**  A category, designated herein, of Claims or Interests that are substantially similar to the other Claims or Interests in such category as specified in Article II of the Plan.

1.42.    **Compensation and Benefits Programs:**  Such term shall have the meaning ascribed to it in Plan Section 7.8(a).

1.43.    **Confirmation:**  The entry on the docket of the Bankruptcy Court of the Confirmation Order.

1.44.    **Confirmation Date:**  The date upon which Confirmation occurs.

1.45.    **Confirmation Objection Deadline:**  The deadline established by the Bankruptcy Court as the last date to timely submit an objection to the proposed Confirmation of the Plan.

1.46.    **Confirmation Order:**  The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129, in form and substance acceptable to the Debtors and the Sponsors.

1.47.    **Contributing Lender:**  The lender designated as the "Contributing Lender" in accordance with Section 12.15(a) of the DIP Facility.

1.48.    **Convenience Class Claims:**  All General Unsecured Claims (a) in an amount less than or equal to $25,000 or (b) with respect to which the applicable Holder has voluntarily agreed on its Ballot to reduce the amount of its General Unsecured Claim to $25,000.

1.49.    **Credit Facilities:**  Together, the DIP Facility and the Revolving Credit Facility.

1.50.    **Creditor:**  Any Holder of a Claim against one or more of the Debtors, or with respect to any of the Debtors' Assets, that arose (or is based on an obligation incurred) on or before the Effective Date, including, without limitation, any Allowed Claim against the respective Estates of a kind specified in Bankruptcy Code § 502(g), (h), or (i).

1.51.    **Creditors Committee:**  The official committee of unsecured creditors appointed by the United States Trustee in these Cases pursuant to Bankruptcy Code § 1102 on or about March 11, 2010 (docket No. 111), as constituted from time to time.

1.52.   **Creditors Committee Avoidance Claims Report**:  That certain schedule, entitled "Preference Analysis," provided by the Creditors Committee to the Debtors and the Sponsors on or about September 15, 2010, containing schedules addressing potential Avoidance Claims, to be kept confidential by the Debtors, the Reorganized Debtors, the Sponsors, the Creditors Committee, and the Unsecured Creditor Agent.

1.53.   **Critical Vendors**:  Those Persons who supply or provide goods, supplies, parts, materials, other tangible objects, and/or services to any of the Debtors or the Reorganized Debtors and are listed on a designated Schedule B to be kept confidential by the Debtors, the Reorganized Debtors, the Sponsors, the Creditors Committee, and the Unsecured Creditor Agent.

1.54.   **Critical Vendor Payment Amount**:  With respect to either (a) an objection to the Allowance of any Class 3 Claim of a Critical Vendor under Bankruptcy Code § 502(d), or (b) the prosecution of any Avoidance Claim against a Critical Vendor, the amount that is 40% of the reasonably estimated recovery thereon, which, with respect to a particular Avoidance Claim, shall be as set forth in the Creditors Committee Avoidance Claim Report.

1.55.   **Debtor:**  Any one of the Debtors.

1.56.   **Debtor Parties:**  Collectively, the Debtors, the Reorganized Debtors, the Estates, and any Person seeking to exercise the rights of the Estates, including, without limitation, the Unsecured Creditor Agent and any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code § 1123(b) or otherwise (including, without limitation, any Chapter 11 or Chapter 7 trustee appointed in any of these Cases), on their own behalf and on behalf of all the Debtors' respective Interest Holders and Creditors derivatively.

1.57.   **Debtors:**  Collectively, OHB and the Subsidiary Debtors, as debtors and debtors-in-possession in these Cases.

1.58.   **Deferral Plan**:  The Orleans Homebuilders, Inc. Executive Compensation Deferral Plan, effective June 1, 2005, as amended and supplemented from time to time.

1.59.   **Delaware Trustee**:   The Delaware Trustee under the Trust Agreement and their successors and assigns thereunder.

1.60.   **Development Costs**:  The actual, documented costs, fees, taxes, and other expenses incurred by the Debtors or the Reorganized Debtors in holding and/or improving any Unencumbered Asset that is a parcel of real property from and after the Petition Date.

1.61.   **Developments**:  Collectively, the following real estate developments of the Debtors: Lake Elsie Reserve - Tavares, Lake County, FL; Glenwood Springs - Deland , Volusia County, FL; East Lake Park – St. Cloud, Osceola County, FL; Preserve at Black Hammock - Oviedo, Seminole County, FL; Cheswick Meadows – IL; Cheswick Place – Lake in the Hills, IL; Herons Landing –IL; Nobel Woods – Woodbridge, IL; Prairie Trail – Lake Villa, IL; Spring Gate at Southbury – Oswego, IL; Verona Ridge – Aurora, IL; River Hills – Bolingbrook, IL; Brookshire Estates - Lower Makefield Township and Newtown Township, Bucks County, PA; Byers Station - Upper Uwchlan Township and West Vincent Township, Chester County, PA; Chanticleer - Lower Makefield Township, Bucks County, PA; Chelsea Glen – East Greenwich Township, Gloucester County, NJ; Chestnut Ridge – East Fallowfield Township and West Bradford Township, Chester County, PA; Covington Manor – Mansfield Township, Burlington County, NJ; The Preserve at Squire Cheyney Farm – Thornbury Township, Chester County, PA; Greenbrier at Thornbury – Thornbury Township, Delaware County, PA; Greenbrier at Thornbury II –

Thornbury Township, Delaware County, PA; Foxhall Estates - Lower Makefield Township, Bucks County, PA; Hidden Creek – Logan Township, Gloucester County, NJ; Hillview – Valley Township, Caln Township and Coatesville, Chester County, PA; Leigh Court - Harrison Township, Gloucester County, NJ; Liberty Village – Upper Saucon Township, Lehigh County, PA; Notting Hill – Upper Saucon Township, Lehigh County, PA; Matthew's Ridge – Wrightstown Township, Bucks County, PA; Meadow Run – Bordentown Township, Burlington County, NJ; Meadows at Mansfield – Mansfield Township, Burlington County, NJ; Michaelson's Woods – Tabernacle Township, Burlington County, NJ; Millstone River Preserve – Hamilton Township Middlesex County, NJ; Waterside Crossing - Millstone Township, Monmouth County, NJ; Weathersfield – Hamilton Township, Mercer County, NJ; Westampton Woods - Westampton Township, Burlington County, NJ; Wheatley Meadows - Harrison Township, Gloucester County, NJ; Wildflower Condominium – Wallkill, Orange County, NY; Woodside Crossing – Rock Tavern, Orange County, NY; Wildflowers at Medford – Medford Township, Burlington County, NJ; Winchester – Hamilton Township, Monmouth County, NJ; South Creek - Chesterfield, VA; Summer Lake - Moseley, VA; Hartley Village - Midlothian, VA; Mallory Village - Midlothian, VA; Founders Bridge - Midlothian, VA; Foxcreek - Moseley, VA; Raleigh (Sleepy Hollow) - Richmond, VA; Thomas Mill - Glen Allen, VA; Dunnottar - Chesterfield, VA; Tarrrington Sect. 4 & 5 - Midlothian, VA; Henley - Glen Allen, VA; Woodbridge Crossing - Midlothian, VA; Patriots Landing - Quinton, VA; Tilman's Farm - Powhatan, VA; Ridge At Hunton Park - Glen Allen, VA; Highlands I - Chesterfield, VA; Meadowville Landing - Chester, VA; Tarrrington Sect. 12 - Midlothian, VA; Elm Crest - Richmond, VA; Heartquake – VA; Riverfront - Suffolk, VA; Eagle Harbor - Carrollton, VA; Graystone - Carrollton, VA; Founders Point - Suffolk, VA; Ashby West - Carrollton, VA; Weldon Ridge - Cary, NC; Reynolds Mill - Wake Forest, NC; Southampton - Durham, NC; Trinity Ridge - Durham, NC; Legends Oaks - Chapel Hill, NC; Oak Ridge Lake - Oak Ridge, NC; Walnut Creek - High Point, NC; Bentley Park - Jamestown, NC; Gentry Farm - High Point, NC; Riverbend - Charlotte, NC; Old Sycamore 100 - Mint Hill, NC; Callonwood I - Matthews, NC; Providence Forest - Weddington, NC; The Cove @ Chesapeake – Mooresville, NC; Lake Forest Preserve - Weddington, NC; Olde Sycamore The Links - Mint Hill, NC; Allyson Park - Charlotte, NC; Springs Village - Charlotte, NC; Chesapeake Point - Mooresville, NC; Lawson - Waxham, NC; Lake Forest - Arbor - Weddington, NC; Bridle Path - Marvin, NC; Silver Gull - Tega Cay, SC; Hearthwood - Harrisburg, NC; Callonwood - Matthews, NC; Bridge Pointe - Harrisburg, NC; and Wellington Chase - Concord, NC.

1.62. **Diminution in Value:** Shall have the meaning ascribed to such term in the DIP Facility Order.

1.63. **DIP Facility:** The Debtor-in-Possession Loan Agreement, dated as of April 21, 2010 (as amended and modified on or about June 7, 2010), by and among the Borrowers (as such term is defined in the DIP Facility), as borrowers; the DIP Facility Agent, as agent; and the DIP Facility Lenders, as lenders, as the same may be further amended, modified, or supplemented from time to time, together with (a) all of the documents, instruments, and agreements related thereto or entered into in connection therewith and (b) the DIP Facility Order and any subsequent orders of the Bankruptcy Court related thereto or entered into in connection therewith.

1.64. **DIP Facility Agent:** Wells Fargo Bank, National Association, in its capacity as the administrative agent under the DIP Facility and all successors and assigns thereof.

1.65. **DIP Facility Claims:** Collectively, the DIP Revolving Facility Claims and the DIP Term Loan Claims.

1.66. **DIP Facility Lenders:** The Lenders (as defined in the DIP Facility), in their capacities as the lenders under the DIP Facility, and their participants, successors, and assigns thereunder.

1.67.    **DIP Facility Order:**  That certain order of the Bankruptcy Court, dated April 16, 2010 (docket no. 587), approving the DIP Facility on a final basis.

1.68.    **DIP L/C Issuer:**  The Issuer (as defined in the DIP Facility) in its capacity as issuer of letters of credit under the DIP Facility, and its successors and assigns thereunder.

1.69.    **DIP Revolving Facility Claims:**  All Claims of the DIP Facility Lenders against the Debtors represented by, related to, arising under, or in connection with the revolving loans issued under the DIP Facility for all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of any payments made by any of the Debtors to the DIP Facility Lenders prior to the Effective Date on account of such Claims.

1.70.    **DIP Term Loan Claims:**  All Claims of the DIP Facility Lenders against the Debtors represented by, related to, arising under, or in connection with term loans issued under or approved in connection with the DIP Facility for all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of any payments made by any of the Debtors to the DIP Facility Lenders prior to the Effective Date on account of such Claims.

1.71.    **Directors & Officers Liability Insurance Policies:**  All insurance policies for directors, managers, and/or officers maintained by the Debtors as of the Effective Date, and all endorsements, amendments, tail policies, and other materials relating thereto.

1.72.    **Disclosure Statement:**  The disclosure statement and all supplements and exhibits thereto that relate to the Plan and are approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, as the same may be amended or modified by the Debtors from time to time pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

1.73.    **Disposition Costs**:  All costs, fees (including, without limitation, attorney and broker fees and expenses), taxes, commissions, other expenses, the Overhead Allocation, and other liabilities (including, without limitation, any Secured Operational Lien Claim) incurred or payable by the Debtors, the Reorganized Debtors, or any Joint Venture, as applicable, in connection with the sale, transfer, or disposition of any Unencumbered Asset, provided that in the case of an Unencumbered Asset of a Joint Venture, Disposition Costs shall be allocated to the Debtors or the Reorganized Debtors to the extent of their interest in the applicable Joint Venture.

1.74.    **Disputed Claim:**  A Claim as to which a Proof of Claim has been filed, or deemed filed under applicable law, as to which an objection has been or may be timely filed and which objection, if timely filed, has not been withdrawn and has not been overruled or denied by a Final Order.  A Claim shall be considered a Disputed Claim if (for among other reasons):  (a) any corresponding Claim scheduled by the Debtors in the Schedules is listed as disputed, contingent, or unliquidated, and the applicable Creditor has not properly filed a liquidated and non-contingent Proof of Claim on or Prior to the Claims Filing Bar Date; or (b) in the case of a purported Secured Operational Lien Claim, either (i) the amount and/or status of such Claim as set forth on Exhibit F to the Disclosure Statement (as the same may be amended or revised) differs (in whole or in part) from the amount and/or status as set forth in the applicable Proof of Claim filed with respect to such purported Claim, or the underlying purported Secured Operational Lien Claim is otherwise the subject of an Operational Lien Claim Dispute, or (ii) in the case of an Operational Lien Claim that either (1) appears on Exhibit G to the Disclosure Statement or (2) does not appear on either Exhibit F or Exhibit G to the Disclosure Statement and the applicable Operational Lien Claimholder files an objection to the proposed classification of its Operational Lien Claim.

1.75.    **Disputed Claims Reserve:**  This term shall have the meaning set forth in Plan Section 6.12(a).

1.76.    **Disputed Class . . . Claim:**  Any Disputed Claim in the particular Class described.

1.77.    **Distribution Record Date:**  The record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Voting Deadline.

1.78.    **Effective Date:**  The Business Day on which the Plan becomes effective as provided for in Article VIII of the Plan.

1.79.    **Employees:**  Collectively, the present and former employees (including retirees) of any of the Debtors.

1.80.    **Estate(s):**  Individually, the estate of each Debtor in these Cases, and, collectively, the estates of all of the Debtors in these Cases, created pursuant to Bankruptcy Code § 541.

1.81.    **Excess Avoidance Claims Proceeds:**  All proceeds derived from the prosecution of Avoidance Claims in excess of the Initial Avoidance Claims Proceeds.

1.82.    **Executory Contract:**  Any executory contract or unexpired lease, subject to Bankruptcy Code § 365, between any of the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Plan.

1.83.    **Existing Stock Option Plans:**  Collectively, (a) the Orleans Homebuilders, Inc. 2004 Omnibus Stock Incentive Plan adopted by the board of directors of OHB on August 26, 2004, as amended and supplemented from time to time, and (b) any and all other stock option plans adopted by any of the Debtors at any time prior to the Petition Date.

1.84.    **Exit Credit Facility:**  That certain secured exit credit facility, together with all documents, instruments, guaranties, letters of credit, and agreements related thereto or entered into in connection therewith, that shall be entered into by the Reorganized Debtors, as borrowers or guarantors (as applicable), and the Exit Credit Facility Lenders, as lenders, on the Effective Date, in form and substance acceptable to the Debtors and the Sponsors.

1.85.    **Exit Credit Facility Agent:**  The administrative agent under the Exit Credit Facility, and all successors and assigns thereof.

1.86.    **Exit Credit Facility Guarantees:**  Collectively, the guarantees that are to be executed and delivered by the Exit Credit Facility Guarantors, concurrently with the execution and delivery of the Exit Credit Facility, in respect of the borrower(s)' obligations under the Exit Credit Facility.

1.87.    **Exit Credit Facility Guarantors:**  Those of the Reorganized Debtors that, pursuant to the Exit Credit Facility Guarantees, are guarantors of the borrower(s)' obligations under the Exit Credit Facility, in their respective capacities as such.

1.88.    **Exit Credit Facility Lenders:**  Collectively, the lenders under the Exit Credit Facility, and their respective participants, successors, and assigns thereunder.

1.89.    **Final Administrative Claims Bar Date:**  The deadline for filing any Administrative Claims incurred on and after October 2, 2010, through and including the Confirmation Date, other than

DIP Facility Claims, Administrative Claims based upon Professional Fees, fees or charges asserted against the respective Estates under 28 U.S.C. § 1930, and post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtors' respective businesses (including, but not limited to, vendor, employee wage and benefit, and state and local property, sales, and use taxes), *which date shall be 30 days after the Confirmation Date as set forth in the Confirmation Order*.

1.90.    **Final Order:** An order or judgment entered by the Bankruptcy Court or other applicable court that has not been reversed or stayed and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors and the Sponsors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Bankruptcy Code § 502(j), Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules may be but has not then been filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

1.91.    **General Unsecured Claims:** Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court, all Claims (A) other than (i) Secured Claims (as provided for, and determined in accordance with, Bankruptcy Code § 506(a) and the Plan (including, without limitation, Section 4.4(b) hereof), including the DIP Facility Claims, the Secured Revolving Credit Facility Claims, or any Secured Operational Lien Claims); (ii) Administrative Claims; (iii) Priority Claims; (iv) Tax Claims; (v) Junior Subordinated Notes Claims; (vi) Trust Preferred Securities Claims; (vii) Convenience Class Claims; (viii) the Lenders' Deficiency Claim; or (ix) Intercompany Claims; and (B) not otherwise entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court. *Without limiting the generality of the foregoing, all Operational Lien Claims that are not Secured Operational Lien Claims, Other Secured Claims, or Administrative Claims shall constitute General Unsecured Claims.*

1.92.    **Guaranties:** Collectively, the Revolving Credit Facility Guarantee and the guarantee issued by OHB on a subordinated basis in connection with the 2009 Junior Subordinated Notes.

1.93.    **Guarantors:** Collectively, the Revolving Credit Facility Guarantor and OHB, in its capacity as guarantor (on a subordinated basis) of the obligations under the 2009 Junior Subordinated Notes.

1.94.    **High Fidelity Sale Objection:** That certain Limited Objection of High Fidelity House, Inc., to Motion of Debtors for Orders (A)(I) Approving Sale Procedures and Bidding Protections to be Employed in Connection with the Proposed Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction and Hearing to Consider Approval of the Sale of Substantially All of the Debtors' Assets, and (III) Approving Notice of the Respective Dates, Times, and Places for Auction and for Hearing on Approval of (1) Sale of Substantially All Assets, and (2) Assumption and Assignment of Certain Executory Contracts and Unexpired Lease; and (B)(1) Authorizing and Approving an Asset Purchase Agreement with NVR, Inc. or Such Other Purchaser(s) Providing Higher or Otherwise Better Offer(s); (II) Authorizing the Sale of Substantially All of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and the Rejection of Other Executory Contracts; (IV) Authorizing the Debtors to Consummate All Transactions Related to the Above; and (V) Granting Other Relief, dated April 26, 2010 (docket no. 710).

1.95. **Holder:** The owner of any Claim or Interest, as such ownership is reflected on the Debtors' books and records, the Schedules, or any Proof of Claim.

1.96. **Home Sale Contract:** Such term shall have the meaning ascribed to it in Plan Section 7.11.

1.97. **Home Sales Order:** That certain order of the Bankruptcy Court, dated April 15, 2010 (docket no. 579), authorizing the Debtors (A) to contract and close on sales of homes; (B) to honor deposits and other contractual obligations; (C) to sell homes free and clear of all liens, claims, encumbrances, and other interests; (D) to establish procedures for the resolution of liens and other claims; and (E) to use proceeds of home sales in accordance with lien procedures.

1.98. **Home Sales Procedures:** The procedures established in the Home Sales Order for procedures for the resolution of lien and other claims, as modified by that certain Final Order of the Bankruptcy Court entered on August 5, 2010.

1.99. **Indenture Trustees:** The Junior Subordinated Notes Indenture Trustees, the Property Trustee, and the Delaware Trustee.

1.100. **Indenture Trustee Charging Lien:** Any Lien or other priority in payment to which an Indenture Trustee is entitled, pursuant to the Junior Subordinated Notes Indentures, against distributions to be made to holders of the Junior Subordinated Notes Claims, for payment of any Indenture Trustee Fees, but, for the avoidance of doubt, not upon the distributions to be turned over to the Revolving Credit Facility Agent pursuant to this Plan.

1.101. **Indenture Trustee Fees:** The reasonable and documented compensation, fees, and expenses permitted and incurred by an Indenture Trustee pursuant to the applicable indenture.

1.102. **Initial Administrative Claims Bar Date:** The deadline for filing Administrative Claims incurred as of October 1, 2010, other than DIP Facility Claims, Administrative Claims based upon Professional Fees, fees or charges asserted against the respective Estates under 28 U.S.C. § 1930, and post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtors' respective businesses (including, but not limited to, vendor, employee wage and benefit, and state and local property, sales, and use taxes), designated by that certain order of the Bankruptcy Court dated September 8, 2010 (Docket No. 2029).

1.103. **Initial Avoidance Claims Proceeds:** The first $4 million of proceeds derived from the prosecution of Avoidance Claims (as and when any such proceeds are recovered).

1.104. **Initial Distribution Date:** The date to be established by the Reorganized Debtors, which shall be no later than 60 days after the Effective Date or as soon as practicable thereafter, or such other date as the Bankruptcy Court may order.

1.105. **Insured Claim:** Any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy or surety bond or similar bond applicable to the Debtors or their businesses.

1.106. **Intercompany Claim:** (a) Any account reflecting intercompany book entries by one Debtor (or any non-Debtor Affiliate of a Debtor) with respect to any other Debtor or (b) any Claim that is not reflected in such book entries and is held by a Debtor (or any non-Debtor Affiliate of a Debtor) against any other Debtor. For the avoidance of doubt, Intercompany Claims shall not include any

obligation or Claim against OHI Financing in favor of Orleans Homebuilders Trust I or Orleans Homebuilders Trust II or any guarantee Claim against OHB in favor of Orleans Homebuilders Trust I or Orleans Homebuilders Trust II, which Claims shall be extinguished.

1.107. **Interest:** An ownership interest in any of the Debtors as evidenced by an equity security (as such term is defined in Bankruptcy Code § 101(16)) of any Debtor, any rights to any dividends or distributions as a result of such ownership, and any option, warrant, or right to acquire any such ownership interest, including, without limitation, any and all Claims (i) for damages arising from the rescission of the purchase or sale of Old OHB Common Stock or (ii) for reimbursement or contribution allowed under Bankruptcy Code § 502 on account of such Claim, which Claims are subordinated pursuant to Bankruptcy Code § 510.

1.108. **Joint Venture:** Any partnership, limited liability company, or similar arrangement creating a joint venture, between (i) a Debtor, Reorganized Debtor, or an Affiliate of a Debtor or a Reorganized Debtor, and (ii) another entity that is not a Debtor, a Reorganized Debtor, or an Affiliate of a Debtor or a Reorganized Debtor.

1.109. **Junior Subordinated Noteholders:** Collectively, the Holders of the respective Junior Subordinated Notes.

1.110. **Junior Subordinated Notes:** Collectively, (a) the 2005 Junior Subordinated Notes and (b) the 2009 Junior Subordinated Notes.

1.111. **Junior Subordinated Notes Claims:** Collectively, all Claims represented by, related to, arising under, or in connection with the respective Junior Subordinated Notes and any and all guarantees issued with respect thereto, including either any direct claims or any indirect claims asserted by the Junior Subordinated Notes Indenture Trustee or by a subrogee or successor-in-interest of any party, or otherwise.

1.112. **Junior Subordinated Notes Indentures:** Collectively, (a) the Junior Subordinated Note Indenture dated as of September 30, 2005, between OHI Financing, as issuer, and Wilmington Trust Company, as Trustee, and (b) the Junior Subordinated Indenture dated as of August 3, 2009, between OHI Financing, as issuer, and The Bank of New York Mellon, as Trustee, pursuant to which OHI Financing issued the respective Junior Subordinated Notes, as the same may have been amended from time to time, together with all documents, instruments, and agreements related thereto or entered into in connection therewith.

1.113. **Junior Subordinated Notes Indenture Trustees:** The respective trustees under the Junior Subordinated Notes Indentures and their successors and assigns thereunder.

1.114. **Lenders' Deficiency Claim:** The portion of the Allowed Revolving Credit Facility Claims that does not constitute a Secured Claim, as provided for in, and determined in accordance with, Bankruptcy Code § 506(a), which Lenders' Deficiency Claim shall be an Allowed Class 3D Claim for all purposes under the Plan and in these Cases (including with respect to voting thereon) in an amount as set forth in Plan Section 5.7.

1.115. **Lien:** Any lien, security interest, or other charge or encumbrance of any kind, or any other type of preferential arrangement, easement, right of way, or other encumbrance on title to real property.

1.116.  **Lien Waiver:**  A waiver and release of Liens or similar document, in form and substance acceptable to the Debtors or the Reorganized Debtors (as applicable), pursuant to which an Operational Lien Claimholder has agreed to waive its Operational Lien.

1.117.  **Litigation Protocol:**  The litigation protocol set forth in Section 6.13 hereof.

1.118.  **Local Bankruptcy Rules:**  The Local Bankruptcy Rules for the District of Delaware, effective February 1, 2010, as amended from time to time, and applicable in these Cases.

1.119.  **Long Term Incentive Plan:**  That certain management equity incentive plan, which shall be adopted by the Reorganized Debtors on or following the Effective Date.

1.120.  **New Notes:**  Collectively, the new secured notes, in form and substance acceptable to the Debtors and the Sponsors, to be issued by Reorganized OHB and guaranteed by the New Notes Guarantors, and all security and other documents related thereto or entered into in connection therewith, on the terms set forth in the Plan Supplement.

1.121.  **New Notes Guarantees:**  Collectively, the guarantees to be executed and delivered by the New Notes Guarantors, concurrently with the execution and delivery of the New Notes, in respect of Reorganized OHB's obligations under the New Notes.

1.122.  **New Notes Guarantors:**  Collectively, the Reorganized Subsidiary Debtors, in their capacities as guarantors under the New Notes Guarantees, and any other party issuing a New Notes Guarantee.

1.123.  **New OHB Common Stock:**  The shares of common stock of Reorganized OHB to be issued and distributed in the manner provided by the Plan and/or the Long Term Incentive Plan (as applicable).[2]

1.124.  **New Revolver Financing**:  Such term shall have the meaning ascribed to it in Plan Section 6.15.

1.125.  **New Term Loan Financing**:  Such term shall have the meaning ascribed to it in Plan Section 6.15.

1.126.  **Nominee:**  For any Holder of a Claim or Interest, the designated representative of any such Holder.

1.127.  **Non-Debtor Releasing Parties:**  Collectively, each and every Person that has held, holds, or may hold a Claim or Interest and that votes to accept the Plan.

---

[2]  At the request of the Sponsors, Reorganized OHB may be converted to a limited liability company, partnership, joint venture, or other entity in connection with Confirmation.  In the event of any such conversion, the New OHB Common Stock to be issued in the manner as provided in the Plan shall instead be deemed to be the applicable membership or equity interest issued by Reorganized OHB.

1.128. **OHB:** Debtor Orleans Homebuilders, Inc., a Delaware corporation, which directly or indirectly owns all of the outstanding capital stock of the respective Subsidiary Debtors.

1.129. **OHI Financing:** Debtor OHI Financing, Inc., a wholly-owned subsidiary of OHB.

1.130. **Old OHB Common Stock:** All the shares of common stock of OHB, $0.10 par value per share, and any options (including, without limitation, all options issued under any of the Existing Stock Option Plans), warrants, or rights, contractual or otherwise, to acquire any shares of common stock of OHB.

1.131. **Old Stock of . . .:** When used with reference to a particular Debtor or Debtors, the common stock, preferred stock, membership interest, partnership interest, or similar equity ownership interests (as applicable) issued by such Debtor or Debtors and outstanding immediately prior to the Petition Date, and any options, warrants, or rights, contractual or otherwise, to acquire any stock of such Debtor or Debtors.

1.132. **Operational Lien Claim Dispute:** Such term shall have the meaning ascribed to it in Plan Section 4.4(b).

1.133. **Operational Lien Claimholders:** A Holder of an Operational Lien Claim.

1.134. **Operational Lien Claims:** All Claims represented by, related to, arising under, or in connection with an Operational Lien.

1.135. **Operational Liens:** Any construction, materialman's, mechanics', or other statutory or common law liens or other claim arising from, or relating to, the construction of homes or related activities, that was or could have been asserted at any time as of the Effective Date against any of the Debtors or their Assets.

1.136. **Overhead Allocation:** The amount that is the average figure over the Debtors' or the Reorganized Debtors' (as applicable) previous four quarters that their general and administrative expenses represent as a percentage of the Debtors' or the Reorganized Debtors' (as applicable) sales.

1.137. **Person:** An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or any other entity.

1.138. **Petition Date:** March 1, 2010, the date upon which the voluntary petitions for relief under Chapter 11 with respect to the Debtors commencing these Cases were filed.

1.139. **Plan:** The First Amended Joint Plan of Reorganization proposed by the Debtors set forth herein, and all supplements and exhibits hereto, as the same may be amended, supplemented, or modified by the Debtors from time to time (with the consent of the Sponsors) pursuant to, and in accordance with, the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or any applicable orders of the Bankruptcy Court.

1.140. **Plan Documents:** The documents and forms of documents specified or referenced in, and/or to be executed by any of the Debtors and/or any of the Reorganized Debtors pursuant to the terms of the Plan, which documents may include, among others, the Amended and Restated By-Laws; the Amended and Restated Certificates of Incorporation; the Amended and Restated LLC Agreements; the Amended and Restated Limited Partnership Agreements; all applicable certificates of formation and/or

organization; the Exit Credit Facility; the New Notes and the New Notes Guarantees; and any and all documents establishing the terms and conditions of the Short Term Incentive Plan and the Long Term Incentive Plan, as all such documents and forms of documents may be amended and/or supplemented from time to time in accordance with the Plan, all of which documents shall be in form and substance satisfactory to the Debtors and the Sponsors.

1.141. **Plan Rejection Bar Date:** Such term shall have the meaning ascribed to it in Plan Section 7.4.

1.142. **Plan Supplement:** The supplement to the Plan containing a compilation of the draft forms and/or summaries of certain of the Plan Documents and certain related lists, summaries, and/or schedules, as may be amended, modified, or supplemented from time to time thereafter in accordance with the Plan.

1.143. **Priority Claims:** All Claims that are entitled to priority pursuant to Bankruptcy Code § 507(a) or (b) that are not Administrative Claims or Tax Claims.

1.144. **Professional:** Any professional employed by the Debtors or the Creditors Committee in these Cases pursuant to Bankruptcy Code §§ 327, 328, or 1103 or otherwise, and any professional seeking compensation or reimbursement of expenses in connection with these Cases pursuant to Bankruptcy Code §§ 330, 331, and/or 503(b)(4).

1.145. **Professional Fees:** All fees due and owing to any Professional for compensation or reimbursement of costs and expenses relating to services incurred on and after the Petition Date and on and prior to the Confirmation Date.

1.146. **Proof of Claim:** Any written statement timely and properly filed in these Cases by a Creditor in which such Creditor sets forth the amount purportedly owed and sufficient detail to identify the basis for a Claim.

1.147. **Property Trustee:** The Property Trustee under the Trust Agreement and their successors and assigns.

1.148. **Pro Rata:** At any time, as applicable (a) the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class or category of Claims or Interests bears to the aggregate amount of all Claims or Interests (including Disputed Claims) in that Class or category of Claims or Interests; or (b) with respect to any consideration to be distributed to Holders of Claims in more than one Class under the Plan, the proportion that the amount of an Allowed Claim or an Allowed Interest bears to the aggregate amount of all Claims or Interests (including Disputed Claims) in all Classes entitled to receive distributions from such consideration.

1.149. **Reinstated or Reinstatement:** Either (a) leaving unaltered the legal, equitable, and contractual right to which a Claim entitles the Holder thereof so as to leave such Claim unimpaired in accordance with Bankruptcy Code § 1124 or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code § 365(b)(2); (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; or (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not

pertain to the payment when due of principal or interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish the Reinstatement.

1.150. **Reinstated Lien:** Any (a) Lien held by a Creditor in Class 2B that is expressly Reinstated at the election of the Reorganized Debtors in the manner set forth in Plan Section 4.3, or (b) any Reinstated Operational Lien, as applicable.

1.151. **Reinstated Operational Lien:** Any Operational Lien held by a Creditor in Class 2C that is expressly Reinstated at the election of the Reorganized Debtors in the manner set forth in Plan Section 4.4(b).

1.152. **Rejection Claims:** All Claims arising as a result of a Debtor's rejection of an Executory Contract pursuant to Bankruptcy Code §§ 365 and/or 1123, subject to the limitations provided in Bankruptcy Code § 502(b) or as otherwise agreed to by the Debtors.

1.153. **Released Parties:** Collectively, (a) the Debtors and the Reorganized Debtors; (b) the Revolving Credit Facility Lenders and the DIP Facility Lenders, solely in their respective capacities as such; (c) the Administrative Agents, solely in their respective capacities as such; (d) the Creditors Committee and the members thereof, solely in their respective capacities as such; (e) the current and former directors, officers, professionals, agents, and employees of the Debtors and the Reorganized Debtors, solely in their capacities as such; (f) the Sponsors, solely in their capacities as such; (g) the Exit Credit Facility Agent and the Exit Credit Facility Lenders, solely in their capacities as such; (h) the Indenture Trustees, in their respective capacities as such; (i) with respect to each of the foregoing Persons, such Person's predecessors, successors, and assigns, and current and former directors, officers, employees, stockholders, members, subsidiaries, affiliates, principals, agents, advisors, financial advisors, attorneys, accountants, investment bankers, consultants, underwriters, appraisers, representatives, and other professionals, in each case in their respective capacities as such; and (j) any Person claimed to be liable derivatively through any Person referred to in clauses (a), (b), (c), (d), (e), or (f) of this Section 1.153.

1.154. **Releasing Party or Releasing Parties:** Either a Non-Debtor Releasing Party or a Debtor Party (as applicable), or collectively, the Non-Debtor Releasing Parties and the Debtor Parties (as applicable).

1.155. **Reorganized Debtors:** Collectively, Reorganized OHB and the Reorganized Subsidiary Debtors.

1.156. **Reorganized OHB:** OHB, as reorganized on and after the Effective Date.

1.157. **Reorganized Subsidiary Debtors:** Collectively, the respective Subsidiary Debtors, as reorganized on and after the Effective Date.

1.158. **Revolving Credit Facility:** That certain Second Amended and Restated Revolving Credit Loan Agreement, dated as of September 30, 2008 (as amended and modified on or about January 28, 2009, February 11, 2009, August 3, 2009, August 13, 2009, September 30, 2009, October 30, 2009, December 18, 2009, and January 25, 2010), by and among Greenwood Financial, Inc., and the other Revolving Credit Facility Borrowers, as borrowers; the Revolving Credit Facility Guarantor, as guarantor; the Revolving Credit Facility Lenders, as lenders; and the Revolving Credit Facility Agent, as

administrative agent, together with all documents, instruments, and agreements related thereto or entered into in connection therewith.

1.159. **Revolving Credit Facility Agent:** Wells Fargo Bank, National Association, in its capacity as the administrative agent under the Revolving Credit Facility, and all successors and assigns thereof.

1.160. **Revolving Credit Facility Borrowers:** The Borrowers (as such term is defined in the Revolving Credit Facility), in their capacities as the borrowers under the Revolving Credit Facility.

1.161. **Revolving Credit Facility Claims:** All Claims of the Revolving Credit Facility Lenders against any of the Debtors represented by, related to, arising under, or in connection with the Revolving Credit Facility (as against the Revolving Credit Facility Borrowers, as the borrowers thereunder) and/or the Revolving Credit Facility Guaranty (as against OHB, in its capacity as the Revolving Credit Facility Guarantor), as applicable, for any and all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments or other distributions made by any of the Debtors to the Revolving Credit Facility Lenders prior to the Effective Date on account of such Claims (pursuant to the DIP Facility or otherwise).

1.162. **Revolving Credit Facility Guarantor:** OHB, in its capacity as guarantor, pursuant to the Revolving Credit Facility Guaranty, of the Revolving Credit Facility Borrowers' repayment obligations under the Revolving Credit Facility.

1.163. **Revolving Credit Facility Guaranty:** The guaranty issued by the Revolving Credit Facility Guarantor of the Revolving Credit Facility Borrowers' repayment obligations under the Revolving Credit Facility.

1.164. **Revolving Credit Facility L/C Issuer:** The Issuer (as defined in the Revolving Credit Facility) in its capacity as issuer of letters of credit under the Revolving Credit Facility, and its successors and assigns thereunder.

1.165. **Revolving Credit Facility Lenders:** The Lenders (as such term is defined in the Revolving Credit Facility), in their capacities as the lenders under the Revolving Credit Facility, and any participants, successors, and assigns thereunder.

1.166. **Schedules:** The schedules of assets and liabilities that have been filed in the Bankruptcy Court by the Debtors in accordance with Bankruptcy Code § 521 and/or any applicable ruling of the Bankruptcy Court, as any such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009, the Local Bankruptcy Rules, or an order of the Bankruptcy Court.

1.167. **Secondary Liability Claim:** A Claim that arises from a Debtor being liable as a guarantor of, or otherwise being jointly, severally, or secondarily liable for, any contractual, tort, or other obligation of another Debtor, including any Claim based on: (a) guarantees of collection, payment, or performance (including, but not limited to, any of the Guarantees or any guarantee relating to any Executory Contract); (b) indemnity bonds, obligations to indemnify, or obligations to hold harmless; (c) performance bonds; (d) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or other transfer) with respect to leases, operating agreements, or other similar obligations made or given by a Debtor relating to the obligations or performance of another Debtor; or (e) vicarious liability.

1.168. **Secured Claims:** All Claims that are secured by a properly perfected, valid, enforceable, and not otherwise avoidable lien on property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a) and, if applicable, § 1129(b); provided, however, that if the Holder of a Secured Claim is entitled to and does timely elect application of Bankruptcy Code § 1111(b)(2), then such Holder's Claim shall be a Secured Claim to the extent such Claim is Allowed. Only those Operational Lien Claims that are determined to constitute Secured Operational Lien Claims in the manner provided in Plan Section 4.4 or otherwise pursuant to a Final Order of the Bankruptcy Court shall constitute Secured Claims for any purpose under the Plan and in these Cases.

1.169. **Secured Lender Claims:** Collectively, the DIP Term Loan Claims and the Secured Revolving Credit Facility Claims.

1.170. **Secured Operational Lien Claims:** All Operational Lien Claims that are Secured Claims, as determined in the manner set forth in Plan Section 4.4(b) or otherwise pursuant to a Final Order of the Bankruptcy Court.

1.171. **Secured Revolving Credit Facility Claims:** All Revolving Credit Facility Claims that are Secured Claims.

1.172. **Securities Act:** The Securities Act of 1933, as amended.

1.173. **SERP:** The Orleans Homebuilders, Inc. Supplemental Executive Retirement Plan (which was renamed as the Orleans Homebuilders, Inc. Executive Survivor Benefit Plan on June 30, 2009), effective September 1, 2005, as amended and supplemented from time to time.

1.174. **Short Term Incentive Plan:** The incentive plan, pursuant to which the Reorganized Debtors shall make Cash payments to certain members of the Debtors' management on the Effective Date.

1.175. **Sponsors:** Collectively, and in their capacities as sponsors of the Plan, Strategic Value Special Situations Master Fund, LP; Strategic Value Master Fund, Ltd.; Anchorage Illiquid Opportunities Offshore Master, L.P.; Bank of America, N.A.; each other entity that is designated as a Sponsor prior to the Confirmation Date; and their respective successors, assigns, and designees, if any.

1.176. **Subsidiary Debtors:** Collectively, Brookshire Estates, L.P.; Community Management Services Group, Inc.; Greenwood Financial Inc.; Masterpiece Homes, LLC; OHB Homes, Inc.; OHI Financing, Inc.; OHI PA GP, LLC; OPCNC, LLC; Orleans Arizona Realty, LLC; Orleans Arizona, Inc.; Orleans at Bordentown, LLC; Orleans at Cooks Bridge, LLC; Orleans at Covington Manor, LLC; Orleans at Crofton Chase, LLC; Orleans at East Greenwich, LLC; Orleans at Elk Township, LLC; Orleans at Evesham, LLC; Orleans at Falls, LP; Orleans at Hamilton, LLC; Orleans at Harrison, LLC; Orleans at Hidden Creek, LLC; Orleans at Jennings Mill, LLC; Orleans at Lambertville, LLC; Orleans at Limerick, LP; Orleans at Lower Salford, LP; Orleans at Lyons Gate, LLC; Orleans at Mansfield LLC; Orleans at Maple Glen LLC; Orleans at Meadow Glen, LLC; Orleans at Millstone River Preserve, LLC; Orleans at Millstone, LLC; Orleans at Moorestown, LLC; Orleans at Tabernacle, LLC; Orleans at Thornbury, L.P.; Orleans at Upper Freehold, LLC; Orleans at Upper Saucon, L.P.; Orleans at Upper Uwchlan, LP; Orleans at Wallkill, LLC; Orleans at West Bradford, LP; Orleans at West Vincent, LP; Orleans at Westampton Woods, LLC; Orleans at Windsor Square, LP; Orleans at Woolwich, LLC; Orleans at Wrightstown, LP; Orleans Construction Corp.; Orleans Corporation; Orleans Corporation Of New Jersey; Orleans DK, LLC; Orleans RHIL, LP; Parker & Lancaster Corporation; Parker & Orleans Homebuilders, Inc.; Parker

Lancaster, Tidewater, L.L.C.; Realen Homes, L.P.; RHGP LLC; Sharp Road Farms Inc.; Stock Grange, LP; and Wheatley Meadows Associates, in their respective capacities as the direct or indirect (as applicable) subsidiaries of OHB.

1.177. **Tax Claims:** All Claims that are entitled to priority under Bankruptcy Code § 507(a)(8).

1.178. **Third-Party Mediator:** A mutually acceptable, neutral third-party to be selected by the Debtors or Reorganized Debtors, as applicable, and the Unsecured Creditor Agent for purposes of the Litigation Protocol.

1.179. **Trust Agreement:** The Amended and Restated Trust Agreement, dated as of September 20, 2005, between OHI Financing as depositor, OHB as guarantor, Wilmington Trust Company as Property Trustee, Wilmington Trust Company as Delaware Trustee, and Michael T. Vesey, Joseph A. Santangelo, and Lawrence J. Dugan, as administrative trustees.

1.180. **Trust Preferred Securities:** The $30 million of trust preferred securities issued by OHB on September 20, 2005, that mature on September 30, 2035, together with all documents, instruments, and agreements related thereto or entered into in connection therewith.

1.181. **Trust Preferred Securities Claims:** Collectively, all Claims represented by, related to, arising under, or in connection with the Trust Preferred Securities and any and all guarantees issued with respect thereto, including either any direct claims or any indirect claims asserted by the Junior Note Indenture Trustee or by a subrogee or successor-in-interest of any party, or otherwise.

1.182. **Trust Preferred Securities Holders:** Collectively, the Holders of the Trust Preferred Securities.

1.183. **2005 Junior Subordinated Notes:** The 8.52% junior subordinated note issued by OHI Financing underlying the Trust Preferred Securities, pursuant to that certain Junior Subordinated Note Indenture dated as of September 30, 2005, together with all documents, instruments, guarantees, exchange agreements, and other agreements related thereto or entered into in connection therewith.

1.184. **2009 Junior Subordinated Notes:** The junior subordinated notes issued pursuant to a private debt exchange by OHI Financing and guaranteed on a subordinated basis by OHB, pursuant to that certain Junior Subordinated Note Indenture dated as of August 3, 2009, together with all documents, instruments, guarantees, exchange agreements, and other agreements related thereto or entered into in connection therewith.

1.185. **Unencumbered Asset Net Sale Proceeds:**

(a)     In the case of any Unencumbered Asset that is a parcel of real property, an amount equal to the proceeds actually received by the Debtors, the Reorganized Debtors, or a Joint Venture (to the extent of the Debtors' or the Reorganized Debtors' interest in such Joint Venture) as applicable, from the sale, transfer, or other disposition of such parcel of real property, in each case net of (i) any and all Disposition Costs actually incurred or payable by the Debtors, the Reorganized Debtors, or Joint Venture, as applicable, at any time from and after the Effective Date, (ii) the value of any improvement made on or to any such parcel of real property from and after the Petition Date, and (iii) the Capital Charge.

(b)     In the case of any Unencumbered Asset that is not a parcel of real property, the actual proceeds received by the Debtors or the Reorganized Debtors, as applicable, upon the sale, transfer,

or other disposition of such Unencumbered Asset, net of any and all Disposition Costs actually incurred or payable by the Debtors or the Reorganized Debtors, as applicable, at any time from and after the Effective Date.

(c)     Unencumbered Asset Net Sale Proceeds shall be determined only after giving effect to the Adequate Protection Liens and payment of the Adequate Protection Claims.

1.186.  **Unencumbered Assets:**  Except as otherwise set forth in Plan Section 6.9(d), collectively, the assets listed as "Unencumbered Assets" on Exhibit I to the Disclosure Statement (as such schedule may be revised and included in the Plan Supplement or otherwise), to the extent any such assets are determined not to be subject to valid, enforceable, and non-avoidable Liens of the Revolving Credit Facility Agent or Operational Liens, either by agreement of the Debtors and the Revolving Credit Facility Agent, or as determined by a Final Order of the Bankruptcy Court, which assets shall be maintained and sold in accordance with Section 6.9 hereof.

1.187.  **Unsecured Creditor Agent**:  The Person designated in writing by the Creditors Committee, which designation shall be filed on the docket for these Cases prior to the date of the Confirmation hearing and be subject to approval by the Bankruptcy Court in the Confirmation Order, to serve as the Unsecured Creditor Agent in accordance with the Plan, and any successor(s) thereof.

1.188.  **Unsecured Creditor Cash Pool**:  Cash in the aggregate amount of $6 million plus any Critical Vendor Payment Amounts, Additional Vendor Payment Amounts, Initial Avoidance Claim Proceeds, and Excess Avoidance Claim Proceeds received by the Unsecured Creditor Agent, if any, to be applied to the Aggregate Unsecured Creditor Distribution, the Agreed Committee Professional Fees, the Additional Committee Investigation Fees, the Claim Resolution Fees, and any Additional Committee Professional Fees.

1.189.  **Unsecured Creditor Escrow Account**:  An escrow account comprised of the Unsecured Creditor Cash Pool, to be established on the Effective Date if Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), which account shall satisfy the requirements of Bankruptcy Code § 345 and be maintained by the Unsecured Creditor Agent.

1.190.  **Unsecured Creditor Settlement**:  Such term shall have the meaning ascribed to it in Section 9.6(a) hereof.

1.191.  **Vendors**:  Persons who supplied or provided goods, supplies, parts, materials, other tangible objects, and/or services to any of the Debtors prior to the Petition Date.

1.192.  **Vesey Estate**:  The estate of Michael T. Vesey, the Debtors' former President and Chief Operating Officer.

1.193.  **Voting Deadline:**  The deadline established by the Bankruptcy Court as the last date to timely submit a Ballot for voting to accept or to reject the Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.    In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims, DIP Facility Claims, and Tax Claims have not been classified and are excluded from the following Classes. (Article III of the Plan describes the treatment of Administrative Claims, DIP Facility Claims, and Tax Claims.)

For the purposes of the Plan, Holders of Claims against, or Interests in, the Debtors are grouped as follows in accordance with Bankruptcy Code § 1122(a):

2.2.     **Class 1 -- Priority Claims.**  Class 1 consists of all Priority Claims against any of the Debtors.  Class 1 Claims shall be treated in the manner set forth in Section 4.2 hereof.

2.3.     **Class 2 -- Secured Claims Against One or More of the Debtors.**

(a)     **Class 2A -- Secured Revolving Credit Facility Claims.**  Class 2A consists of all Secured Revolving Credit Facility Claims against (a) the Revolving Credit Facility Borrowers, as the borrowers under the Revolving Credit Facility, and (b) OHB, in its capacity as the Revolving Credit Facility Guarantor.  Class 2A Claims shall be treated in the manner set forth in Section 5.2 hereof.

(b)     **Class 2B -- Other Secured Claims Against Any of the Debtors.**  Class 2B consists of any Secured Claims against any of the Debtors that are not otherwise classified in this Article II.  Accordingly, Class 2B Claims include Claims arising under any secured capital leases of the Debtors, but do not include any (a) Claims under, respectively, the Revolving Credit Facility, the Revolving Credit Facility Guarantee, or the DIP Facility, or (b) Secured Operational Lien Claims.  Class 2B Claims also do not include any Tax Claims.  Such Class 2B Claims shall be treated in the manner set forth in Section 4.3 hereof.

(c)     **Class 2C -- Secured Operational Lien Claims Against Any of the Debtors.**  Class 2C consists of any Secured Operational Lien Claims against any of the Debtors.  Such Class 2C Claims shall be treated in the manner set forth in Section 4.4 hereof.

2.4.     **Class 3 -- Unsecured Claims Against any of the Debtors.**

(a)     **Class 3 -- Aggregate Unsecured Claims Against Any of the Debtors.**  Class 3 consists of all Aggregate Unsecured Claims against any of the Debtors.  To the extent applicable, Class 3 shall be treated in the manner set forth in Section 5.3 hereof.

(b)     **Class 3A -- General Unsecured Claims Against Any of the Debtors.**  Class 3A consists of all General Unsecured Claims against any of the Debtors.  To the extent applicable, Class 3A Claims shall be treated in the manner set forth in Section 5.4 hereof.

(c)     **Class 3B -- Junior Subordinated Notes Claims and Trust Preferred Securities Claims Against Any of the Debtors.**  Class 3B consists of all Junior Subordinated Notes Claims and Trust Preferred Securities Claims against any of the Debtors.  To the extent applicable, Class 3B Claims shall be treated in the manner set forth in Section 5.5 hereof.

(d)     **Class 3C -- Convenience Class Claims Against Any of the Debtors.**  Class 3C consists of all Convenience Class Claims against any of the Debtors.  To the extent applicable, Class 3C Claims shall be treated in the manner set forth in Section 5.6 hereof.

(e)     **Class 3D -- The Lenders' Deficiency Claim Against Any of the Debtors.**  Class 3D consists of the Lenders' Deficiency Claim against any of the Debtors.  To the extent applicable, Class 3D Claims shall be treated in the manner set forth in Section 5.7 hereof.

2.5.     **Class 4 -- Old OHB Common Stock Interests.**  Class 4 consists of all Interests arising under or in connection with the Old OHB Common Stock.  Class 4 Interests shall be treated in the manner set forth in Section 5.8 hereof.

2.6.    **Class 5 -- Intercompany Claims.**  Class 5 consists of all Intercompany Claims.  Class 5 Claims shall be Allowed in the amounts as reflected on the Debtors' books and records, and shall be treated in the manner set forth in Section 5.9 hereof.

2.7.    **Class 6 -- Old Stock of the Subsidiary Debtors.**  Class 6 consists of all Interests arising under or in connection with the Old Stock of each of the Subsidiary Debtors.  Class 6 Interests shall be treated in the manner set forth in Section 4.5 hereof.

# ARTICLE III

## TREATMENT OF ADMINISTRATIVE
## CLAIMS, DIP FACILITY CLAIMS, AND TAX CLAIMS

3.1.    **Administrative Claims.**  Each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, Cash equal to the amount of such Allowed Claim on the later of (a) the Initial Distribution Date and (b) the date that is 60 days after the Allowance Date, except to the extent that such Holder has agreed to a less favorable treatment of such Allowed Claim; provided, however, that Allowed Administrative Claims representing obligations incurred in the ordinary course of the Debtors' businesses shall be paid or performed in accordance with the terms and conditions of the particular transactions and any agreements related thereto.  The Reorganized Debtors shall have (i) until the Initial Distribution Date (or such longer period of time as may be allowed by order of the Bankruptcy Court) to review and object to Administrative Claims that were required to be filed on or prior to the Initial Administrative Claims Bar Date and (ii) until 45 days following the Final Administrative Claims Bar Date (or such longer period of time as may be allowed by order of the Bankruptcy Court) to review and object to Administrative Claims that were required to be filed on or prior to the Final Administrative Claims Bar Date.  If (i) the Reorganized Debtors fail to submit a timely objection to an Administrative Claim, or (ii) following a timely objection to such Administrative Claim, the Bankruptcy Court enters a Final Order deeming the Administrative Claim an Allowed Administrative Claim, such Administrative Claim shall be treated as an Allowed Administrative Claim hereunder.

3.2.    **DIP Facility Claims:**  DIP Facility Claims shall be Allowed Claims under the Plan in the aggregate amount equal to all obligations under the DIP Facility outstanding as of the Effective Date, as agreed to by the DIP Facility Lenders and the Debtors, or in the event of a dispute regarding such amount, as such amount has been determined by a Final Order of the Bankruptcy Court.  On the Effective Date, at the election of the Debtors or the Reorganized Debtors, as applicable, (i) the DIP L/C Issuer shall, to the extent permissible under the applicable agreement, receive cancellation without draw of all outstanding letters of credit issued under the DIP Facility, (ii) the Debtors or the Reorganized Debtors, as applicable, shall arrange for the issuance of additional letters of credit in favor of the DIP L/C Issuer, equal to the DIP L/C Issuer's maximum exposure under such letters of credit, in a form and substance satisfactory to the DIP L/C Issuer, or (iii) the outstanding letters of credit under the DIP Facility shall be secured by Cash equal to 105% of the DIP L/C Issuer's maximum exposure under such outstanding letters of credit. The total distributions of New Notes and/or Cash on account of Allowed DIP Facility Claims pursuant to this Plan Section 3.2 (as applicable), shall be made by the Debtors on the Effective Date to the DIP Facility Agent for subsequent distribution to the Holders of Allowed DIP Facility Claims as of the Distribution Record Date.  The DIP Facility Agent or an affiliate thereof shall serve as the transfer exchange agent for the initial distribution of New Notes to the Holders of the Allowed DIP Facility Claims.

(a)    **DIP Revolving Facility Claims:**  On the Effective Date, each Holder of an Allowed DIP Revolving Facility Claim shall receive, in full satisfaction, settlement, release, and

discharge of, and in exchange for, such Allowed Claim, Cash in an amount equal to such Holder's Allowed DIP Revolving Facility Claim, which payments shall collectively be in the amount equal to the aggregate outstanding amount of the Allowed DIP Revolving Facility Claims.

(b)     **DIP Term Loan Claims:**  On the Effective Date, each Holder of an Allowed DIP Term Loan Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed DIP Term Loan Claim, (i) Cash in an amount up to such Holder's Allowed DIP Term Loan Claim, to the extent sufficient Cash proceeds are available from the Exit Credit Facility for distribution to fully satisfy such Allowed DIP Term Loan Claim, and (ii) to the extent sufficient Cash proceeds are not available from the Exit Credit Facility for distribution on account of such Allowed DIP Term Loan Claim, New Notes in an aggregate principal amount equal to any portion of such Allowed DIP Term Loan Claim that is not satisfied with Cash proceeds from the Exit Credit Facility.

3.3.     **Tax Claims.**  Each Holder of an Allowed Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, at the election of the applicable Debtor, either (i) Cash equal to the amount of such Allowed Claim on the later of (a) the Initial Distribution Date and (b) the date that is 60 days after the Allowance Date, or (ii) in accordance with Bankruptcy Code § 1129(a)(9)(C), deferred Cash payments (a) of a value, as of the Effective Date, equal to the amount of such Allowed Tax Claim, (b) over a period not exceeding five years after the Petition Date, and (c) in a manner not less favorable than the treatment of the most favored nonpriority unsecured Claim provided for by the Plan, except to the extent such Holder has agreed to a less favorable treatment of such Allowed Claim.

# ARTICLE IV

# TREATMENT OF CLASSES THAT ARE NOT IMPAIRED UNDER THE PLAN

4.1.     **Unimpaired Classes.**  Classes 1, 2B, 2C, and 6 are unimpaired.  Therefore, pursuant to Bankruptcy Code § 1126(f), the Holders of Allowed Claims or Allowed Interests (as applicable) in such Classes are conclusively presumed to have accepted the Plan and are not entitled to vote thereon.

4.2.     **Class 1 -- Priority Claims.**  If not otherwise paid in full pursuant to an order of the Bankruptcy Court prior to the Confirmation Date, and except to the extent such Holder has agreed to a less favorable treatment of such Allowed Claim, each Holder of an Allowed Class 1 Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, Cash equal to the amount of such Allowed Claim on the latest of (a) the Initial Distribution Date, (b) the date that is 60 days after the Allowance Date of such Claim, and (c) the date when such Allowed Claim becomes due and payable according to its terms and conditions.

4.3.     **Class 2B -- Other Secured Claims Against Any of the Debtors.**  In full satisfaction, settlement, release, and discharge of, and in exchange for, each outstanding Allowed Class 2B Claim that has not previously been satisfied pursuant to an order of the Bankruptcy Court or otherwise in the ordinary course of the Debtors' businesses, at the election of the applicable Debtor or Reorganized Debtor, such Debtor or Reorganized Debtor shall either:  (a) pay the amount of such Allowed Class 2B Claim in full, in Cash, on the later of the Initial Distribution Date or the date that is 60 days after the Allowance Date of such Claim; (b) return the underlying collateral to the Holder of such Allowed Class 2B Claim; (c) Reinstate such Allowed Class 2B Claim in accordance with the provisions of Bankruptcy Code § 1124(2); or (d) treat such Allowed Class 2B Claim in a manner otherwise agreed to by the Holder thereof.

4.4. **Class 2C -- Secured Operational Lien Claims Against Any of the Debtors.**

(a)     In full satisfaction, settlement, release, and discharge of, and in exchange for, each outstanding Allowed Class 2C Claim that has not previously been satisfied pursuant to an order of the Bankruptcy Court or otherwise in the ordinary course of the Debtors' businesses: (a) to the extent that the home or other Asset that is the subject of the applicable Secured Operational Lien Claim has been sold by the Debtors at any time prior to the Effective Date, the Reorganized Debtors shall pay the amount of such Allowed Class 2C Claim in full, in Cash, on the later of the Initial Distribution Date or the date that is 60 days after the Allowance Date of such Claim; and (b) to the extent that the home or other Asset that is the subject of the applicable Secured Operational Lien Claim has not been sold by the Debtors prior to the Effective Date, at the election of the applicable Reorganized Debtor, such Reorganized Debtor shall (i) pay the amount of such Allowed Class 2C Claim in full, in Cash, on the later of the Initial Distribution Date or the date that is 60 days after the Allowance Date of such Claim; (ii) Reinstate such Allowed Class 2C Claim in accordance with the provisions of Bankruptcy Code § 1124(2); (iii) upon the sale of the home or other Asset that is the subject of the applicable Secured Operational Lien Claim, pay in full, in Cash, the amount of such Allowed Class 2C Claim; or (iv) treat such Allowed Class 2C Claim in a manner otherwise agreed to by the Holder thereof.

(b)     Except as otherwise set forth herein, the provisions of the Plan relating to the Operational Lien Claims shall on and after (but not prior to) the Effective Date, for all purposes in these Cases, supersede the corresponding provisions in the Home Sales Order and any other order entered in these Cases with respect thereto; provided, however, that the Home Sales Order and any other order entered in these Cases that is or would be modified pursuant to this Plan Section 4.4(b) shall, except as specifically modified, remain in full force and effect for all purposes in these Cases. Without limiting the generality of the foregoing, after consideration of the facts and of applicable law, Exhibit F to the Disclosure Statement contains a schedule setting forth the Debtors' position as to the correct status and/or Allowed amount (if any) of all known Secured Operational Lien Claims. In addition, Exhibit G to the Disclosure Statement contains a schedule setting forth the Operational Lien Claims that the Debtors have determined constitute General Unsecured Claims (as such schedule may be amended or revised and included in the Plan Supplement or otherwise, in the manner set forth below). *Without in any way modifying the Home Sales Procedures, which shall remain in effect through the Effective Date, any Operational Lien Claimholder shall have until the Confirmation Objection Deadline to object to (i) the inclusion of its Operational Lien Claim on Exhibit G to the Disclosure Statement, (ii) the omission of its Operational Lien Claim from Exhibit F to the Disclosure Statement, and (iii) the stated Allowed amount of any Operational Lien Claim on such Exhibit F. Except to the extent that the applicable Operational Lien Claimholder so objects prior to the Confirmation Objection Deadline and obtains a Final Order of the Bankruptcy Court determining that its Claim constitutes an Allowed Secured Operational Lien Claim in Class 2C in an amount in excess of zero dollars ($0.00), any Operational Lien Claims that are (i) not otherwise expressly set forth on such Exhibit F as being an Allowed Secured Operational Lien Claim, (ii) set forth on Exhibit G, or (iii) do not appear on either Exhibit F or Exhibit G, shall be treated for all purposes under the Plan and in these Cases as General Unsecured Claims in Class 3 or 3A (as applicable) and not as Secured Operational Lien Claims in Class 2C (or Other Secured Claims in Class 2B), and shall be otherwise subject to all rights, defenses, objections, and claims of the Debtors or the Reorganized Debtors (as applicable) with respect thereto;* notwithstanding the foregoing, the 30-day waiting period for filing a Demand Resolution Motion (as such term is defined in the Home Sales Order) shall not prohibit the filing of any such objection. *Also, any party that disputes the Allowed amount of an Operational Lien Claim set forth on Exhibit F must object to such proposed amount prior to the Confirmation Objection Deadline or shall be deemed to have consented to such amount for all purposes under the Plan and in these Cases. Any non-Debtor party that fails to object on or prior to the Confirmation Objection Deadline to the Debtors' position regarding the status and/or Allowed amount of such party's Operational Lien Claim shall be deemed to have consented to such position, and its Claim*

*shall be treated in accordance therewith for all purposes under the Plan (including, but not limited to, for voting, classification, and distribution purposes) and otherwise in these Cases, and may not otherwise receive any other treatment or additional distribution or consideration from, or otherwise seek recourse against, any of the Debtors, the Estates, the Reorganized Debtors, or any of their presently or previously owned Assets or assets that they may own in the future, except as otherwise set forth in the Plan. In addition, any purported Operational Lien Claimholder whose Operational Lien Claim (i) does not appear on Exhibit F as an Allowed Secured Operational Lien Claim, (ii) appears on Exhibit G as a General Unsecured Claim, or (iii) does not appear on either Exhibit F or Exhibit G, and who fails to object or otherwise respond in a timely manner to such omission or inclusion (as applicable) prior to the Confirmation Objection Deadline, shall be deemed to have consented thereto, and its Operational Lien Claim (if any) shall be treated for all purposes under the Plan (including, but not limited to, for voting, classification, and distribution purposes) and otherwise in these Cases as a General Unsecured Claim in Class 3 or 3A (as applicable) and not as a Secured Operational Lien Claim in Class 2C (or Other Secured Claim in Class 2B), and may not otherwise receive any other treatment or additional distribution or consideration from, or otherwise seek recourse against, any of the Debtors, the Estates, the Reorganized Debtors, or any of their presently owned or previously owned Assets or assets that they may own in the future, beyond any distribution or other treatment to be afforded to such Claim under the terms and conditions of the Plan. In the event of a dispute regarding: (x) the status of any Operational Lien Claim set forth on Exhibit F or Exhibit G to the Disclosure Statement, or not set forth on either Exhibit F or Exhibit G, or any other asserted Operational Lien Claim, (y) the Allowed amount of such Claim, or (z) any other matter pertaining thereto (each an "Operational Lien Claim Dispute"), any payment or other distribution or treatment with respect to such Claim as provided for in the Plan shall be made only following the entry of a Final Order resolving the applicable Operational Lien Claim Dispute.*

(c)     The Bankruptcy Court may adjudicate any Operational Lien Claim Dispute at or prior to the Confirmation Hearing, or on any other date the Bankruptcy Court may schedule (upon reasonable notice). After the Confirmation Date, the Debtors, and on and after the Effective Date, the Reorganized Debtors, shall have the authority to settle, compromise, resolve, or withdraw any Operational Lien Claim Dispute without the need for any Bankruptcy Court or other approval or any other or further notice.

(d)     The listing of a Claim on Exhibit F or Exhibit G to the Disclosure Statement shall not constitute an admission by the Debtors that such Claim is an Allowed Claim, that the Debtors have any liability with respect thereto, or that the applicable non-Debtor party has any rights or claims with respect to any of the Assets. The Debtors shall retain the right to commence an action in the Bankruptcy Court in the event they determine that any Operational Lien Claim set forth on such Exhibit F does not properly constitute an Allowed Secured Operational Lien Claim in Class 2C.

4.5.     **Class 6 -- Old Stock of the Subsidiary Debtors.** Except as the Debtors and the Reorganized Debtors may otherwise determine, the Debtors' existing corporate structure of affiliate and/or subsidiary ownership shall be maintained, unaffected by the Plan, as set forth further in Plan Section 6.2. At the election of the Reorganized Debtors and with the consent of the Sponsors, each respective Old Stock Interest in a Subsidiary Debtor shall be (a) unaffected by the Plan, in which case the entity holding an Interest in such Subsidiary Debtor shall continue to hold such Interest in the applicable Reorganized Subsidiary Debtor following the Effective Date, (b) cancelled and new equity in the applicable Reorganized Subsidiary Debtor shall be issued pursuant to the Plan, or (c) otherwise restructured.

4.6.     **Special Provision Regarding Unimpaired Claims.** Except as may otherwise be provided in the Plan, the Confirmation Order, any other Final Order of the Bankruptcy Court, or any Plan Document, nothing shall affect the Debtors' or the Reorganized Debtors' (as applicable) rights and

defenses, both legal and equitable, with respect to any Claims that are not impaired under the Plan, including, but not limited to, all rights with respect to legal and equitable defenses to, and/or setoffs or recoupments against, such Claims.

## ARTICLE V

## TREATMENT OF CLASSES THAT ARE IMPAIRED UNDER THE PLAN

5.1.    **Impaired Classes.**  Classes 2A, 3 (or 3A, 3B, 3C, 3D, as applicable), 4, and 5 are impaired.  Holders of Allowed Claims in Class 2A, 3 (or 3A, 3B, 3C, or 3D, as applicable) are entitled to vote to accept or to reject the Plan.  Holders of Allowed Claims or Interests (as applicable) in Classes 4 or 5 shall receive no distribution under the Plan (other than as may be set forth in Section 5.8 hereof with respect to Class 5 Intercompany Claims); therefore, the Holders of Claims or Interests (as applicable) in those Classes are deemed to have rejected the Plan and, pursuant to Bankruptcy Code § 1126(g), are not entitled to vote to accept or to reject the Plan.

5.2.    **Class 2A -- Secured Revolving Credit Facility Claims.**

(a)    The Secured Revolving Credit Facility Claims shall be deemed Allowed Claims in the aggregate amount of $[145] million (subject to the ultimate amounts outstanding under the DIP Facility as of the Effective Date).  Accordingly, the Allowed amount of the Class 2A Claims shall take into account any and all amounts previously paid by the Debtors to the Holders of Revolving Credit Facility Claims from the proceeds of the DIP Facility or otherwise during the course of these Cases.

(b)    On the Effective Date, or as soon thereafter as is practicable, each Holder of an Allowed Class 2A Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, its Claim, such Holder's Pro Rata share of (A) the shares of New OHB Common Stock, (B) New Notes, and (C) Cash in an amount equal to the Adequate Protection Claim (it being understood that such payment shall be made as soon as reasonably practicable after the Effective Date from proceeds received by the Debtors or the Reorganized Debtors, as applicable, from the sale, transfer, or other disposition of what would otherwise be Unencumbered Assets (but for the Adequate Protection Liens)); provided, however, that if Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), the Holders of Class 2A Claims shall be deemed to have waived the right to receive the Cash payment provided in (C) in this Plan Section 5.2(b) on account of the Adequate Protection Claim.  For purposes of determining the amounts of such distribution of the New Notes to the Holders of Allowed Class 2A Claims, each Holder of an Allowed Class 2A Claim's Pro Rata share shall be calculated using such Holder's Allowed Secured Revolving Credit Facility Claim as the numerator, and the aggregate amount of the Allowed Secured Lender Claims as the denominator.

(c)    The sum total of the value of the distributions to be made to the Holders of Allowed Secured Revolving Credit Facility Claims shall not exceed the aggregate amount of the Allowed Secured Revolving Credit Facility Claims.

(d)    On the Effective Date, (i) all outstanding notes issued in connection with the Revolving Credit Facility and any outstanding notes issued in connection with the Revolving Credit Facility Guarantee shall, to the extent permissible under the applicable agreement, be cancelled and shall be deemed terminated and of no force and effect, and (ii) at the election of the Debtors or the Reorganized Debtors, as applicable, (x) the Revolving Credit Facility L/C Issuer shall receive cancellation without draw of all outstanding letters of credit issued under the Revolving Credit Facility, (y) the Debtors or the Reorganized Debtors, as applicable, shall arrange for the issuance of additional letters of credit in favor of

the Revolving Credit Facility L/C Issuer, equal to the Revolving Credit Facility L/C Issuer's maximum exposure under such letters of credit, in a form and substance reasonably satisfactory to the Revolving Credit Facility L/C Issuer, or (z) the outstanding letters of credit under the Revolving Credit Facility shall be secured by Cash equal to 105% of the Revolving Credit Facility L/C Issuer's maximum exposure under such outstanding letters of credit.

5.3. **Class 3 -- Aggregate Unsecured Claims Against Any of the Debtors**. If Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), then as soon as practicable after the Effective Date, each Holder of an Allowed Aggregate Unsecured Claim as of the Distribution Record Date shall receive from the Unsecured Creditor Agent, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, such Holder's Pro Rata Share of (i) the Initial Avoidance Claim Proceeds, (ii) the Excess Avoidance Claim Proceeds, and (iii) the Aggregate Unsecured Creditor Distribution. If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then each Holder of an allowed Aggregate Unsecured Claim shall be treated in accordance with Sections 5.4, 5.5, or 5.6 hereof, as applicable.

5.4. **Class 3A -- General Unsecured Claims Against Any of the Debtors.**

(a) If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then on the Effective Date, or as soon thereafter as is practicable, and subject to the provisions of Plan Section 6.9, each Holder of an Allowed Class 3A Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, such Holder's Pro Rata share of (a) the Initial Avoidance Claims Proceeds, (b) the Excess Avoidance Claims Proceeds, and (c) the Unencumbered Asset Net Sale Proceeds.

(b) Creditors with Allowed Class 3A Claims may, at their option, elect (as indicated on their Class 3A Ballot) instead to have their Claim treated as a Convenience Class Claim in accordance with Class 3C. If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then any Class 3A Creditor making such election shall not receive such Holder's Pro Rata share of (a) the Initial Avoidance Claims Proceeds, (b) the Excess Avoidance Claims Proceeds, and (c) the Unencumbered Asset Net Sale Proceeds, but shall instead receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, Cash in an amount equal to 3% of such Allowed Claim (subject to the limits set forth in Section 5.6 hereof). Any Creditor whose Allowed Class 3A Claim would otherwise exceed $25,000 and that elects to have its Claim instead treated as a Class 3C Claim, shall be deemed to have an Allowed Claim for all purposes under the Plan and in these Cases in an amount equal to $25,000. If Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), then any Holder of an Allowed Class 3A Claim as of the Distribution Record Date making such election shall be treated as a Holder of an Allowed Class 3 Claim in accordance with Section 5.3 hereof, notwithstanding the election.

5.5. **Class 3B -- Junior Subordinated Notes Claims and Trust Preferred Securities Claims Against Any of the Debtors.**

(a) The Junior Subordinated Note Claims and the Trust Preferred Securities Claims shall be Allowed Claims in the aggregate amount of $109,686,581.06, consisting of (a) $107,759,924.81 in principal amount issued pursuant to the Junior Subordinated Notes Indentures and related documents, and (b) $1,926,656.25 in accrued but unpaid interest as of the Petition Date at the applicable rates specified in the Junior Subordinated Notes Indentures and related documents, as well as other fees and costs associated therewith. On the Effective Date, the Trust Agreement shall be deemed terminated and dissolved and, if necessary or desirable, the Debtors or the Reorganized Debtors (as the case may be) or the applicable Junior Subordinated Note Indenture Trustee may file a certificate of cancellation with the

Secretary of State of Delaware, and upon such termination and dissolution, any guaranty of the Trust Preferred Securities Claims or the Junior Subordinated Notes Claims shall be deemed terminated and of no further force and effect.

(b)      On the Effective Date, all outstanding Junior Subordinated Notes and Trust Preferred Securities shall be cancelled. If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then on the Effective Date, or as soon thereafter as is practicable, each Holder of an Allowed Class 3B Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, such Holder's Pro Rata share of (a) the Initial Avoidance Claims Proceeds, (b) the Excess Avoidance Claims Proceeds, and (c) the Unencumbered Asset Net Sale Proceeds; provided, however, that, except for the Initial Avoidance Claims Proceeds (which shall be distributed to the Junior Subordinated Notes Indenture Trustees for subsequent distribution on a Pro Rata basis to the Holders of Allowed Class 3B Claims), in accordance with the subordination provisions of the Trust Preferred Securities and the Junior Subordinated Notes, such distribution shall not be made to the Holders of Junior Subordinated Notes Claims or Trust Preferred Securities Claims, but shall instead be made to the Revolving Credit Facility Agent for further distributions to the Holders of the Lenders' Deficiency Claim in Class 3D.

(c)      For the avoidance of doubt, distributions by the Reorganized Debtors to Holders of the Junior Subordinated Note Claims pursuant to the Plan shall not be reduced on account of Allowed Indenture Trustee Fees that are due and owing; provided, however, that nothing herein shall be deemed to impair, waive, extinguish, or negatively impact the Indenture Trustee Charging Lien upon any and all distributions made by the Debtors under the Plan to the Holders of such Junior Subordinated Note Claims but, for the further avoidance of doubt, not upon the distributions to be turned over to the Revolving Credit Facility Agent pursuant to this Plan.

5.6.     **Class 3C -- Convenience Class Claims Against Any of the Debtors.** If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then on the Effective Date, or as soon thereafter as is practicable, each Holder of an Allowed Convenience Class Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, Cash in an amount equal to 3% of such Allowed Claim. Any Creditor whose Allowed Claim would otherwise exceed $25,000 and that elects to have its Claim treated as a Class 3C Claim, shall be deemed to have an Allowed Claim for all purposes under the Plan in an amount equal to $25,000. For the avoidance of doubt, if Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), then each Holder of an Allowed Class 3C Claim as of the Distribution Record Date shall be treated as a Holder of an Allowed Class 3 Claim in accordance with Plan Section 5.3.

5.7.     **Class 3D -- The Lenders' Deficiency Claim Against Any of the Debtors.** The Lenders' Deficiency Claim shall be deemed an Allowed Claim in the amount of $[113] million (subject to the ultimate amounts outstanding under the DIP Facility as of the Effective Date). If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then on the Effective Date, or as soon thereafter as is practicable, each Holder of an Allowed Class 3D Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Claim, such Holder's Pro Rata share of (a) the Excess Avoidance Claims Proceeds and (b) the Unencumbered Asset Net Sale Proceeds. If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then Holders of Class 3D Claims shall also receive (on a Pro Rata basis) the distribution of the Excess Avoidance Claims Proceeds and the Unencumbered Asset Net Sale Proceeds that otherwise would be distributed to the Holders of Class 3B Claims pursuant to Plan Section 5.5 but for the subordination provisions of the Junior Subordinated Notes and the Trust Preferred Securities.

If Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), then each Holder of an Allowed Class 3D Claim as of the Distribution Record Date shall be deemed to have waived any right to receive any distribution on account of the Lenders' Deficiency Claims and to enforce the subordination or turnover provisions in the Trust Preferred Securities, the Junior Subordinated Notes, and the Junior Subordinated Notes Indentures.

5.8.    **Class 4 – Old OHB Common Stock Interests.**  On the Effective Date, all outstanding shares of Old OHB Common Stock and all other Old Stock of OHB shall be cancelled and shall be deemed terminated and of no force and effect.  In addition, without limiting the generality of the foregoing, any and all options or rights to exercise warrants or options or to otherwise acquire any shares of Old OHB Common Stock or any other Interest in OHB, under any of the Existing Stock Option Plans or otherwise, shall be cancelled and be deemed terminated and of no force and effect.  No distribution of any kind shall be made on account of the Old OHB Common Stock or any other Old Stock of OHB under the Plan.

5.9.    **Class 5 -- Intercompany Claims.**  All Intercompany Claims shall be reviewed by the Debtors or the Reorganized Debtors, as applicable, and adjusted, continued, or discharged, as the Debtors or the Reorganized Debtors, as applicable, determine as appropriate with the consent of the Sponsors (by, among other things, releasing such claims, contributing them to capital, issuing a dividend, or leaving them unimpaired), taking into account, among other things, the distribution of consideration under the Plan and the economic condition of the Reorganized Debtors, among other things.  The Holders of Intercompany Claims shall not be entitled to participate in any of the distributions on account of Claims under Sections 5.2, 5.3, 5.4, 5.5, 5.6, or 5.7 hereof and shall only be entitled to the treatment provided in this Plan Section 5.9.

5.10.    **Special Provision Regarding Impaired Claims.**  Except as may otherwise be provided in the Plan, the Confirmation Order, any other Final Order of the Bankruptcy Court, or any Plan Document, nothing shall affect the Debtors' or the Reorganized Debtors' (as applicable) rights and defenses, both legal and equitable, with respect to any Claims that are impaired under the Plan, including, but not limited to, all rights with respect to legal and equitable defenses to, and/or setoffs or recoupments against, such Claims.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1.    **Boards of Directors/Managers of the Reorganized Debtors.**  Reorganized OHB and any other Debtor that is a corporation may be converted to a limited liability company, partnership, joint venture, or other entity in connection with Confirmation.  To the extent Reorganized OHB or any other Reorganized Debtor remains a corporation, as of the Effective Date, it is currently contemplated that Reorganized OHB shall initially have a seven-person Board of Directors (although the Debtors reserve, with the Sponsors' consent, the right to revise the number of directors at any time on or before the Confirmation Date and shall inform the Bankruptcy Court of any such revision).  The initial anticipated members of the respective Boards of Directors or Managers (as applicable) and officers of Reorganized OHB and each of the other Reorganized Debtors that remain corporations, which may have the same members as that of Reorganized OHB, shall be appointed in accordance with the respective Amended and Restated Bylaws and shall be disclosed to the Bankruptcy Court in compliance with Bankruptcy Code § 1129(a)(5) on or before the Confirmation Date, unless some later date is permitted by the Bankruptcy Court.  To the extent Reorganized OHB or any other Reorganized Debtor is converted to a limited liability company, partnership, joint venture, or another entity in connection with Confirmation, as of the Effective Date, Reorganized OHB and each other Reorganized Debtor that so converts shall initially have

a Board of Managers or similar governing body appointed in accordance with the governing documents for such entity. Reorganized OHB, or another entity (which may or may not be a Reorganized Debtor) directly or indirectly wholly-owned by Reorganized OHB, shall be the initial sole member of each of the Reorganized Debtors that are limited liability companies and the sole general partner of each of the Reorganized Debtors that are limited partnerships. The boards of directors, sole members, and/or general partners of the Reorganized Debtors shall have full power and authority to manage the respective businesses and affairs of the Reorganized Debtors on and after the Effective Date.

6.2. **Ownership of the Reorganized Subsidiary Debtors.** Except as the Debtors and the Reorganized Debtors may otherwise determine, the ownership of the capital stock or other equity interests of the respective Reorganized Subsidiary Debtors following the Effective Date shall be unaffected by the Plan, as each Debtor that owned or held the Old Stock of a Subsidiary Debtor (to the extent that any of such Subsidiary Debtors has not been sold or otherwise transferred, dissolved, consolidated, or merged under applicable law prior to the Effective Date) as of the Effective Date shall, as a Reorganized Debtor on the Effective Date, own or hold such capital stock and/or equity interest (as applicable) in the corresponding Reorganized Subsidiary Debtor as of the Effective Date. In addition (other than with respect to any stock or joint venture interests cancelled, sold, or otherwise transferred by any of the Debtors on or prior to the Effective Date), on the Effective Date, each Reorganized Debtor shall own and retain its equity or joint venture interests in all non-Debtor subsidiaries, Affiliates, or joint ventures (to the extent that any such non-Debtor subsidiary, Affiliate, or joint venture interest has not been sold or otherwise transferred, dissolved, consolidated, or merged under applicable law prior to the Effective Date) to the same extent that the applicable Debtor owned such equity or joint venture interest in such non-Debtor subsidiary, Affiliate, or joint venture prior to the Effective Date. The Debtors are also hereby authorized to dissolve, merge, consolidate, or undertake any similar transaction with respect to any of the Debtors or the Reorganized Debtors in accordance with applicable law prior to, on, or after the Effective Date, and to cause the transfer of assets between or among the Debtors in connection with any such dissolution, merger, or consolidation, without the need for any other further corporate action or court order.

6.3. **Issuance of New Securities; Execution and Delivery of Plan Documents.**

(a) On the Effective Date, Reorganized OHB shall issue the New OHB Common Stock and the New Notes; the Reorganized Subsidiary Debtors shall execute, deliver, and issue the New Notes Guarantees; and the applicable Reorganized Debtors shall issue any and all notes in connection with the Exit Credit Facility, the Exit Credit Facility Guarantees, and each other Plan Document. The issuance of (i) the New OHB Common Stock pursuant to the Plan (including, pursuant to Sections 5.2, 6.15, 6.16, and 6.20 hereof), (ii) the New Notes and the New Notes Guarantees, and (iii) any and all notes under or in connection with the Exit Credit Facility, the Exit Credit Facility Guarantees, or otherwise by any of the Reorganized Debtors, shall all be authorized hereby without the need for any further corporate action or court order.

(b) The execution and delivery by the Debtor(s) or the Reorganized Debtor(s) party thereto (as applicable) of all Plan Documents (including, without limitation, the Exit Credit Facility and the Exit Credit Facility Guarantees, any document memorializing the New Notes, the New Notes Guarantees, and/or any other agreement entered into, or instrument, security interest, guaranty, or note issued in connection with any of the foregoing, any other Plan Document, and any other document reasonably necessary or appropriate to effectuate the events contemplated herein and therein), is hereby authorized without the need for any further corporate action or court order. All such Plan Documents shall become effective and binding upon the parties thereto simultaneously in accordance with their respective terms and conditions as of the Effective Date.

6.4.    **Corporate Governance and Corporation Action.**

(a)    **The Amended and Restated Certificates of Incorporation, the Amended and Restated By-Laws, the Amended and Restated LLC Agreements, the Amended and Restated Limited Partnership Agreements, and Other Applicable Certificates of Formation and/or Organization.**  On or before the Effective Date, the Reorganized Debtors shall (a) file their respective Amended and Restated Certificates of Incorporation or other applicable certificates of formation and/or organization (as applicable) with the appropriate state officials in accordance with applicable state law and (b) adopt their respective Amended and Restated By-Laws, Amended and Restated LLC Agreements, Amended and Restated Limited Partnership Agreements, or similar constituent documents.  Each of the Amended and Restated Certificates of Incorporation, Amended and Restated LLC Agreements, and Amended and Restated Limited Partnership Agreements (as applicable) of the respective Reorganized Debtors shall, among other things, prohibit the issuance of nonvoting equity securities to the extent required by Bankruptcy Code § 1123(a).  After the Effective Date, the Reorganized Debtors may amend and restate their respective Amended and Restated Certificates of Incorporation, Amended and Restated By-Laws, Amended and Restated LLC Agreements, Amended and Restated Limited Partnership Agreements, applicable certificates of formation and/or organization, and/or other constituent documents (as applicable) as permitted by the governing state general corporation law, limited liability corporation law, or limited partnership law (as applicable) and the applicable agreements and constituent documents (including the Amended and Restated Certificates of Incorporation, the Amended and Restated By-Laws, the Amended and Restated LLC Agreements, and the Amended and Restated Limited Partnership Agreements) of the Reorganized Debtors.

(b)    **Corporate Action.**  All actions reasonably necessary and desirable to effectuate, implement, or adopt the Exit Credit Facility; the issuance of the New OHB Common Stock; the Short Term Incentive Plan; the New Notes and the New Notes Guarantees; the adoption and/or filing (as applicable) of the Amended and Restated Certificates of Incorporation, the Amended and Restated By-Laws, the Amended and Restated LLC Agreements, the Amended and Restated Limited Partnership Agreements, certificates of formation and/or organization, or similar constituent documents of the Reorganized Debtors (including the selection of the directors, officers, and/or managers of the respective Reorganized Debtors); any dissolution, consolidation, merger, or similar transaction involving any of the Subsidiary Debtors or Reorganized Subsidiary Debtors; and all other actions or transactions contemplated by the Plan, the Plan Documents, or such other documents, and all actions appropriate, necessary, or desirable to effectuate any of the foregoing or comparable transactions, shall be authorized and approved in all respects hereby without the need for any further corporate or similar action or court order.  All matters provided for in the Plan or in any Plan Document involving the corporate structure, assets, and/or operations of the Debtors or the Reorganized Debtors, and any corporate or similar action required by, or helpful to, the Debtors or the Reorganized Debtors in connection with the Plan or any of the Plan Documents shall be deemed to have occurred and shall be in effect, without any requirement of further action by the respective security holders, members, managers, officers, and directors of the Debtors or the Reorganized Debtors.  After the Confirmation Date and on or prior to the Effective Date, the appropriate members of the Boards of Directors and/or members, managers, or officers of the Debtors and the Reorganized Debtors are authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates, and instruments contemplated by the Plan and/or any of the Plan Documents in the name of and on behalf of the applicable Debtor(s) or Reorganized Debtor(s).

6.5.    **Administration of the Plan.**

(a)    After the Effective Date, each of the Reorganized Debtors is authorized to perform those responsibilities, duties, and obligations set forth or contemplated herein, including, without limitation, subject to Section 6.5(b) hereof, making distributions as provided under the Plan; objecting to

the allowance of any Claim or Interest, and prosecuting any litigation pertaining thereto or with respect to any Avoidance Claim; paying such Claims as may be later Allowed, as contemplated by the dispute resolution procedures contained in Plan Section 6.12; and overseeing and governing the continuing affairs and operations of the Reorganized Debtors on a go-forward basis.

(b)     If Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), the Unsecured Creditor Agent shall be (i) authorized and directed to establish the Unsecured Creditor Escrow Account to hold the Unsecured Creditor Cash Pool, make distributions to Holders of Allowed Aggregate Unsecured Claims therefrom as provided under the Plan; (ii) authorized, subject to the Litigation Protocol, to object to the allowance of any Class 3 Claim and to prosecute on behalf of the Debtors and the Reorganized Debtors, as applicable, any litigation pertaining thereto or with respect to any Avoidance Claim; and (iii) authorized and directed to pay such Claims as may later be Allowed, as contemplated by the dispute resolution procedures contained in Plan Section 6.12.

(c)     The Reorganized Debtors and the Unsecured Creditor Agent (if applicable) may retain without further Bankruptcy Court approval or notice such management, law firms, accounting firms, experts, advisors, agents, consultants, investigators, appraisers, auctioneers, or other professionals as they may deem desirable, necessary, or appropriate, including, without limitation, a transfer or disbursing agent, to aid them in the performance of their duties and obligations under the Plan and Confirmation Order. It shall not be a requirement that any such parties retained by any of the Reorganized Debtors or the Unsecured Creditor Agent be a "disinterested person" (as such term is defined in Bankruptcy Code § 101(14)), and such retained parties may include Professionals or other Persons who had previously been active in these Cases on behalf of any Debtor, Creditor, or Interest Holder, the Creditors Committee, or other constituency.

(d)     The Reorganized Debtors shall be responsible for filing all federal, state, and local tax returns for the Debtors and for the Reorganized Debtors.

(e)     To the extent the manner of performance is not specified herein, the Debtors and the Reorganized Debtors shall have the discretion to carry out and perform all other obligations or duties imposed on them, or actions contemplated or authorized, by the Plan, any Plan Document, or by law in any manner their respective Boards of Directors, managers, or officers so choose.

6.6.    **Provisions Relating to the Existing Notes, OHB Common Stock, Operational Liens, and the Credit Facilities.**

(a)     On the Effective Date, the Junior Subordinated Notes; the Trust Preferred Securities; any and all notes issued in connection with the Revolving Credit Facility, or the DIP Facility; the Guarantees; the Old OHB Common Stock and any other Interests in OHB; the Existing Stock Option Plans; and any other options, warrants, calls, subscriptions, or other similar rights or other agreements or commitments, contractual or otherwise, obligating any of the Debtors to issue, transfer, or sell any shares of Old OHB Common Stock or other Interest in OHB, shall be automatically canceled and deemed terminated, extinguished, and of no further force and effect without further act or action under any applicable agreement, law, regulation, order, or rule, and the Holders thereof or the parties thereto shall have no rights, and such instruments or agreements shall evidence no rights, except the right to receive the distributions (if any) to be made to the Holders of such instruments under the Plan. Notwithstanding the foregoing, the Junior Subordinated Notes, the Trust Preferred Securities, the Junior Subordinated Notes Indentures, and the Trust Agreement shall continue in effect solely for the purposes of (i) allowing the Holders of the Junior Subordinated Notes and the Trust Preferred Securities to receive their distributions hereunder, (ii) allowing the Indenture Trustees or its respective nominees to make

distributions, if any, to be made on account of the Junior Subordinated Notes Claims or the Trust Preferred Securities Claims, (iii) permitting the Indenture Trustees to assert their Indenture Trustee Charging Liens against such distributions for payment of the Indenture Trustee Fees (but, for the avoidance of doubt, not upon the distributions to be turned over to the Revolving Credit Facility Agent pursuant to this Plan), (iv) allowing the Indenture Trustees to enforce any right or other Claim they may have under the Junior Subordinated Notes Indentures and the Trust Agreement (subject to all rights and defenses of the Debtors and the Reorganized Debtors), (v) permitting the Indenture Trustees to exercise their rights and obligations relating to the interests of Holders of the Allowed Junior Subordinated Notes Claims and the Allowed Trust Preferred Securities Claims pursuant to the applicable Junior Subordinated Notes Indenture or the Trust Agreement (subject to all rights and defenses of the Debtors and the Reorganized Debtors), and (vi) allowing the Indenture Trustee to appear in these Cases. On the Effective Date, as provided in Sections 3.2 and 5.2 hereof, at the election of the Debtors or the Reorganized Debtors, as applicable, (i) the respective letter of credit issuers under the Credit Facilities shall, to the extent permissible under the applicable agreement, receive cancellation without draw of all outstanding letters of credit issued thereunder, (ii) the Debtors or the Reorganized Debtors, as applicable, shall arrange for the issuance of additional letters of credit in favor of the such issuers, equal to such issuers' maximum exposure under such letters of credit, in a form and substance satisfactory to such issuers, or (iii) the outstanding letters of credit thereunder shall be secured by Cash equal to 105% of such issuers' maximum exposure under such outstanding letters of credit.

(b)     No Holder of any notes issued in connection with any of the Credit Facilities, the Trust Preferred Securities, the Junior Subordinated Notes, or any of the Guarantees shall be entitled to any distribution under the Plan unless and until such Holder has first surrendered or caused to be surrendered any such notes or Guarantees to the applicable Administrative Agent or Indenture Trustee or its respective nominee, which in turn shall surrender any and all such notes or Guarantees to the Debtors or the Reorganized Debtors, or, in the event that such original notes or Guarantees have been lost, destroyed, stolen, or mutilated, has first executed and delivered an affidavit of loss and indemnity with respect thereto in a form customarily utilized for such purposes that is satisfactory to the Debtors or the Reorganized Debtors, and, in the event the Debtors or the Reorganized Debtors so request, has first furnished a bond in form and substance (including, without limitation, amount) satisfactory to the Debtors or the Reorganized Debtors (as applicable). If a Holder has actual possession of any note or Guarantee issued in connection with any Credit Facility, Trust Preferred Security, Junior Subordinated Note, or any of the Guarantees, then such Holder must physically surrender or cause to be surrendered its note(s) or Guarantee(s) to the applicable Administrative Agent or Indenture Trustee or its respective nominee for subsequent distribution to the Debtors or the Reorganized Debtors (as applicable), in accordance with the procedures required by the Debtors. As soon as practicable after such surrender of the applicable note or Guarantee to the Debtors (or the Reorganized Debtors), or such delivery of an affidavit of loss and indemnity and such furnishing of a bond as provided in this Section 6.6(b), the Debtors, the Reorganized Debtors, or the Unsecured Creditor Agent (as applicable) shall make the distributions provided in the Plan with respect to the applicable Allowed Claim(s) (as and to the extent as set forth in the Plan), although the Debtors, the Reorganized Debtors, or the Unsecured Creditor Agent (as applicable) may, in their sole discretion, elect to make any such distributions prior to the surrender of the applicable note or Guarantee. Promptly upon the surrender of such instruments, the Debtors or the Reorganized Debtors (as applicable) shall cancel any and all notes issued in connection with any of the Credit Facilities, the Trust Preferred Securities, the Junior Subordinated Notes, or any of the Guarantees.

(c)     Unless Reinstated, all Operational Liens shall be deemed discharged, released, null and void, terminated, and of no force and effect on the Effective Date. Each Holder of a Secured Operational Lien Claim shall be treated in accordance with Section 4.4 of the Plan and each Holder of an Operational Lien Claim that is not a Secured Operational Lien Claim or an Other Secured Claim shall be treated in accordance with Plan Section 5.3 as the Holder of an Aggregate Unsecured Claim or Plan