# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 10-10684 (PJW) |
| ORLEANS HOMEBUILDERS, INC., et al.,[1] | Jointly Administered |
| Debtors. | Re: Docket Nos. 871, 1101, & 2163 |
|  | Obj. Deadline: December 8, 2010 at 4:00 p.m. |
|  | Hearing Date: January 6, 2010 at 2:00 p.m. |

## DEBTORS' THIRD MOTION
## REQUESTING EXTENSION OF EXCLUSIVE PERIODS WITHIN WHICH
## TO FILE PLAN OF REORGANIZATION AND TO SOLICIT VOTES THEREON

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion") for an order, pursuant to Bankruptcy Code § 1121(d), further extending the Exclusive Periods (as

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each of the Debtors' tax identification numbers, are: Orleans Homebuilders, Inc. (4323), Brookshire Estates, L.P. (8725), Community Management Services Group, Inc. (6620), Greenwood Financial Inc. (7510), Masterpiece Homes, LLC (1971), OHB Homes, Inc. (0973), OHI Financing, Inc. (6591), OHI PA GP, LLC (2675), OPCNC, LLC (8853), Orleans Arizona Realty, LLC (9174), Orleans Arizona, Inc. (2640), Orleans at Bordentown, LLC (4968), Orleans at Cooks Bridge, LLC (4185), Orleans at Covington Manor, LLC (9891), Orleans at Crofton Chase, LLC (8809), Orleans at East Greenwich, LLC (9814), Orleans at Elk Township, LLC (6891), Orleans at Evesham, LLC (7244), Orleans at Falls, LP (2735), Orleans at Hamilton, LLC (9679), Orleans at Harrison, LLC (4155), Orleans at Hidden Creek, LLC (3301), Orleans at Jennings Mill, LLC (4693), Orleans at Lambertville, LLC (0615), Orleans at Limerick, LP (7791), Orleans at Lower Salford, LP (9523), Orleans at Lyons Gate, LLC (2857), Orleans at Mansfield LLC (1498), Orleans at Maple Glen LLC (7797), Orleans at Meadow Glen, LLC (4966), Orleans at Millstone River Preserve, LLC (8810), Orleans at Millstone, LLC (8063), Orleans at Moorestown, LLC (9250), Orleans at Tabernacle, LLC (9927), Orleans at Thornbury, L.P. (4291), Orleans at Upper Freehold, LLC (3225), Orleans at Upper Saucon, L.P. (3715), Orleans at Upper Uwchlan, LP (8394), Orleans at Wallkill, LLC (2875), Orleans at West Bradford, LP (4161), Orleans at West Vincent, LP (9557), Orleans at Westampton Woods, LLC (8095), Orleans at Windsor Square, LP (9481), Orleans at Woolwich, LLC (9215), Orleans at Wrightstown, LP (9701), Orleans Construction Corp. (0893), Orleans Corporation (8770), Orleans Corporation Of New Jersey (5325), Orleans DK, LLC (5308), Orleans RHIL, LP (1938), Parker & Lancaster Corporation (1707), Parker & Orleans Homebuilders, Inc. (5269), Parker Lancaster, Tidewater, L.L.C. (7432), Realen Homes, L.P. (8293), RHGP LLC (8197), Sharp Road Farms Inc. (1871), Stock Grange, LP (4027), and Wheatley Meadows Associates (5459).

defined below) each by 60 days. In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction to consider this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Bankruptcy Court. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is Bankruptcy Code § 1121(d).

## INTRODUCTION

2. On March 1, 2010 (the "Petition Date"), each of the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3. On March 3, 2010, this Court entered an order approving the joint administration of these cases. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in these cases.

4. On March 11, 2010, the Office of the United States Trustee appointed the members of the Official Committee of Unsecured Creditors in these cases (the "Committee").

5. The Debtors build, develop, market, and sell single-family homes, townhouses, and condominiums to various segments of the homebuyer market.[2] The Debtors also regularly purchase land and finished lots for development, improve land to be ready for

---

[2] For more information on the Debtors, please review the Debtors' public filings with the Securities and Exchange Commission and the Bankruptcy Court, accessible at http://www.sec.gov, http://www.orleanshomes.com, and http://www.orleanshomesreorg.com.

home construction, obtain land entitlements, and invest in joint-venture projects with other homebuilders.

6. The Debtors have developments or projects in the following regions: (a) the Northern Region (including southeastern Pennsylvania, central and southern New Jersey, and Orange County, New York); (b) the Southern Region (including Charlotte, Raleigh, and Greensboro, North Carolina, including adjacent counties in South Carolina, and Richmond and Tidewater, Virginia); (c) the Midwestern Region (including Chicago, Illinois); and (d) the Florida Region (including Orlando, Florida).

7. Most of the Debtors' projects are "master-planned" residential communities where the Debtors purchase plots of land, obtain the necessary approvals, build several model and "spec" (constructed but unsold) homes, and then build additional "backlog" homes upon entering into sales contracts with homebuyers. The Debtors typically act as a general contractor and employ subcontractors to construct homes and install site improvements.

8. On April 13, 2010, the Debtors filed a motion (the "Sale Motion") (Docket No. 545) to sell substantially all of their assets for $170 million, subject to adjustments, and subject to higher or better offers. Subsequent to filing the Sale Motion but prior to consideration by this Court, the Debtors withdrew the Sale Motion and elected to pursue a stand-alone plan of reorganization.

9. Thereafter, the Debtors negotiated a plan of reorganization (as amended, modified, and supplemented, the "Plan") (Docket Nos. 1821, 2153, 2217, 2593) and accompanying disclosure statement (as amended and modified, the "Disclosure Statement") (Docket Nos. 1822, 2152, 2216). This Court approved the Disclosure Statement by Order dated October 4, 2010 (Docket No. 2220).

10. The Debtors have since completed the process of soliciting votes to accept or to reject the Plan, and the confirmation hearing is currently scheduled for November 30, 2010.

## FACTUAL BACKGROUND

11. Bankruptcy Code § 1121(b) and (c) provides for an initial period of 120 days after the petition date during which a debtor has the exclusive right to file a plan of reorganization. Section 1121(c) also states that, if a debtor files a plan within this 120-day exclusive period, then competing plans may not be filed before 180 days after the petition date to allow the debtor to solicit and obtain acceptances on its plan.

12. In these cases, the Debtors' exclusive period to file a plan (the "Plan Exclusive Period") was initially scheduled to expire on June 29, 2010, and the attendant solicitation period (the "Solicitation Exclusive Period" and, together with the Plan Exclusive Period, the "Exclusive Periods") was initially scheduled to expire on August 28, 2010.

13. On May 14, 2010, the Debtors filed a motion (the "First Extension Motion") (Docket No. 871) to extend the exclusive periods by 90 days. This Court issued an order (Docket No. 1101) granting the First Extension Motion on June 2, 2010, pursuant to which the Plan Exclusive Period was extended through and including September 27, 2010, and the Solicitation Exclusive Period was extended through and including November 26, 2010, without prejudice to the Debtors' right to seek further extensions of each deadline.

14. On September 27, 2010, the Debtors filed a motion (the "Second Extension Motion") (Docket No. 2163) to extend the exclusive periods by an additional 60 days. This Court issued an order (Docket No. 2492) granting the Second Extension Motion on November 8, 2010, pursuant to which the Plan Exclusive Period was extended through and including November 26, 2010, and the Solicitation Exclusive Period was extended through and

4

including January 25, 2011, without prejudice to the Debtors' right to seek further extensions of each deadline.

15. Pursuant to Local Rule 9006-2, because this Motion was filed prior to expiration of the Exclusive Periods, the Exclusive Periods are automatically extended until the Court considers this Motion.

## RELIEF REQUESTED

16. The Debtors seek an order further extending the Exclusive Periods by 60 days to permit them to complete their plan- confirmation process without potential distraction or delay. Specifically, the Debtors seek to extend the Plan Exclusive Period by an additional 60 days, through and including January 25, 2011, and the Solicitation Exclusive Period also by an additional 60 days, through and including March 25, 2011, without prejudice to the Debtors' right to seek further extensions thereof.

## BASIS FOR RELIEF

17. To promote the formulation of a considered and consensual Chapter 11 plan, Congress gave Chapter 11 debtors the exclusive right to propose a plan of reorganization for a specified and extendable period. See In re Ames Dep't Stores, Inc., No. 90-11233, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors."). The exclusivity granted pursuant to Bankruptcy Code § 1121 was intended to afford a Chapter 11 debtor a full and fair opportunity to develop, propose, negotiate, confirm, and consummate a Chapter 11 plan without the disruption of its business that might be caused by a competing plan. Accordingly, pursuant to Section 1121(d), if a debtor's exclusive periods prove to be an

unrealistic timeframe for the proposal and the solicitation of a plan, the Court may extend the Exclusive Periods for "cause."[3]

18. Whether "cause" exists to extend a debtor's exclusive periods to file and to solicit acceptances of a plan of reorganization is within the sound discretion of the bankruptcy court and is based on the facts and circumstances of each particular case. See In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). Indeed, although the term "cause" is not defined in the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. 95-595, at 232 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191; see also In re McLean Indus., Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. 95-595, at 232 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191); In re Pub. Serv. Co. of N.H., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("the legislative intent ... [is] to promote maximum flexibility").

19. Courts have identified several factors (which often overlap to varying degrees) relevant to a determination of whether cause exists under Bankruptcy Code § 1121(d). See McLean Indus., Inc., 87 B.R. at 834 (identifying various factors used by courts to determine whether cause exists to extend exclusivity); In re Dow Corning Corp., 208 B.R. 661, 664-65, 670 (Bankr. E.D. Mich. 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Such factors include, without limitation, (i) the size and complexity of a debtor's case; (ii) the existence of good-faith progress toward confirmation of a plan; (iii) that the debtor is not

---

[3] Bankruptcy Code § 1121(d)(1) provides, in pertinent part: "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." The limitations on the extensions of exclusivity set forth in Section 1121(d)(2) are not implicated here.

seeking to extend exclusivity to pressure creditors to submit to the debtor's demands; (iv) the existence of an unresolved contingency; (v) the fact that the debtor is paying its bills as they come due; and (vi) the amount of time that has elapsed in a bankruptcy case. See, e.g., In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); McLean, 87 B.R. at 834; accord In re Express One, 194 B.R. at 100 (identifying the above factors, among others, as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269-70 (Bankr. D.D.C. 1986) (holding that debtor showed "cause" to extend exclusivity period based upon certain of the factors set forth above). Courts in this Circuit have also recognized substantially similar factors as relevant in determining what constitutes "cause" under Section 1121(d). See, e.g., In re Burns & Roe Enter., Inc., No. 00-41610, 2005 WL 6289213, at *3, *5 (D.N.J. Nov. 2, 2005) (considering factors substantially similar to those above and affirming the decision of a Bankruptcy Court granting motion to extend exclusivity) (citations omitted).

20. When determining whether cause exists to extend exclusivity, courts assess the totality of the circumstances. Not all factors are relevant in every case, and courts have used a subset of the factors. See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003). The Debtors submit that at least several (if not all) of the factors set forth above are met here and that an extension of the Exclusive Periods is warranted in these cases.

A. **The Size and Complexity of the Debtors' Chapter 11 Cases Justify Extension of the Exclusive Periods**

21. As one court has noted, "[t]he traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization." Express One, 194 B.R. at 100 (extending exclusive filing period in part because of size and complexity of

case where pre-petition claims against estate exceeded $100 million). Indeed, Congress recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of a debtor's exclusive periods: "if an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. 95-595, at 232 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191; see also Texaco, 76 B.R. at 325-27 (holding that cause existed to grant the debtor's first request to extend exclusivity based on the size and complexity of the case alone).

22. The size and complexity of these cases justify the requested extension of the Exclusive Periods. Specifically, the Debtors' cases involve 58 entities, and they have developments or projects in five regions across eight states and more than 200 employees. Moreover, the Debtors owe approximately $340 million under a pre-petition senior secured credit agreement, and this Court has approved debtor-in-possession financing for these cases of up to $120 million.

23. Thus, with various interests spread across thousands of creditors with potential claims against the Debtors' estates of hundreds of millions of dollars, the size and complexity of the Debtors' cases weigh in favor of the requested extension of the Exclusive Periods. See, e.g., Express One, 194 B.R. at 100 (exclusivity extended on account of size and complexity of bankruptcy case where $100 million in claims asserted against debtor's estate).

**B.  The Debtors' Progress in these Cases**
**Warrants an Extension of the Exclusive Periods**

24. In addition to the substantial effort required to operate their business since the Petition Date, the Debtors, their management team, and their professionals have worked diligently to stabilize operations and maximize enterprise value, while negotiating with various

parties to formulate a consensual plan of reorganization, for which the confirmation hearing is scheduled for next week. Although the Debtors have completed the solicitation process for the Plan, and they do not believe any other party would be permitted to file a competing plan without seeking the approval of this Court, the Debtors now seek a 60-day extension of the Exclusive Periods out of an abundance of caution to allow them to confirm the Plan without any potential interference, distraction, or delay.

C.  **Extension of the Exclusive Periods Will Not Harm the Debtors' Creditors or Other Parties-in-Interest**

25. Extension of the Exclusive Periods will not harm the Debtors' creditors or other parties-in-interest. In fact, it is unlikely that any of the Debtors' creditors (who voted overwhelmingly in favor of the Plan) or any other party-in-interest would be in a position to propose a competing plan before the expiration of the Exclusive Periods, if extended as requested herein. As such, the proposed extension would permit the Debtors to confirm the Plan in an orderly and expeditious fashion, for all parties' benefit.

26. Additionally, the Debtors are not in any way seeking an extension of the Exclusive Periods to delay creditors or force them to accede to their demands. As mentioned above, the Debtors are seeking confirmation of the Plan next week, and they have requested a 60-day extension of the Exclusive Periods in order to ensure the completion of an orderly confirmation process.

D.  **The Debtors Are Paying Their Debts as They Become Due**

27. An extension of the Exclusive Periods is further warranted because the Debtors have generally been paying their post-petition debts as they become due. The Debtors' post-petition financing has enabled the Debtors to pay appropriate post-petition creditors, employees, lessors, and vendors in the ordinary course of business, and the Debtors believe that

all of such expenses have been incorporated into their operational budget, as amended from time to time.

**E.    These Cases Have Been Pending for Less Than Nine Months**

28.    Fewer than nine months have elapsed since the Debtors filed for Chapter 11 protection, a fact that is favorable to the Debtors' request for an extension of the Exclusive Periods, especially considering that they will be seeking confirmation of the Plan next week. See McLean, 87 B.R. at 835 (granting an extension where the case was on file for less than one year); cf. Adelphia, 352 B.R. at 589 (denying motion to terminate exclusivity notwithstanding fact that four years had elapsed in debtor's Chapter 11 case).

**F.    Courts Have Granted Similar Relief**

29.    The extension sought by the Debtors in this Motion is reasonable when compared to exclusivity extensions in other homebuilder cases. See, e.g., In re WCI Cmtys., Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. June 16, 2009) (Docket No. 1841) (approving further request for exclusivity extension of 120 days); In re Tousa, Inc., Case No. 08-10928 (JKO) (Bankr. S.D. Fla. Oct. 24, 2008) (Docket No. 2011) (approving further request for exclusivity extension of 120 days); In re Kimball Hill, Inc., Case No. 08-10095 (SPS) (Bankr. N.D. Ill. October 14, 2008) (Docket No. 698) (granting further extension of 89 days to file plan and further extension of 88 days to solicit acceptances thereof).

30.    Moreover, courts in this District and elsewhere have routinely granted requests by debtors to further extend their periods of exclusivity, often for much longer periods than requested here. See In re Abitibibowater Inc., Case No. 09-11296 (KJC) (Bankr. D. Del. May 12, 2010) (Docket No. 2121) (approving further request for exclusivity extension of 97 days); In re Semcrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del April 15, 2009) (Docket

No. 3696) (granting further extension of 58 days to file plan and further extension of 125 days to solicit acceptances thereof); In re Lehman Brothers Holdings Inc., No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 20, 2009) (second extension of 240 days); In re Frontier Holdings, Inc., No. 08-11298 (RDD) (Bankr. S.D.N.Y. Jan 21, 2009) (second extension of 120 days); In re Calpine Corp., No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2006) (second extension of 180 days); In re Delta Air Lines Inc., No. 05-17923 (ASH) (Bankr. S.D.N.Y.) June 30, 2006) (second extension of 120 days).

31. Based upon the foregoing, the Debtors submit that ample cause exists in these cases to extend the Exclusive Periods and, accordingly, that the relief requested herein is in their best interests and the best interests of their estates, creditors, and other parties-in-interest.

## NOTICE

32. Notice of this Motion has been served upon the Office of the United States Trustee, counsel to the agent for the Debtors' pre- and post petition lenders, the transfer agent for the stock of Orleans Homebuilders, Inc., counsel to the Committee, and all other parties that have filed notices of appearance and requested service of papers in these cases. The Debtors submit that no other or further notice need be given in light of the circumstances of these cases.

## NO PRIOR REQUEST

33. Other than the First Extension Motion and the Second Extension Motion, no prior request for the relief sought herein has been made to this or to any other court.

*(Remainder of page intentionally left blank.)*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: November 24, 2010
Wilmington, Delaware

**ELLIOTT GREENLEAF**

*/s/ Shelley A. Kinsella*

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com

- and -

CAHILL GORDON & REINDEL LLP
Joel H. Levitin
Richard A. Stieglitz Jr.
Michael R. Carney
Eighty Pine Street
New York, New York, 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
Email: jlevitin@cahill.com
Email: rstieglitz@cahill.com
Email: mcarney@cahill.com

*Attorneys for the Debtors and Debtors-in-Possession*