Lien release documents, and/or the discharge, release, and related provisions of Article IX of the Plan, for all purposes with respect to the Operational Liens and Operational Lien Claims. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments as provided by the Debtors, the Reorganized Debtors, or related parties (including the Confirmation Order and/or the applicable Lien Waivers or such other Lien release documents as described in this Plan Section 6.6(c)) necessary and appropriate to revise all applicable records to reflect that the Operational Liens at issue have been released, discharged, terminated, and are thus null and void and of no force and effect. The Debtors and the Reorganized Debtors (as the case may be) shall be authorized to execute and deliver such documents, in the name and stead of the Holder of any Operational Lien that is not Reinstated, or take any other actions as may be reasonable, necessary, or appropriate (including, without limitation, filing termination statements and directing third parties holding collateral or other property of the Debtors to promptly remit such collateral or property without further consent of any other party) to effectuate the releases, discharges, and terminations of Operational Liens contemplated by this Plan, and, at their discretion, shall be appointed as attorney-in-fact for the purposes of executing and/or filing any Lien Waiver or any other related or appropriate documents with any entity in order to effectuate the foregoing release, discharge, and termination of the applicable Operational Liens. Notwithstanding anything in the Plan to the contrary, but subject to the terms of the Junior Subordinated Notes Indentures, the Trust Agreement, and applicable law, the Plan shall not be deemed to affect or impair any applicable Indenture Trustee Charging Lien upon the property to be distributed by the Unsecured Creditor Agent to the Holders of the Junior Subordinated Notes Claims or the Trust Preferred Securities Claims (as applicable) hereunder (but, for the avoidance of doubt, not upon the distributions to be turned over to the Revolving Credit Facility Agent pursuant to this Plan) to secure the payment of Allowed fees and expenses incurred or to be incurred by the applicable Indenture Trustees or obligations in favor of the Indenture Trustees (subject to all rights and defenses thereto), which Liens upon the property to be so distributed shall continue notwithstanding the occurrence of the Confirmation Date or the Effective Date and notwithstanding any discharge of the Debtors pursuant to the Plan and Bankruptcy Code § 1141. Notwithstanding anything in the Plan to the contrary, but subject to the terms of the Junior Subordinated Notes Indentures, the Trust Agreement, and applicable law, the Indenture Trustees may at any time, and from time to time, pay or reserve for such fees, expenses, and other obligations from any such money or property so distributed hereunder that is held by the applicable Indenture Trustees (but, for the avoidance of doubt, not upon the distributions to be turned over to the Revolving Credit Facility Agent pursuant to this Plan).

(d)    On the Effective Date, the obligations with respect to and under the Trust Preferred Securities, the Junior Subordinated Notes, the Junior Subordinated Notes Indentures, and the Trust Agreement shall be deemed terminated, canceled, and extinguished (all without any further action by any Person or the Bankruptcy Court), and shall have no further legal effect, and such instruments shall evidence no rights except the right to receive the distributions (if any) to be made to the Holders of such instruments under the Plan (which distributions shall, subject to the terms and conditions of the Plan, in turn be distributed on a Pro Rata basis by the Junior Subordinated Notes Indenture Trustees either to (y) the Holders of the Trust Preferred Securities Claims or the Junior Subordinated Notes Claims or (z) the Holders of the Allowed Lenders' Deficiency Claim, in the manner as further set forth in the Plan (including, without limitation, Section 5.5 hereof)). Notwithstanding anything herein to the contrary, the authority of the Junior Subordinated Notes Indenture Trustees under the Junior Subordinated Notes Indentures shall be terminated as of the Effective Date, except as otherwise provided for in Sections 5.5(c) and 6.6(a) hereof.

(e)    All distributions under the Plan on account of the Allowed Revolving Credit Facility Claims shall initially be distributed to the Revolving Credit Facility Agent for further distribution to the Holders of Allowed Revolving Credit Facility Claims as of the Distribution Record Date, pursuant to the terms and subject to the conditions of the Revolving Credit Facility and the Plan. Upon the

delivery of the foregoing distributions to the Revolving Credit Facility Agent, the Debtors and the Reorganized Debtors shall be released of all liability with respect to their obligation to make such distributions.    The Revolving Credit Facility Agent shall thereafter take all steps necessary and appropriate to effectuate such further distribution thereof to the Holders of the Allowed Revolving Credit Facility Claims on a Pro Rata basis.  Similarly, all distributions under the Plan on account of the Allowed DIP Facility Claims shall initially be distributed to the DIP Facility Agent, for further distribution to the Holders of Allowed DIP Facility Claims as of the Distribution Record Date, pursuant to the terms and subject to the conditions of the DIP Facility and the Plan.  Upon the delivery of the foregoing distributions to the DIP Facility Agent, the Debtors and the Reorganized Debtors shall be released of all liability with respect to their obligation to make such distributions.    The DIP Facility Agent shall thereafter take all steps necessary and appropriate to effectuate such further distribution thereof to the Holders of the Allowed DIP Facility Claims on a Pro Rata basis.  On the Effective Date, all of the obligations and Liens under the respective Credit Facilities shall be deemed terminated, canceled, and extinguished (all without any further action by any Person or the Bankruptcy Court) and shall have no further legal effect other than as evidence of any right to receive distributions under the Plan as set forth in Sections 3.2, 5.2, 5.6, and 5.7 hereof; provided, however, that the respective Credit Facilities shall continue in effect and shall not be deemed canceled on the books and records of the applicable Administrative Agents, solely for the purposes of and to the extent necessary (i) to facilitate the respective distributions to the Revolving Credit Facility Lenders or the DIP Facility Lenders as of the Distribution Record Date, pursuant to the Plan and (ii) to enable the respective Administrative Agents to perform any and all current and future administrative functions.

(f)    Any Initial Avoidance Claims Proceeds and, in the event that Class 3 votes to accept the Plan, any portion of the Aggregate Unsecured Creditor Distribution to be distributed to the Holders of the Allowed Junior Subordinated Notes Claims in accordance with Section 5.3 or 5.5 hereof shall be distributed to the Junior Subordinated Notes Indenture Trustees (either by the Debtors or the Unsecured Creditor Agent, depending on whether or not Class 3 votes to accept the Plan), which may work with or through the facilities of DTC, for further distribution to the Holders of Allowed Junior Subordinated Notes Claims as of the Distribution Record Date, after paying or reserving for any unpaid Allowed Indenture Trustee Fees to the extent provided for by the Junior Subordinated Notes Indentures and in accordance with the Plan and with applicable law.  If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), all distributions other than any Initial Avoidance Claims Proceeds under the Plan on account of the Allowed Junior Subordinated Notes Claims shall be distributed to the Revolving Credit Facility Agent for further distribution to the Holders of the Allowed Lenders' Deficiency Claim, pursuant to the terms and subject to the conditions of the Plan (including Section 5.5 hereof).    Upon the delivery of the foregoing distributions to the Junior Subordinated Notes Indenture Trustees and/or the Revolving Credit Facility Agent (as applicable), the Debtors, the Reorganized Debtors, and the Unsecured Creditor Agent (as applicable) shall be released of all liability with respect to their obligation to make such distributions.  The Junior Subordinated Notes Indenture Trustees and the Revolving Credit Facility Agent, as applicable, shall thereafter take all steps necessary and appropriate to effectuate such further distribution thereof to the Holders of the Allowed Junior Subordinated Notes Claims and the Allowed Lenders' Deficiency Claim, respectively, on a Pro Rata basis.  Similarly, any Initial Avoidance Claims Proceeds and, in the event that Class 3 votes to accept the Plan, any portion of the Aggregate Unsecured Creditor Distribution to be distributed to Holders of the Allowed Trust Preferred Securities Claims in accordance with Section 5.5 hereof shall be distributed to the Indenture Trustee for the Trust Preferred Securities (either by the Debtors or the Unsecured Creditor Agent, depending on whether or not Class 3 votes to accept the Plan), which may work with or through the facilities of DTC, for further distribution to the Holders of Allowed Trust Preferred Securities Claims as of the Distribution Record Date, after paying or reserving for any unpaid Allowed Indenture Trustee Fees to the extent provided for by the Indenture for the Trust Preferred Securities and in accordance with the Plan and with applicable law.  If Class 3 votes as a Class in the

aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), all distributions other than any Initial Avoidance Claims Proceeds under the Plan on account of the Allowed Trust Preferred Securities Claims shall be distributed to the Revolving Credit Facility Agent, for further distribution to the Holders of the Allowed Lenders' Deficiency Claim, pursuant to the terms and subject to the conditions of the Plan (including Section 5.5 hereof). Upon the delivery of the foregoing distributions to the trustee for the Trust Preferred Securities and the Revolving Credit Facility Agent, the Debtors, the Reorganized Debtors, and the Unsecured Creditor Agent (as applicable) shall be released of all liability with respect to their obligation to make such distributions. The trustee for the Trust Preferred Securities and the Revolving Credit Facility Agent, as applicable, shall thereafter take all steps necessary and appropriate to effectuate such further distribution thereof to the Holders of the Allowed Trust Preferred Securities Claims and the Allowed Lenders' Deficiency Claim, respectively, on a Pro Rata basis.

(g)     The Indenture Trustees shall only be required to act and make distributions in accordance with the terms of the Plan and the applicable Indentures and shall have no (A) liability for actions taken in accordance with the Plan or (B) obligation or liability for distributions under the Plan to any party who does not hold an Allowed Claim against the Debtors as of the Distribution Record Date or who does not otherwise comply with the terms of the Plan.

(h)     The Debtors shall pay the reasonable, necessary, customary, and documented fees, charges, and expenses (including, without limitation, all reasonable and documented attorneys' fees and expenses) incurred by the respective Administrative Agents, and the Contributing Lender in the performance of any function associated with the Credit Facilities and the Plan (as applicable) during the period from and including the Petition Date until such time as all distributions provided for under the Plan to the Holders of Allowed Revolving Credit Facility Claims and Allowed DIP Facility Claims (as applicable) have been made. Nothing in the Plan shall be deemed to impair, extinguish, or negatively impact the Indenture Trustee Charging Lien upon any distributions to be made under the terms and conditions of the Plan to the Holders of Junior Subordinated Notes Claims but, for the avoidance of doubt, not upon any distributions to be turned over to the Revolving Credit Facility Agent pursuant to this Plan.

6.7.    **Delivery of Distributions; Unclaimed Property; Undeliverable Distributions.**

(a)     Except as may otherwise be provided in Sections 3.2, 5.3, 5.5, 6.7, and 6.8 hereof, any distributions to Holders of Allowed Claims under the Plan shall be made: (i) at the addresses set forth either on the Schedules or as otherwise set forth on the Debtors' respective books and records, or on the respective Proofs of Claim filed by such Holders in the event that the addresses indicated thereon differ from those set forth on the Schedules or as otherwise set forth on the Debtors' respective books and records, or upon the applicable securities depositories, clearing systems, or broker, bank, or custodial participants in the clearing system (as applicable); or (ii) at the addresses set forth in any written notices of address change delivered to the Debtors or the Reorganized Debtors (if after the Effective Date) after the date of any related Proof of Claim.

(b)     In accordance with Bankruptcy Code § 1143, any Holder of any note issued in connection with any of the Credit Facilities or any of the Guarantees that fails to surrender the applicable note or deliver an affidavit of loss and indemnity as provided herein prior to 5:00 p.m. (prevailing Eastern Time) on the date that is one year from and after the later of the Effective Date or the applicable Allowance Date with respect to any Claims arising from or relating to any such note issued in connection with any of the Credit Facilities or the Guarantees, shall be deemed to have forfeited all rights and claims in respect of such Claims and shall be forever barred from receiving any distributions under the Plan on account thereof. In such cases, any property held for distribution by the applicable Administrative Agent on account of Allowed Claims based on any such note issued in connection with the applicable Credit

Facility or any of the Guarantees, shall be made available for redistribution, on a Pro Rata basis, to all other Holders of Allowed Claims arising under the applicable Credit Facility that timely surrendered the applicable note or delivered an affidavit of loss and indemnity as provided herein. Similarly, other than with respect to any Reinstated Operational Lien(s), to the extent the Debtors or the Reorganized Debtors (as the case may be) are unable to effectuate the release, discharge, or termination in the manner provided in Plan Section 6.6(c) of an Operational Lien that is not being Reinstated, any Operational Lien Claimholder in Class 2C or Classes 3 or 3A, as applicable, that fails to execute a Lien Waiver as provided in Plan Section 6.6(c) prior to 5:00 p.m. (prevailing Eastern Time) on the date that is one year from and after the later of the Effective Date or the applicable Allowance Date with respect to any such Operational Lien Claims shall be deemed to have forfeited all rights and claims in respect of such Claims and shall be forever barred from receiving any distributions under the Plan on account thereof. In such cases, any property held for distribution by the Debtors or the Reorganized Debtors on account of applicable Allowed Class 2C Claims shall be kept by the Reorganized Debtors, and any property held for distribution by the Debtors or the Reorganized Debtors or the Unsecured Creditor Agent (as applicable) on account of applicable Allowed Class 3 or 3A Claims based on such Operational Liens shall be made available for redistribution, on a Pro Rata basis, to all other Holders of Allowed Class 3 or 3A Claims, as applicable.

(c)     Pursuant to Section 2.12.5 of the Revolving Credit Facility, and as set forth further in Plan Section 6.6(e), the distributions of OHB Holdings Units, New Notes, and Cash to be provided under Plan Sections 5.2, 5.5, and 5.7 on account of Allowed Revolving Credit Facility Claims (except as otherwise set forth in Plan Sections 5.5 and 5.7), shall be made by the Debtors or OHB Holdings, as applicable, on the Effective Date to the Revolving Credit Facility Agent for subsequent distribution to the Holders of Allowed Revolving Credit Facility Claims as of the Distribution Record Date. The Revolving Credit Facility Agent or an affiliate thereof shall serve as the transfer exchange agent for the initial distribution of the OHB Holdings Units and New Notes to the Holders of the Allowed Revolving Credit Facility Claims.

(d)     If the distribution to the Holder of any Allowed Priority Claim, Allowed Class 2B Claim, Allowed Class 2C Claim, Allowed Class 3 Claim, Allowed Class 3A Claim, or Allowed Class 3C Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address. The Reorganized Debtors shall retain any such undeliverable distributions.

(e)     Any Holder of an Allowed Claim who does not assert a claim for an undeliverable distribution prior to 5:00 p.m. (prevailing Eastern Time) on the date that is one year after the date by which such Holder was first entitled to such distribution shall no longer have any claim to, or interest in, such undeliverable distribution and shall be forever barred from receiving any distribution under the Plan.

(f)     Nothing contained in the Plan shall require the Debtors or the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

6.8.     **Funding of Cash Distributions under the Plan.** Any funds necessary to make the Cash distributions required under the Plan and/or to fund the future obligations of the Reorganized Debtors shall be made from: the Cash on hand of the Debtors and of the Reorganized Debtors; the Exit Credit Facility; the Sources and Uses Cash (to the extent available for distribution in accordance with Plan Section 5.2(a) under the terms and conditions of the Exit Credit Facility); the proceeds recovered from the prosecution of Avoidance Claims and other Causes of Action; the Cash generated as Unencumbered Asset Net Sale Proceeds, as and when received by the Debtors or the Reorganized Debtors, as applicable; and the future operations of the Debtors and the Reorganized Debtors (as applicable).

6.9.    **Unencumbered Assets and Distribution of Unencumbered Asset Net Sale Proceeds.**

(a)    The Unencumbered Assets shall be maintained, sold, transferred, or otherwise disposed of by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business. The Unencumbered Assets shall not be, and shall not be deemed to be, held in trust for the benefit of any Person, and the Debtors or the Reorganized Debtors, as applicable, shall be authorized to maintain, sell, transfer, or otherwise dispose of the Unencumbered Assets in their discretion and business judgment.

(b)    If Class 3 votes as a Class in the aggregate to reject the Plan in accordance with Bankruptcy Code § 1126(c), then subject to the terms and conditions of the Plan, including Sections 5.2, 5.3, 5.4, 5.5, 5.6, 5.7, and 6.6 hereof, the Reorganized Debtors (or any transfer or disbursing agent retained by the Reorganized Debtors pursuant to Plan Section 6.5(c)) shall make the distributions to the Holders of Allowed Claims in Class 3A, 3B, or 3D (as applicable) on a quarterly basis for each quarter in which the aggregate amount of (i) the Initial Avoidance Claims Proceeds, (ii) the Excess Avoidance Claims Proceeds, and (iii) the Unencumbered Asset Net Sale Proceeds then available for distribution to such Holders exceeds $1 million.

(c)    Any party-in-interest claiming to have a valid Lien upon any Asset listed on Exhibit 1 to the Disclosure Statement as an Unencumbered Asset must file an objection prior to the Plan Objection Deadline in order to challenge the inclusion of any such Asset thereon, or be forever barred from doing so, such that the applicable Asset shall be treated as an Unencumbered Asset for all purposes under the Plan and in these Cases.

(d)    Any Unencumbered Asset that is subject to a valid Operational Lien shall remain subject to such Lien for all purposes in these Cases, except to the extent that such Unencumbered Asset is unencumbered solely as the result of the Lien of the Revolving Credit Facility Lenders' having been avoided in the resolution of an Avoidance Claim, in which case the Operational Lien on such Unencumbered Asset shall only be recognized to the extent it would have come ahead of Revolving Credit Facility Lenders' Lien under applicable law had such Lien not been so avoided.  To the extent that the value of an Unencumbered Asset that is the subject of a valid Operational Lien exceeds the value of the Operational Lien Claim thereon, the difference in such value shall constitute an Unencumbered Asset that shall be available for distribution to Creditors in Class 3A, 3B, or 3D, subject to the terms and conditions of this Plan.

6.10.    **Funding of the Unsecured Creditor Cash Pool and Distributions to Holders of Allowed Aggregate Unsecured Creditor Claims if Class 3 Votes to Accept the Plan**.

(a)    If Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), on the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall fund the Unsecured Creditor Cash Pool by depositing Cash in the total amount of $6 million into the Unsecured Creditor Escrow Account. The Unsecured Creditor Escrow Account shall be managed by the Unsecured Creditor Agent for further distribution (in a time and manner to be determined by the Unsecured Creditor Agent, in his or her discretion) to the Holders of Allowed Aggregate Unsecured Claims as of the Distribution Record Date and/or any other Professionals or other parties entitled to a distribution thereof, in each case pursuant to the terms and subject to the conditions of the Plan. Upon the delivery of the $6 million Cash deposit to the Unsecured Creditor Escrow Account, the Debtors and the Reorganized Debtors shall be released of any and all liability with respect to (a) their obligations to the Holders of Allowed Aggregate Unsecured Claims and Lenders' Deficiency Claims, and (b) the Additional Committee Investigation Fees, the Agreed Committee Professional Fees, the Claim Resolution Fees, and any Additional Committee Professional Fees.  The Unsecured Creditor Agent shall thereafter take all

steps necessary and appropriate to effectuate such further distribution thereof to the Holders of the Allowed Aggregate Unsecured Claims in accordance with the Plan.

(b)    The Unsecured Creditor Escrow Account shall constitute a separate taxpayer and shall not be a grantor trust taxed under Sections 671-679 of the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of succeeding law).  The Unsecured Creditor Agent shall share information with Reorganized OHB upon reasonable request identifying and quantifying all distributions from, and deposits to, the Unsecured Creditor Escrow Account.

6.11.    **Manner of Payments Under the Plan.**  Any Cash distribution to be made by the Debtors or the Reorganized Debtors (as applicable) pursuant to the Plan may be made by a check on a United States bank selected by the Debtors or the Reorganized Debtors (as applicable); provided, however, that Cash distributions made to (i) foreign Holders of Allowed Claims may be paid, at the option of the Debtors or the Reorganized Debtors (as applicable), in such funds and by such means as are necessary or customary in a particular foreign jurisdiction, and (ii) either of the Administrative Agents on account of the DIP Revolving Facility Claims or the Revolving Credit Facility Claims, respectively, shall be made by wire transfer as directed by the applicable Administrative Agent from a domestic bank selected by the Debtors or the Reorganized Debtors (as applicable).

6.12.    **Disputed Claims.**

(a)    No distribution or payment shall be made on a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  On the Initial Distribution Date, any Cash distributions reserved for the Holders of any Disputed Claims in each Class under the Plan shall be deposited in deposit accounts that meet the requirements of Bankruptcy Code § 345 for the benefit of the Holders of Disputed Claims whose Claims are ultimately Allowed in the respective Classes in which the Disputed Claims are classified (each deposit account, a "**Disputed Claims Reserve**"); provided, however, that in the event Class 3 votes to accept the Plan, the Unsecured Creditor Agent may elect not to establish a separate Disputed Claims Reserve for Disputed Class 3 Claims, but may instead elect to set aside a portion of the Unsecured Creditor Cash pool that he or she determines, in his or her discretion, is sufficient to pay the Pro Rata share thereof to any Disputed Class 3 Claims that ultimately become Allowed Class 3 Claims.

(b)    Subject to the other provisions of the Plan (including Section 6.12(a) hereof), the Reorganized Debtors and/or the Unsecured Creditor Agent, as applicable (or any transfer or disbursing agent retained thereby pursuant to Plan Section 6.5(c)) shall withhold from the property to be distributed under the Plan and deposit in the applicable Disputed Claims Reserve a sufficient amount of such withheld property to be distributed on account of the amount of Claims that are Disputed Claims in such Class had such Disputed Claims been Allowed Claims as of the Initial Distribution Date for such Class under the Plan.

(c)    As to a Disputed Claim, the Bankruptcy Court shall, upon a motion by the Debtors or the Reorganized Debtors or any other party in interest in these Cases (as applicable), estimate the maximum allowable amount of such Disputed Claim and the amount to be placed in the applicable Disputed Claims Reserve on account of such Disputed Claim.  Any Creditor whose Claim (i) is estimated by an order of the Bankruptcy Court or (ii) is the subject of a motion or objection to (A) estimate or liquidate the Allowed amount of such Disputed Claim at zero dollars ($0.00) or (B) disallow, expunge, vacate, or otherwise strike such Disputed Claim in full on any grounds, as contemplated by Plan Section 6.12(a), shall not have any recourse to the Debtors or to the Reorganized Debtors (as applicable), any Assets theretofore distributed on account of any Allowed Claim, the Unsecured Creditor Cash Pool (if applicable), or any other entity or property in the applicable Class if the finally Allowed Claim of that

Creditor exceeds that estimated maximum allowable amount. Instead, such Creditor shall have recourse only to any remaining amounts in the applicable Disputed Claims Reserve or from any future distributions made by the Debtors or the Reorganized Debtors with respect to Allowed Claims in the applicable Class.

(d)    All earnings on any Cash held in a Disputed Claims Reserve (if any) shall be held in trust and shall be distributed only in the manner described in Section 6.12(e) of the Plan.

(e)    At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the distributions reserved for such Disputed Claim or such portion, plus any earnings thereon, net of any taxes, shall be released from the appropriate Disputed Claims Reserve and delivered to the Holder of such Allowed Claim in the manner as described in the Plan.  At such time as all or any portion of any Disputed Priority Claim or any Disputed Class 1, 2B, or 2C Claim is determined not to be an Allowed Claim, the distribution reserved for such Disputed Claim or such portion, plus any earnings thereon, net of any taxes, shall be released from the appropriate Disputed Claims Reserve and returned to the Reorganized Debtors.  At such time as all or any portion of any Disputed Class 3 Claim (or Disputed Class 3A Claim or Disputed 3B Claim, as applicable) is determined not to be an Allowed Claim, the distribution reserved for such Disputed Claim or such portion, plus any earnings thereon, shall be released from the appropriate Disputed Claims Reserve account and made available for redistribution in a timely manner to the other Holders of Allowed Claims of such Classes; provided, however, that none of the Unsecured Creditor Agent, the Debtors, the Reorganized Debtors, or any transfer or disbursing agent retained by the Reorganized Debtors pursuant to Plan Section 6.5(c) shall be required to make any such redistribution until the aggregate amount available with respect thereto is at least $25,000.  Upon the resolution of all Disputed Claims, any remaining amounts that had been reserved on account thereof shall be finally distributed in the manner set forth herein.

(f)    After the Confirmation Date, the Debtors, and on and after the Effective Date, the Reorganized Debtors and the Unsecured Creditor Agent subject to the Litigation Protocol (if applicable), shall have the authority to object to and litigate any Disputed Claims and shall have the authority to settle, compromise, resolve, or withdraw any objection to Disputed Claims.

6.13.    **Litigation Protocol.**  In consideration of the Unsecured Creditor Settlement, if Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), the Unsecured Creditor Agent shall be authorized to object to the allowance of any Class 3 Claim and prosecute on behalf of the Debtors and the Reorganized Debtors, as applicable, any litigation pertaining thereto or with respect to any such objection or Avoidance Claim, subject to the following:

(a)    The Unsecured Creditor Agent shall not object to the Allowance of any Class 3 Claim under Bankruptcy Code § 502(d) or commence or prosecute any Avoidance Claim against any Critical Vendor or Additional Vendor without the prior written consent of the Debtors or the Reorganized Debtors, as applicable, in the Debtors' or the Reorganized Debtors' sole discretion; for the avoidance of doubt, the Unsecured Creditor Agent may object to the Allowance of any Class 3 Claim for any reason other than under Bankruptcy Code § 502(d) without having to follow the Litigation Protocol.

(b)    If the Debtors or the Reorganized Debtors (as applicable) withhold their consent to the Unsecured Creditor Agent's objecting under Bankruptcy Code § 502(d) to the Allowance of a Class 3 Claim of, or the pursuit of an Avoidance Claim against, a Critical Vendor or an Additional Vendor, the Debtors or the Reorganized Debtors (as applicable) shall pay to the Unsecured Creditor Agent either the Critical Vendor Payment Amount or the Additional Vendor Payment Amount, as applicable, by depositing such amount into the Unsecured Creditor Escrow Account.  Any Critical Vendor Payment Amount or Additional Vendor Payment Amount received by the Unsecured Creditor Agent shall be

distributed to the Holders of Allowed Aggregate Unsecured Claims on a Pro Rata basis, as if such amounts were part of the initial Unsecured Creditor Cash Pool. Any dispute between the Debtors or the Reorganized Debtors, on the one hand, and the Unsecured Creditor Agent, on the other hand, as to (i) the Critical Vendor Payment Amount or the Additional Vendor Payment Amount or (ii) any objection (or lack thereof) to a Class 3 Claim that cannot be resolved in good faith by the Debtors or the Reorganized Debtors (as applicable) and the Unsecured Creditor Agent shall be determined by the Third-Party Mediator, whose determination shall be binding and not subject to appeal or Court approval. Each party shall bear its own fees and expenses in any such dispute and shall be responsible for an equal portion of the Third-Party Mediator's fees and expenses. Following any such determination by the Third-Party Mediator, the Debtors or the Reorganized Debtors (as applicable) may, notwithstanding such determination, consent to the Unsecured Creditor Agent's objecting to the Allowance of the applicable Class 3 Claim or the pursuit of the applicable Avoidance Claim against the Critical Vendor or the Additional Vendor and shall have no obligation to pay the Critical Vendor Payment Amount or the Additional Vendor Payment Amount.

(c)     If the Debtors or the Reorganized Debtors (as applicable) consent to the Unsecured Creditor Agent's objecting to the allowance of a Class 3 Claim under Bankruptcy Code § 502(d) or the pursuit of an Avoidance Claim against a Critical Vendor or an Additional Vendor, any amount recovered in such litigation by the Unsecured Creditor Agent shall be for the benefit of and distributed to the Holders of Allowed Aggregated Unsecured Claims on a Pro Rata basis, net of Claim Resolution Fees.

(d)     The Debtors shall grant the Unsecured Creditor Agent access during normal business hours to their books and records (subject to redaction for confidentiality and privilege), upon reasonable request (in time and scope), to the extent such books and records relate to an Avoidance Claim or an objection to a Class 3 Claim that the Unsecured Creditor Agent is authorized to pursue in accordance with the Litigation Protocol.

6.14.   **Deadlines for Determining the Record Holders of the Various Classes of Claims.**  At the close of business on the Distribution Record Date, the respective transfer records for the Credit Facilities, the Trust Preferred Securities, the Junior Subordinated Notes, and the Old OHB Common Stock shall be closed and there shall be no further changes in the record holders of the respective DIP Facility Claims, Revolving Credit Facility Claims, the Trust Preferred Securities Claims, the Junior Subordinated Notes Claims, General Unsecured Claims, Convenience Class Claims, or the Old OHB Common Stock after such date. None of the Debtors, the Reorganized Debtors, any disbursing agent or transfer agent retained by the Reorganized Debtors pursuant to Plan Section 6.5(c), nor the respective Administrative Agents or Indenture Trustees shall (as applicable) have any obligation to recognize any transfer of the DIP Facility Claims, the Revolving Credit Facility Claims, the Trust Preferred Securities Claims, the Junior Subordinated Notes Claims, General Unsecured Claims, Convenience Class Claims, the Old OHB Common Stock, any notes or other securities issued in connection with either of the Credit Facilities, the Junior Subordinated Notes, the Trust Preferred Securities, or any of the Guarantees, occurring after the Distribution Record Date (as applicable), and such parties shall be entitled, instead, to recognize and deal for all purposes hereunder with only those record holders thereof as of the close of business on the Distribution Record Date.

6.15.   **The Exit Credit Facility and the Exit Credit Facility Guarantees.**

(a)     On the Effective Date (or as soon thereafter as is practicable), the Reorganized Debtors, either as direct borrowers or as Exit Credit Facility Guarantors; the Exit Credit Facility Agent, as agent; and the Exit Credit Facility Lender(s), as lender(s) (in each case, as may be set forth in the final Exit Credit Facility), shall (as applicable) execute and deliver the Exit Credit Facility, the Exit Credit Facility Guarantees, and any and all security agreements, mortgages or extensions of mortgages,

certificates, and other instruments, agreements, assignments, and documents contemplated and/or required by the Exit Credit Facility, including, but not limited to, any and all such documents that serve to evidence and secure the Reorganized Debtors' respective obligations under the Exit Credit Facility and/or the Exit Credit Facility Guarantees (as applicable), and any Liens and security interests in favor of the Exit Credit Facility Lender(s) securing such obligations.

(b)    As further set forth in the Plan Supplement and subject to the terms specifically agreed upon by the Debtors, the Reorganized Debtors, the Exit Credit Facility Agent, the Exit Credit Facility Lender(s), and the Sponsors, it is anticipated that the Exit Credit Facility shall consist of (i) a new revolving credit facility in the aggregate amount of not less than $30 million (the "**New Revolver Financing**") and (ii) approximately $125 million in new term loan financing (the "**New Term Loan Financing**"). The respective components of the Exit Credit Facility shall have principal terms and conditions customary for similar financings, and the obligations thereunder shall be secured and guaranteed under terms substantially similar to the liens, security interests, and guarantees currently in place with respect to the Revolving Credit Facility. The expected use of the proceeds from the Exit Credit Facility shall be to: (i) satisfy the DIP Revolving Facility Claims; (ii) fund various emergence-related disbursements to the extent required; and (iii) provide for working capital needs of the Reorganized Debtors.

6.16.    **New OHB Common Stock and OHB Holdings Units.** On the Effective Date (or as soon thereafter as is practicable), (i) Reorganized OHB shall form OHB Holdings, (ii) Reorganized OHB shall issue the shares of New OHB Common Stock to OHB Holdings, and (iii) OHB Holdings shall issue in accordance with the terms of the Plan (including Section 5.2 hereof) the OHB Holdings Units to the Holders of Allowed Claims in Class 2A. As of the Effective Date, such shares of New OHB Common Stock and OHB Holdings Units shall represent 100% of the outstanding shares of New OHB Common Stock and OHB Holdings Units, respectively (in the case of OHB Holdings Units, subject to dilution with all other holders of OHB Holdings Units upon the issuance of any OHB Holdings Units granted pursuant to the Long Term Incentive Plan). In addition, on or after the Effective Date, OHB Holdings may issue OHB Holdings Units in accordance with the terms of the Long Term Incentive Plan or otherwise in accordance with the OHB Holdings LLC Agreement. Upon the issuance of such shares of New OHB Common Stock and OHB Holdings Units (including, but not limited to, any OHB Holdings Units granted pursuant to the Long Term Incentive Plan), as applicable, all such shares of New OHB Common Stock and OHB Holdings Units shall be deemed fully paid and nonassessable. For federal, state, and local tax purposes, the transaction described in the first sentence of this Section 6.16 shall be treated as if the Holders of Allowed Class 2A Claims directly exchanged such Claims for the shares of New OHB Common Stock and other consideration and immediately thereafter contributed such shares to OHB Holdings in exchange for OHB Holdings Units.

6.17.    **The New Notes and the New Notes Guarantees.** As further set forth in the Plan Supplement, on the Effective Date (or as soon thereafter as is practicable), Reorganized OHB shall issue the New Notes, in the aggregate principal amount of approximately $125 million less the amount of the New Term Loan Financing (which amount may be subject to change, depending on the amount of the New Revolver Financing), and the New Notes Guarantors shall execute and deliver the New Notes Guarantees concurrently therewith. The New Notes shall be secured by Liens and security interests on all or substantially all of the assets of the Reorganized Debtors that are junior in priority only to the Liens and security interests granted to the various Exit Credit Facility Lenders under the Exit Credit Facility and any Reinstated Operational Lien.

6.18.    **The Short Term Incentive Plan and the Long Term Incentive Plan.**

(a)    To the extent provided by the terms of the Short Term Incentive Plan, as set forth on a schedule in the Plan Supplement, within 30 days of the Effective Date, the Reorganized Debtors shall make a total of approximately $1,855,048.50 in Cash payments to approximately 40 of the Debtors' employees, including 15 employees who may be considered officers thereof, and six months thereafter, the Reorganized Debtors shall make an additional total of approximately $527,489.50 in Cash payments to approximately five of the Debtors' employees who may be considered officers.

(b)    On or following the Effective Date, the Long Term Incentive Plan shall be adopted by Reorganized OHB and OHB Holdings, as appropriate. The terms and conditions of the Long Term Incentive Plan shall be determined by the board of directors or managers of Reorganized OHB and OHB Holdings, as applicable.

6.19.    **No Fractional Shares.** No fractional OHB Holdings Units shall be issued or distributed under the Plan. Whenever any distribution to a particular Person would otherwise call for the distribution of a fraction of a share of OHB Holdings Units, the actual distribution of such units shall be rounded down to the next lower whole number. The total number of OHB Holdings Units to be distributed to a Class of Claims shall be adjusted as necessary to account for this rounding. No consideration shall be provided in lieu of fractional OHB Holdings Units that are rounded down.

6.20.    **De Minimis Distributions.** No Holder of an Allowed Claim shall be entitled to receive any distribution from any Debtor, Reorganized Debtor, any disbursing agent or transfer agent retained by the Reorganized Debtors pursuant to Plan Section 6.5(c), or the Unsecured Creditor Agent (as applicable) unless and until at least $75 in Cash is then on hand and specifically allocable for a distribution on account of such Allowed Claim. To the extent that an amount less than $75 in Cash does not become available and specifically allocable for distribution on account of a particular Claim within the date that is one year after the Effective Date, the Holder of such Claim shall have its Claim for, and its right to, such distribution discharged and shall be forever barred from asserting any such claim against, or interest in, the Reorganized Debtors or their respective property, or, if applicable, the Unsecured Creditor Agent or the Unsecured Creditor Cash Pool. Any Cash not distributed pursuant to this Plan Section 6.20 shall be the property of the Reorganized Debtors, or remain part of the Unsecured Creditor Cash Pool, as applicable, free and clear of any restrictions thereon, and any such Cash held by any disbursing agent or transfer agent retained by the Reorganized Debtors or the Unsecured Creditor Agent pursuant to Plan Section 6.5(c) shall be returned to the Reorganized Debtors or the Unsecured Creditor Agent, respectively.

6.21.    **Withholding and Reporting Requirements.** In connection with the Plan and all instruments issued in connection therewith and distributed thereunder, the Debtors, the Reorganized Debtors, OHB Holdings, the Unsecured Creditor Agent, any disbursing agent or transfer agent retained by the Reorganized Debtors or the Unsecured Creditor Agent pursuant to Plan Section 6.5(c), the Junior Subordinated Notes Indenture Trustees, the trustee under the Trust Preferred Securities, and the Administrative Agents, as the case may be, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements.

6.22.    **Direction to Parties.** From and after the Effective Date, the Reorganized Debtors and OHB Holdings may apply to the Bankruptcy Court for an order directing any party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien or the execution and delivery of a Lien Waiver, that is necessary, appropriate, or beneficial for the consummation of the Plan.

6.23.   **Setoffs.**   The Debtors shall, pursuant to Bankruptcy Code § 553, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim, all claims, rights, and Causes of Action of any nature that the Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any such claims, rights, and Causes of Action that any of the Debtors may possess against such Holder.

6.24.   **Preservation of Causes of Action.**   Except as otherwise set forth in the Plan, in accordance with Bankruptcy Code § 1123(b), as of the Effective Date, the Reorganized Debtors shall retain all Causes of Action (including, without limitation, any and all Avoidance Claims) and any actions that could be brought under Bankruptcy Code § 542 or 543, and shall have the power, subject to any applicable releases and/or waivers contained in the Plan (including, without limitation, in Article IX hereof), to (i) institute and present in the name of the Debtors, or otherwise, all proceedings (other than Avoidance Claims if Class 3 votes to accept the Plan, in which case Avoidance Claims may be instituted and presented by the Unsecured Creditor Agent as set forth below in this Plan Section 6.24) that they may deem proper in order to collect, assert, and enforce any claim, right, or title of any kind in or to any of the Debtors' Assets and/or to avoid any purported Lien, and (ii) to defend and compromise any and all actions, suits, and proceedings in respect of such Assets.   For the avoidance of doubt, if Class 3 votes to accept the Plan, the Unsecured Creditor Agent may prosecute any Avoidance Claim on behalf of the Holders of Allowed Class 3 Claims subject to the Litigation Protocol, and the Unsecured Creditor Agent shall have the power, subject to any applicable releases and/or waivers contained in the Plan (including, without limitation, in Article IX hereof), to institute and present in the name of the Debtors' Estates, or otherwise, all proceedings that he or she may deem proper in order to collect, assert, and enforce any such Avoidance Claim.

6.25.   **Secondary Liability Claims.**   Holders of all Allowed Secondary Liability Claims shall be entitled to only one distribution from the Debtors, which distribution shall be as provided in the Plan in respect of such underlying Allowed Claim, and which Allowed Secondary Liability Claim (as well as the underlying Allowed Claim) shall be deemed satisfied in full by the distributions on account of the related underlying Allowed Claim (if any).   No multiple recovery on account of any Allowed Claim and Related Allowed Secondary Liability Claim (including, but not limited to, on account of any Claim based on any of the Guarantees or any guarantee or similar right related to an Executory Contract) shall be permitted.

6.26.   **Plan Supplement.**   The Plan Supplement shall be filed with the Bankruptcy Court within the time established by the order of the Bankruptcy Court approving the Disclosure Statement or other applicable order of the Bankruptcy Court.   The Plan Supplement shall include (unless previously filed) the respective draft forms of a sample Amended and Restated Certificate of Incorporation, Amended and Restated LLC Agreement, Amended and Restated Limited Partnership Agreement, and Amended and Restated Bylaws, and any applicable certificates of formation and/or organization; the draft forms of the New Notes and the New Notes Guarantees; and certain additional information regarding the aggregate terms and conditions of the Short Term Incentive Plan.   The Debtors shall also include in the Plan Supplement a draft form of, or term sheet for, the Exit Credit Facility or any shareholder agreement, but only if and to the extent that such a draft(s) is available as of the date of the filing of the Plan Supplement. The Plan Supplement may also include revised or updated lists of (a) the Executory Contracts identified as "to be assumed" under the Plan and the proposed respective cure amounts due thereunder (if any), (b) the Executory Contracts identified as "to be rejected" under the Plan, (c) any revisions to Exhibit I to the Disclosure Statement, containing a revised schedule of the Unencumbered Assets, and/or (d) any revisions to Exhibit J to the Disclosure Statement, containing a revised schedule of developments that will not revest in the Reorganized Debtors.   The draft forms, summaries, lists, and schedules so set forth in the Plan Supplement may be amended, modified, or supplemented from time to time after the filing of the

Plan Supplement. Upon its filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Claims Agent, or through the Bankruptcy Court's website, www.nysb.uscourts.gov, or the website maintained by the Claims Agent, www.orleanshomesreorg.com.

6.27.    **Allocation of Distributions.**    All distributions paid to Holders of Allowed Claims in satisfaction thereof pursuant to the Plan shall be allocated, first, to the original principal amounts of such Claims (as determined for federal income tax purposes) and, second, to the portion of such Claims representing interest (as determined for federal income tax purposes); any excess thereafter shall be allocated to the remaining portion of such Claims.

6.28.    **Distribution Limitations.**    Notwithstanding any other provision of the Plan to the contrary, no distribution shall be made on account of any Claim or Interest, or part thereof, (a) that is not an Allowed Claim or an Allowed Interest (as applicable), (b) that has been avoided or is subject to any objection, or (c) is otherwise not entitled to any distribution pursuant to Bankruptcy Code § 502(d). The sum total of the value of the distributions to be made on the Initial Distribution Date to all Claims or Interests in a particular Class (if any) shall not exceed the aggregate amount of the Allowed Claims or Allowed Interests (as applicable) in such Class (if any), and the distribution to be made to each individual Holder of an Allowed Claim or an Allowed Interest shall not exceed the amount of such Holder's Allowed Claim or Allowed Interest (as applicable).

6.29.    **Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims.** Distributions under the Plan to each Holder of an Allowed Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the Holder thereof under any pertinent insurance policies and applicable law. Nothing in this Section 6.29 shall constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities that any entity may hold against any other entity, including the Debtors' insurance carriers or sureties.

6.30.    **"Change of Control" Provisions.**    Notwithstanding anything to the contrary that may be contained in the Plan or the Confirmation Order, any insurance policy, surety bond or similar bond, either of the Credit Facilities, the Junior Subordinated Notes Indentures, any documents entered into in connection with the Trust Preferred Securities, any Executory Contract, or other contract or agreement to which any of the Debtors or their Affiliates is a party, the transactions to be consummated in accordance with the Plan shall not create, or be deemed to create, any claim or right in connection therewith, upon a "Change of Control" or similar term, as such term may be defined or utilized in any of such documents or agreements.

6.31.    **United States Trustee's Fees.**    The Debtors and the Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation of the Plan, the Debtors shall file with the Bankruptcy Court and the United States Trustee a quarterly post-confirmation report, in the format specified by the United States Trustee, for each quarter that any of such Reorganized Debtors' particular Cases remain open. The United States Trustee quarterly fee shall be calculated on all disbursements made by the Reorganized Debtors until the particular Cases are closed, converted to cases under Chapter 7 of the Bankruptcy Code, or dismissed (as applicable). The Bankruptcy Court shall retain jurisdiction to decide any post-confirmation dispute concerning the United States Trustee quarterly fees.

6.32.    **Sales or Restructuring Transactions.**  The Debtors and/or the Reorganized Debtors are hereby authorized, but not directed, to engage in any sale or restructuring transaction involving their Assets, businesses, and/or operations, including, without limitation, (a) forming, or causing to be formed, new direct or indirect subsidiaries, or causing to dissolve, consolidate, or merge any existing direct or indirect subsidiaries, (b) engaging in asset sales, assignments, or transfers to unrelated third parties or to Affiliates, or (c) transferring operations to existing or newly formed direct or indirect subsidiaries.  The Debtors and the Reorganized Debtors are hereby authorized (but not directed) to take any and all actions as may be reasonable, necessary, or appropriate to effectuate any such transactions, without the need for any further court order or notice.

6.33.    **Consent, Acceptance, or Approval by the Sponsors, the Creditors Committee, or the Unsecured Creditor Agent.**  In connection with any and all provisions of this Plan calling for the consent, acceptance, or approval of the Sponsors, the Creditors Committee, or the Unsecured Creditor Agent, such consent, acceptance, or approval (as applicable) shall not unreasonably be withheld or delayed thereby.

## ARTICLE VII

## EXECUTORY CONTRACTS

7.1.    **Rejection or Assumption of Executory Contracts**.

(a)    As of the Confirmation Date, but subject to the occurrence of the Effective Date and the terms and conditions of the Plan (including Sections 7.2 and 7.3 hereof), all Executory Contracts (including, without limitation, those Executory Contracts identified as "to be rejected" on the list attached as Exhibit E to the Disclosure Statement, as such list may be revised and included in the Plan Supplement, as an exhibit to the Confirmation Order, or otherwise, and those otherwise expressly rejected under and pursuant to the terms of the Plan, including under Article VII hereof) shall be deemed rejected by the applicable Debtors in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, except those Executory Contracts that (a) have previously been assumed by an order of the Bankruptcy Court, (b) are the subject of a motion to assume pending on the Confirmation Date, (c) are identified as "to be assumed" on the list attached as Exhibit D to the Disclosure Statement (as such list may be revised and included in the Plan Supplement or otherwise), or (d) are otherwise expressly assumed under and pursuant to the terms of the Plan (including under Article VII hereof).  Assumption of the Executory Contracts at issue in clauses (c) or (d) in the immediately preceding sentence shall be effective as of the Confirmation Date, subject to the occurrence of the Effective Date.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and assumptions (as applicable) pursuant to Bankruptcy Code §§ 365(a) and 1123, subject to the occurrence of the Effective Date and the terms and conditions of the Plan (including Sections 7.2 and 7.3 hereof).  The listing of a document on either Exhibit D or Exhibit E to the Disclosure Statement (as either such list may be revised and included in the Plan Supplement, as an exhibit to the Confirmation Order, or otherwise), or any other statement in this Plan (including in this Plan Section 7.1) or in the Disclosure Statement shall not constitute an admission by the Debtors that such document is an executory contract or unexpired lease or that the Debtors have any liability thereunder.  Each Executory Contract assumed pursuant to this Article VII (i.e., those Executory Contracts at issue in clauses (c) and (d) of the first sentence of this Plan Section 7.1) or otherwise shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as may be modified by (w) any agreement with respect thereto between the Debtors and the applicable non-debtor party, (x) the provisions of the Plan, (y) any order of the Bankruptcy Court approving and authorizing its assumption, or (z) applicable federal law.  The Debtors shall retain the right at all times prior to the Effective Date (i) to assume any additional or other Executory Contract(s) not specifically identified on the list thereof attached as Exhibit D to the

Disclosure Statement (or as such list may be revised and included in the Plan Supplement or otherwise) as "to be assumed" (including, without limitation, any Executory Contract currently identified on <u>Exhibit E</u> to the Disclosure Statement as "to be rejected" or are otherwise being rejected pursuant to the terms of the Plan) or (ii) to reject any additional or other Executory Contract(s) not specifically identified on the list thereof attached as <u>Exhibit E</u> to the Disclosure Statement (or as such list may be revised and included in the Plan Supplement or otherwise) as "to be rejected" (including, without limitation, any Executory Contract currently identified on <u>Exhibit D</u> to the Disclosure Statement as "to be assumed" or are otherwise being assumed pursuant to the terms of the Plan), in each case upon providing notice to the non-Debtor party thereto.  Without limiting the effect of this Plan Section 7.1, <u>Exhibit D</u> to the Disclosure Statement contains a schedule of all known Executory Contracts (in addition to those referenced in Plan Sections 7.7, 7.8, 7.9, and 7.11) anticipated to be assumed under this Plan (as such schedule may be revised and included in the Plan Supplement or otherwise), subject to the Debtors' right to determine at any time subsequently, on or prior to the Effective Date, including, without limitation, as may be set forth in the Plan Supplement, to either assume or reject any Executory Contracts or to include additional Executory Contracts to be either (a) assumed under the Plan or (b) rejected under the Plan, in each case upon providing notice to the non-Debtor party thereto.

(b)     Notwithstanding anything herein or the Confirmation Order to the contrary, to the extent not terminated or cancelled in accordance with their terms or pursuant to an order of the Bankruptcy Court prior to the Effective Date, each of the limited partnership agreements, limited liability company agreements, or similar agreements between any of the Debtors and either another Debtor or any non-Debtor Affiliate to which only one or more of the Debtors and either another Debtor or any non-Debtor affiliates are parties, shall, regardless of whether such agreements are Executory Contracts, be deemed assumed by the applicable Debtors as of the Confirmation Date, subject to the occurrence of the Effective Date, and shall remain in full force and effect thereafter in accordance with their terms.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to Bankruptcy Code §§ 365 and 1123 and otherwise, subject to the occurrence of the Effective Date.  Each agreement assumed pursuant to this Plan Section 7.(b) shall be retained by, and shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms.

7.2.     **Cure of Defaults of Assumed Executory Contracts.**  To the extent there are any monetary amounts by which each Executory Contract to be assumed pursuant to the Plan (*i.e.*, those Executory Contracts at issue in clauses (c) and (d) of the first sentence of Plan Section 7.1) is in default must be satisfied pursuant to Bankruptcy Code § 365(b)(1) and the terms of the Plan, such satisfaction shall be by payment of the default amount (as such amount has been agreed upon by the Reorganized Debtors in the manner set forth in Plan Sections 7.2 or 7.3 or, in the event of a dispute regarding such default amount, as such amount has been determined by a Final Order of the Bankruptcy Court, subject to the Debtors' or the Reorganized Debtors' right to elect thereafter to reject such agreement in the manner set forth below in this Section 7.2) in Cash by the latest of (a) the Effective Date (or as soon thereafter as is practicable), (b) in the event of a dispute regarding the default amount, within 60 days of the entry of an order of the Bankruptcy Court establishing such default amount, (c) the date of a Final Order of the Bankruptcy Court (or as soon thereafter as is practicable) approving and authorizing the assumption of an Executory Contract not otherwise assumed pursuant to the terms of the Plan, or (d) on such other terms as the parties to such Executory Contracts may otherwise agree.  Notwithstanding the foregoing, in the event of a dispute regarding:  (x) the amount of any required cure payments, (y) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code § 365) under the contract or lease to be assumed, or (z) any other matter pertaining to assumption (each an "**Assumption Dispute**"), the cure payments required shall be made following the entry of a Final Order resolving the Assumption Dispute and approving the assumption or as otherwise agreed by the parties to such dispute; provided, <u>however</u>, that (i) in the event the Bankruptcy Court determines that the actual cure payment owed to a particular non-Debtor party to an Executory Contract exceeds the proposed cure

amount as set forth either in Plan Section 7.3 or the notice provided by the Debtors pursuant to Section 7.3 hereof and as set forth on <u>Exhibit D</u> to the Disclosure Statement (as applicable), or (ii) the Debtors and the applicable non-Debtor party involved in any Assumption Dispute cannot otherwise consensually resolve such Assumption Dispute, the Debtors may reject the Executory Contract at issue pursuant to Bankruptcy Code § 365 rather than paying the disputed cure amount, by presenting a proposed order to the Bankruptcy Court for such rejection, without any prior notice (although the Debtors shall inform the applicable non-Debtor party to such Executory Contract of the rejection thereof and of the Plan Rejection Bar Date). In the event any Executory Contract is so rejected, the non-Debtor party thereto shall be entitled to file a Proof of Claim pursuant to Plan Section 7.4, which Claim shall be classified pursuant to Plan Section 7.5, but shall not be entitled to any other or further Claim or relief from any of the Debtors or the Reorganized Debtors. After the Confirmation Date, the Debtors, and on and after the Effective Date, the Reorganized Debtors, shall have the authority to settle, compromise, resolve, or withdraw any Assumption Dispute without the need for any Bankruptcy Court or other approval or any other or further notice.

7.3.    **The Proposed Cure Amount and Objection Deadline.**  The Debtors shall provide notice to the non-Debtor parties to all Executory Contracts listed on <u>Exhibit D</u> as being assumed of (a) the proposed default amount (if any) owed under the applicable Executory Contract and (b) the last date by which such non-Debtor party may file an objection or other response with respect to such proposed default amount. *All other Executory Contracts being assumed under the Plan that are not specifically identified on the list thereof attached as <u>Exhibit D</u> to the Disclosure Statement (or as such list may be revised and included in the Plan Supplement or otherwise), including any Executory Contracts being assumed pursuant to Plan Sections 7.6, 7.7, 7.8, 7.9, 7.10, or 7.11, shall be deemed to have a proposed default amount of $0 for all purposes in these Cases. Any non-Debtor party that fails to object or otherwise respond on or prior to the Confirmation Objection Deadline to the proposed default amount owed either (i) as listed on such notice and <u>Exhibit D</u> (or as such list may be revised) or (ii) as otherwise set forth in this Section 7.3 of the Plan, shall be deemed to have consented to such applicable proposed amount and to the proposed assumption by the Debtors of the applicable Executory Contract, and may not receive any other or additional distribution or consideration from the Debtors, the Estates, the Reorganized Debtors, or the Assets, or otherwise seek recourse against, the Debtors, the Estates, the Reorganized Debtors, or any of their Assets, beyond such proposed amount owed.*

7.4.    **Rejection of Contracts with Vendors.**  All contracts, work orders, or other similar agreements entered into prior to the Petition Date by any Debtor with any Vendor, to the extent not terminated or cancelled in accordance with their terms or pursuant to an order of the Bankruptcy Court prior to the Effective Date, shall be (i) deemed rejected pursuant to the Plan, to the extent that they constitute Executory Contracts, which rejection shall be deemed effective as of the Confirmation Date, subject to the occurrence of the Effective Date, and (ii) deemed terminated to the extent that they do not constitute Executory Contracts, which termination shall be deemed effective as of the Confirmation Date, subject to the occurrence of the Effective Date.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and/or terminations pursuant to Bankruptcy Code §§ 363, 365(a), and 1123 or otherwise, subject to the occurrence of the Effective Date, and subject to the Debtors' rights to elect, in their discretion, to instead assume any particular pre-Petition Date contract, work order, or other similar agreement with any Vendor in accordance with the terms and conditions of Article VII hereof, in which case such pre-Petition Date contract, work order, or other similar agreement shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms, except as may be modified by any agreement with respect thereto between the Debtors and the applicable non-debtor party or any order of the Bankruptcy Court approving and authorizing its assumption.

7.5.    **Rejection Claims.**

(a)    Each non-Debtor party to any Executory Contract rejected under and pursuant to this Article VII shall be entitled to file, not later than 30 days after the entry of the Confirmation Order (the "**Plan Rejection Bar Date**"), a Proof of Claim against the applicable Debtor for alleged Rejection Claims. *If no such Proof of Claim for a Rejection Claim is timely filed against the applicable Debtor, any such Claim shall not be entitled to receive any distributions under the Plan on account thereof from the Debtors, the Reorganized Debtors, or their respective Estates or Assets.*  Objections to any such Proof of Claim shall be filed not later than 90 days after such Proof of Claim is filed (subject to any potential further extensions of such date as so ordered and approved by the Bankruptcy Court), and the Bankruptcy Court shall decide any such objections.  Distributions (if any) in respect of such Claims (consistent with the distributions to be received by Holders of other Claims in the Class into which such Claims fall, as determined by Section 7.6 hereof) shall be made no earlier than the later of (i) 60 days after the expiration of the 90-day period (as such period may be extended by order of the Bankruptcy Court) for filing an objection in respect of any Proof of Claim filed pursuant to this Section 7.5 and (ii) 60 days after the Claim has been Allowed by a Final Order of the Bankruptcy Court, provided that no such distribution shall be made before the Effective Date.

(b)    Notwithstanding anything to the contrary herein, the Plan Rejection Bar Date shall apply only to Rejection Claims with respect to those Executory Contracts that are to be rejected under and pursuant to the Plan.  Any Holder of a Rejection Claim for an Executory Contract that is not to be rejected pursuant to the Plan, but whose Rejection Claim instead arises under an Executory Contract that either has already been rejected by an order of the Bankruptcy Court or is the subject of a separate motion to reject pending on the Confirmation Date, must file a Proof of Claim for such Rejection Claim by the date provided in any order relating to such rejection.

7.6.    **Classification of Rejection Claims.**  Except as otherwise provided under the Plan, any Rejection Claims against any of the Debtors shall be treated as Class 3 or Class 3A Claims, as applicable, in each instance to the extent it is an Allowed Claim.

7.7.    **Insurance Policies and Surety Bonds.**

(a)    All insurance policies of the Debtors (including, without limitation, the Directors & Officers Liability Insurance Policies) providing coverage to the Debtors and/or the Debtors' current or

former directors, officers, stockholders, agents, employees, representatives, predecessors, and others for conduct in connection in any way with the Debtors, their assets, liabilities, and/or operations, regardless of whether such policies are Executory Contracts, unless previously rejected and/or terminated or expired in accordance with their terms, shall be deemed assumed by the applicable Debtors as of the Confirmation Date, subject to the occurrence of the Effective Date, and shall remain in full force and effect thereafter in accordance with their terms. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to Bankruptcy Code §§ 365 and 1123 and otherwise, subject to the occurrence of the Effective Date. Each insurance policy assumed pursuant to Article VII hereof shall be retained by, and shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms, except as may be modified by the provisions of the Plan, any order of the Bankruptcy Court approving and authorizing its assumption, or applicable federal law.

(b)        Other than those listed on Exhibit E to the Disclosure Statement (as the same may be amended or modified), all surety bonds or similar bonds (including, without limitation, any agreements, documents, or instruments relating thereto) issued on behalf of or obtained by the Debtors or otherwise with respect to any of their present or previously-owned Assets or developments, shall remain and continue in full force and effect on and after the Effective Date in accordance with their terms. Each such surety bond or similar bond shall be retained by and shall revest in, and be fully enforceable by, the respective Reorganized Debtor or any other party with an interest therein or beneficiary thereunder, subject to applicable provisions of, and all of the Debtors' rights under, the Bankruptcy Code, including, without limitation, Bankruptcy Code § 363(l). Nothing in this Plan Section 7.7 shall constitute or be deemed a waiver of any cause of action that the Debtors, the Reorganized Debtors, or any beneficiary or related entity under any surety bond or similar bond may hold against any entity, including the issuer of any surety bonds or similar bond, under any of such bonds. Without limiting the generality of the foregoing, such surety bonds shall not constitute Executory Contracts for any purposes under the Plan or otherwise in these Cases, such that neither the Debtors nor the Reorganized Debtors shall have any obligations to satisfy any purported defaults thereunder pursuant to Bankruptcy Code § 365(b)(1) or otherwise in order for such bonds to revest in and be fully enforceable by the respective Reorganized Debtor or any other party with an interest therein or beneficiary thereunder on and after the Effective Date.

(c)        Notwithstanding anything provided herein to the contrary, no provision of the Plan, including, without limitation, the discharge and release from Claims as provided for in Article IX hereof, shall be deemed in any way to diminish or impair the enforceability of any insurance policies, surety bonds, or similar bonds, or any agreements, documents, or instruments relating to the foregoing, that may cover claims against any of the Debtors, any other Person, or otherwise with respect to any of the Debtors' present or previously-owned Assets or developments. Any failure by the Debtors to list any particular insurance policy, surety bond, or similar bond on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors', the Reorganized Debtors', or any beneficiary's (as applicable) ability to enforce such policy, surety bonds, or similar bond, and instead, any and all such policies and bonds shall be transferred to and vested in the Reorganized Debtors and shall remain and continue in full force and effect on and after the Effective Date in accordance with this Plan Section 7.7.

(d)        Nothing contained in the Disclosure Statement (or any exhibits thereto), the Plan, or the Confirmation Order shall constitute an admission by any of the Debtors that their insurance policies, surety bonds, or similar bonds constitute Executory Contracts under, or for purposes of, Bankruptcy Code § 365.

(e)    Any Claims by any non-Debtor party to any insurance policies, surety bonds, or similar bonds, or any agreements, documents, or instruments relating to the foregoing, against any of the Debtors that arose on or prior to the Petition Date, other than for any Claim for any unpaid premiums thereunder, shall be treated as Class 3 or Class 3A Claims, as applicable, in each instance to the extent they are Allowed Claims, and shall be subject to all applicable defenses and objections of the Debtors, the Estates, and the Reorganized Debtors (including, but not limited to, as provided for in Bankruptcy Code § 502(e)); provided, however, that, to the extent any non-Debtor party to any insurance policies, surety bonds, or similar bonds, or any agreements, documents, or instruments relating to the foregoing has a fixed, non-contingent, and liquidated Claim against the Debtors and holds any collateral to secure the Debtors' obligations thereunder, such party may, upon granting the Debtors a minimum of 14 days' notice in writing, apply such collateral to reduce the Allowed amount of any fixed, non-contingent, and liquidated Claim such party may have against the Debtors under such any insurance policies, surety bonds, or similar bonds, or any agreements, documents, or instruments relating to the foregoing.  In the event the Debtors object within such 14-day period to such proposed application of any collateral, such party shall be stayed from the application thereof until the dispute has been adjudicated by a Final Order of the Bankruptcy Court or upon an agreement with respect thereto with the Debtors or the Reorganized Debtors (as the case may be), which the parties may enter into with any further notice or court order. Alternatively, any party to any insurance policies, surety bonds, or similar bonds, or any agreements, documents, or instruments relating to the foregoing that shall be retained by and revest in the Reorganized Debtors in the manner set forth in this Plan Section 7.7 and who currently holds any collateral to secure the Debtors' obligations thereunder, may continue to retain such collateral on and after the Effective Date in the manner provided for in the applicable agreements with the Debtors.  In addition, any Claim for any unpaid premiums under such insurance policies, surety bonds, or similar bonds that are being retained by and shall revest in the Reorganized Debtors shall constitute Administrative Claims (subject to all applicable defenses and objections of the Debtors, the Estates, and the Reorganized Debtors).

7.8.    **Compensation and Benefits Programs.**

(a)    Except as otherwise expressly provided under the Plan (including, without limitation, as set forth in this Plan Section 7.8 with respect to the Existing Stock Option Plans, the SERP, the Deferral Plan, and agreements with third-party administrators under the Debtors' medical plans prior to 2009) or any exhibit to the Disclosure Statement, in the Plan Supplement, or to the Plan, unless otherwise rejected or lawfully terminated by the Debtors, all employment policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their current or former Employees, retirees, and non-Employee directors, including, without limitation, all savings plans, any profit-sharing plans, pension or retirement plans (including, but not limited to, any plans qualified under Internal Revenue Code § 401(a)), healthcare plans, disability plans, benefit plans, and life, accidental death, and dismemberment insurance plans in effect as of the Confirmation Date, and a payment of $350,000 to the Vesey Estate (collectively, the "**Compensation and Benefits Programs**") shall be treated as either Executory Contracts under the Plan and on the Confirmation Date, subject to the occurrence of the Effective Date, shall be assumed pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular Compensation and Benefits Program on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such program and instead, any and all such programs (except those referenced in Plan Section 7.8(b)) shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with Plan Section 7.8.  The Debtors and the Reorganized Debtors (as applicable) shall retain their rights to amend, modify, or terminate the Compensation and Benefits Programs in accordance with the terms of the applicable agreements and applicable law.

(b)    Subject to the occurrence of the Effective Date, and notwithstanding anything that may be to the contrary in Plan Section 7.8(a): (i) the Existing Stock Option Plans, the SERP, and all agreements with third-party administrators under the Debtors' medical plans prior to 2009 shall not be assumed by Reorganized OHB on the Effective Date, but shall instead be cancelled and deemed terminated and/or rejected and of no force and effect as of the Effective Date; and (ii) pursuant to Bankruptcy Code § 503(b)(1)(A), the Deferral Plan, and all corresponding contracts that are not otherwise expressly assumed pursuant to the Plan, shall not be assumed by Reorganized OHB on the Effective Date, but shall instead be cancelled and deemed terminated and/or rejected and of no force and effect as of the Confirmation Date or January 1, 2011, if later (subject to the occurrence of the Effective Date of the Plan). Notwithstanding the cancellation or deemed termination of the Deferral Plan, the Debtors shall (1) pay all vested amounts under the Deferral Plan to the following participants in such plan:  Marvin Bank, Wes Dollins, Tom Jacobs, and Linda Kelley, less any applicable withholdings for federal, state, and local taxes, and (2) pursuant to the Orleans Settlement Agreement, pay Jeffrey Orleans the Specified Amount, less any applicable withholdings for federal, state, and local taxes, with respect to vested amounts under the Deferral Plan attributable to him. The Debtors and the Reorganized Debtors shall be entitled to retain any sums in the Deferral Plan otherwise attributable to Jeffrey Orleans beyond the Specified Amount, and he shall have no further claim against the Debtors, the Reorganized Debtors, or the Estates for any other or additional amount under the Deferral Plan.

7.9.    **Obligations to Indemnify Directors, Officers, and Employees, etc.**  Notwithstanding anything to the contrary in the Plan, the obligations of each of the Debtors to indemnify the Vesey Estate and any Person who has served as one of the Debtors' directors, officers, employees, agents, representatives, management, or otherwise, at any time on or after the Petition Date, by reason of such person's service to such Debtor in such a capacity, to the extent provided in the applicable certificates or articles of incorporation, formation, organization, limited partnership, or limited liability company or operating agreements, limited partnership agreements, by-laws, or similar constituent documents, by statutory law, or by written agreement, policies, or procedures of or with such Debtor, shall be deemed and treated as Executory Contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and Bankruptcy Code §§ 365 and 1123 or otherwise on the Confirmation Date, subject to the occurrence of the Effective Date. Accordingly, such indemnification obligations shall not be discharged, but shall instead survive and be unaffected by entry of the Confirmation Order and the consummation of this Plan. Any failure by the Debtors to list any particular indemnification obligation on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such obligation.

7.10.    **Contracts and Leases Entered Into Post-Petition.**  Any contracts and leases entered into after the Petition Date by any Debtor, to the extent not terminated or cancelled in accordance with their terms or pursuant to an order of the Bankruptcy Court prior to the Effective Date, shall survive and remain unaffected by entry of the Confirmation Order and the consummation of the Plan.

7.11.    **Home Sale Contracts.**  Unless otherwise specifically rejected or lawfully terminated by the Debtors, all contracts entered into prior to the Petition Date by any Debtor with any party to acquire a home from any Debtor (a "**Home Sale Contract**"), shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular Home Sale Contract on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such contract, and instead, any and all Home Sale Contracts shall be deemed assumed (to the extent any such agreements

54

constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with this Plan Section 7.11. Notwithstanding the specific terms of any Home Sale Contract or any other provisions of this Plan, any provision in any particular Home Sale Contract purporting to create a breach or default by the applicable Debtor party thereto solely on account of its failure to close thereunder by any designated time within 90 days after the Effective Date, shall be deemed of no force and effect and need not be specifically cured by the Debtors or the Reorganized Debtors pursuant to Bankruptcy Code §§ 365 and 1123 or otherwise as of the Effective Date; instead, the time in which the Debtors and the Reorganized Debtors (as applicable) may close under any Home Sale Contract that has not closed as of the Effective Date shall be automatically extended hereby until the later of the closing date provided for in the applicable Home Sale Contract (including all possible extensions contained therein) and 90 days following the Effective Date.

7.12.   **Employment Agreements With Sales Staff.** Unless otherwise specifically rejected or lawfully terminated by the Debtors, all employment agreements entered into prior to the Petition Date by any Debtor with any member of their sales staff still employed by the Debtors as of the Confirmation Date shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular such employment agreement on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement, and instead, any and all such agreements shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with this Plan Section 7.12.

7.13.   **Broker Commission Agreements.** Unless otherwise specifically rejected or lawfully terminated by the Debtors, all broker commission agreements entered into prior to the Petition Date by any Debtor in connection with the sale of residential homes, except for those with East West Realty, shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular broker commission agreement in connection with the sale of residential homes on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement, and instead, any and all such agreements shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with this Plan Section 7.13. As of the Confirmation Date, but subject to the occurrence of the Effective Date, all broker commission agreements entered into prior to the Petition Date by any Debtor with East West Realty as well as those commission agreements not in connection with the sale of residential homes (including, without limitation, those listed on Exhibit E to the Disclosure Statement (as the same has been revised and included in the Plan Supplement, as an exhibit to the Confirmation Order, or otherwise) shall be deemed rejected by the applicable Debtors in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123.

7.14.   **Agreements Related to the Developments.** Unless otherwise specifically rejected or lawfully terminated by the Debtors, all (a) agreements relating to any of the Revesting Developments embodied in development orders, city and/or county ordinances, zoning approvals, permits, and/or other related documents or any other official action of a governmental unit, quasi-governmental unit, and/or utility granting certain development rights, property interests, and/or entitlements to the Debtors; and (b)

55

those governmental and quasi-governmental approvals, agreements, waivers, permits, licenses, variances, special exceptions, and water and sewer reservations as are necessary, appropriate, beneficial, or required, to permit the continued construction and development of any of the Revesting Developments entered into prior to the Petition Date by any Debtor, shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular agreement or other document referred to in this Plan Section 7.14 on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement and/or other document, and instead, any and all such agreements and documents shall be deemed assumed (to the extent any such agreements or documents constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with this Plan Section 7.14. Without limiting the generality of the foregoing, all of the Debtors' rights in or related to any of the Revesting Developments shall revest in the Reorganized Debtors on and subject to the occurrence of the Effective Date, but the Non-Revesting Developments shall not revest in the Reorganized Debtors and all applicable agreements related thereto shall be deemed rejected or terminated, as applicable, as of, and subject to the occurrence of, the Effective Date provided, however, that the Debtors shall be entitled to revise the respective lists of the Revesting Developments and the Non-Revesting Developments at any time up to the occurrence of the Effective Date.

    7.15.    **Permits and Licenses**:  The Debtors, and, as of the Effective Date the Reorganized Debtors, shall be authorized by the Plan, to continue to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets or the Debtors' businesses, and all such licenses, permits, registrations, and governmental authorizations and approvals shall survive in full force and effect, remain unaffected by entry of the Confirmation Order and the consummation of the Plan and are deemed to have been, and under the Plan are, assumed by the Reorganized Debtors as of the Effective Date.  All applicable governmental entities are hereby authorized and directed to continue to honor and operate under all such licenses, permits, registrations, and governmental authorizations or approvals.  Any failure by the Debtors to list any particular license, permit, registration, or governmental authorization or approval on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such license, permit, registration, or governmental authorization or approval, and instead, any and all such license, permit, registration, and governmental authorization or approval shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with Plan Section 7.15.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

    8.1.    **Conditions to Confirmation.**  Confirmation of the Plan shall not occur unless and until the following conditions have been satisfied, waived, or modified pursuant to Plan Section 8.3:  (a) the Bankruptcy Court shall have entered an order approving the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code § 1125, and such order shall not have been reversed, stayed, amended, or modified in any manner adverse to the Debtors or their Estates, and (b) the Confirmation Order shall be acceptable, in form and substance, to the Debtors and the Sponsors.

8.2.    **Conditions to Effectiveness.**  Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date shall not occur, and the Plan shall not be binding on any Person, unless and until each of the following conditions has been satisfied, waived, or modified pursuant to Plan Section 8.3:

(a)    The Confirmation Order (i) shall have been entered on the docket by the Clerk of the Bankruptcy Court in form and substance acceptable to the Debtors and the Sponsors, and (ii) shall not have been reversed, stayed, amended, or modified in any manner adverse to the Debtors their Estates, or the Sponsors;

(b)    The Plan Documents and all other documents provided for under, and reasonably necessary to effectuate the terms of, and actions contemplated under, the Plan, shall be in form and substance acceptable to the Debtors and the Sponsors, and shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived in writing by the parties benefited by such documents.  The Plan Documents to which the condition in this sub-paragraph (b) refers include, but are not limited to, the following documents:

(1)    the Amended and Restated Certificates of Incorporation, the Amended and Restated LLC Agreements, the Amended and Restated Limited Partnership Agreements, the Amended and Restated By-Laws, the OHB Holdings LLC Agreement, and all applicable certificates of formation and/or organization;

(2)    the Exit Credit Facility and all instruments, certificates, guarantees, agreements, and documents contemplated by Plan Section 6.14; and

(3)    the New Notes and the New Notes Guarantees, and all instruments, certificates, guarantees, agreements, and documents contemplated by Plan Section 6.16.

(c)    All conditions precedent to the consummation of, and the funding obligation under, the Exit Credit Facility shall have been satisfied or waived in accordance with the terms thereof;

(d)    The Amended and Restated Certificates of Incorporation, the Amended and Restated LLC Agreements, the Amended and Restated Limited Partnership Agreements, the OHB Holdings LLC Agreement, and all applicable certificates of formation and/or organization (as applicable) shall have been adopted and/or filed with the applicable authority of each Reorganized Debtor's, and in the case of the OHB Holdings LLC Agreement and applicable certificate of formation and/or organization, OHB Holdings', jurisdiction of incorporation or formation in accordance with such jurisdiction's state corporate, limited liability company, or partnership laws (as applicable);

(e)    To the extent Class 3 votes to accept the Plan, the Unsecured Creditor Cash Pool has received the $6 million in accordance with Section 6.10 hereof;

(f)    The new respective Boards of Directors or Managers (as applicable) of the Reorganized Debtors and OHB Holdings shall have been appointed;

(g)    All authorizations, consents, filings, and regulatory approvals required (if any) in connection with the effectiveness of the Plan shall have been obtained, effected, or executed and shall remain in full force and effect; and

(h)    All statutory fees due and payable to the United States Trustee as of the Effective Date shall have been paid in full.

If the Effective Date (i) does not occur for any reason within 180 days following the entry of the Confirmation Order, unless such time period is extended by the Debtors with the consent of the Sponsors, or (ii) if on or before 180 days following the entry of the Confirmation Order, either the Debtors determine, with the agreement of the Sponsors, or the Bankruptcy Court rules, that one or more of the conditions to effectiveness set forth in Plan Section 8.2 will not be satisfied within such period, then the Plan and the Confirmation Order shall immediately, upon such applicable date, be deemed null and void and, in such event, nothing contained herein or therein shall be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings (whether or not such proceedings involve any of the Debtors). If the Confirmation Order is vacated or revoked, the Plan shall be null and void *ab initio* in all respects, and, without limiting the generality of the foregoing, nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; (b) prejudice in any manner the rights of the Debtors; (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors in any respect; or (d) affect or impair, in any way, any and all Claims against the Debtors, any and all claimed contractual subordination rights and claims between or among the Holders of Claims against the Debtors, and any and all rights and claims between or among holders of Claims relating in any manner to distributions on account of Claims against the Debtors based upon any claimed contractual subordination rights.

8.3.     **Waiver or Modification of Conditions.**  The Debtors may, but shall have no obligation to, waive or modify in writing, at any time, any of the conditions set forth in this Article VIII, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan; provided that the Sponsors' consent shall be required to waive or modify any of the conditions set forth in Plan Section 8.2(b), (c), (d), (e), and (f), and the Creditors Committee's consent shall be required to waive or modify the condition set forth in Plan Section 8.2(e). The failure to satisfy, waive, or modify any such condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such conditions to be satisfied, waived, or modified.

# ARTICLE IX

# TITLE TO PROPERTY AND RELEASES

9.1.     **Vesting of Property.**  Except as otherwise provided in the Plan (including Plan Section 7.14 with respect to the Non-Revesting Developments) or the Confirmation Order, and notwithstanding the substantive consolidation of the Debtors solely for the limited purpose of all actions associated with voting, confirmation, and distribution, as provided for in Article XI hereof, upon the Effective Date, but retroactive to the Confirmation Date, (a) the Reorganized Debtors shall continue to exist as separate corporate entities with all the powers of corporations under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law, and (b) all Assets of the respective Debtors (including, but not limited to, the Debtors' respective equity interests in any Subsidiary Debtor or any non-Debtor subsidiary or joint venture (to the extent that any such non-Debtor subsidiary or joint venture has not been dissolved under applicable law prior to the Effective Date)), wherever situated, shall vest in the applicable Reorganized Debtor, subject to the provisions of the Plan and the Confirmation Order.  Thereafter, each Reorganized Debtor may operate its business, incur debt and other obligations in the ordinary course of its business, and may otherwise use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Bankruptcy Court.  After the Effective Date, but retroactive to the Confirmation Date, all property retained by the Reorganized Debtors pursuant hereto shall be free and clear and divested of all Claims, debts, Liens, security interests, obligations, encumbrances, and interests of Creditors and Interest Holders of the Debtors and all other Persons, except as contemplated by or provided in the Plan or the Confirmation Order and except for the obligation to perform according to the

Plan and the Confirmation Order, and except for the respective claims, debts, Liens, security interests, encumbrances, and interests (a) of those Holders of any Reinstated Liens, or (b) arising in connection with the Exit Credit Facility, the Exit Credit Facility Guarantees, the New Notes, or the New Notes Guarantees.

Without limiting the generality of the foregoing, the Confirmation Order (a) shall be effective as a determination that all Liens existing prior to the Effective Date (other than any Reinstated Liens) have been unconditionally released, disallowed, discharged, and terminated as of the Effective Date, regardless of, with respect to Operational Liens, whether or not the applicable Operational Lien Claimholder executes a Lien Waiver or has filed a Proof of Claim, and that such release, disallowance, discharge, and termination shall be binding upon and shall govern the acts of all entities, including, without limitation, all applicable Operational Lien Claimholders (other than Holders of Reinstated Operational Liens) and other parties asserting a Lien, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. In addition, each and every federal, state, and local governmental agency or department shall be hereby directed to accept any and all documents and instruments (including the Plan, the Confirmation Order, and/or all Lien Waivers) as provided by the Debtors, the Reorganized Debtors, or any related parties to revise appropriately all applicable records and files to reflect that all such Liens have been released, discharged, and terminated in accordance herewith, the Confirmation Order, and/or such Lien Waivers. Except for Holders of Reinstated Liens, if any person or entity that has filed Liens or other documents or agreements evidencing Liens on, Claims, or other interests in, the Assets shall not have delivered to the Debtors prior to the Effective Date, a Lien Waiver in proper form for filing and executed by the appropriate parties, with respect to the Assets or otherwise, then the Debtors and the Reorganized Debtors (as applicable) shall be hereby authorized and empowered (but not required) to execute and file any termination statements, instruments of satisfaction, releases of Liens, or other documents on behalf of the applicable person or entity with respect to the Assets, and shall also be hereby authorized to file, register, or otherwise record or present a copy of the Plan and the Confirmation Order which, once filed, registered, or otherwise recorded or presented, shall constitute conclusive evidence of the release of all Liens of any kind or nature whatsoever in the Assets.

Notwithstanding anything that may be to the contrary herein or in the Confirmation Order, the equipment listed on Exhibit A to the High Fidelity Sale Objection shall not be deemed owned by the Reorganized Debtors on and after the Effective Date, as such equipment is not currently owned by the Debtors.

9.2.     **Discharge and Injunction.** *Other than with respect to any Reinstated Liens, pursuant to Bankruptcy Code § 1141(d) or otherwise, except as may otherwise be provided herein or in the Confirmation Order, upon the occurrence of the Effective Date, the rights afforded and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge, and release of, any and all existing debts, Claims, and Interests of any kind, nature, or description whatsoever against the Debtors or any of the Debtors' Assets or other property, and shall effect a full and complete release, discharge, and termination of all Liens (including all Operational Liens other than Reinstated Operational Liens), security interests, or other Claims, interests, or encumbrances upon all of the Debtors' Assets and property. No Creditor or Interest Holder of the Debtors nor any other Person may receive any distribution from the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, or the Assets, or seek recourse against, the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, or any of their Assets, except for those distributions expressly provided for under the Plan. All Persons are precluded from asserting, against any property that is to be*

*distributed under the terms of the Plan, any Claims, Interests, obligations, rights, Causes of Action, liabilities, Liens (including any Operational Liens other than Reinstated Operational Liens), or equity interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than to the extent Reinstated or as expressly provided for in the Plan or the Confirmation Order, whether or not (a) a Proof of Claim or Proof of Interest based upon such debt or Interest (as applicable) is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim or Interest based upon such debt or Interest (as applicable) is allowed under Bankruptcy Code § 502; or (c) the Holder of a Claim or Interest based upon such debt or Interest (as applicable) has voted to accept the Plan or is deemed to have accepted the Plan under Bankruptcy Code § 1126(f).  Except as otherwise provided in this Plan Section 9.2 or the Confirmation Order with respect to a Claim that is expressly Reinstated under the terms and conditions of the Plan, all Holders of Claims and Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, their successors, or the Assets, any of the following actions on account of such Claim or Interest: (a) commencing or continuing in any manner any action or other proceeding on account of such Lien, Claim, or Interest against property to be distributed under the terms of the Plan or the property of any of the Reorganized Debtors or OHB Holdings, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, Lien (including all Operational Liens), or order against any of the property to be distributed under the terms of the Plan or the property of any of the Reorganized Debtors or OHB Holdings, other than as permitted under subclause (a) of this sentence; (c) creating, perfecting, or enforcing any Lien or encumbrance against any property to be distributed under the terms of the Plan or the property of any of the Reorganized Debtors or OHB Holdings; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due the Debtors or the Reorganized Debtors, the Assets or any other property of the Debtors or the Reorganized Debtors, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.*

      9.3.    **No Waiver of Discharge.**  Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any way the discharge granted to the Debtors upon Confirmation of the Plan by Bankruptcy Code § 1141.

      9.4.    **Post-Consummation Effect of Evidences of Claims or Interests.**  Except as otherwise expressly set forth in the Plan (including, without limitation, Plan Sections 4.2, 4.3, and 6.2), any and all notes, stock certificates, Liens (including all Operational Liens), other than any Reinstated Liens, and/or other evidences of Claims against, or Interests in, any of the Debtors shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, if any, and shall otherwise be cancelled and of no force and effect as of the Effective Date.

      9.5.    **Term of Injunctions or Stays.**  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays provided for in these Cases pursuant to Bankruptcy Code § 105, § 362, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

      9.6.    **Releases by Holders of Claims or Interests.**

      (a)    The Plan incorporates and implements a compromise and settlement reached among the Debtors, the Sponsors, the Revolving Credit Facility Lenders, the DIP Facility Lenders, and the Creditors Committee (the "**Unsecured Creditor Settlement**").  The Unsecured Creditor Settlement includes, among other things, the creation of the Unsecured Creditor Cash Pool for distribution to Holders of Allowed Aggregate Unsecured Claims and the waiver of the Lenders' Deficiency Claims and the rights

of the Holders of Lenders' Deficiency Claims to enforce subordination and turnover provisions in the Trust Preferred Securities, the Junior Subordinated Notes, and the Junior Subordinated Notes Indentures under certain circumstances.

(b)    *Except as otherwise provided herein, as of the Confirmation Date, but subject to the occurrence of the Effective Date, each Non-Debtor Releasing Party, in consideration of the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, the New OHB Common Stock, the OHB Holdings Units, the New Notes, the New Notes Guarantees, the Exit Credit Facility, the Reinstatement of the Reinstated Liens, the Unsecured Creditor Settlement, and the other contracts, instruments, releases, agreements, waivers, and documents to be executed and delivered in connection with the Plan, and in consideration of the efforts of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, obligations, rights, Causes of Action, or liabilities (including, but not limited to, any claims arising out of, or relating to, any alleged fiduciary or other duty; any alleged violation of any federal or state securities law or any other law relating to creditors' rights generally; any of the Released Parties' ownership of any securities of any of the Debtors; or any derivative claims asserted on behalf of a Debtor), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Non-Debtor Releasing Party ever had, now has, or may have that are based in whole or in part on any act, omission, transaction, event, or other occurrence from the beginning of time through and including the Effective Date and in any way relating to the Debtors, these Cases, or the Plan; the Disclosure Statement; the Plan Documents; the formulation, negotiation, preparation, dissemination, implementation, and/or administration of the Plan, the Disclosure Statement, and the Plan Documents and the transactions contemplated thereby; the solicitation of votes with respect to, and the pursuit of Plan Confirmation; the Confirmation and consummation of the Plan; the subject matter of, or the transactions or events giving rise to, any Claim or Interest of such Non-Debtor Releasing Party, any security previously issued by any of the Debtors, and any and all claims based upon or arising out of such actions or omissions shall be forever and completely waived and released by the Non-Debtor Releasing Parties*; provided, however, this Plan Section 9.6(b) shall not release, and the Non-Debtor Releasing Parties do not waive the right to enforce, the Debtors' or the Reorganized Debtors' duties, obligations, covenants, and agreements under (i) the Plan, (ii) any settlement agreement approved by the Bankruptcy Court in these Cases, regardless of whether such approval is granted prior to or after the Confirmation Date, (iii) the Assumed Contracts, or (iv) the Plan Documents to be delivered under the Plan; provided further, however, that the release set forth in this Plan Section 9.6(b) is in addition to the discharge of Claims and termination of Interests provided in the Plan and under the Confirmation Order and the Bankruptcy Code; and provided further, however, that nothing in this Plan Section 9.6(b) shall be deemed to assert or imply any admission of liability on the part of any of the Released Parties.

(c)    *All Non-Debtor Releasing Parties shall be forever precluded from asserting any of the claims released pursuant to this Section 9.6 against any of the Released Parties or any of the Released Parties' respective assets; and to the extent that any Non-Debtor Releasing Party receives monetary damages from any Released Party on account of any claim released pursuant to this Section 9.6, such Non-Debtor Releasing Party hereby assigns all of its right, title, and interest in and to such recovery to the Released Parties against whom such money is recovered.*

(d)    Notwithstanding any provision of the Plan to the contrary, the releases contained in this Plan Section 9.6 shall not be construed as, or operate as a release of, or limitation on (i) any claims by the Non-Debtor Releasing Parties against the Released Parties that do not relate to or involve the Debtors or these Cases, (ii) any claims, obligations, rights, causes of action, or liabilities by the Non-

Debtor Releasing Parties against the Released Parties arising out of any action or omission to the extent that such action or omission is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct or fraud, or (iii) objections to Claims.

(e)      Notwithstanding anything herein to the contrary, nothing in this Plan shall release any claims asserted by Laura J. Rosquist a/k/a Laura Dietz against any non-Debtor entities (a) in that certain action captioned as <u>Laura Dietz v. Realen Homes, L.P., et al. pending in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, as case number 07 L 870</u>, which is pending in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, as case number 07 L 870, including, without limitation, (i) Illinois Berger Excavating Contractors, Inc.; (ii) Rieke Contracting, Inc.; (iii) FKA Rieke Excavating, Inc.; (iv) Soil and Material Consultants, Inc.; (v) First Place Concrete, Inc.; and (vi) Realen Home Developers, LLC, or (b) in any other action.

9.7.    **Releases by the Debtor Parties.**  *On the Effective Date, pursuant to Bankruptcy Code § 1123(b), Bankruptcy Rule 9019, or otherwise, and except as otherwise specifically provided in the Plan or in the Plan Documents, the Debtor Parties, in consideration of the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, New OHB Common Stock, the OHB Holdings Units, the New Notes and the New Notes Guarantees, the Exit Credit Facility, the Reinstatement of the Reinstated Liens, the Unsecured Creditor Settlement, and the other contracts, instruments, releases, agreements, waivers, and documents to be executed and delivered in connection with the Plan, and in consideration of the efforts of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that such Debtor Party ever had, now has, or may have that are based in whole or in part on any act, omission, transaction, or occurrence taking place on or prior to the Effective Date and in any way relating to the Debtors, these Cases, or the Plan; the Disclosure Statement; the Plan Documents; the formulation, negotiation, preparation, dissemination, implementation, and/or administration of the Plan, the Disclosure Statement, and the Plan Documents; the confirmation and consummation of the Plan; the subject matter of, or the transactions or events giving rise to, any Claim or Interest of such Debtor Party, or any security previously issued by any of the Debtors.  The immediately preceding sentence shall not, however, apply to (i) any indebtedness of any Person to any of the Debtors for money borrowed by such Person or any other contractual obligation of any Person to any of the Debtors, (ii) any claims by the Debtor Releasing Parties against the Released Parties arising out of any action or omission to the extent that such action or omission is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct or fraud, or (iii) any setoff, counterclaim, or defense under Bankruptcy Code § 502(d) that the Debtors may have or assert against any Person other than any of the Sponsors or the other DIP Facility Lenders or Revolving Credit Facility Lenders (whose respective Claims shall, for the avoidance of doubt, be allowed in the respective manner and amounts provided in the Plan), provided that the aggregate amount thereof shall not exceed the aggregate amount of any Claims held or asserted by such Person against the Debtors.  Holders of Claims or Interests against any of the Debtors shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover any such claim that could be brought on behalf of or in the name of the Debtors.*

9.8.    **Injunction Related to Releases.**  *The Confirmation Order will and shall be deemed to enjoin permanently the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to the Plan (including the releases set forth in this Article IX).*

9.9.    **Exculpation.** *No Released Party shall have or incur, and each Released Party hereby is exculpated from, any liability (whether arising under contract, tort, or federal or state securities laws, whether known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise) to any Person for any pre-Petition Date or post-Petition Date act or omission taken or not taken (as the case may be), or any other transaction, event, or occurrence in any way in connection with, arising from or relating to the Debtors, these Cases (and the commencement or administration thereof); the Disclosure Statement, the Plan (either prior to Confirmation or approval of same, or as same may be confirmed or otherwise approved by the Bankruptcy Court), or any orders of the Bankruptcy Court related thereto, the Plan Documents or the transactions contemplated thereby, or the formulation, negotiation, preparation, dissemination, implementation, or administration of any of the foregoing documents; the solicitation of votes in connection with, and the pursuit of, Confirmation of the Plan; the property to be distributed under the Plan; the Exit Credit Facility; the Confirmation and/or consummation of the Plan; the Effective Date; any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; any other act taken or omitted to be taken in connection with, or in contemplation of, any of the restructuring or other transactions contemplated by the Plan; and the property to be distributed or otherwise transferred under the Plan*; provided, however, that nothing in this Plan Section 9.9 shall exculpate or release any Released Party from its obligations arising under confidentiality agreements and common-interest agreements; provided further, however, that nothing in this Plan Section 9.9 shall release any entity from any claims, obligations, rights, causes of action, or liabilities arising out of such entity's willful misconduct or fraud.  Each Released Party shall be entitled reasonably to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan.

## ARTICLE X

## MODIFICATION AND RESERVATION OF RIGHTS IN THE EVENT OF NONACCEPTANCE OF THE PLAN

The Debtors hereby reserve the right to request that the Bankruptcy Court confirm the Plan over the non-acceptance of any impaired Class of Claims or Interest in accordance with the applicable provisions of Bankruptcy Code § 1129(b).  In the event that any impaired Class or Classes of Allowed Claims does not accept the Plan, upon the written request of the Debtors filed with the Bankruptcy Court, the Plan may (if necessary) be modified, revised, and amended to provide such treatment as set forth in such request, to ensure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Classes rejecting the Plan, and, in particular, to provide the treatment necessary to meet the requirements of Bankruptcy Code § 1129(a) and (b) with respect to (i) the rejecting Classes and (ii) any other Classes adversely affected by the modifications caused by this Article X.  In particular, the treatment of any rejecting Classes or adversely affected Classes may be modified and amended from that set forth in Article V of the Plan, even if less favorable, to the minimum treatment necessary to meet the requirements of Bankruptcy Code § 1129(a) and (b).  These modifications may include, but shall not be limited to, cancellation of all amounts otherwise payable under the Plan to the rejecting Classes and to any junior Classes affected thereby (even if such Classes previously accepted the Plan) consistent with Bankruptcy Code § 1129(b)(2)(B)(ii) and (C)(ii).  Nothing herein affects or excuses the Debtors' obligations, as plan proponents, to comply with the provisions of Bankruptcy Code § 1127 with respect to any proposed modifications of the Plan.

## ARTICLE XI

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

The Plan contemplates and is predicated upon the substantive consolidation of the Estates and the Debtors only for the limited purposes of all actions associated with voting, confirmation, and distribution. Accordingly, on the Effective Date, all of the Debtors and their Estates shall, only for purposes of Sections 5.2, 5.3, 5.4, 5.5, 5.6, and 5.7 of the Plan, be deemed merged and (i) all assets and liabilities of the Debtors shall be treated only for purposes of such Plan Sections 5.2, 5.3, 5.4, 5.5, 5.6, and 5.7 as though they were merged, (ii) all guarantees of the Debtors of payment, performance, or collection of obligations of any other Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be considered a single claim against the Debtors, and (iv) any Claim filed in these Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Such substantive consolidation shall not (other than for voting, treatment, and distribution purposes under the Plan) affect (x) the legal and corporate structures of the respective Debtors or the Reorganized Debtors (including the corporate ownership of the Subsidiary Debtors), and (y) any intercompany claims.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Estates and these Cases for the limited purposes described above, although nothing herein or in the Disclosure Statement shall, or shall be deemed to, prejudice or otherwise affect the Debtors' right to file a separate motion seeking substantive consolidation if they elect to do so in their discretion. If no objection to the substantive consolidation provided for in the Plan is timely filed by the deadline established therefor by the Bankruptcy Court, an order approving such substantive consolidation (which may be the Confirmation Order or any other order) may be entered by the Bankruptcy Court. If any such objections are timely filed and served, a hearing with respect to the proposed substantive consolidation of the Estates and these Cases and the objections thereto may be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

The Debtors reserve the right to otherwise seek the entry of an order of the Bankruptcy Court providing for the further substantive consolidation of some or all of the Debtors for the purpose of implementing the Plan, including for purposes of voting, confirmation, and distributions to be made under the Plan, subject to the right of any party in interest to object to such relief.

Notwithstanding the substantive consolidation provided for herein, nothing in this Plan shall affect the obligation of each Debtor to pay quarterly fees to the United States Trustee program pursuant to 28 U.S.C. § 1930 until the earlier of the time its particular Case is closed, dismissed, or converted to a case under Chapter 7.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1.    **Claims and Actions.**  Following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over these Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the intents and purposes of the Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction: (a) to hear and determine all Claims against, or Interests in, any of the Debtors; and (b) to enforce all Causes of Action that may exist on behalf of any of the Debtors that are not otherwise waived or released under the Plan.

12.2.   **Retention of Additional Jurisdiction.**   Following the Effective Date, the Bankruptcy Court shall also retain jurisdiction for the purpose of classification of Claims and Interests, the re-examination of Claims or Interests that have been Allowed, and the dispositions of any objections as may be filed to any Claims, including Bankruptcy Code § 502(c) proceedings for estimation of Claims.  The Bankruptcy Court shall further retain jurisdiction for the following additional purposes:

(a)      to decide all questions and disputes regarding title to the respective Assets of the Debtors, all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Effective Date, between any of the Debtors and any other party, including, without limitation, any right to recover assets pursuant to the provisions of the Bankruptcy Code;

(b)      to enforce (with respect to all parties, including all Operational Lien Claimholders and all applicable federal, state, and local governmental agencies or departments) and interpret the terms and conditions of the Plan;

(c)      to enter such orders, including, but not limited to, such future injunctions as are necessary to enforce the respective title, rights, and powers of the Debtors, and to impose such limitations, restrictions, terms, and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(d)      to enter an order or orders closing these Cases;

(e)      to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to implement the intents and purposes of the Plan;

(f)      to decide any and all objections to the allowance of Claims or Interests or purported Liens (including Operational Liens), and to decide any actions for a determination that any Operational Lien Claim set forth on Exhibit F to the Disclosure Statement does not constitute a Secured Operational Lien Claim;

(g)      to determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(h)      to determine any applications or motions pending on the Effective Date for the rejection, assumption, or assignment of any Executory Contract (including under the provisions of Article VII hereof) and to hear and determine, and, if need be, to liquidate any and all Claims and/or disputes arising therefrom and/or with respect to any extant or future Claims and/or disputes related to the revesting of non-executory contracts, including, but not limited to, surety bonds or similar bonds;

(i)      to determine any and all applications, adversary proceedings, and contested matters that may be pending on the Effective Date;

(j)      to consider any modification of the Plan, whether or not the Plan has been substantially consummated, and to remedy any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, to the extent authorized by the Plan or the Bankruptcy Court;

(k)      to determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Plan Document;

(l)      to consider and act on the compromise and settlement of any Claim against or Cause of Action by or against any of the Debtors arising under or in connection with the Plan;

(m)      to issue such orders in aid of execution of the Plan as may be authorized by Bankruptcy Code § 1142;

(n)      to protect any Reorganized Debtor or Released Party against any Claims, Liens (including Operational Liens), or Interests released or discharged pursuant to the Plan (including Article IX hereof) and/or to adjudicate any action alleging that any Non-Debtor Released Party engaged in willful misconduct or fraud; and

(o)      to enforce the provisions of the Plan (including Section 6.6 thereof) relating to the release, discharge, and termination of applicable Operational Liens and to otherwise require all applicable Federal, state, and local governmental agencies to (i) recognize the Debtors' appointment as attorney-in-fact for the purposes of executing and/or filing any Lien Waiver or any other related or appropriate documents with any entity in order to effectuate the release, discharge, and termination of the applicable Operational Liens as provided for in the Plan and (ii) accept any and all documents and instruments (including the Plan, the Confirmation Order, and/or all Lien Waivers) as provided by the Debtors, the Reorganized Debtors, or any related parties to revise appropriately all applicable records and files to reflect that all such Liens have been released, discharged, and terminated in accordance with the Plan, the Confirmation Order, and/or such Lien Waivers; and

(p)      to determine such other matters or proceedings as may be provided for under Title 28 or any other title of the United States Code, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, other applicable law, the Plan, or in any order or orders of the Bankruptcy Court, including, but not limited to, the Confirmation Order or any order that may arise in connection with the Plan or the Confirmation Order.

12.3.    **Failure of Bankruptcy Court to Exercise Jurisdiction.**    If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Cases, including the matters set forth in this Article XII, this Article XII shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    **Governing Law.**    Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, are applicable, and subject to the provisions of the Plan Documents and any other contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

13.2.    **Revocation or Withdrawal of the Plan.**    The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors so revoke or withdraw the Plan, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person or (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving any of the Debtors.

13.3.   **Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such Person.

13.4.   **Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

13.5.   **Modification of the Plan Prior to or After the Entry of the Confirmation Order.** The Debtors reserve the right to alter, amend, or modify the Plan prior to the entry of the Confirmation Order, subject to (i) the Sponsors' consent, and (ii) solely with respect to alterations, amendments, or modifications to Plan Sections 2.4(a), 5.3, 6.10, 6.13, 13.7, and any other provision that affects the economic terms of the Unsecured Creditor Settlement, the Creditors Committee's consent. After the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, upon order of the Bankruptcy Court, may amend or modify the Confirmation Order, and the Plan, in accordance with Bankruptcy Code § 1127, the Confirmation Order, and the Plan, subject to the Sponsors' consent and, if Class 3 votes to accept the Plan, the Unsecured Creditor Agent's consent.

13.6.   **No Late Charges.** Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no late charge is to be allowed on any Claim subsequent to the Petition Date.

13.7.   **Professional Fees.** No Professional Fees shall be paid with respect to any Claim or Interest except as specified herein or as allowed by an order of the Bankruptcy Court. All final applications for Professional Fees for services rendered in connection with these Cases prior to and including the Confirmation Date shall be filed with the Bankruptcy Court not later than 90 days after the Effective Date. Notwithstanding anything to the contrary herein, the Debtors or the Reorganized Debtors (as applicable) shall pay any and all Allowed, Court-approved Professional Fees that were incurred by the Professionals for the Creditors Committee prior to August 1, 2010 (except for any fees incurred by those Professionals in their investigation of the Claims and/or Liens of the Revolving Credit Facility Lenders) and that were either unpaid or the subject of a holdback as of the Effective Date. In addition, notwithstanding anything to the contrary herein or in any order of the Bankruptcy Court or in any order of the Bankruptcy Court, any Professional Fees incurred by the Professionals for the Creditors Committee in excess of $125,000 in their investigation of the Claims and/or Liens of the Revolving Credit Facility Lenders shall only be paid from amounts that would otherwise be available for distribution to the Holders of Allowed Claims in Classes 3A, 3B, and 3C; provided, however, that in consideration of the Unsecured Creditor Settlement, if Class 3 votes as a Class in the aggregate to accept the Plan in accordance with Bankruptcy Code § 1126(c), then an additional $300,000 (the "**Additional Committee Investigation Fees**"), which shall be deducted from the Unsecured Creditor Cash Pool, shall be available to pay Allowed Professional Fees incurred by the Professionals for the Creditors Committee in their investigation of the Claims and/or Liens of the Revolving Credit Facility Lenders. For the avoidance of doubt, except as provided in the preceding sentence, no more than $125,000 of the Carve-Out (as defined in the DIP Facility Order), and no portion of any cash collateral or proceeds of the DIP Facility, shall be paid to the Professionals for the Creditors Committee or any representative of the Estates to investigate the Claims and/or Liens of the Revolving Credit Facility Lenders. If Class 3 votes as a Class in the aggregate to accept the Plan, to the extent the Professionals for the Creditors Committee incur any Additional Committee Professional Fees, the Additional Committee Professional Fees shall be paid from the Unsecured Creditor Cash Pool, and the Debtors and the Reorganized Debtors shall have no obligation to pay any Additional Committee Professional Fees.

13.8.   **Amounts of Claims.** All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by an order of the Bankruptcy Court or by the Plan; provided, however, that Claims that have been objected to and that have not been Allowed or disallowed prior to the day set for return of

Ballots shall be voted and counted, if at all, at the amount, if any, as estimated by the Bankruptcy Court. The Debtors and other interested parties reserve the right, both before and after Confirmation, to object to Claims so as to have the Bankruptcy Court determine or estimate the Allowed amount of such Claim under the Plan.

13.9. **Bankruptcy Code § 1145 and Other Exemptions.** Pursuant to Bankruptcy Code § 1145(a)(1), the issuance of any securities under the Plan, including, without limitation, the New OHB Common Stock, the OHB Holdings Units, the New Notes, and the New Notes Guarantees, to the extent any of the foregoing constitute "securities" under applicable law, shall be exempt from the registration requirements of the Securities Act, and any state or local laws requiring registration for the offer or sale of securities. All such securities, when issued or sold, shall be freely transferable by the recipients thereof, subject to: (i) the provisions of Bankruptcy Code § 1145(b) relating to "underwriters," as defined therein; (ii) any restrictions contained in the terms of the applicable securities themselves; or (iii) any restrictions on the securities that have been agreed to by the Holder of the securities with respect thereto. Any securities to be issued under the Plan shall be issued without further act or action under applicable law, regulation, order, or rule. To the maximum extent permitted by law, pursuant to Section 4(2) of the Securities Act, Regulation D of the Securities Act, Rule 701 promulgated under the Securities Act, or otherwise, the issuance of any OHB Holdings Units pursuant to the Long Term Incentive Plan shall be exempt from the registration requirements of the Securities Act, and any state or local laws requiring registration for the sale of securities.

13.10. **Bankruptcy Code § 1146(a) Exemption.** Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any notes, equity securities, instruments, mortgages, or documents under or in connection with the Plan or the Plan Documents (including, without limitation, the Exit Credit Facility), the assignment or surrender of any lease or sublease, the creation or recording of any mortgage, deed of trust, Lien, pledge, or other security interest or the making, assignment, or delivery of any lease, sublease, deed, or any other instrument of transfer (or deemed transfer) under, in furtherance of, or in connection with the Plan or any Plan Document (including, without limitation, the Exit Credit Facility), including any deeds, bills of sale, assignments, mortgages, deeds of trust, or similar documents executed in connection with any assets subject to the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, intangible, transfer, controlling interest transfer, realty transfer, recordation, documentary stamp, real property transfer, excise, or other similar tax or fee, nor any Uniform Commercial Code filing or recording fee or similar or other governmental assessment. All appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

13.11. **Applicability of Bankruptcy Code § 1125.** The protection afforded by Bankruptcy Code § 1125(e) with regard to the solicitation of acceptances or rejections of the Plan and with regard to the offer, issuance, sale, or purchase of the New OHB Common Stock and the OHB Holdings Units (including any and all OHB Holdings Units granted pursuant to the Long Term Incentive Plan), the New Notes and the New Notes Guarantees, and/or any other securities or notes issued in connection with the Exit Credit Facility, or otherwise under the Plan, or any other security, shall apply to the fullest extent provided by law, and the entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Debtors, the Administrative Agents, the DIP Facility Lenders, the Sponsors, the Revolving Credit Facility Lenders, and each of their respective officers, directors, partners, employees, members, agents, attorneys, accountants, financial advisors, investment bankers, dealer-managers, placement agents, and other professionals, shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Bankruptcy Code § 1125(e) and, therefore, are not liable on account of such solicitation or participation, for violation of any applicable

law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

13.12. **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

13.13. **Rules of Interpretation.**

(a)     For purposes of the Plan:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such from or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented in accordance with its terms; (iv) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings and references to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the terms "including," "including, but not limited to," and "including, without limitation," shall be deemed interchangeable and given the same interpretation; and (viii) the rules of construction set forth in Bankruptcy Code § 102 shall apply.

(b)     The Plan is the product of extensive discussions and negotiations between and among the Debtors and the Sponsors.  Each of the foregoing was represented by counsel who either (i) participated in the formulation and documentation of, or (ii) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, the Plan Documents, and other documents ancillary thereto.  Accordingly, the general rule of contract construction known as "*contra preferentem*" shall not apply with respect to the Debtors or the Sponsors to the construction or interpretation of any provision of the Plan, the Disclosure Statement, or any of the Plan Documents.

13.14. **Severability.**  Except as to terms which, if unenforceable, would frustrate the overall purposes of the Plan, should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

13.15. **Implementation.**  The Debtors, the Reorganized Debtors, the Administrative Agents, the Revolving Credit Facility Lenders, the DIP Facility Lenders, the Junior Subordinated Notes Trustees, the Creditors Committee, Operational Lien Claimholders, all Exit Credit Facility Lenders, the Sponsors, and the Exit Credit Facility Agent shall take all steps, and execute all documents, including appropriate releases, certificates, and Lien Waivers, reasonably necessary, beneficial, or appropriate to effectuate the provisions contained in the Plan.

13.16. **Inconsistency.**  In the event of any inconsistency between the Plan and the Disclosure Statement, the provisions of the Plan shall govern; in the event of any inconsistency between the Plan and any Plan Document, the provisions of such Plan Document shall govern (except to the extent of any such inconsistencies that are adverse to the Debtors or the Reorganized Debtors, in which case the Plan shall govern).

13.17.   **Service of Documents.**  Any pleading, notice or other document required by the Plan to be served on or delivered to the following parties shall be sent by first class U.S. mail, postage prepaid to:

**The Debtors:**

Orleans Homebuilders, Inc.
3333 Street Road
Bensalem, Pennsylvania 19020
Attn.:  Mr. Mitchell B. Arden
        Lawrence J. Dugan, Esq.

with copies to:

Cahill Gordon & Reindel LLP
Eighty Pine Street,
New York, New York 10112-2200,
Attn: Joel H. Levitin, Esq.
      Stephen J. Gordon, Esq.
      Richard A. Stieglitz Jr., Esq.
      Maya Peleg, Esq.

and

Elliott Greenleaf
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Attn.:  Rafael X. Zahralddin, Esq.
        Mark A. Kearney, Esq.
        Neil R. Lapinski, Esq.
        Shelley A. Kinsella, Esq.

**Counsel to the Creditors Committee**:

Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Attn.:  Richard W. Riley, Esq.
        Sommer L. Ross, Esq.

Duane Morris LLP
1540 Broadway
New York, New York 10036-4086
Attn.:  Gerard S. Catalanello, Esq.
        James J. Vincequerra, Esq.

and

Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196
Attn.:  Lawrence J. Kotler, Esq.

**Counsel to the Contributing Lender**:

Schulte Roth & Zabel LLP
919 3rd Avenue
New York, New York 10022-3921
Attn.:  Adam C. Harris, Esq.
       Adam L. Hirsch, Esq.

**Counsel to the Administrative Agents**:

Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Attn.:  Mark W. Eckard, Esq.

and

Reed Smith LLP
One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103-7301
Attn.:  Claudia Z. Springer, Esq.
      Scott M. Esterbrook, Esq.

13.18.  **Compromise of Controversies.**  Pursuant to Bankruptcy Rule 9019, and in consideration of the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan, including, without limitation, the Unsecured Creditor Settlement.  The entry of the Confirmation Order on the Bankruptcy Court's docket shall constitute the Bankruptcy Court's approval of each of the compromises or settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute the Bankruptcy Court's determination that such compromises and settlements are fair and reasonable and are in the best interests of the Debtors, the Reorganized Debtors, the Estates, and any Person holding Claims against or Interests in any of the Debtors.

13.19.  **No Admissions.**  Notwithstanding anything herein to the contrary, prior to the occurrence of the Effective Date, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth herein.

13.20.  **Filing of Additional Documents.**  On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary and appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.21.  **Dissolution of the Creditors Committee.**  On the Effective Date, the Creditors Committee shall be deemed dissolved and the members of such Committee shall be released and discharged from all rights and duties arising from or related to these Cases.  Unless otherwise agreed by the Reorganized Debtors, the Professionals retained by the Creditors Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except for services rendered and expenses incurred in connection with any applications for allowance of compensation and reimbursement of expenses incurred as of the Effective Date and approved by the Bankruptcy Court.

13.22. **Further Actions.** The Debtors, the Reorganized Debtors, and OHB Holdings shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, Lien Waivers, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, any Plan Document, the release of Operational Liens, the transactions contemplated herein and therein, the Long Term Incentive Plan, the New Notes and the New Notes Guarantees, the Exit Credit Facility, or any notes or guarantee issued in connection herewith or therewith.

Dated: November 29, 2010                    ORLEANS HOMEBUILDERS, INC.,

Debtor and Debtor-in-Possession (for itself and the other Debtors and Debtors-in-Possession)

By:      _/s/ Mitchell Arden_____
         Mitchell Arden
         Chief Restructuring Officer

**Submitted by:**

ELLIOTT GREENLEAF

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Mark A. Kearney (DE Bar No. 2601)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399

- and -

CAHILL GORDON & REINDEL LLP

Joel H. Levitin
Stephen J. Gordon
Richard A. Stieglitz Jr.
Maya Peleg
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Attorneys for the Debtors and Debtors-in-Possession*