## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| | Case No. 10-10684 (PJW) |
| ORLEANS HOMEBUILDERS, INC., et al.,[1] | Jointly Administered |
| Debtors. | Re: Docket Nos. 1821, 1822, 2152, 2153, 2154, 2168, 2216, 2217, 2218, 2220, 2242, 2387, 2511, 2593, 2599, 2624, 2625, 2638, 2639, 2641, 2642, & 2654 |

## ORDER CONFIRMING DEBTORS' SECOND
## AMENDED JOINT PLAN OF REORGANIZATION

The above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), having filed with this Court separate, voluntary petitions under Chapter 11 of the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each of the Debtors' tax identification numbers, are: Orleans Homebuilders, Inc. (4323), Brookshire Estates, L.P. (8725), Community Management Services Group, Inc. (6620), Greenwood Financial Inc. (7510), Masterpiece Homes, LLC (1971), OHB Homes, Inc. (0973), OHI Financing, Inc. (6591), OHI PA GP, LLC (2675), OPCNC, LLC (8853), Orleans Arizona Realty, LLC (9174), Orleans Arizona, Inc. (2640), Orleans at Bordentown, LLC (4968), Orleans at Cooks Bridge, LLC (4185), Orleans at Covington Manor, LLC (9891), Orleans at Crofton Chase, LLC (8809), Orleans at East Greenwich, LLC (9814), Orleans at Elk Township, LLC (6891), Orleans at Evesham, LLC (7244), Orleans at Falls, LP (2735), Orleans at Hamilton, LLC (9679), Orleans at Harrison, LLC (4155), Orleans at Hidden Creek, LLC (3301), Orleans at Jennings Mill, LLC (4693), Orleans at Lambertville, LLC (0615), Orleans at Limerick, LP (7791), Orleans at Lower Salford, LP (9523), Orleans at Lyons Gate, LLC (2857), Orleans at Mansfield LLC (1498), Orleans at Maple Glen LLC (7797), Orleans at Meadow Glen, LLC (4966), Orleans at Millstone River Preserve, LLC (8810), Orleans at Millstone, LLC (8063), Orleans at Moorestown, LLC (9250), Orleans at Tabernacle, LLC (9927), Orleans at Thornbury, L.P. (4291), Orleans at Upper Freehold, LLC (3225), Orleans at Upper Saucon, L.P. (3715), Orleans at Upper Uwchlan, LP (8394), Orleans at Wallkill, LLC (2875), Orleans at West Bradford, LP (4161), Orleans at West Vincent, LP (9557), Orleans at Westampton Woods, LLC (8095), Orleans at Windsor Square, LP (9481), Orleans at Woolwich, LLC (9215), Orleans at Wrightstown, LP (9701), Orleans Construction Corp. (0893), Orleans Corporation (8770), Orleans Corporation Of New Jersey (5325), Orleans DK, LLC (5308), Orleans RHIL, LP (1938), Parker & Lancaster Corporation (1707), Parker & Orleans Homebuilders, Inc. (5269), Parker Lancaster, Tidewater, L.L.C. (7432), Realen Homes, L.P. (8293), RHGP LLC (8197), Sharp Road Farms Inc. (1871), Stock Grange, LP (4027), and Wheatley Meadows Associates (5459).

Bankruptcy Code on March 1, 2010 (the "Petition Date"); and the Debtors' having filed with this Court a joint plan of reorganization, dated August 12, 2010 (Docket No. 1821), a first amended joint plan of reorganization, dated September 27, 2010 (Docket No. 2153), a modified first amended joint plan of reorganization, dated October 1, 2010 (Docket No. 2217), a second amended joint plan of reorganization, dated November 19, 2010 (Docket No. 2593), and a modified second amended joint plan of reorganization, dated November 29, 2010 (Docket No. 2638) (as it may be further modified and amended, the "Plan"),[2] a true and correct copy of which is attached hereto as Exhibit 1 and is incorporated herein by reference; and the Debtors' having also filed with this Court a disclosure statement, dated August 12, 2010 (Docket No. 1822), a first amended disclosure statement, dated September 27, 2010 (Docket No. 2152), and a modified first amended disclosure statement, dated October 1, 2010 (Docket No. 2216) (as approved by the Disclosure Statement Order (as defined below), the "Disclosure Statement"), by which the Debtors have solicited votes on the Plan; and the Debtors' having given notice to all known parties-in-interest of the date, time, and place for the hearing to consider approval of the Disclosure Statement and the deadline for objecting to same; and a hearing to consider approval of the Disclosure Statement, the form of ballots to be used for voting with respect to the Plan, and the form and manner of notice with respect to matters concerning confirmation of the Plan, and related matters having been held before this Court on September 29, 2010 (the "Disclosure Statement Hearing"), after due notice and all parties-in-interest having had an opportunity to appear and be heard at such hearing; and this Court having approved the Disclosure Statement

---

[2] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Plan.

and related matters by entry of that certain order (a) approving the Disclosure Statement, (b) scheduling a hearing to consider Plan confirmation, (c) establishing the deadline for objecting to the Plan, (d) approving the form of ballots and other solicitation forms, (e) approving the voting deadline, voting procedures, tabulation procedures, and solicitation procedures, and (f) approving the form and manner of notices, dated October 4, 2010 (Docket No. 2220) (the "Disclosure Statement Order"); and upon the affidavits or declarations (as applicable) of (a) Mitchell Arden, the Debtors' Chief Restructuring Officer, in support of confirmation of the Plan (the "Arden Affidavit") (Docket No. 2594), (b) Ronald Greenspan of FTI Consulting, the Debtors' financial advisors (Docket No. 2595) (the "Greenspan Affidavit"), and (c) Jeffrey S. Stein of the Garden City Group, Inc., the Debtors' claims, notice, and balloting agent, certifying the tabulations of votes on the Plan (Docket No. 2596) (the "Stein Declaration"); and the Debtors' having published a notice of the Confirmation Hearing (as defined below) and related matters in *USA Today* on October 19, 2010, as evidenced by that Verification of Publication of Erika Fowler, dated October 29, 2010, and filed with the Court on November 5, 2010 (Docket No. 2477); and the Debtors' having filed the Plan Supplement on October 29, 2010; and the Debtors' having filed a Memorandum in Support of Confirmation of the Plan (Docket No. 2592), a prior version of this proposed Order (Docket No. 2599), and a reply to the remaining objections (Docket No. 2590), in each instance on November 19, 2010, in accordance with the Local Bankruptcy Rules; and the Debtors having filed a modified version of this proposed order (Docket No. 2641) and a Notice of Announcement of the Names of Six of the Initial Anticipated Directors of Reorganized OHB and OHB Holdings (Docket No. 2639) (the "Initial Directors Notice"), both on November 29. 2010; and a hearing to consider confirmation of the Plan and other matters relating to confirmation having been held before this Court on November 30, 2010 (the "Confirmation

Hearing"), after due notice, and all parties-in-interest having had an opportunity to appear and to be heard at such hearing; and this Court having considered the Plan; and based upon all other pleadings and papers heretofore filed herein, all proceedings heretofore had herein, and the record of the Confirmation Hearing; and after due deliberation and good and sufficient cause appearing therefor; and

IT APPEARING and the Court having found and determined that:

Jurisdiction and Notice

A.     This Court has jurisdiction over these Cases, the Plan, and the confirmation of same pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The Bankruptcy Court takes judicial notice of the docket of these Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before the Bankruptcy Court during the pendency of these Cases.

C.     The Disclosure Statement Order has become a Final Order.

D.     Due, proper, and adequate notice of the date and time for voting on, and for filing objections to, the Plan and of the date and time of the Confirmation Hearing was given pursuant to Bankruptcy Rule 2002(b)(2), the Local Bankruptcy Rules, and the Disclosure Statement Order.

E.     Due, proper, and adequate notice of the deadline for filing any objections to cure amounts with respect to executory contracts to be assumed by the Debtors under the Plan was provided by the sending to all appropriate parties of that certain Notice Regarding (a)

Executory Contracts to be Assumed, (b) Amounts Required to Cure Any Defaults Thereunder, and (c) Related Procedures, dated October 4, 2010 (the "Cure Notice").

F.    The Plan and the Solicitation Packages (as defined in the Disclosure Statement Order) were properly and timely transmitted to Holders of Impaired Claims in Classes 2A, 3A, 3B, 3C, and 3D of the Plan that were entitled to vote to accept or reject the Plan in accordance with the requirements of the Bankruptcy Code and this Court's orders, including the Disclosure Statement Order, and votes on the Plan were properly solicited and tabulated. Specifically, in accordance with the Disclosure Statement Order, and as evidenced by the certificate of service of Karen E. Petriano that was filed with the Court (the "Disclosure Statement Certificate of Service") (Docket No. 2286), on October 13, 2010, the Claims Agent caused the Notice of Confirmation Hearing (the "Confirmation Hearing Notice"), and in applicable instances, the Disclosure Statement enclosing the Plan as an exhibit, the appropriate Ballot with a postage paid prepaid return mailing envelope, the Notification of Non-Voting Status, the Committee Letter, the Solicitation Documents, the Notice Regarding Unsecured Operational Lien Claims, the Notice regarding secured Operational Lien Claims, the Notification of Deemed Rejection, and/or the Notice Regarding (A) Executory Contracts to be Assumed, (B) Amounts Required to Cure Any Defaults Thereunder, and (C) Related Procedures to be mailed to: (a) to all known parties-in-interest (b) all persons or entities that had served and filed notices of appearance in these Cases pursuant to Bankruptcy Rule 2002; (c) all creditors known to the Debtors; and (d) all record and beneficial holders of securities of the Debtors known to the Debtors and all holders of record of equity interests in the Debtors. See the Stein Declaration, ¶ 4.

G. The notices given pursuant to the Disclosure Statement Order or otherwise by the Debtors with respect to the Plan, the Plan Documents, and the Transactions (as defined below) provided adequate disclosure within the meaning of Bankruptcy Code § 1125. Without limiting the generality of the foregoing, due, proper, and adequate notice was given, pursuant to the Disclosure Statement Order and through filing and service of the Cure Notice or otherwise, to each non-Debtor party to any Executory Contract to be assumed by the Debtors under the Plan (as set forth on the list attached as Exhibit 3 hereto) of (i) the proposed default amount owed (if any) under the applicable Executory Contract and (ii) the last date by which such non-Debtor party may file an objection or other response with respect to such proposed default amount. All known creditors received a notice of the Confirmation Hearing and, where appropriate, a Ballot expressly referring to and adequately describing the release provisions in Plan Section 9.6.

Good-Faith Solicitation

H. The solicitation of votes on the Plan was conducted appropriately and in good faith within the meaning of Bankruptcy Code §§ 1125 and 1126, all other provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules, the Disclosure Statement, and all other applicable rules, laws, and regulations, and the Released Parties are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Plan Section 9.9.

I. Pursuant to the Disclosure Statement Order, the Debtors, in consultation with the Creditors Committee and the Sponsors, have determined to extend the Voting Deadline to accept all Ballots received on or before November 17, 2010. Accordingly, under the Disclosure Statement Order, all Ballots received as of that date should be utilized (and were so utilized) in the calculation of whether the Voting Classes voted to accept or to reject the Plan.

Plan of Reorganization

J.      The Debtors have met their burden of proving, by a preponderance of the evidence, their satisfaction of, and compliance with, the elements of Bankruptcy Code § 1129(a) and (b), as further set forth herein.  Without limiting the generality of the foregoing, the Plan complies with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 1122 and 1123, the Bankruptcy Rules, and the Local Bankruptcy Rules, in accordance with Bankruptcy Code § 1129(a)(1).

K.      The classification of Claims and Interests in Article II of the Plan satisfies the requirements of Bankruptcy Code § 1122.

L.      Article II of the Plan adequately designates classes of Claims and Interests, in accordance with Bankruptcy Code § 1123(a)(1), other than Administrative Claims, DIP Facility Claims, and Tax Claims, which are not required to be designated into classes under Bankruptcy Code § 1123(a)(1).

M.      Article IV of the Plan specifies the unimpaired Classes, in accordance with Bankruptcy Code § 1123(a)(2).

N.      Article V of the Plan specifies the treatment of each impaired Class of Claims or Interests, in accordance with Bankruptcy Code § 1123(a)(3).

O.      The Plan provides the same economic treatment of each Claim or Interest in a particular Class, except to the extent that Holders of particular Claims or Interests have agreed to a less favorable treatment of such particular Claims or Interests, in accordance with Bankruptcy Code § 1123(a)(4).

P.      The Plan provides adequate means for its implementation in accordance with Bankruptcy Code § 1123(a)(5), including, among other things:  Reorganized OHB's

formation of OHB Holdings; the issuance of the New Notes, the New Notes Guarantees, the New OHB Common Stock, and the OHB Holdings Units; the vesting of the property of the respective Estates of the Debtors in the applicable Reorganized Debtors; the execution and delivery of the Exit Credit Facility; the formation of the Short Term Incentive Plan; and the implementation of the Unsecured Creditor Settlement through, among other things, the creation and funding of the Unsecured Creditor Escrow Account, the appointment of the Unsecured Creditor Agent, and the establishment of the Litigation Protocol. The Plan and all of the transactions contemplated therein and to be consummated thereunder and in the Plan Documents (collectively, the "Transactions") are supported by the sound exercise of the Debtors' business judgment and are in the best interests of the Debtors and their Estates and Creditors.

Q. Plan Section 6.4(a) provides for the amendment and restatement of the Debtors' certificates of incorporation, by-laws, limited liability company agreements, limited partnership agreements, or similar constituent documents, as applicable, and the formation of OHB Holdings, the filing of the applicable certificate of formation, and the adoption of the OHB Holdings LLC Agreement (sample draft forms of which were filed as part of the Plan Supplement), to ensure compliance with Bankruptcy Code § 1123(a)(6).

R. Plan Section 6.1 provides for the selection of officers and directors of the Reorganized Debtors and successors thereto in a manner consistent with the interests of Creditors and Interest Holders and with public policy, in accordance with Bankruptcy Code § 1123(a)(7).

S. The Debtors have complied with the applicable provisions of the Bankruptcy Code, in accordance with Bankruptcy Code § 1129(a)(2).

T.    The Plan has been proposed in good faith and not by any means forbidden by law, in accordance with Bankruptcy Code § 1129(a)(3).

U.    Except to the extent otherwise provided in the Plan, and pursuant to previous orders of this Court, any payment made or to be made by the Debtors, or by any Person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with these Cases or in connection with the Plan and incident to these Cases to be paid by the Debtors, has been approved by, or is subject to the approval of, this Court as reasonable, in accordance with Bankruptcy Code § 1129(a)(4).

V.    Prior to the Confirmation Hearing, in the Initial Directors Notice, the identity and affiliations of six of the individuals proposed to serve, after confirmation of the Plan, as a director or officer of the Reorganized Debtors and OHB Holdings were disclosed to this Court, and the seventh individual will be identified thereto as quickly as practicable thereafter, in satisfaction of the Debtors' obligations with respect thereto under Plan Section 6.1, and the appointment to such office of all such individuals is consistent with the interests of Creditors and Interest Holders and with public policy, in accordance with Bankruptcy Code § 1129(a)(5)(A).

W.    The Debtors have disclosed the identity of any insider that may be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insider, in accordance with Bankruptcy Code § 1129(a)(5)(B). Without limiting the generality of the foregoing, the Debtors have include in the Plan Supplement additional information regarding the aggregate terms of the Short Term Incentive Plan.

X.    There are no rate changes provided for in the Plan, in accordance with Bankruptcy Code § 1129(a)(6).

Y.    With respect to each impaired Class of Claims and each Class of Interests under the Plan, each Holder of a Claim or Interest in such Class (i) has accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date, in accordance with Bankruptcy Code § 1129(a)(7). No Creditor has made an election pursuant to Bankruptcy Code § 1111(b)(2).

Z.    With respect to Bankruptcy Code § 1129(a)(8), each Class of Claims under the Plan, other than those Classes of Claims and Interests that have been deemed to reject the Plan, has voted to accept the Plan or the Claims in such Class are not impaired under the Plan. Classes 1, 2B, 2C, and 6 are not impaired under the Plan, and are thus conclusively presumed to have voted to accept the Plan. Classes 2A, 3A, 3B, 3C, 3D, 4, and 5 are impaired under the Plan. Each of the Classes entitled to vote with respect to the Plan, Classes 2A, 3A, 3B, 3C, and 3D (collectively, the "Voting Classes"), has voted to accept the Plan. In addition, Class 3 (comprised of Classes 3A, 3B, and 3C, in the aggregate) has voted as a class to accept the Plan. Because Classes 4 and 5 neither receive nor retain any property under the Plan (other than as set forth in Plan Section 5.9 with respect to Class 5 Intercompany Claims), they are deemed to have rejected the Plan under Bankruptcy Code § 1126(g), and the requirements of Bankruptcy Code § 1129(a)(8) have not been met, thereby requiring the application of Bankruptcy Code § 1129(b). As more fully set forth below, the Plan satisfies Bankruptcy Code § 1129(b) with respect to all applicable impaired Classes.

AA.    The Plan does not discriminate unfairly and is fair and equitable with respect to Claims or Interests (as applicable) in Classes 4 and 5 in that no Holders of any Claim

or Interest junior to the Claims or Interests (as applicable) of such Classes of Claims or Interests will receive or retain any property under the Plan on account of such junior Claim or Interest, in accordance with Bankruptcy Code § 1129(b)(2)(B).

BB.     Where applicable, except to the extent that the Holder of a particular Claim has agreed to less favorable treatment of such Claim, the Plan provides that:

i.      on the later of (a) the Initial Distribution Date (which is defined in the Plan as the "date to be established by the Reorganized Debtors, which shall be no later than 60 days after the Effective Date or as soon as practicable thereafter, or such other date as the Bankruptcy Court may order") and (b) the date that is 60 days after the Allowance Date, except to the extent that such Holder has agreed to a less favorable treatment of such Allowed Claim, each Holder of a Claim of a kind specified in Bankruptcy Code § 507(a)(2) or 507(a)(3) shall receive on account of such Claim Cash equal to the Allowed amount of such Claim, in accordance with Bankruptcy Code § 1129(a)(9)(A);

ii.     each Holder of a Claim arising under Bankruptcy Code § 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7), if any, shall receive (if not otherwise paid in full pursuant to an order of this Court prior to the Confirmation Date, and except to the extent such Holder has agreed to a less favorable treatment of such Allowed Claim) on account of such Claim, on the latest of (a) the Initial Distribution Date, (b) the date that is 60 days after the Allowance Date of such Claim, and (c) the date when such Allowed Claim becomes due and payable according to its terms and conditions, a Cash payment of a value, as of the Effective Date, equal to the Allowed amount of such Claim, in accordance with Bankruptcy Code § 1129(a)(9)(B); and

iii.    each Holder of a Claim arising under Bankruptcy Code § 507(a)(8), if any, shall receive on account of such Claim at the election of the applicable Debtor, either (i) Cash equal to the amount of such Allowed Claim on the later of (a) the Initial Distribution Date and (b) the date that is 60 days after the Allowance Date, or (ii) in accordance with Bankruptcy Code § 1129(a)(9)(C), deferred Cash payments (a) of a value, as of the Effective Date, equal to the amount of such Allowed Tax Claim, (b) over a period not exceeding five years after the Petition Date, and (c) in a manner not less favorable than the treatment of the most favored nonpriority unsecured Claim provided for by the

Plan, except to the extent such Holder has agreed to a less favorable treatment of such Allowed Claim.

CC.     At least one Class of Claims or Interests that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider, in accordance with Bankruptcy Code § 1129(a)(10). See Stein Declaration, ¶ 13.

DD.     The Plan is feasible. Based on the assumptions set forth in the Memorandum in Support of Confirmation of the Debtors' Plan, the Arden Affidavit, the Greenspan Affidavit, and Exhibit B to the Disclosure Statement, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successors thereof, in accordance with Bankruptcy Code § 1129(a)(11). There is a reasonable prospect that the Debtors will meet their financial obligations under the Plan. Arden Affidavit, ¶ 9; Greenspan Affidavit, ¶¶ 4 - 5.

EE.     All fees payable under 28 U.S.C. § 1930 have been paid or will be paid pursuant to the Plan, in accordance with Bankruptcy Code § 1129(a)(12).

FF.     To the extent the Debtors still maintain any retiree benefits plans, as such term is defined in Bankruptcy Code § 1114, they will be deemed assumed under the Plan, in accordance with Bankruptcy Code § 1129(a)(13).

GG.     The Debtors are not individuals, making Bankruptcy Code § 1129(a)(14)–(15) inapplicable in these Cases.

HH.     Because the Debtors are commercial corporations, Bankruptcy Code § 1129(a)(16) is inapplicable.

II.     The Debtors' respective decisions regarding the rejection or assumption of the Executory Contracts as provided in and contemplated by the Plan and herein are based upon

and are within, the sound business judgment of the Debtors and are in the best interests of the Debtors and their respective Estates.

JJ.     The conditions to confirmation set forth in Plan Section 8.1 have been satisfied in that (a) this Court has entered the Disclosure Statement Order approving the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code § 1125, and such order has not been reversed, stayed, amended, or modified in any manner adverse to the Debtors or their Estates, and (b) this Order is acceptable, in form and substance, to the Debtors and the Sponsors.

KK.     The discharge, release, indemnification, exculpation, injunction, and related provisions set forth in the Plan, including in Article IX thereof, and herein are fair to the Debtors' Creditors, Interest Holders, and other parties-in-interest, and are necessary to the successful reorganization of the Debtors and are an important component of the Unsecured Creditor Settlement. The release by the Debtor Parties on their own behalf and on behalf of certain third parties pursuant to this Order and Plan Section 9.7 is appropriate and worthy of approval. There is an identity of interest between the Debtor Parties and the Released Parties; the Released Parties have made a substantial contribution to the Debtors' reorganization; the releases are necessary to the effectuation of the compromises and settlements embodied in the Plan (including the Unsecured Creditor Settlement) and to the success of the Debtors' rehabilitation under the Plan; the Plan has been accepted by all five of the Voting Classes; and the compromises and settlements contained in the Plan upon which certain of the releases are premised will allow for distributions to certain Creditors that would not otherwise be available to such Creditors under the applicable provisions of the Bankruptcy Code. The releases pursuant to

Plan Section 9.6(b) are limited to the Non-Debtor Releasing Parties, who affirmatively consented thereto in voting to accept the Plan.

LL.     The principal purpose of the Plan is not the avoidance of taxes or of the requirements of Section 5 of the Securities Act of 1933, and no governmental unit has requested that this Court deny confirmation on such basis, thus satisfying the requirements of Bankruptcy Code § 1129(d). Also, the Debtors will satisfy all Allowed Tax Claims in the manner provided for in Plan Section 3.3.

MM.     Subsequent to filing the Plan on October 1, 2010, the Debtors made certain non-material modifications thereto, as set forth in both the Second Amended Joint Plan of Reorganization, dated November 19, 2010 (Docket No. 2593), and the Modified Second Amended Joint Plan of Reorganization, dated November 29, 2010 (Docket No. 2638) (all such modifications, the "Plan Modifications"), which are reflected in the version of the Plan attached hereto as Exhibit 1. None of the modifications made since the commencement of solicitation adversely affects the treatment of any Claim or Interest under the Plan. Prior notice regarding the substance of the modifications, together with the filing with the Court of the Plan as modified by the Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing or in the confirmation brief, constitute due and sufficient notice thereof. Accordingly, pursuant to Bankruptcy Code § 1127(a) and Bankruptcy Rule 3019, none of these modifications require additional disclosure under Bankruptcy Code § 1125 or resolicitation of votes under Bankruptcy Code § 1126 (especially in light of previously-provided disclosures) nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously-cast acceptances or rejections of the Plan. The Plan (as modified and attached hereto) shall constitute the Plan submitted to the Court for Confirmation.

NN.  The Plan is dated and identifies the proponents, and the injunctions granted under the Plan are in specific and conspicuous language, thereby complying with all requirements of Bankruptcy Rule 3016.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

General Provisions Regarding Plan Approval and Authorizations

1.    The findings of this Court as set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, which is applicable to this matter by virtue of Bankruptcy Rule 9014.

2.    The Plan, all exhibits and supplements thereto (including the Plan Supplement), and all provisions, terms, and conditions thereof, are hereby confirmed in all respects, and all provisions thereof are incorporated herein by reference.

3.    Except as otherwise set forth herein with respect to the Unresolved Operational Lien Objections, to the extent not withdrawn prior to the entry of this Order, all objections that were filed have been resolved, are resolved by the relief granted herein, or are hereby overruled and denied with prejudice.  Objections that have been withdrawn or not pursued at the Confirmation Hearing, if any, are hereby deemed withdrawn with prejudice.  Without limiting the generality of the foregoing, at the Confirmation Hearing, the Court heard and thereafter overruled the objection filed by TD Bank, N.A. (Docket No. 2454).

4.    On and after the Effective Date, each of the Reorganized Debtors and OHB Holdings is hereby authorized to perform those responsibilities, duties, and obligations set forth or contemplated in the Plan and herein, including, without limitation, subject to Plan Section 6.5(b), making distributions as provided under the Plan; objecting to the allowance of Claims or Interests, and prosecuting any litigation pertaining thereto or as otherwise set forth in the Plan;

paying such Claims as may be later Allowed, as contemplated by the dispute resolution procedures contained in Plan Section 6.12; and overseeing and governing the continuing affairs and operations of the Reorganized Debtors on a go-forward basis.

5.     The provisions in the Plan and herein governing distributions, including, without limitation, Articles III, IV, and V of the Plan, and the resolution of Disputed Claims are found to be fair and reasonable and are hereby approved. All distributions under the Plan shall be made in accordance with the terms of the Plan and this Order.

6.     J.H. Cohn LLP is hereby appointed as the Unsecured Creditor Agent, and in that capacity, is hereby (i) authorized and directed to establish the Unsecured Creditor Escrow Account to hold the Unsecured Creditor Cash Pool, make distributions to Holders of Allowed Aggregate Unsecured Claims therefrom as provided under the Plan; (ii) authorized, subject to the Litigation Protocol, to object to the allowance of any Class 3 Claim and to prosecute on behalf of the Debtors and the Reorganized Debtors, as applicable, any litigation pertaining thereto or with respect to any Avoidance Claim; and (iii) authorized and directed to pay such Claims as may later be Allowed, as contemplated by the dispute resolution procedures contained in Plan Section 6.12.

7.     The Unsecured Creditor Escrow Account shall be managed by the Unsecured Creditor Agent for further distribution (in a time and manner to be determined by the Unsecured Creditor Agent, in its discretion) to the Holders of Allowed Aggregate Unsecured Claims as of the Distribution Record Date and/or any other Professionals or other parties entitled to a distribution thereof, in each case pursuant to the terms and subject to the conditions of the Plan. Upon the delivery of the $6 million Cash deposit to the Unsecured Creditor Escrow Account, the Debtors and the Reorganized Debtors shall be released of any and all liability with respect to (a) their obligations to the Holders of Allowed Aggregate Unsecured Claims and

Lenders' Deficiency Claims and (b) the Additional Committee Investigation Fees, the Agreed Committee Professional Fees, the Claim Resolution Fees, and any Additional Committee Professional Fees. The Unsecured Creditor Agent shall thereafter take all steps necessary and appropriate to effectuate such further distribution thereof to the Holders of the Allowed Aggregate Unsecured Claims in accordance with the Plan.

8.    All notices previously provided by the Debtors in connection with, or otherwise relating to, the Plan, the Disclosure Statement, the Executory Contracts to be assumed (and any proposed cure amount with respect thereto) or rejected, or any other Plan Document, including, without limitation, the Cure Notice, are hereby approved in all respects.

9.    The Debtors and the Unsecured Creditor Agent shall, pursuant to Bankruptcy Code § 553, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim, all claims, rights, and Causes of Action of any nature that the Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any such claims, rights, and Causes of Action that any of the Debtors may possess against such Holder.

10.    Compromise of Controversies.  Pursuant to Bankruptcy Rule 9019, and in consideration of the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. The entry of this Order on this Court's docket shall constitute this Court's approval of each of the compromises or settlements provided for in the Plan (including, without limitation, the Unsecured Creditor Settlement), and this Court's findings

shall constitute this Court's determination that such compromises and settlements are fair and reasonable, represent a sound exercise of the Debtors' business judgment, and are in the best interests of the Debtors, the Reorganized Debtors, the Estates, and any Person holding Claims against or Interests in any of the Debtors.

11. Ownership of the Reorganized Subsidiary Debtors. Except as the Debtors and the Reorganized Debtors may otherwise determine, the ownership of the capital stock or other equity interests of the respective Reorganized Subsidiary Debtors following the Effective Date shall be unaffected by the Plan, as each Debtor that owned or held the Old Stock of a Subsidiary Debtor (to the extent that any of such Subsidiary Debtors has not been sold or otherwise transferred, dissolved, consolidated, or merged under applicable law prior to the Effective Date) as of the Effective Date shall, as a Reorganized Debtor on the Effective Date, own or hold such capital stock and/or equity interest (as applicable) in the corresponding Reorganized Subsidiary Debtor as of the Effective Date. In addition (other than with respect to any stock or joint-venture interests cancelled, sold, or otherwise transferred by any of the Debtors on or prior to the Effective Date), on the Effective Date, each Reorganized Debtor shall own and retain its equity or joint-venture interests in all non-Debtor subsidiaries, Affiliates, or joint ventures (to the extent that any such non-Debtor subsidiary, Affiliate, or joint-venture interest has not been sold or otherwise transferred, dissolved, consolidated, or merged under applicable law prior to the Effective Date) to the same extent that the applicable Debtor owned such equity or joint-venture interest in such non-Debtor subsidiary, Affiliate, or joint venture prior to the Effective Date. The Debtors are also hereby and by the Plan authorized to dissolve, merge, consolidate, or undertake any similar transaction with respect to any of the Debtors or the Reorganized Debtors in accordance with applicable law prior to, on, or after the Effective Date,

and to cause the transfer of assets between or among the Debtors in connection with any such dissolution, merger, or consolidation, without the need for any other or further corporate action or court order.

12. The Plan Documents. The forms of the Plan Documents are hereby approved. The execution and delivery by the Debtor(s) or the Reorganized Debtor(s) party thereto, or OHB Holdings (as applicable) of all Plan Documents (including, without limitation, the Exit Credit Facility and the Exit Credit Facility Guarantees, any document in connection with the formation of OHB Holdings or the issuance of the OHB Holdings Units (including, without limitation, the OHB Holdings LLC Agreement) or any document memorializing the New Notes, the New Notes Guarantees, and/or any other agreement entered into, or instrument, security interest, guaranty, or note issued in connection with any of the foregoing, any other Plan Document, and any other document reasonably necessary or appropriate to effectuate the events contemplated herein, the Plan, and therein), is hereby authorized without the need for any further corporate action or court order. All Plan Documents shall become effective and binding upon the parties thereto simultaneously in accordance with their respective terms and conditions as of the Effective Date.

13. Without limiting the generality of the foregoing, pursuant to Bankruptcy Code § 1142, and without other or further action by this Court or by the shareholders or directors of the Reorganized Debtors, the Reorganized Debtors, acting by and through any one or more of their officers, shall be, and hereby are, authorized to (i) enter into the Exit Credit Facility and other related loan documents and instruments, (ii) perform and comply with all of the terms, conditions, and obligations under the Exit Credit Facility, (iii) execute and deliver all documents, agreements, and instruments necessary or appropriate to enter into and perform all obligations

under the Exit Credit Facility, and to take all other actions and execute, deliver, record, and file all other such agreements, documents, instruments, mortgages, deeds of trust, financing statements, releases, applications, registration statements, reports and any changes, additions, and modifications thereto in connection with the consummation of the transactions contemplated by the Exit Credit Facility and the performance thereof, including, without limitation, the making of such filings or the recording of any security interests, as may be required by the final terms of the Exit Credit Facility, and (iv) grant to the applicable lenders, security interests and Liens upon the collateral specified in the final terms of the Exit Credit Facility.

14. Corporate Action. On, before, or after the Effective Date, the Debtors, the Reorganized Debtors, OHB Holdings, and the Unsecured Creditor Agent may retain without any other or further Bankruptcy Court approval or notice such management, law firms, accounting firms, experts, advisors, agents, consultants, investigators, appraisers, auctioneers, or other professionals as they may deem desirable, necessary, or appropriate, including, without limitation, a transfer or disbursing agent, to aid them in the performance of their duties and obligations under the Plan and this Order. It shall not be a requirement that any such parties retained by any of the Debtors, the Reorganized Debtors, OHB Holdings, or the Unsecured Creditor Agent be a "disinterested person" (as such term is defined in Bankruptcy Code § 101(14)), and such retained parties may include Professionals or other Persons who had previously been active in these Cases on behalf of any Debtor, Creditor, or Interest Holder, the Creditors Committee, or other constituency.

15. After the Effective Date, the Reorganized Debtors and OHB Holdings may amend and restate their respective Amended and Restated Certificates of Incorporation, Amended and Restated By-Laws, Amended and Restated LLC Agreements, Amended and Restated Limited

Partnership Agreements, the OHB Holdings LLC Agreement, applicable certificates of formation and/or organization, and/or other constituent documents (as applicable) as permitted by the governing state general corporation law, limited liability corporation law, or limited partnership law (as applicable) and the applicable agreements and constituent documents (including the Amended and Restated Certificates of Incorporation, the Amended and Restated By-Laws, the Amended and Restated LLC Agreements, the Amended and Restated Limited Partnership Agreements, and the OHB Holdings LLC Agreement) of the Reorganized Debtors and OHB Holdings.

16.    All actions reasonably necessary and desirable to effectuate, implement, or adopt the Exit Credit Facility; the issuance of the New OHB Common Stock and the OHB Holdings Units; the formation of OHB Holdings; the Short Term Incentive Plan; the New Notes and the New Notes Guarantees; the adoption and/or filing (as applicable) of the OHB Holdings LLC Agreement, the Amended and Restated Certificates of Incorporation, the Amended and Restated By-Laws, the Amended and Restated LLC Agreements, the Amended and Restated Limited Partnership Agreements, certificates of formation and/or organization, or similar constituent documents of the Reorganized Debtors and OHB Holdings (including the selection of the directors, officers, and/or managers of the respective Reorganized Debtors and OHB Holdings); any dissolution, consolidation, merger, or similar transaction involving any of the Subsidiary Debtors or Reorganized Subsidiary Debtors; and all other actions or transactions contemplated by this Order, the Plan, the Plan Documents, or such other documents, and all actions appropriate, necessary, or desirable to effectuate any of the foregoing or comparable transactions, shall be authorized and approved in all respects by this Order and by the Plan without the need for any further corporate or similar action or court order.

17.     After the Confirmation Date and on or prior to the Effective Date, the appropriate members of the Boards of Directors and/or members, managers, or officers of the Debtors, the Reorganized Debtors, and OHB Holdings are authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates, and instruments contemplated by the Plan and/or any of the Plan Documents in the name of and on behalf of the applicable Debtor(s), Reorganized Debtor(s), or OHB Holdings.

18.     All matters provided for in the Plan or in any Plan Document involving the corporate structure, assets, and/or operations of the Debtors or the Reorganized Debtors, and any corporate or similar action required by, or helpful to, the Debtors or the Reorganized Debtors in connection with the Plan or any of the Plan Documents shall be deemed to have occurred and shall be in effect, without any requirement of other or further action by the respective security holders, members, managers, officers, and directors of the Debtors or the Reorganized Debtors. After the Confirmation Date and on or prior to the Effective Date, the appropriate members of the Boards of Directors and/or members, managers, or officers of the Debtors and the Reorganized Debtors are hereby authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates, and instruments contemplated by the Plan and/or any of the Plan Documents in the name of and on behalf of the applicable Debtor(s) or Reorganized Debtor(s).

19.     On the Effective Date (or as soon thereafter as is practicable), (i) Reorganized OHB shall form OHB Holdings, (ii) Reorganized OHB shall issue the shares of New OHB Common Stock to OHB Holdings, and (iii) OHB Holdings shall issue in accordance with the terms of the Plan (including Section 5.2 thereof) the OHB Holdings Units to the Holders of Allowed Claims in Class 2A. As of the Effective Date, such shares of New OHB Common Stock

and OHB Holdings Units shall represent 100% of the outstanding shares of New OHB Common Stock and OHB Holdings Units, respectively (in the case of OHB Holdings Units, subject to dilution with all other holders of OHB Holdings Units upon the issuance of any OHB Holdings Units granted pursuant to the Long Term Incentive Plan). In addition, on or after the Effective Date, OHB Holdings may issue OHB Holdings Units in accordance with the terms of the Long Term Incentive Plan or otherwise in accordance with the OHB Holdings LLC Agreement. Upon the issuance of such shares of New OHB Common Stock and OHB Holdings Units (including, but not limited to, any OHB Holdings Units granted pursuant to the Long Term Incentive Plan), as applicable, all such shares of New OHB Common Stock and OHB Holdings Units shall be deemed fully paid and nonassessable. For federal, state, and local tax purposes, the transaction described in the first sentence of this paragraph and Plan Section 6.16 shall be treated as if the Holders of Allowed Class 2A Claims directly exchanged such Claims for the shares of New OHB Common Stock and other consideration and immediately thereafter contributed such shares to OHB Holdings in exchange for OHB Holdings Units.

20. <u>Implementation of the Plan, the Plan Documents, and the Transactions</u>. The Debtors, the Reorganized Debtors, OHB Holdings, the Sponsors, the DIP Facility Lenders, the Creditors Committee, the Indenture Trustees, the Unsecured Creditor Agent, the Exit Credit Facility Lenders, the Administrative Agents, and all other parties-in-interest are hereby authorized to take all steps, and execute all documents, including appropriate releases and certificates, reasonably necessary or appropriate to effectuate the provisions contained in the Plan and the Plan Documents.

21. <u>The Short Term Incentive Plan and the Long Term Incentive Plan</u>. To the extent provided by the terms of the Short Term Incentive Plan, as set forth on a schedule in the

Plan Supplement, within 30 days of the Effective Date, the Reorganized Debtors shall make a total of approximately $1,855,048.50 in Cash payments to approximately 40 of the Debtors' employees, including 15 employees who may be considered officers thereof, and six months thereafter, the Reorganized Debtors shall make an additional total of approximately $527,489.50 in Cash payments to approximately five of the Debtors' employees who may be considered officers. On or following the Effective Date, the Long Term Incentive Plan shall be adopted by Reorganized OHB and OHB Holdings, as appropriate. The terms and conditions of the Long Term Incentive Plan shall be determined by the board of directors or managers of Reorganized OHB and OHB Holdings, as applicable.

22. <u>Preservation of Causes of Action</u>. Except as otherwise set forth in the Plan, in accordance with Bankruptcy Code § 1123(b), as of the Effective Date, the Reorganized Debtors shall retain all Causes of Action (including, without limitation, any and all Avoidance Claims) and any actions that could be brought under Bankruptcy Code § 542 or 543, and shall have the power, subject to any applicable releases and/or waivers contained in the Plan (including, without limitation, in Article IX thereof), to (i) institute and present in the name of the Debtors, or otherwise, all proceedings that they may deem proper in order to collect, assert, and enforce any claim, right, or title of any kind in or to any of the Debtors' Assets and/or to avoid any purported Lien and (ii) to defend and compromise any and all actions, suits, and proceedings in respect of such Assets. For the avoidance of doubt, the Unsecured Creditor Agent may prosecute any Avoidance Claim on behalf of the Holders of Allowed Class 3 Claims subject to the Litigation Protocol, and the Unsecured Creditor Agent shall have the power, subject to any applicable releases and/or waivers contained in the Plan (including, without limitation, in Article IX thereof), to institute and present in the name of the Debtors' Estates, or otherwise, all

proceedings that he or she may deem proper in order to collect, assert, and enforce any such Avoidance Claim.

23. <u>No Fractional Shares</u>. No fractional OHB Holdings Units shall be issued or distributed under the Plan. Whenever any distribution to a particular Person would otherwise call for the distribution of a fraction of an OHB Holdings Unit, the actual distribution of such units shall be rounded down to the next lower whole number. The total number of OHB Holdings Units to be distributed to a Class of Claims shall be adjusted as necessary to account for this rounding. No consideration shall be provided in lieu of fractional OHB Holdings Units that are rounded down.

24. <u>Bankruptcy Code § 1145 and Other Exemptions</u>. Pursuant to Bankruptcy Code § 1145(a)(1), the issuance of any securities under the Plan, including, without limitation, the New OHB Common Stock, the OHB Holdings Units, the New Notes, and the New Notes Guarantees, to the extent any of the foregoing constitute "securities" under applicable law, shall be exempt from the registration requirements of the Securities Act and any state or local laws requiring registration for the offer or sale of securities. All such securities, when issued or sold, shall be freely transferable by the recipients thereof, subject to: (i) the provisions of Bankruptcy Code § 1145(b) relating to "underwriters," as defined therein; (ii) any restrictions contained in the terms of the applicable securities themselves; or (iii) any restrictions on the securities that have been agreed to by the Holder of the securities with respect thereto. Any securities to be issued under the Plan shall be issued without any other or further act or action under applicable law, regulation, order, or rule. To the maximum extent permitted by law, pursuant to Section 4(2) of the Securities Act, Regulation D of the Securities Act, Rule 701 promulgated under the Securities Act, or otherwise, the issuance of any OHB Holdings Units pursuant to the Long Term Incentive

Plan shall be exempt from the registration requirements of the Securities Act, and any state or local laws requiring registration for the sale of securities.

25. <u>Bankruptcy Code § 1146(a) Exemption</u>. Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any notes, equity securities, instruments, mortgages, or documents under or in connection with the Plan or the Plan Documents (including, without limitation, the Exit Credit Facility), the assignment or surrender of any lease or sublease, the creation or recording of any mortgage, deed of trust, Lien, pledge, or other security interest or the making, assignment, or delivery of any lease, sublease, deed, or any other instrument of transfer (or deemed transfer) under, in furtherance of, or in connection with the Plan or any Plan Document (including, without limitation, the Exit Credit Facility), including any deeds, bills of sale, assignments, mortgages, deeds of trust, or similar documents executed in connection with any assets subject to the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, intangible, transfer, controlling interest transfer, realty transfer, recordation, documentary stamp, real property transfer, excise, or other similar tax or fee, nor any Uniform Commercial Code filing or recording fee or similar or other governmental assessment. All appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

<u>Executory Contracts and Leases</u>

26. <u>Assumption or Rejection of Executory Contracts</u>. As of the Confirmation Date, but subject to the occurrence of the Effective Date and the terms and conditions of the Plan (including Sections 7.2 and 7.3 thereof), all Executory Contracts (including, without limitation, those Executory Contracts identified as "to be rejected" on the list attached as <u>Exhibit 2</u> hereto,

and those otherwise expressly rejected under and pursuant to the terms of the Plan, including under Article VII thereof) are deemed rejected by the applicable Debtors in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, except those Executory Contracts that (a) have previously been assumed by an order of this Court, (b) are the subject of a motion to assume pending on the Confirmation Date, (c) are identified as "to be assumed" on the list attached as Exhibit 3 hereto, or (d) are otherwise expressly assumed under, and pursuant to, the terms of the Plan (including under Article VII thereof). Assumption of the Executory Contracts at issue in clauses (c) or (d) in the immediately preceding sentence shall be effective as of the Confirmation Date, subject to the occurrence of the Effective Date. Entry of this Order shall constitute approval of all such rejections and assumptions (as applicable) pursuant to Bankruptcy Code §§ 365(a) and 1123, subject to the occurrence of the Effective Date and the terms and conditions of the Plan (including Sections 7.2 and 7.3 thereof). The listing of a document on either Exhibit 2 or Exhibit 3 hereto (as either such list may have been or may be further revised) or any other statement in the Plan (including in Plan Section 7.1) or in the Disclosure Statement shall not constitute an admission by the Debtors that such document is an executory contract or unexpired lease or that the Debtors have any liability thereunder. Each Executory Contract assumed pursuant to Plan Article VII or otherwise shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms, except as may be modified by (w) any agreement with respect thereto between the Debtors and the applicable non-debtor party, (x) the provisions of the Plan, (y) any order of this Court approving and authorizing its assumption, or (z) applicable federal law. The Debtors shall retain the right at all times prior to the Effective Date (i) to assume any additional or other Executory Contract(s) not specifically identified on the list thereof attached as Exhibit 3 hereto as "to be assumed" (including, without

limitation, any Executory Contract identified on Exhibit 2 hereto as "to be rejected" or are otherwise being rejected pursuant to the terms of the Plan) or (ii) to reject any additional or other Executory Contract(s) not specifically identified on the list thereof attached as Exhibit 2 hereto as "to be rejected" (including, without limitation, any Executory Contract identified on Exhibit 3 hereto as "to be assumed" or are otherwise being assumed pursuant to the terms of the Plan), in each case upon providing notice to the non-Debtor party thereto.

27.     Notwithstanding anything in the Plan or in this Order to the contrary, to the extent not terminated or cancelled in accordance with their terms or pursuant to an order of the Bankruptcy Court prior to the Effective Date, each of the limited partnership agreements, limited liability company agreements, or similar agreements between any of the Debtors and either another Debtor or any non-Debtor Affiliate to which only one or more of the Debtors and either another Debtor or any non-Debtor affiliates are parties, shall, regardless of whether such agreements are Executory Contracts, be deemed assumed by the applicable Debtors as of the Confirmation Date, subject to the occurrence of the Effective Date, and shall remain in full force and effect thereafter in accordance with their terms. Entry of this Order shall constitute this Court's approval of such assumptions pursuant to Bankruptcy Code §§ 365 and 1123 and otherwise, subject to the occurrence of the Effective Date. Each such agreement assumed pursuant to Plan Section 7.(b) and this Order shall be retained by, and shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms.

28.     Rejection Damage Claims. Each non-Debtor party to any Executory Contract rejected under and pursuant to Article VII of the Plan shall be entitled to file, not later than 30 days after the entry of this Order (the "Plan Rejection Bar Date"), a Proof of Claim against the applicable Debtor for alleged Rejection Claims. *If no such Proof of Claim for a*

-28-

*Rejection Claim is timely filed against the applicable Debtor, any such Claim shall not be entitled to receive any distributions under the Plan on account thereof from the Debtors, the Reorganized Debtors, or their respective Estates or Assets.*

29.     Notwithstanding anything to the contrary in the Plan or herein, the Plan Rejection Bar Date shall apply only to Rejection Claims with respect to those Executory Contracts that are to be rejected under and pursuant to the Plan. Any Holder of a Rejection Claim for an Executory Contract that is not to be rejected pursuant to the Plan, but whose Rejection Claim instead arises under an Executory Contract that either has already been rejected by an order of this Court or is the subject of a separate motion to reject pending on the Confirmation Date, must file a Proof of Claim for such Rejection Claim by the date provided in any order relating to such rejection.

30.     Except as otherwise provided under the Plan, any Rejection Claims against any of the Debtors shall be treated as Class 3 Claims, in each instance to the extent it is an Allowed Claim.

31.     Rejection of Contracts with Vendors. All contracts, work orders, or other similar agreements entered into prior to the Petition Date by any Debtor with any Vendor, to the extent not terminated or cancelled in accordance with their terms or pursuant to an order of this Court prior to the Effective Date, shall be (i) deemed rejected pursuant to the Plan, to the extent that they constitute Executory Contracts, which rejection shall be deemed effective as of the Confirmation Date, subject to the occurrence of the Effective Date, and (ii) deemed terminated to the extent that they do not constitute Executory Contracts, which termination shall be deemed effective as of the Confirmation Date, subject to the occurrence of the Effective Date. Entry of this Order shall constitute approval of all such rejections and/or terminations pursuant to

Bankruptcy Code §§ 363, 365(a), and 1123 or otherwise, subject to the occurrence of the Effective Date, and subject to the Debtors' rights to elect, in their discretion, to instead assume any particular pre-Petition Date contract, work order, or other similar agreement with any Vendor in accordance with the terms and conditions of Article VII of the Plan, in which case such pre-Petition Date contract, work order, or other similar agreement shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms, except as may be modified by any agreement with respect thereto between the Debtors and the applicable non-debtor party or any order of this Court approving and authorizing its assumption.

32.    Insurance Policies.    All insurance policies of the Debtors (including, without limitation, the Directors & Officers Liability Insurance Policies) providing coverage to the Debtors and/or the Debtors' current or former directors, officers, stockholders, agents, employees, representatives, predecessors, and others for conduct in connection in any way with the Debtors, their assets, liabilities, and/or operations, regardless of whether such policies are Executory Contracts, unless previously rejected and/or terminated or expired in accordance with their terms, shall be deemed assumed by the applicable Debtors as of the Confirmation Date, subject to the occurrence of the Effective Date, and shall remain in full force and effect thereafter in accordance with their terms. Entry of this Order shall constitute approval of such assumptions pursuant to Bankruptcy Code §§ 365 and 1123 and otherwise, subject to the occurrence of the Effective Date.    Each insurance policy assumed pursuant to Article VII of the Plan shall be retained by, and shall revest in, and be fully enforceable by, the respective Reorganized Debtor in accordance with its terms, except as may be modified by the provisions of the Plan, any order of this Court approving and authorizing its assumption, or applicable federal law.

33.    Other than those listed on Exhibit 2 hereto, all surety bonds or similar bonds (including, without limitation, any agreements, documents, or instruments relating thereto) issued on behalf of or obtained by the Debtors or otherwise with respect to any of their present or previously-owned Assets or developments, shall remain and continue in full force and effect on and after the Effective Date in accordance with their terms. Each such surety bond or similar bond shall be retained by and shall revest in, and be fully enforceable by, the respective Reorganized Debtor or any other party with an interest therein or beneficiary thereunder, subject to applicable provisions of, and all of the Debtors' rights under, the Bankruptcy Code, including, without limitation, Bankruptcy Code § 363(l). Nothing in Plan Section 7.7 shall constitute or be deemed a waiver of any cause of action that the Debtors, the Reorganized Debtors, or any beneficiary or related entity under any surety bond or similar bond may hold against any entity, including the issuer of any surety bonds or similar bond, under any of such bonds. Without limiting the generality of the foregoing, such surety bonds shall not constitute Executory Contracts for any purposes under the Plan or otherwise in these Cases, such that neither the Debtors nor the Reorganized Debtors shall have any obligations to satisfy any purported defaults thereunder pursuant to Bankruptcy Code § 365(b)(1) or otherwise in order for such bonds to revest in and be fully enforceable by the respective Reorganized Debtor or any other party with an interest therein or beneficiary thereunder on and after the Effective Date.

34.    Notwithstanding anything provided in the Plan or herein to the contrary, no provision of the Plan, including, without limitation, the discharge and release from Claims as provided for in Article IX thereof, shall be deemed in any way to diminish or impair the enforceability of any insurance policies, surety bonds, or similar bonds, or any agreements, documents, or instruments relating to the foregoing, that may cover claims against any of the

-31-

Debtors, any other Person, or otherwise with respect to any of the Debtors' present or previously-owned Assets or developments. Any failure by the Debtors to list any particular insurance policy, surety bond, or similar bond on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors', the Reorganized Debtors', or any beneficiary's (as applicable) ability to enforce such policy, surety bonds, or similar bond, and instead, any and all such policies and bonds shall be transferred to, and shall vest in, the Reorganized Debtors and shall remain and continue in full force and effect on and after the Effective Date in accordance with Plan Section 7.7. Nothing contained in the Disclosure Statement (or any exhibits thereto), the Plan, or this Order shall constitute an admission by any of the Debtors that their insurance policies, surety bonds, or similar bonds constitute Executory Contracts under, or for purposes of, Bankruptcy Code § 365.

35.    Compensation and Benefit Programs.    Except as otherwise expressly provided under the Plan (including, without limitation, as set forth in Section 7.8 thereof with respect to the Existing Stock Option Plans, the SERP, the Deferral Plan, and agreements with third-party administrators under the Debtors' medical plans prior to 2009) or any exhibit to the Disclosure Statement, in the Plan Supplement, or to the Plan, unless otherwise rejected or lawfully terminated by the Debtors, all employment policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their current or former Employees, retirees, and non-Employee directors, including, without limitation, all savings plans, any profit-sharing plans, pension or retirement plans (including, but not limited to, any plans qualified under Internal Revenue Code § 401(a)), healthcare plans, disability plans, benefit plans, and life, accidental death, and dismemberment insurance plans in effect as of the Confirmation Date, and a

-32-

payment of $350,000 to the Vesey Estate (collectively, the "Compensation and Benefits Programs") shall be treated as either Executory Contracts under the Plan and on the Confirmation Date, subject to the occurrence of the Effective Date, shall be assumed pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular Compensation and Benefits Program on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such program and instead, any and all such programs (except those referenced in Plan Section 7.8(b)) shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with Plan Section 7.8. The Debtors and the Reorganized Debtors (as applicable) shall retain their rights to amend, modify, or terminate the Compensation and Benefits Programs in accordance with the terms of the applicable agreements and applicable law.

36.    Subject to the occurrence of the Effective Date, and notwithstanding anything that may be to the contrary herein or in Plan Section 7.8(a):  (i) the Existing Stock Option Plans, the SERP, and all agreements with third-party administrators under the Debtors' medical plans prior to 2009 shall not be assumed by Reorganized OHB on the Effective Date, but shall instead be cancelled and deemed terminated and/or rejected and of no force and effect as of the Effective Date; and (ii) pursuant to Bankruptcy Code § 503(b)(1)(A), the Deferral Plan, and all corresponding contracts that are not otherwise expressly assumed pursuant to the Plan, shall not be assumed by Reorganized OHB on the Effective Date, but shall instead be cancelled and

deemed terminated and/or rejected and of no force and effect as of the Confirmation Date or January 1, 2011, if later (subject to the occurrence of the Effective Date of the Plan). Notwithstanding the cancellation or deemed termination of the Deferral Plan, the Debtors shall (1) pay all vested amounts under the Deferral Plan to the following participants in such plan: Marvin Bank, Wes Dollins, Tom Jacobs, and Linda Kelley, less any applicable withholdings for federal, state, and local taxes, and (2) pursuant to the Orleans Settlement Agreement, pay Jeffrey Orleans the Specified Amount, less any applicable withholdings for federal, state, and local taxes, with respect to vested amounts under the Deferral Plan attributable to him. The Debtors and the Reorganized Debtors shall be entitled to retain any sums in the Deferral Plan otherwise attributable to Jeffrey Orleans beyond the Specified Amount, and he shall have no further claim against the Debtors, the Reorganized Debtors, or the Estates for any other or additional amount under the Deferral Plan.

37. <u>Obligations to Indemnify Directors, Officers, and Employees, etc</u>. Notwithstanding anything to the contrary in any Plan Document, the obligations of each of the Debtors to indemnify the Vesey Estate and any Person who has served as one of the Debtors' directors, officers, employees, agents, representatives, management, or otherwise, at any time on or after the Petition Date, by reason of such person's service to such Debtor in such a capacity, to the extent provided in the applicable certificates or articles of incorporation, formation, organization, limited partnership, or limited liability company or operating agreements, limited partnership agreements, by-laws, or similar constituent documents, by statutory law, or by written agreement, policies, or procedures of or with such Debtor, shall be deemed and treated as Executory Contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and Bankruptcy Code §§ 365 and 1123, or otherwise on the Confirmation Date,

subject to the occurrence of the Effective Date. Accordingly, such indemnification obligations shall not be discharged, but shall instead survive and be unaffected by entry of this Order and the consummation of the Plan. Any failure by the Debtors to list any particular indemnification obligation on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, as the same was revised and set forth in the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such obligation.

38. <u>Home Sale Contracts</u>. Unless otherwise specifically rejected or lawfully terminated by the Debtors, all contracts entered into prior to the Petition Date by any Debtor with any party to acquire a home from any Debtor (a "Home Sale Contract"), shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular Home Sale Contract on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such contract, and instead, any and all Home Sale Contracts shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with Plan Section 7.11. Notwithstanding the specific terms of any Home Sale Contract or any other provisions of the Plan, any provision in any particular Home Sale Contract purporting to create a breach or default by the applicable Debtor party thereto solely on account of its failure to close thereunder by any designated time

-35-

within 90 days after the Effective Date, shall be deemed of no force and effect and need not be specifically cured by the Debtors or the Reorganized Debtors pursuant to Bankruptcy Code §§ 365 and 1123 or otherwise as of the Effective Date; instead, the time in which the Debtors and the Reorganized Debtors (as applicable) may close under any Home Sale Contract that has not closed as of the Effective Date shall be automatically extended by the Plan and this Order until the later of the closing date provided for in the applicable Home Sale Contract (including all possible extensions contained therein) and 90 days following the Effective Date.

39. <u>Employment Agreements With Sales Staff</u>. Unless otherwise specifically rejected or lawfully terminated by the Debtors, all employment agreements entered into prior to the Petition Date by any Debtor with any member of their sales staff still employed by the Debtors as of the Confirmation Date shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular such employment agreement on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement, and instead, any and all such agreements shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance herewith and with Plan Section 7.12.

40. <u>Broker Commission Agreements</u>. Unless otherwise specifically rejected or lawfully terminated by the Debtors, all broker commission agreements entered into prior to the

Petition Date by any Debtor in connection with the sale of residential homes, except for those with East West Realty, shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular broker commission agreement in connection with the sale of residential homes on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement, and instead, any and all such agreements shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance herewith and with Plan Section 7.13. As of the Confirmation Date, but subject to the occurrence of the Effective Date, all broker commission agreements entered into prior to the Petition Date by any Debtor with East West Realty as well as those commission agreements not in connection with the sale of residential homes (including, without limitation, those listed on Exhibit 2 hereto shall be deemed rejected by the applicable Debtors in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123.

41.    Agreements Related to the Developments. Unless otherwise specifically rejected or lawfully terminated by the Debtors, all (a) agreements relating to any of the Revesting Developments embodied in development orders, city and/or county ordinances, zoning approvals, permits, and/or other related documents or any other official action of a governmental unit, quasi-governmental unit, and/or utility granting certain development rights, property interests, and/or

entitlements to the Debtors; and (b) those governmental and quasi-governmental approvals, agreements, waivers, permits, licenses, variances, special exceptions, and water and sewer reservations as are necessary, appropriate, beneficial, or required, to permit the continued construction and development of any of the Revesting Developments entered into prior to the Petition Date by any Debtor, shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123, or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtors to list any particular agreement or other document referred to in Plan Section 7.14 on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement and/or other document, and instead, any and all such agreements and documents shall be deemed assumed (to the extent any such agreements or documents constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with Plan Section 7.14. Without limiting the generality of the foregoing, all of the Debtors' rights in or related to any of the Revesting Developments shall revest in the Reorganized Debtors on and subject to the occurrence of the Effective Date, but the Non-Revesting Developments shall not revest in the Reorganized Debtors, and all applicable agreements related thereto shall be deemed rejected or terminated, as applicable, as of, and subject to the occurrence of, the Effective Date; provided, however, that the Debtors shall be entitled to revise the list of the Non-Revesting Developments at any time up until the occurrence of the Effective Date.

42.    <u>Permits and Licenses</u>.  The Debtors and, as of the Effective Date the Reorganized Debtors, shall be authorized by the Plan and this Order, to continue to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets or the Debtors' businesses, and all such licenses, permits, registrations, and governmental authorizations and approvals shall survive in full force and effect, remain unaffected by entry of this Order and the consummation of the Plan, and are deemed to have been, and under the Plan and hereunder are, assumed by the Reorganized Debtors as of the Effective Date.  All applicable governmental entities are hereby authorized and directed to continue to honor and operate under all such licenses, permits, registrations, and governmental authorizations or approvals.  Any failure by the Debtors to list any particular license, permit, registration, or governmental authorization or approval on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, Exhibit 3 hereto, or otherwise) shall not in any way impair the Debtors' ability to assume such license, permit, registration, or governmental authorization or approval, and instead, any and all such license, permit, registration, and governmental authorization or approval shall be deemed assumed (to the extent any such agreements constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with Plan Section 7.15.

43.    <u>Contracts and Leases Entered into Post-Petition</u>.  Any contracts and leases entered into after the Petition Date by any Debtor, to the extent not terminated or cancelled in accordance with their terms or pursuant to an order of this Court prior to the Effective Date, shall survive and remain unaffected by entry of this Order and the consummation of the Plan.

<u>Discharge, Release, Injunction, and Exculpation Provisions</u>

44.     Property Retained Free and Clear of Liens Except as Contemplated by the Plan or this Order.  Except as otherwise provided in the Plan (including Plan Section 7.14 with respect to the Non-Revesting Developments) or this Order, and notwithstanding the substantive consolidation of the Debtors solely for the limited purpose of all actions associated with voting, confirmation, and distribution, as provided for in Article XI of the Plan, upon the Effective Date, but retroactive to the Confirmation Date, (a) the Reorganized Debtors shall continue to exist as separate corporate entities with all the powers of corporations under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law, and (b) all Assets of the respective Debtors (including, but not limited to, the Debtors' respective equity interests in any Subsidiary Debtor or any non-Debtor subsidiary or joint venture (to the extent that any such non-Debtor subsidiary or joint venture has not been dissolved under applicable law prior to the Effective Date)), wherever situated, shall vest in the applicable Reorganized Debtor, subject to the provisions of the Plan and this Order.  Thereafter, each Reorganized Debtor may operate its business, incur debt and other obligations in the ordinary course of its business, and may otherwise use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and this Court.  After the Effective Date, but retroactive to the Confirmation Date, all property retained by the Reorganized Debtors pursuant to the Plan and hereto shall be free and clear and divested of all Claims, debts, Liens, security interests, obligations, encumbrances, and interests of Creditors and Interest Holders of the Debtors and all other Persons, except as contemplated by or provided in the Plan or this Order and except for the obligation to perform according to the Plan and this Order, and except for the respective claims, debts, Liens, security interests, encumbrances, and interests (a) of those Holders of any Reinstated Liens or (b) arising in

connection with the Exit Credit Facility, the Exit Credit Facility Guarantees, the New Notes, or the New Notes Guarantees. Without limiting the generality of the foregoing, this Order (a) shall be effective as a determination and that all Liens existing prior to the Effective Date (other than any Reinstated Liens) have been unconditionally released, disallowed, discharged, and terminated as of the Effective Date, regardless of, with respect to Operational Liens, whether or not the applicable Operational Lien Claimholder executes a Lien Waiver or has filed a Proof of Claim, and that such release, disallowance, discharge, and termination shall be binding upon and shall govern the acts of all entities, including, without limitation, all applicable Operational Lien Claimholders (other than Holders of Reinstated Operational Liens) and other parties asserting a Lien, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets, and the Reorganized Debtors are authorized to use this Order as evidence of such release, disallowance, discharge, and termination. In addition, each and every federal, state, and local governmental agency or department shall under the Plan and by this Order be directed to accept any and all documents and instruments (including the Plan, this Order, and/or all Lien Waivers) as provided by the Debtors, the Reorganized Debtors, or any related parties to revise appropriately all applicable records and files to reflect that all such Liens have been released, discharged, and terminated in accordance herewith, the Plan, and/or such Lien Waivers. Except for Holders of Reinstated Liens, if any person or entity that has filed Liens or other documents or agreements evidencing Liens on, Claims, or other interests in, the Assets

shall not have delivered to the Debtors prior to the Effective Date, a Lien Waiver in proper form for filing and executed by the appropriate parties, with respect to the Assets or otherwise, then the Debtors and the Reorganized Debtors (as applicable) shall be hereby and by the Plan authorized and empowered (but not required) to execute and file any termination statements, instruments of satisfaction, releases of Liens, or other documents on behalf of the applicable person or entity with respect to the Assets, and shall also be hereby and by the Plan authorized to file, register, or otherwise record or present a copy of the Plan and/or this Order which, once filed, registered, or otherwise recorded or presented, shall constitute conclusive evidence of the release of all Liens of any kind or nature whatsoever in the Assets.

45.     The transfer and vesting of Assets as set forth above shall not result in any of the Reorganized Debtors or OHB Holdings (a) having any liability or responsibility for any Claim against the Debtors, the Estates or against any affiliate or insider of the Debtors, or (b) having any liability or responsibility to the Debtors, each except as expressly set forth in the Plan. Without limiting the effect or scope of the foregoing, none of the Reorganized Debtors or OHB Holdings, and their respective successors or assigns, nor their respective properties shall, as a result of Confirmation of the Plan (x) be or be deemed to be a successor to the Debtors or the Estates; (y) have or be deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the Estates; or (z) be or be deemed to be a continuation or substantial continuation of the Debtors, Estates, or any enterprise of the Debtors. Without further limiting the effect or scope of the foregoing, except as is expressly set forth in the Plan, as a result of Confirmation of the Plan none of the Reorganized Debtors, OHB Holdings, and their respective successors or assigns, nor their respective properties, shall have any successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, successor

-42-

or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown, now existing or hereafter arising, asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Debtors, the Estates, any enterprise of the Debtors, or any obligations of the Debtors or Estates arising prior to the Effective Date.

46. Discharge and Injunction. *Other than with respect to any Reinstated Liens, pursuant to Bankruptcy Code § 1141(d) or otherwise, except as may otherwise be provided in the Plan or in this Order, upon the occurrence of the Effective Date, the rights afforded and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge, and release of, any and all existing debts, Claims, and Interests of any kind, nature, or description whatsoever against the Debtors or any of the Debtors' Assets or other property, and shall effect a full and complete release, discharge, and termination of all Liens (including all Operational Liens other than Reinstated Operational Liens), security interests, or other Claims, interests, or encumbrances upon all of the Debtors' Assets and property. No Creditor or Interest Holder of the Debtors nor any other Person may receive any distribution from the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, or the Assets, or seek recourse against, the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, or any of their Assets, except for those distributions expressly provided for under the Plan. All Persons are precluded from asserting, against any property that is to be distributed under the terms of the Plan, any Claims, Interests, obligations, rights, Causes of Action, liabilities, Liens (including any Operational Liens other than Reinstated Operational Liens), or equity interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than to the extent Reinstated or as expressly provided for in the Plan or this Order, whether or not a Proof of Claim or Proof of*

Interest based upon such debt or Interest (as applicable) is filed or deemed filed under Bankruptcy Code § 501; a Claim or Interest based upon such debt or Interest (as applicable) is allowed under Bankruptcy Code § 502; or the Holder of a Claim or Interest based upon such debt or Interest (as applicable) has voted to accept the Plan or is deemed to have accepted the Plan under Bankruptcy Code § 1126(f). Except as otherwise provided in Plan Section 9.2 or this Order with respect to a Claim that is expressly Reinstated under the terms and conditions of the Plan, all Holders of Claims and Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, their successors, or the Assets, any of the following actions on account of such Claim or Interest: (a) commencing or continuing in any manner any action or other proceeding on account of such Lien, Claim, or Interest against property to be distributed under the terms of the Plan or the property of any of the Reorganized Debtors or OHB Holdings, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, Lien (including all Operational Liens), or order against any of the property to be distributed under the terms of the Plan or the property of any of the Reorganized Debtors or OHB Holdings, other than as permitted under subclause (a) of this sentence; (c) creating, perfecting, or enforcing any Lien or encumbrance against any property to be distributed under the terms of the Plan or the property of any of the Reorganized Debtors or OHB Holdings; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due the Debtors or the Reorganized Debtors, the Assets or any other property of the Debtors or the Reorganized Debtors, or any direct or indirect transferee of any property of, or successor in interest to, any of

*the foregoing Persons; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.*

47. <u>No Waiver of Discharge</u>. Except as otherwise specifically provided herein or in the Plan, nothing herein or in the Plan shall be deemed to waive, limit, or restrict in any way the discharge granted to the Debtors upon Confirmation of the Plan by Bankruptcy Code § 1141.

48. The treatment of Claims and Interests set forth in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or an Interest may have against or in the Debtors, the Estates, or their respective property, except as expressly provided in the Plan or this Order. This treatment supersedes and replaces any agreements or rights those Persons may have in or against the Debtors, the Estates, or their respective property. Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including, without limitation, the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Creditors Committee or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with this Court prior to the Confirmation Date.

49. <u>Post-Consummation Effect of Evidences of Claims or Interests</u>. Except as otherwise expressly set forth in the Plan (including, without limitation, Plan Sections 4.2, 4.3, and 6.2), any and all notes, stock certificates, Liens (including all Operational Liens), other than any Reinstated Liens, and/or other evidences of Claims against, or Interests in, any of the Debtors shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, if any, and shall otherwise be cancelled and of no force and effect as of the Effective Date.

50.     Releases by Holders of Claims and Interests. *Except as otherwise provided*
*herein or in the Plan, as of the Confirmation Date, but subject to the occurrence of the Effective*
*Date, each Non-Debtor Releasing Party, in consideration of the obligations of the Debtors and*
*the Reorganized Debtors under the Plan and the Cash, the New OHB Common Stock, the OHB*
*Holdings Units, the New Notes, the New Notes Guarantees, the Exit Credit Facility, the*
*Reinstatement of the Reinstated Liens, the Unsecured Creditor Settlement, and the other*
*contracts, instruments, releases, agreements, waivers, and documents to be executed and*
*delivered in connection with the Plan, and in consideration of the efforts of the Released Parties*
*to facilitate the expeditious reorganization of the Debtors and the implementation of the*
*restructuring contemplated by the Plan, shall be deemed to have conclusively, absolutely,*
*unconditionally, irrevocably, and forever released and discharged the Released Parties from any*
*and all claims, obligations, rights, Causes of Action, or liabilities (including, but not limited to,*
*any claims arising out of, or relating to, any alleged fiduciary or other duty; any alleged violation*
*of any federal or state securities law or any other law relating to creditors' rights generally; any*
*of the Released Parties' ownership of any securities of any of the Debtors; or any derivative*
*claims asserted on behalf of a Debtor), whether liquidated or unliquidated, fixed or contingent,*
*matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising,*
*in law, equity or otherwise, that such Non-Debtor Releasing Party ever had, now has, or may*
*have that are based in whole or in part on any act, omission, transaction, event, or other*
*occurrence from the beginning of time through and including the Effective Date and in any way*
*relating to the Debtors, these Cases, or the Plan; the Disclosure Statement; the Plan Documents;*
*the formulation, negotiation, preparation, dissemination, implementation, and/or administration*
*of the Plan, the Disclosure Statement, and the Plan Documents and the transactions contemplated*

thereby; the solicitation of votes with respect to, and the pursuit of Plan Confirmation; the Confirmation and consummation of the Plan; the subject matter of, or the transactions or events giving rise to, any Claim or Interest of such Non-Debtor Releasing Party, any security previously issued by any of the Debtors, and any and all claims based upon or arising out of such actions or omissions shall be forever and completely waived and released by the Non-Debtor Releasing Parties; _provided, however,_ Plan Section 9.6(b) shall not release, and the Non-Debtor Releasing Parties do not waive the right to enforce, the Debtors' or the Reorganized Debtors' duties, obligations, covenants, and agreements under (i) the Plan, (ii) any settlement agreement approved by this Court in these Cases, regardless of whether such approval is granted prior to or after the Confirmation Date, (iii) the Assumed Contracts, or (iv) the Plan Documents to be delivered under the Plan; _provided further, however,_ that the release set forth in Plan Section 9.6(b) is in addition to the discharge of Claims and termination of Interests provided in the Plan and under this Order and the Bankruptcy Code; and _provided further, however,_ that nothing in Plan Section 9.6(b) or herein shall be deemed to assert or imply any admission of liability on the part of any of the Released Parties.

51.     _All Non-Debtor Releasing Parties shall be forever precluded from asserting any of the claims released pursuant to Plan Section 9.6 against any of the Released Parties or any of the Released Parties' respective assets; and to the extent that any Non-Debtor Releasing Party receives monetary damages from any Released Party on account of any claim released pursuant to Plan Section 9.6, such Non-Debtor Releasing Party by the Plan is deemed to assign all of its right, title, and interest in and to such recovery to the Released Parties against whom such money is recovered._

52. *Notwithstanding any provision of the Plan to the contrary, the releases contained in Plan Section 9.6 shall not be construed as, or operate as a release of, or limitation on (i) any claims by the Non-Debtor Releasing Parties against the Released Parties that do not relate to or involve the Debtors or these Cases, (ii) any claims, obligations, rights, causes of action, or liabilities by the Non-Debtor Releasing Parties against the Released Parties arising out of any action or omission to the extent that such action or omission is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct or fraud, or (iii) objections to Claims.*

53. Notwithstanding anything in this Order or in Plan Section 9.6(e) to the contrary, nothing in the Plan or this Order shall release any claims asserted by Laura J. Rosquist a/k/a Laura Dietz and Berger Excavating Contractors, Inc., against any non-Debtor entities (a) in that certain action captioned as <u>Laura Dietz v. Realen Homes, L.P., et al.</u> pending in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, as case number 07 L 870, including, without limitation, (i) Illinois Berger Excavating Contractors, Inc.; (ii) Rieke Contracting, Inc., F/K/A Rieke Excavating, Inc.; (iii) Soil and Material Consultants, Inc.; (iv) First Place Concrete, Inc.; and (v) Realen Home Developers, LLC, or (b) in that certain action captioned as <u>Mustafa v. Realen Homes, L.P., et al.</u> pending in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois as case number 08 L 496, and (c) in any other action.

54. Nothing contained in this Order, the Plan, or the Plan Supplement shall limit any respective rights or defenses as of the Petition Date of Karen Lynne Cousin, the Debtors, the Reorganized Debtors, or the Estates (or any successor thereto) regarding any insurance coverage available in connection with the action pending in the Pennsylvania Court of

-48-

Common Pleas Philadelphia County, Trial Division, captioned as <u>Cousin v. Toll Brothers, Inc., et al.</u> December Term, 2009, No. 03162.

55.    <u>Release by the Debtor Releasing Parties</u>.  *On the Effective Date, pursuant to Bankruptcy Code § 1123(b), Bankruptcy Rule 9019, or otherwise, and except as otherwise specifically provided in the Plan or in the Plan Documents, the Debtor Parties, in consideration of the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, New OHB Common Stock, the OHB Holdings Units, the New Notes and the New Notes Guarantees, the Exit Credit Facility, the Reinstatement of the Reinstated Liens, the Unsecured Creditor Settlement, and the other contracts, instruments, releases, agreements, waivers, and documents to be executed and delivered in connection with the Plan, and in consideration of the efforts of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that such Debtor Party ever had, now has, or may have that are based in whole or in part on any act, omission, transaction, or occurrence taking place on or prior to the Effective Date and in any way relating to the Debtors, these Cases, or the Plan; the Disclosure Statement; the Plan Documents; the formulation, negotiation, preparation, dissemination, implementation, and/or administration of the Plan, the Disclosure Statement, and the Plan Documents; the confirmation and consummation of the Plan; the subject matter of, or the transactions or events giving rise to, any Claim or Interest of such Debtor Party, or any*

security previously issued by any of the Debtors. The immediately-preceding sentence shall not, however, apply to (i) any indebtedness of any Person to any of the Debtors for money borrowed by such Person or any other contractual obligation of any Person to any of the Debtors, (ii) any claims by the Debtor Releasing Parties against the Released Parties arising out of any action or omission to the extent that such action or omission is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct or fraud, or (iii) any setoff, counterclaim, or defense under Bankruptcy Code § 502(d) that the Debtors may have or assert against any Person other than any of the Sponsors or the other DIP Facility Lenders or Revolving Credit Facility Lenders (whose respective Claims shall, for the avoidance of doubt, be allowed in the respective manner and amounts provided in the Plan), provided that the aggregate amount thereof shall not exceed the aggregate amount of any Claims held or asserted by such Person against the Debtors. Holders of Claims or Interests against any of the Debtors shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover any such claim that could be brought on behalf of or in the name of the Debtors.

56.     Injunction Related to Releases.  This Order shall be deemed to enjoin permanently the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to the Plan (including the releases set forth in Article IX thereof).

57.     Exculpation.  No Released Party shall have or incur, and each Released Party by the Plan and by this Order is exculpated from, any liability (whether arising under contract, tort, or federal or state securities laws, whether known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise) to any Person for any

-50-

*pre-Petition Date or post-Petition Date act or omission taken or not taken (as the case may be), or any other transaction, event, or occurrence in any way in connection with, arising from or relating to the Debtors, these Cases (and the commencement or administration thereof); the Disclosure Statement, the Plan (either prior to Confirmation or approval of same, or as same may be confirmed or otherwise approved by this Court), or any orders of this Court related thereto, the Plan Documents or the transactions contemplated thereby, or the formulation, negotiation, preparation, dissemination, implementation, or administration of any of the foregoing documents; the solicitation of votes in connection with, and the pursuit of, Confirmation of the Plan; the property to be distributed under the Plan; the Exit Credit Facility; the Confirmation and/or consummation of the Plan; the Effective Date; any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; any other act taken or omitted to be taken in connection with, or in contemplation of, any of the restructuring or other transactions contemplated by the Plan; and the property to be distributed or otherwise transferred under the Plan; provided, however, that nothing in Plan Section 9.9 shall exculpate or release any Released Party from its obligations arising under confidentiality agreements and common-interest agreements; provided further, however, that nothing in Plan Section 9.9 shall release any entity from any claims, obligations, rights, causes of action, or liabilities arising out of such entity's willful misconduct or fraud. Each Released Party shall be entitled reasonably to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan.*

58. <u>Termination of the Old OHB Common Stock</u>. Upon the Effective Date, the Old OHB Common Stock shall be cancelled and deemed terminated.

59.     Substantive Consolidation. On the Effective Date, all of the Debtors and their Estates shall, only for purposes of Plan Sections 5.2, 5.3, 5.4, 5.5, 5.6, and 5.7, be deemed merged and (i) all assets and liabilities of the Debtors shall be treated only for purposes of such Plan Sections 5.2, 5.3, 5.4, 5.5, 5.6, and 5.7 as though they were merged, (ii) all guarantees of the Debtors of payment, performance, or collection of obligations of any other Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be considered a single claim against the Debtors, and (iv) any Claim filed in these Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Such substantive consolidation shall not (other than for voting, treatment, and distribution purposes under the Plan) affect (x) the legal and corporate structures of the respective Debtors or the Reorganized Debtors (including the corporate ownership of the Subsidiary Debtors) and (y) any intercompany claims.

Retention of Bankruptcy Court Jurisdiction

60.     Claims and Actions. Following the Effective Date, this Court shall retain such jurisdiction over these Cases to the extent set forth in Article XII of the Plan as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the intents and purposes of the Plan are carried out. This Court shall also expressly retain jurisdiction: (a) to hear and determine all Claims against, or Interests in, any of the Debtors; and (b) to enforce all Causes of Action that may exist on behalf of any of the Debtors that are not otherwise waived or released under the Plan.

61.     Retention of Additional Jurisdiction. Following the Effective Date, this Court shall also retain jurisdiction for the purpose of classification of Claims and Interests, the re-

examination of Claims or Interests that have been Allowed, and the dispositions of any objections as may be filed to any Claims, including Bankruptcy Code § 502(c) proceedings for estimation of Claims. This Court shall further retain jurisdiction for the additional purposes as set forth in Plan Section 12.2.

62. **Failure of this Court to Exercise Jurisdiction.** If this Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Cases, including the matters set forth in Article XII of the Plan, such Article XII shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Certain Revised Cure Amounts or Operational Lien Claims

63. Notwithstanding anything to the contrary on Exhibit D to the Disclosure Statement (as the same was revised in the Plan Supplement) or Exhibit 3 hereto, the cure amount for all of the Debtors' contracts being assumed with Iron Mountain Information Management, Inc. shall be $9,549.77, which cure amount shall be paid pursuant to the terms of the Plan and this Order.

64. Notwithstanding anything to the contrary set forth on Exhibit D to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement), the Plan, or this Order (including Exhibit 3 hereto), (a) the cure amount for the Debtors' contract with Peco Energy Company ("Peco") referred to as Peco Energy Company Greenbrier Phase 5 (Agreement for the Installation of Natural Gas Facilities and Reservation of Capacity) that is being assumed under the Plan shall be $6,800, which cure amount shall be paid pursuant to the terms and conditions of the Plan, but in no event later than March 31, 2011, and (b) the cure amount for all of the Debtors' three other contracts with Peco being assumed under the Plan shall be $0.

65. Notwithstanding anything to the contrary in this Order or any exhibits hereto, the Plan, the Disclosure Statement or any exhibits thereto, or the Plan Supplement, it is hereby ordered that any lease, agreement, or contract by and among any of the Debtors, Toll PA II, L.P., Toll Bros., Inc. or other Toll Bros. affiliates ("Toll") and Byers Group, LLC, Byers Group II, LLC, Ewing Group, LLC and Byers Commercial, L.P. with regard to the Developments, Byers Station – Upper Uwchlan Township and West Vincent Township, Chester County, PA and Chestnut Ridge – East Fallowfield Township and West Bradford Township, Chester County, PA, shall be deemed assumed by the Debtors on the Confirmation Date, subject to the occurrence of the Effective Date, including but not limited to (i) the contracts and agreements between the Debtors and Toll set forth on Exhibit D to the Disclosure Statement (as the same has been revised and set forth on Exhibit 3 hereto); (ii) Completion and Payment (Performance) Bond Financial Security Agreement dated February 13, 2006 among Orleans at Upper Uwchlan, LP, Toll PA II, LP, K. Hovnanian of Upper Uwchlan LLC and Township of Upper Uwchlan for Ewing Tract Upper Uwchlan, it being understood among the parties that each of the Debtors, the Reorganized Debtors, and Toll reserve all of their respective rights, remedies, and defenses in connection with the cost sharing arrangement, if any, with respect to the Ewing Upper Uwchlan and Ewing West Vincent portions of the Byers Station project; and (iii) Allan A. Myers Construction contract dated August 17, 2009, and the Higgins, Eastern States Engineering, Pickering Valley Landscape, Riley Riper Hollin & Colagreco, and Beard Miller Consulting agreements. Within 30 days of the Effective Date, the Debtors shall also enter into the proposed Second Amendment to Sewage Plant Development Agreement among Orleans Homebuilders, Inc., Upper Uwchlan Township, Pulte Homes, K. Hovnanian Companies of Pennsylvania, Inc., and Toll Bros., Inc. and execute and deliver the Consent with respect to Byers Station – Upper

Uwchlan as of the Effective Date and perform their obligations thereunder. In addition, the Debtors and/or the Reorganized Debtors (as applicable) shall have until 30 days after the Effective Date to cure any defaults under the various assumed agreements with Toll and the agreements among certain non-Debtor Affiliates relating to the Dolington project, and, provided the required cure amounts are paid within that timeframe, none of the Debtors' or their Affiliates' respective interests in any projects subject to such agreements shall be subject to dilution in any way. In addition, notwithstanding anything to the contrary in this Order or any exhibits hereto, the Plan, the Disclosure Statement or any exhibits thereto, or the Plan Supplement, the Debtors and Toll agree that they will endeavor in good faith to reach an agreement regarding the cure amount due and owing to Toll under the Debtors' various assumed agreements therewith, which amount shall be not less than $125,000 and not more than $263,014, and in the event the parties are unable to agree, the cure amount shall be as decided by the Court pursuant to a Final Order.

66. R.M. Sellergren & Associates, Inc., was paid $24,913.15 in full resolution of its objection and its Claim relating to the property located at 3055 Henry Lane, Lake in the Hills, Illinois, in accordance with the Homes Sales Order. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, R.M. Sellergren & Associates, Inc., shall have no other or further Claim with respect to such property in these Cases.

67. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, J.B. Concrete Contractor, Inc., shall have an Allowed Class 3 Claim for all purposes in these Cases in the amount of $13,549.25 relating to the property located at 1243 Star Grass Lane, Aurora, Illinois. J.B. Concrete Contractor, Inc., will be paid $13,549.25

in full resolution of its objection and its Secured Claim relating to such property, in accordance with the Homes Sales Order. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, J.B. Concrete Contractor, Inc. shall have no other or further Claim only with respect to such property.

68. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, Vern Weidner & Co., Inc., shall have an Allowed Class 3 Claim for all purposes in these Cases in the amount of $26,763.46 relating to the properties located at 505 Sagebrush Court, 525 Blazing Star Drive, 657 Iris Court, and 696 Wild Rose Circle, all of which are located in Lake Villa, Illinois. Vern Weidner & Co., Inc., will be paid $49,703.57 in full resolution of its objection and its Secured Claims relating to the properties located at 505 Sagebrush Court, 525 Blazing Star Drive, 657 Iris Court, and 696 Wild Rose Circle, all in Lake Villa, Illinois, in accordance with the Home Sales Order. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, Vern Weidner & Co., Inc., shall have no other or further Claim only with respect to such properties in these Cases.

69. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, Procaccio Painting & Drywall, Inc., shall have an Allowed Class 3 Claim for all purposes in these Cases in the amount of $17,146.64 relating to the properties located at 505 Sagebrush Court, Lake Villa, Illinois, 829 Preston Lane, Oswego

Illinois, and 1243 Star Grass Lane, Aurora Illinois. Procaccio Painting & Drywall, Inc., will be paid $73,365.86 in full resolution of its objection and its Secured Claims relating to the properties located at 525 Blazing Star Drive, Lake Villa, Illinois, 505 Sagebrush Court, Lake Villa, Illinois, 829 Preston Lane, Oswego Illinois, and 1243 Star Grass Lane, Aurora Illinois, in accordance with the Home Sales Order. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, Procaccio Painting & Drywall, Inc., shall have no other or further Claim with respect to such properties.

70. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement), the Plan, or this Order, Precision Framing Systems, Inc., shall have an Allowed Class 2C Claim in the amount of $23,298 for the property located at 7329 Steamhaven Drive, Cabarrus County, North Carolina for all purposes in these Cases.

71. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, Structural Technologies, Inc. shall have an Allowed Class 3 Claim for all purposes in these Cases in the amount of $14,745.98 relating to the properties located at 3521 Hunton Ridge Drive, Glen Allen, Virginia; 2849 Patriots Landing, Quinton, Virginia; 4337 Wilcot Drive, Midlothian, Virginia; 854 Dogwood Dell Lane, Midlothian, Virginia; and 4307 Nevil Bend Lane, Moseley, Virginia. In addition to the aforementioned Allowed Class 3 Claim, Structural Technologies, Inc. will be paid $44,237.94 within ten (10) Business Days of the date of entry of this Order in full resolution of its objection and its Secured Claim relating to such properties and shall release any and all liens that it holds within a

reasonable period of time after the successful negotiation of the $44,237.94 payment. The $44,237.94 payment obligation is not subject to discharge under the Plan, and any pending or prospective objections to such payment under the Home Sales Order or otherwise are hereby waived and/or overruled. Notwithstanding anything to the contrary set forth on Exhibit F or Exhibit G to the Disclosure Statement (as the same was revised and set forth in the Plan Supplement or otherwise), the Plan, or this Order, Structural Technologies, Inc. shall have no other or further Claim only with respect to such properties.

72.     Solely with respect to the applicable Operational Lien Claim of the following parties that timely filed an objection to such claimant's purported status as not holding a Secured Operational Lien Claim, which objection remains unresolved as of the Confirmation Hearing, namely Mammoth Grading, Inc.; Springs Village Community Association; HD Supply Waterworks, Limited Partnership; Barnhill Contracting Company; Stock Building Supply, LLC; Coleman Floor Company; Whirlpool Corporation, Celey's Quality Plumbing, Inc.; Homeshield Vinyl Siding & Windows, Inc.; J.L. Bishop Contractor, Inc.; Robert Dolan, D/B/A Peak Construction of Apex; Evans Carpet Corporation; 84 Lumber Company ("84 Lumber"); Services Group, Inc.; Carpenter Contractors of America, Inc.; and Brubacher Excavating, Inc. (each, an "Unresolved Operational Lien Objection"), then the applicable Operational Lien shall not be deemed discharged hereby and/or by confirmation of the Plan and shall instead remain attached to such home or property, to the extent not previously sold, pending a resolution of the applicable Unresolved Operational Lien Objection (either pursuant to an Order of this Court or an agreement between the parties), and (i) upon any determination pursuant to a Final Order of this Court or pursuant to any resolution between the parties that the applicable Operational Lien Creditor has an Allowed Class 2C Claim, such Operational Lien Claim will be treated as an Allowed Class 2C

Claim pursuant to Plan Section 4.4(a)(2) for all purposes under the Plan, (ii) upon any determination pursuant to a Final Order of this Court or pursuant to any resolution between the parties that the applicable Operational Lien Creditor has a Class 3 Claim, such Operational Lien Claim will be treated as a Class 3 Claim for all purposes under the Plan, and the applicable Operational Lien shall be deemed discharged without the need for any other court order, or (iii) upon any determination pursuant to a Final Order of this Court or pursuant to any resolution between the parties that the applicable Operational Lien Creditor does not have any Allowed Claim (either in Class 2A or Class 3), such Operational Lien Claim will be disallowed for all purposes under the Plan and the applicable Operational Lien shall be deemed discharged without the need for any other court order. Nothing herein shall be deemed to prejudice or otherwise impair any and all objections, defenses, and other rights that the Debtors and the Reorganized Debtors have with respect to the Operational Lien Claims at issue in the Unresolved Operational Lien Objections, or the rights of the Debtors or the Reorganized Debtors (as applicable) to sell any home or other property that may be the subject of an Unresolved Operational Lien Objection, all of which rights shall instead be fully reserved hereby. This Court shall retain jurisdiction to adjudicate any Unresolved Operational Lien Objections and to enter an order deeming the applicable Operational Lien discharged, Reinstated, or otherwise satisfied or released (as applicable), consistent with the provisions of the Plan and/or this Order; provided, however, that after the Confirmation Date, the Debtors, and on and after the Effective Date, the Reorganized Debtors, shall have the authority to settle, compromise, or resolve any Unresolved Operational Lien Objection consistent with the provisions of the Plan and/or this Order, without the need for any Court or other approval or any other or further notice (provided that they shall provide notice to the Unsecured Creditor Agent to the extent the Debtors or the Reorganized Debtors and the

applicable Operational Lien Creditor reach a resolution providing for such claimant to have an Allowed Class 3 Claim). Each of the Debtors, the Reorganized Debtors, and Brubacher Excavating, Inc., shall hereby reserve all of their respective applicable rights and defenses in connection with the Unresolved Operational Lien Objection of Brubacher Excavating, Inc.

73.     The Debtors or the Reorganized Debtors (as applicable) have agreed to file an objection or other motion with regard to any Claims filed by 84 Lumber within 60 days of the Confirmation Date. The Debtors and 84 Lumber will endeavor in good faith to reach an agreement regarding the terms of a scheduling order with respect to such claim objection or motion (as applicable), and in the event the parties are unable to agree, the terms of such scheduling order shall be as decided by the Court pursuant to a Final Order.

Miscellaneous Provisions

74.     <u>Successors and Assigns</u>. The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such Person.

75.     <u>Professional Fees</u>. No Professional Fees shall be paid with respect to any Claim or Interest except as specified in the Plan, this Order, or as otherwise allowed by an order of this Court. All final applications for Professional Fees for services rendered in connection with these Cases prior to and including the Confirmation Date shall be filed with this Court not later than 90 days after the Effective Date. Notwithstanding anything to the contrary in this Order or in the Plan, the Debtors or the Reorganized Debtors (as applicable) shall pay any and all Allowed, Court-approved Professional Fees that were incurred by the Professionals for the Creditors Committee prior to August 1, 2010 (except for any fees incurred by those Professionals in their investigation of the Claims and/or Liens of the Revolving Credit Facility Lenders) and that were

either unpaid or the subject of a holdback as of the Effective Date. In addition, notwithstanding anything to the contrary in this Order, the Plan, or in any other order of this Court, any Professional Fees incurred by the Professionals for the Creditors Committee in excess of $125,000 in their investigation of the Claims and/or Liens of the Revolving Credit Facility Lenders shall only be paid from amounts that would otherwise be available for distribution to the Holders of Allowed Claims in Classes 3A, 3B, and 3C; provided, however, that in consideration of the Unsecured Creditor Settlement, an additional $300,000 (the "Additional Committee Investigation Fees"), which shall be deducted from the Unsecured Creditor Cash Pool, shall be available to pay Allowed Professional Fees incurred by the Professionals for the Creditors Committee in their investigation of the Claims and/or Liens of the Revolving Credit Facility Lenders. For the avoidance of doubt, except as provided in the preceding sentence, no more than $125,000 of the Carve-Out (as defined in the DIP Facility Order), and no portion of any cash collateral or proceeds of the DIP Facility, shall be paid to the Professionals for the Creditors Committee or any representative of the Estates to investigate the Claims and/or Liens of the Revolving Credit Facility Lenders. To the extent the Professionals for the Creditors Committee incur any Additional Committee Professional Fees, the Additional Committee Professional Fees shall be paid from the Unsecured Creditor Cash Pool, and the Debtors and the Reorganized Debtors shall have no obligation to pay any Additional Committee Professional Fees.

76. Administrative Claims Bar Date. Each Holder of an Administrative Claim incurred on and after October 2, 2010, through and including the Confirmation Date, other than DIP Facility Claims, Administrative Claims based upon Professional Fees, fees or charges asserted against the respective Estates under 28 U.S.C. § 1930, and post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtors' respective businesses

(including, but not limited to, vendor, employee wage and benefit, and state and local property, sales, and use taxes) must file a request for payment on or before the date that 30 days after the Confirmation Date in order for such Administrative Claim to be eligible to be considered an Allowed Claim.

77.     Notwithstanding any provision to the contrary in the Plan, this Order, or any Plan Documents, nothing shall: (1) affect the ability of the Internal Revenue Service (the "IRS") to pursue any non-debtors to the extent allowed by applicable non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors and the Reorganized Debtors; (2) affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved; (3) require the IRS to file a post-petition claim for any tax described in Bankruptcy Code § 503(b)(1)(B), (C), and (D); and (4) discharge any IRS claims described in Bankruptcy Code § 1141(d)(6). To the extent any Allowed IRS Tax Claims are not paid in full in Cash on the Effective Date, any such Allowed Claims shall be paid no less frequently than equal quarterly payments over a five-year period commencing on the Effective Date (or as soon thereafter as is practicable), with interest to accrue at the rate and method set forth in 26 U.S.C. §§ 6621 and 6622. Nothing herein shall prejudice any and all rights and defenses the Debtors or the Reorganized Debtors have with respect to any objections in connection with the IRS' filed Tax Claims (as amended). Moreover, the Debtors and the Reorganized Debtors agree that they will timely file all required federal tax returns and shall otherwise comply with the provisions of the Internal Revenue Code.

78.     Except as otherwise agreed in writing by a particular affected U.S. federal government agency, notwithstanding any provision in the Plan, this Order, Exhibits D or E to the Disclosure Statement (as the same have been revised) and any notices provided with respect

thereto, or the Plan Documents, any permits, rights of way, licenses, authorizations, contracts, leases, agreements or other interests of the U.S. federal government (collectively, the "Federal Interests") shall be treated, determined, paid, and administered in the ordinary course of business as if these Cases had never been filed and the Debtors and the Reorganized Debtor shall comply with all applicable non-bankruptcy federal law, regulations, and statutes with respect thereto. Moreover, without limiting the foregoing, nothing in such documents shall be interpreted to establish any cure amounts with respect to the Federal Interests, or to require the U.S. federal government to novate or otherwise consent to the transfer of any Federal Interests by any of the Debtors or the Reorganized Debtors to any non-Debtor party. The U.S. federal government's rights to offset or recoup any amounts due under, or relating to, any Federal Interests are expressly preserved.

79. <u>No Late Charges</u>. Except as expressly stated in the Plan, or allowed by a Final Order of this Court, no late charge is to be allowed on any Claim subsequent to the Petition Date.

80. <u>Dissolution of the Creditors Committee</u>. On the Effective Date, the Creditors Committee shall be deemed dissolved, and the members of the Creditors Committee shall be released and discharged from all rights and duties arising from or related to these Cases. The Professionals for the Creditors Committee may be retained by the Unsecured Creditor Agent on and after the Effective Date. Unless otherwise agreed by the Reorganized Debtors, the Professionals retained by the Creditors Committee and the members thereof shall not be entitled to any compensation or reimbursement of expenses for any services rendered after the Effective Date while acting in any capacity on behalf of the Creditors Committee, except for services rendered and expenses incurred in connection with any applications for allowance of

compensation and reimbursement of expenses incurred as of the Effective Date and approved by this Court.

81. <u>Applicability of Bankruptcy Code § 1125</u>. The protection afforded by Bankruptcy Code § 1125(e) with regard to the solicitation of acceptances or rejections of the Plan and with regard to the offer, issuance, sale, or purchase of the New OHB Common Stock and OHB Holdings Units (including any and all OHB Holdings Units granted pursuant to the Long Term Incentive Plan), the New Notes and the New Notes Guarantees, and/or any other securities or notes issued in connection with the Exit Credit Facility, or otherwise under the Plan, or any other security, shall apply to the fullest extent provided by law, and the entry of this Order shall constitute the determination by this Court that the Debtors, the Administrative Agents, the DIP Facility Lenders, the Sponsors, the Revolving Credit Facility Lenders, and each of their respective officers, directors, partners, employees, members, agents, attorneys, accountants, financial advisors, investment bankers, dealer-managers, placement agents, and other professionals, shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Bankruptcy Code § 1125(e) and, therefore, are not liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

82. <u>Further Actions</u>. The Debtors, the Reorganized Debtors, and OHB Holdings, as applicable, are hereby authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, Lien Waivers, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, any Plan Document, the release of Operational Liens, the

transactions contemplated in the Plan, and in this Order, the Long Term Incentive Plan, the New Notes and the New Notes Guarantees, the Exit Credit Facility, or any notes or guarantee issued in connection herewith, the Plan, or therewith.

83. On or before the Effective Date, the Debtors may file with this Court such agreements and other documents as may be necessary and appropriate to effectuate and further evidence the terms and conditions of the Plan.

84. This Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including, without limitation, Uniform Commercial Code financing statements, mortgages, and deeds of trust) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order without payment of any recording, stamp, transfer, intangible, real estate transfer, controlling interest transfer, realty transfer, recordation, documentary stamp, real property transfer, excise, sales, mortgage recording, use, or similar tax or fee imposed by state or local law.

85. All parties-in-interest in these Cases that have commenced, as of the date hereof, an action in North Carolina state court against the Debtors and non-debtor third-parties (including, without limitation, title insurers) to enforce certain Operational Liens on properties located within North Carolina and asserted that the Debtors are necessary parties to such actions

under applicable North Carolina law; the Lambert's Hill Community Association; City of Lambertville, New Jersey ("Lambertville"); and South Coventry Township ("South Coventry") shall each be permitted, on or after the Effective Date, to file a motion or other appropriate application in this Court, or to prosecute any such motion or application currently pending in this Court, seeking authorization to have either such actions continue to proceed or be commenced, as applicable in North Carolina or the applicable state court, subject to all rights and defenses of the Reorganized Debtors with respect thereto. Nothing in the Disclosure Statement, the Plan, or this Order shall impair the respective rights of the Lambert's Hill Community Association, Lambertville, or South Coventry with respect to any claims such party may have against applicable insurance policies, bonds, and non-debtor third parties (other than any Released Parties), including contractors, sub-contractors, and suppliers of materials or services; provided, however, that nothing in the Disclosure Statement, the Plan, or this Order (including, without limitation, anything contained in this paragraph) shall increase or otherwise provide any additional or further rights or remedies to any such insurance companies, issuer of bonds, or any other non-debtor third parties (including contractors, sub-contractors, and suppliers of materials or services) with respect to the Debtors, the Reorganized Debtors, their assets, the Affiliates, any of the Released Parties, or the Estates, that any such parties would not otherwise have under applicable law (including, without limitation, under the Bankruptcy Code).

86.     On the Effective Date, the Junior Subordinated Notes; the Trust Preferred Securities; any and all notes issued in connection with the Revolving Credit Facility or the DIP Facility; the Guarantees; the Old OHB Common Stock and any other Interests in OHB; the Existing Stock Option Plans; and any other options, warrants, calls, subscriptions, or other similar rights or other agreements or commitments, contractual or otherwise, obligating any of the

Debtors to issue, transfer, or sell any shares of Old OHB Common Stock or other Interest in OHB, shall be automatically canceled and deemed terminated, extinguished, and of no further force and effect without further act or action under any applicable agreement, law, regulation, order, or rule, and the Holders thereof or the parties thereto shall have no rights, and such instruments or agreements shall evidence no rights, except the right to receive the distributions (if any) to be made to the Holders of such instruments under the Plan. Notwithstanding the foregoing, the Junior Subordinated Notes, the Trust Preferred Securities, the Junior Subordinated Notes Indentures, and the Trust Agreement shall continue in effect solely for the purposes of (i) allowing the Holders of the Junior Subordinated Notes and the Trust Preferred Securities to receive their distributions under the Plan, (ii) allowing the Indenture Trustees or its respective nominees to make distributions, if any, to be made on account of the Junior Subordinated Notes Claims or the Trust Preferred Securities Claims, (iii) permitting the Indenture Trustees to assert their Indenture Trustee Charging Liens against such distributions for payment of the Indenture Trustee Fees, (iv) allowing the Indenture Trustees to enforce any right or other Claim they may have under the Junior Subordinated Notes Indentures and the Trust Agreement (subject to all rights and defenses of the Debtors and the Reorganized Debtors), (v) permitting the Indenture Trustees to exercise their rights and obligations relating to the interests of Holders of the Allowed Junior Subordinated Notes Claims and the Allowed Trust Preferred Securities Claims pursuant to the applicable Junior Subordinated Notes Indenture or the Trust Agreement (subject to all rights and defenses of the Debtors and the Reorganized Debtors), and (vi) allowing the Indenture Trustee to appear in these Cases.

87. No Holder of any notes issued in connection with any of the Credit Facilities, the Trust Preferred Securities, the Junior Subordinated Notes, or any of the Guarantees

shall be entitled to any distribution under the Plan unless and until such Holder has first surrendered or caused to be surrendered any such notes or Guarantees to the applicable Administrative Agent or Indenture Trustee or its respective nominee, which in turn shall surrender any and all such notes or Guarantees to the Debtors or the Reorganized Debtors, or, in the event that such original notes or Guarantees have been lost, destroyed, stolen, or mutilated, has first executed and delivered an affidavit of loss and indemnity with respect thereto in a form customarily utilized for such purposes that is satisfactory to the Debtors or the Reorganized Debtors and, in the event the Debtors or the Reorganized Debtors so request, has first furnished a bond in form and substance (including, without limitation, amount) satisfactory to the Debtors or the Reorganized Debtors (as applicable). If a Holder has actual possession of any note or Guarantee issued in connection with any Credit Facility, Trust Preferred Security, Junior Subordinated Note, or any of the Guarantees, then such Holder must physically surrender or cause to be surrendered its note(s) or Guarantee(s) to the applicable Administrative Agent or Indenture Trustee or its respective nominee for subsequent distribution to the Debtors or the Reorganized Debtors (as applicable), in accordance with the procedures required by the Debtors.

88.    Unless Reinstated, all Operational Liens shall be deemed discharged, released, null and void, terminated, and of no force and effect on the Effective Date. Other than with respect to any Reinstated Operational Liens, no Holder of any Operational Lien Claim shall be entitled to any distribution under the Plan unless and until such Holder has first executed and delivered a Lien Waiver to the Debtors or the Reorganized Debtors, in a form customarily utilized for such purposes that is satisfactory to the Debtors or the Reorganized Debtors, or otherwise caused its Operational Lien to be released to the satisfaction of the Debtors or the Reorganized Debtors (as applicable), including through the execution, delivery, and filing or recording of

another Lien release document in form and substance that is satisfactory to the Debtors or the Reorganized Debtors or as otherwise requested by the Debtors or the Reorganized Debtors (as the case may be). Such Lien Waiver (as well as the discharge, release, and related provisions of Article IX of the Plan) shall be binding upon the applicable Operational Lien Claimholder in all respects. The Debtors, the Reorganized Debtors, and all other parties may rely upon such Lien Waivers or other Lien release documents, and/or the discharge, release, and related provisions of Article IX of the Plan, for all purposes with respect to the Operational Liens and Operational Lien Claims. Each and every federal, state, and local governmental agency or department is hereby and by the Plan directed to accept any and all documents and instruments as provided by the Debtors, the Reorganized Debtors, or related parties (including this Order and/or the applicable Lien Waivers or such other Lien release documents as described in Plan Section 6.6(c)) necessary and appropriate to revise all applicable records to reflect that the Operational Liens at issue have been released, discharged, terminated, and are thus null and void and of no force and effect. The Debtors and the Reorganized Debtors (as the case may be) shall be authorized to execute and deliver such documents, in the name and stead of the Holder of any Operational Lien that is not Reinstated, or take any other actions as may be reasonable, necessary, or appropriate (including, without limitation, filing termination statements and directing third parties holding collateral or other property of the Debtors to promptly remit such collateral or property without further consent of any other party) to effectuate the releases, discharges, and terminations of Operational Liens contemplated by the Plan and hereby, and, at their discretion, shall be appointed as attorney-in-fact for the purposes of executing and/or filing any Lien Waiver or any other related or appropriate documents with any entity in order to effectuate the foregoing release, discharge, and termination of the applicable Operational Liens.

89.     On the Effective Date, the obligations with respect to and under the Trust Preferred Securities, the Junior Subordinated Notes, the Junior Subordinated Notes Indentures, and the Trust Agreement shall be deemed terminated, canceled, and extinguished (all without any further action by any Person or this Court) and shall have no further legal effect, and such instruments shall evidence no rights except the right to receive the distributions (if any) to be made to the Holders of such instruments under the Plan (which distributions shall, subject to the terms and conditions of the Plan, in turn be distributed on a Pro Rata basis by the Junior Subordinated Notes Indenture Trustees to the Holders of the Trust Preferred Securities Claims or the Junior Subordinated Notes Claims, in the manner as further set forth in the Plan (including, without limitation, Plan Section 5.5)). Notwithstanding anything herein or in the Plan to the contrary, the authority of the Junior Subordinated Notes Indenture Trustees under the Junior Subordinated Notes Indentures shall be terminated as of the Effective Date, except as otherwise provided for in the Plan.

90.     Except as otherwise set forth in this Order with respect to Unresolved Operational Lien Objections, without the need for any other or further action, pleading, or objection by the Debtors, the Reorganized Debtors, the Unsecured Creditor Agent, or this Court, including with respect to the unsecured status of any Proof of Claim filed by the applicable Holder of an Operational Lien Claim asserting a Secured Claim, except as otherwise provided herein or in a Final Order of this Court (including, without limitation, any prior Final Order Allowing a particular Claim pursuant to Bankruptcy Code § 503(b)(9)), any Operational Lien Claim that does not appear on Exhibit F to the Disclosure Statement (as such list may have been revised and included in the Plan Supplement or otherwise), including any Operational Lien Claim that is set forth on Exhibit G to the Disclosure Statement (as such list may have been revised and

included in the Plan Supplement or otherwise), shall be treated as a General Unsecured Claim for all purposes under the Plan (including, but not limited to, for voting, classification, and distribution purposes) and otherwise in these Cases, and the Holders thereof may not otherwise receive any other treatment or additional distribution or consideration from, or otherwise seek recourse against, any of the Debtors, the Estates, the Reorganized Debtors, OHB Holdings, or any of their Assets, beyond any distribution or other treatment to be afforded to such General Unsecured Claims (to the extent they constitute Allowed Claims) under the terms and conditions of the Plan.

91.     Except as to terms which, if unenforceable, would frustrate the overall purposes of the Plan, should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

92.     Plan Modifications. The modifications to the Plan, as incorporated into the Plan filed on each of November 19, 2010 and on November 29, 2010 (the latter of which is attached as Exhibit 1 hereto), and as reflected on the record at the Confirmation Hearing, meet the requirements of Bankruptcy Code § 1127(a) and (c). Such amendments do not adversely change the treatment of the Claim of any creditor or Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and no other or further solicitation of votes or voting with respect to the Plan is required.

93.     Surety Bonds. Attached as Exhibit 4 to this Order is a list of bonds that the Reorganized Debtors will reject as of the Effective Date (the "Rejected Surety Bonds"). Any surety or similar bonds (including, without limitation, any agreements, documents, or instruments relating thereto) relating to one or more of the Debtors or its affiliates and not listed on Exhibit 4

hereto shall be collectively referred to as the "Retained Surety Bonds." Without conceding that any surety or similar bond (including, without limitation, any agreements, documents, or instruments relating thereto) or any indemnity agreement is an executory contract as that term is used in Bankruptcy Code § 365, and notwithstanding any provision of this Order or the Plan to the contrary: (i) the Reorganized Debtors will assume all rights, if any, and assume all obligations (without qualification or restriction and whether arising contractually or under the common law) relating to the Retained Surety Bonds as if they were executory contracts, such that all obligations relating to the Retained Surety Bonds will remain the continuing obligations of the Reorganized Debtors, and (ii) the indemnity agreements executed by the Debtors in favor of their sureties (collectively, the "Indemnity Agreements") shall be retained by the Reorganized Debtors and any and all rights and obligations thereunder related to the Retained Surety Bonds shall revest in and be assumed by the Reorganized Debtors as if they were executory contracts, and shall remain in full force and effect with respect to the Retained Surety Bonds and any other bonds issued thereunder by their sureties following the Effective Date; provided, however, that notwithstanding any provision of this paragraph, the assumed or revested obligations of the Reorganized Debtors shall not be deemed to extend to or apply to the Rejected Surety Bonds, including any obligations related thereto under the Indemnity Agreements, and provided, further that the sureties waive any argument that the Retained Surety Bonds or the Indemnity Agreements are not assumable by virtue of Bankruptcy Code § 365(c). Notwithstanding the cure amounts listed in Exhibit D to the Disclosure Statement (as the same has been revised), the Reorganized Debtors will assume all obligations relating to the Retained Surety Bonds and Indemnity Agreements related thereto without regard to when the applicable obligations arose. The Retained Surety Bonds shall remain in full force and effect and be enforceable in accordance

with their stated terms, notwithstanding any provision of the Plan, subject to any rights, remedies and defenses that the sureties may have in respect of claims thereunder, all such rights, remedies and defenses being retained by the applicable sureties with respect to the Retained Surety Bonds. Further, nothing in this Order or in the Plan shall be deemed to constitute a finding that, and this Court expresses no opinion whether, the Retained Surety Bonds constitute or do not constitute property of the Estates under Bankruptcy Code § 541, nor shall the sureties be bound by any provision of the Plan or this Order that serves to release or discharge any non-Debtor indemnitor or any third-party from any obligations these parties may have under any bonds, any Indemnity Agreements, or at common law. To the extent of any inconsistency between this paragraph and paragraphs 33 and 34 of this Order, this paragraph shall govern.

94. Notwithstanding any provision of this Order to the contrary, the Debtors may, prior to the Effective Date, with the consent of either Travelers Casualty Insurance Company of America ("Travelers") or Zurich American Insurance Company ("Zurich"), as applicable, elect to remove any bonds issued by either Travelers or Zurich, and/or bonds for which either Travelers or Zurich (as applicable) is fully or partially liable (the "Recharacterized Bonds") from Exhibit 4 hereto, which Recharacterized Bonds would previously have been one of the Rejected Bonds. Any Recharacterized Bonds shall be treated as Retained Surety Bonds in accordance with this Order.

95. Notwithstanding anything that may be to the contrary in the Plan or in this Order, the equipment listed on Exhibit A to the High Fidelity Sale Objection shall not be deemed owned by the Reorganized Debtors on and after the Effective Date, as such equipment is not currently owned by the Debtors.

96.    The Debtors are hereby authorized to mail to all known parties-in-interest in these Cases and/or, at their discretion, publish notice of the entry of this Order and/or of the Effective Date, together with notice of the last day for filing Administrative Claims and Rejection Claims, all as contained and provided for herein.

97.    This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan, the Plan Documents, and any other documents, instruments or agreements thereto, and any other acts referred to in or contemplated by the Plan, the Plan Documents, and any other documents, instruments, or agreements thereto.

98.    The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth above, are non-severable and mutually dependent. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. Under Bankruptcy Code §§ 1123(a) and 1142(a) and the provisions of this Order, the Plan, and all Plan Documents shall apply in accordance with the terms thereof and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

99.    The failure to specifically include or reference any particular provision of the Plan in this Order does not in any way diminish or impair the efficacy of such provision, it being understood that the intent of this Order and this Court is that the Plan be confirmed and approved in its entirety.

100.    The Debtors may, prior to the Effective Date, make appropriate technical adjustments and modifications to the Plan without further order or approval of this Court, provided that such technical adjustments and modifications do not adversely affect in a material

way the treatment of holders of Claims and Interests and are filed on this Court's docket, and further provided that the Sponsors have consented in advance to any such adjustments or modifications.

101.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), and 7062, the Court finds that there is no just reason for any delay in the implementation of this Order. Accordingly, the provision in Bankruptcy Rule 6004(h) staying an order authorizing the use, sale, or lease of property until the expiration of 14 days after entry of the order is hereby waived, such that the provisions of this Order are effective and enforceable immediately. This Order is a final order, and the period in which an appeal may be timely filed shall commence upon the entry hereof. Notwithstanding any stay contemplated by Bankruptcy Rules 3020(e) or 7062, immediately after entry of this Order, the provisions of the Plan and this Order shall be deemed binding against the Debtors, the Reorganized Debtors, OHB Holdings, any and all Holders of Claims against, or Interests in, the Debtors (irrespective of whether such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the Plan), any and all non-Debtor parties to Executory Contracts with the Debtors, and any and all Persons that are parties to, or are subject to, the releases, discharges, and injunctions described in the Plan. Accordingly, the 14-day period provided by Bankruptcy Rule 3020(e) is hereby waived in its entirety.

102.    Plan Consummation. The Debtors are authorized to consummate the Plan at any time after the entry of this Order, subject to the satisfaction or waiver of the conditions precedent to consummation as set forth in Article VIII of the Plan. The Effective Date shall occur on the date that all conditions set forth in Section 8.2 of the Plan have been satisfied, waived, or modified pursuant to Section 8.3 of the Plan. On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code §§1101 and 1127(b).

103. The Debtors may, but shall have no obligation to, waive or modify in writing, at any time, any of the conditions set forth in Article VIII of the Plan, without notice, without leave or order of this Court, and without any formal action other than proceeding to consummate the Plan; provided that the Sponsors' consent shall be required to waive or modify any of the conditions set forth in Plan Section 8.2(b), (c), (d), (e), and (f), and the Creditors Committee's consent shall be required to waive or modify the condition set forth in Plan Section 8.2(e). The failure to satisfy, waive, or modify any such condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such conditions to be satisfied, waived, or modified.

104. No Admissions. Notwithstanding anything herein or in the Plan to the contrary, prior to the occurrence of the Effective Date, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth herein or therein.

105. Term of Injunctions or Stays. Unless otherwise provided in the Plan or this Order, all injunctions or stays provided for in these Cases pursuant to Bankruptcy Code § 105, § 362, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

106. If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by

the provisions of this Order and the Plan and all documents related to the Plan and any amendments or modifications to any of the foregoing.

107.    The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of the Plan and any provision of this Order that cannot be reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification to the Plan and shall control and take precedence.

108.    Captions and headings herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Order.

Dated:    _____, 2010
          Wilmington, Delaware

_____
HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE