# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | CHAPTER 11 |
| | (Jointly Administered) |
| ORLEANS HOMEBUILDERS, INC., *et al.*,[1] | Case No. 10-10684 (KJC) |
| | (D.I. 4580) |
| Debtors | |

## OPINION[2]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors in these chapter 11 cases are: Orleans Homebuilders, Inc., Brookshire Estates, L.P., Community Management Services Group, Inc., Greenwood Financial Inc., Masterpiece Homes, LLC, OHB Homes, Inc., OHI Financing, Inc., Orleans at Bordentown, LLC, Orleans at Cooks Bridge, LLC, Orleans at Covington Manor, LLC, Orleans at Crofton Chase, LLC, Orleans at East Greenwich, LLC, Orleans at Elk Township, LLC, Orleans at Evesham, LLC, Orleans at Fall, LP, Orleans at Hamilton, LLC, Orleans at Harrison, LLC, Orleans at Hidden Creek, LLC, Orleans at Jennings mill, LLC, Orleans at Lambertville, LLC, Orleans at Limerick, LP, Orleans at Maple Glen, LLC, Orleans at Meadow Glen, LLC, Orleans at Millstone River Preserve, LLC, Orleans at Millstone, LLC, Orleans at Moorestown, LLC, Orleans at Tabernacle, LLC, Orleans at Thornbury, L.P., Orleans at Upper Freehold, LLC, Orleans at Upper Saucon, L.P., Orleans at Upper Uwshlan, LP, Orleans at Wallkill, LLC, Orleans at West Bradford, LP, Orleans at West Vincent, LP, Orleans at Westampton Woods, LLC, Orleans at Windsor Square, LP, Orleans at Woolwich, LLC, Orleans at Wrightstown, LP, Orleans Construction Corp., Orleans Corporation, Orleans corporation of New Jersey, Orleans DK, LLC, Orleans RHIL, LP, Parker & Lancaster Corporation, Parker & Orleans Homebuilders, Inc., Parker Lancaster, Tidewater, L.L.C., Realen Homes, L.P., RHGP LLC, Sharp Road Farms, Inc., Stock Grange, LP, and Wheatley Meadows Associates (the "Debtors" or "Orleans").

[2] This Opinion constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a). Bankruptcy Courts have subject matter jurisdiction to interpret and enforce their own orders. *In re Insilco Tech., Inc.*, 351 B.R. 313, 319 (Bankr. D. Del. 2006) citing *In re Allegheny Health, Education and Research Foundation*, 383 F.3d 169, 175-76 (3d Cir. 2004). Moreover, this is a core matter pursuant to 28 U.S.C. §157(b)(1) and *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999), which provides that a matter is core if it is one that, by its nature, could arise only in the context of a bankruptcy case. This matter also falls squarely within the confines of post-confirmation "related-to" jurisdiction set forth in *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004) which determined that the essential inquiry for post-confirmation jurisdiction is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction . . . . Matters that affect the interpretation, implementation, consummation, execution or administration of the confirmed plan will typically have the requisite close nexus."

Orleans Homebuilders, Inc. and related entities (the "Debtors" or "Orleans") filed chapter 11 petitions on March 1, 2010. This Court entered an order confirming the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan") on December 1, 2010, which became effective on February 14, 2011.[3]

Cooks Bridge Condominium is a 332-unit residential condominium community developed pre-petition by the Debtors and located in Jackson, New Jersey. In February 2013, Cooks Bridge Condominium Association (the "Association") filed an action in New Jersey state court against the reorganized debtors and related individuals, among other parties, for alleged construction defects in certain common elements of the condominium that were completed pre-petition.

Before the Court is the Reorganized Debtors' Motion to Enforce Plan Injunction and Related Provisions and Requesting Award of Sanctions Against Cooks Bridge Condominium Association, Inc. (D.I. 4580) (the "Injunction Motion"), seeking an order from this Court that (i) requires the Association to discontinue prosecution of the state court litigation, and (ii) finding the Association in civil contempt and requiring it to pay sanctions, including, but not limited to, the Reorganized Debtors' costs and attorneys' fees incurred in defending against the state court litigation and pursuing the Injunction Motion. The Association filed an objection to the Injunction Motion (the "Association Objection") (D.I. 4595), and the Reorganized Debtors responded with a reply in further support of the Injunction Motion (the "Reply") (D.I. 4596). A hearing was held and the Court took the matter under advisement.

---

[3] *See* D.I. 2656 (Order Confirming Plan), and D.I. 2987 (Notice of Effective Date). These bankruptcy cases were originally assigned to and presided over by the Honorable Peter J. Walsh. Upon his retirement, the cases were reassigned to me by Order dated December 12, 2014 (D.I. 4559).

For the reasons set forth below, the Injunction Motion will be granted, in part, to enjoin the state court litigation, and deferred as to the request for sanctions.

## FACTS

1. The Joint Pre-Trial Memorandum

The parties submitted a Joint Pre-Trial memorandum (D.I. 4611) which includes the following Statement of Uncontested Facts:

a. Orleans at Cooks Bridge, LLC, one the Debtors (the "Debtors" or "Orleans"), was the sponsor and developer of the Cooks Bridge Condominium development, a three hundred and thirty-two (332) unit condominium community located in Jackson, New Jersey. Construction of the fifty-one (51) buildings making up the Cooks Bridge development took place primarily between 2004 and 2008.

b. The development consists of twenty-five (25) "A" style buildings, containing two-story residential units arranged with both common side and rear walls, and twenty-six (26) "B" style buildings, containing two story town house style units. The community also has a pool, pool house, and tennis courts.

c. The buildings are constructed with wood framing on concrete foundation walls with asphalt shingle roofs. Type "A" buildings are clad with vinyl siding and aluminum "break metal" trim; type "B" buildings are clad with a combination of vinyl siding, manufactured stone veneer (SMV), stucco, and Azek trim.

d. In April 2005, Orleans incorporated the Cooks Bridge Condominium Association, Inc. (the "Association").[4]

e. Orleans submitted an application for registration of Cooks Bridge, which included copies of a proposed Public Offering Statement.

f. Orleans began selling units in 2005 and sold the last unit at Cooks Bridge in May 2009.

g. As part of the sales process, Orleans provided purchasers with a copy of the Public Offering Statement.[5]

h. After selling 75% of the total units in or around August 2008, Orleans transitioned control of the Association's governing board to the unit owners and continued to market the remaining 25% (the "Transition").

---

[4] The Certificate of Incorporation for Cooks Bridge Condominium Association, Inc. is attached as Exhibit A to the Association Objection.

[5] Relevant portions of the Public Offering Statement are attached as Exhibit B to the Association Objection.

i.  The last unit was sold on or about May 29, 2009. The last certificate of occupancy was issued in August 2009.[6]

j.  The Debtors commenced these chapter 11 cases on March 1, 2010 (the "Petition Date").

k.  The Court entered an order (the "Confirmation Order") confirming the Debtors' Second Amended Joint Plan of Reorganization (the "Plan"), which was attached as Exhibit 1 thereto, on December 1, 2010 (the "Confirmation Date").

l.  The Plan became effective on February 14, 2011 (the "Effective Date").

m.  On February 25, 2013, the Association filed a complaint against certain of the Reorganized Debtors and certain former employees of the Reorganized Debtors in the Superior Court of New Jersey, Law Division, Ocean County (the "State Court Action") alleging, *inter alia*, negligence and breach of express, implied, and Planned Real Estate Development Full Disclosure Act ("PREDFDA" [or the "Development Act"]) warranties.[7]

n.  On May 9, 2013, Orleans filed an Answer to the Association's Complaint in the State Court Action, which included an affirmative defense based on the Reorganized Debtors' bankruptcy discharge.[8]

o.  Orleans defended the Association's claims in the State Court Action. Counsel for Orleans appeared, on one occasion, at Cooks Bridge to attempt to observe a third-party contractor conduct repair work.[9]

p.  On January 6, 2014, the Association served Orleans with its First Set of Interrogatories and Demand for Production of Documents. Orleans answered the Association's discovery and produced documents in or around September 2014.[10]

q.  The Association's operative pleading in the State Court Action was most recently amended on September 5, 2014 (the "Third Amended Complaint"), which asserts five causes of action, all of which are based on various alleged defects to certain common elements at Cooks Bridge, including alleged defects with respect to vinyl siding, stucco, stone veneer, windows and doors, flashings, foundation walls and slabs, decks, and roof and roof structures.[11]

---

[6] *See* Declaration of Conditions Report, attached as Exhibit E to the Association Objection.
[7] The State Court Action Complaint is attached as Exhibit D to the Association Objection. The Development Act is set forth in N.J. Stat. Ann. § 45:22A-21 *et seq.*
[8] The Reorganized Debtors' Answer to the State Court Action Complaint is attached as Exhibit G to the Association Objection.
[9] *See* Letter dated July 3, 2013 attached as Exhibit H to the Association Objection.
[10] *See* Cover Letter dated September 26, 2014, attached as Exhibit I to the Association Objection.
[11] The Third Amended Complaint is attached as Exhibit B to the Injunction Motion.

r.      The five causes of action asserted in the Third Amended Complaint are: negligence, breach of express warranties, breach of implied warranties, breach of fiduciary duty, and breach of PREDFDA.

s.      In March 2015, Orleans produced an expert report prepared by Jonathan P. Dixon & Associates, P.C. (the "Dixon Report").[12]

The Pre-Trial Statement also includes a Statement of Facts in Dispute. The crux of the parties' dispute, however, is based upon certain language in the Plan. The disputed facts are not relevant to resolving this matter, which depends on interpretation of language in the Plan.

2.      <u>Allegations in the State Court Complaint</u>

The Association's State Court Complaint alleges the following:

(i)      the debtor Orleans at Cooks Bridge, LLC was the developer (the "Developer") that created, designed and constructed the Cooks Bridge Condominium development (the "Development");[13]

(ii)      the Master Deed and the Public Offering Statement (the "POS") filed by the Developer with the New Jersey Department of Community Affairs provide that the Developer established the Association to, *inter alia,* own, administer, manage, operate, maintain, repair and replace the common elements at the Development;[14]

(iii)      individual defendants George Bennis, Eva Walker and Irene Rosen (the "Individual Defendants") were the initial Board of Trustees (the "Board") appointed by the Developer to manage the Association until Transition occurred and the Developer relinquished control of the Board to the unit owners;[15]

---

[12] Portions of the Dixon Report are attached as Exhibit J to the Association Objection.
[13] State Court Complaint, ¶ 3.
[14] State Court Complaint, ¶ 11.
[15] State Court Complaint, ¶ 4.

(iv) during the time the Developer controlled the Board, the Developer failed to discover and/or disclose and/or maintain and/or correct various defects and deficiencies in the design and construction of the common elements at the Development;[16]

(v) After Transition of the Association to the unit owners, the Association became aware of various deficiencies in the design and construction of the common elements at the Development;[17]

(vi) the Association had engineering and architectural consultants, FWH Associates, P.A. ("FWH") perform preliminary investigations of the exterior cladding, roofing system, decks, windows and doors, and foundations of the buildings at the Development and the preliminary investigation revealed improper design and construction of the buildings, particularly with respect to vinyl siding, stucco, stone veneer, roofs, decks, concrete work, windows and doors, and other building components.[18]

Count One of the State Court Complaint (Negligence) alleges that "the Developer owed a duty to exercise reasonable care in designing, constructing, and/or supervising the construction of the Common Elements of Cooks Bridge in accordance with all approved plans, applicable manufacturer's installation specifications, reasonable commercial standards in the industry for residential construction, and all applicable state and local building codes, regulations and ordinances,"[19] and "as a direct and proximate result of the . . . breaches of the duties of

---

[16] State Court Complaint, ¶ 16.
[17] State Court Complaint, ¶ 17.
[18] State Court Complaint, ¶ 18 - ¶ 19. The State Court Complaint provides a detailed description of the alleged deficiencies. The State Court Complaint also includes John Doe Architects 1- 25, John Doe Engineers 1 -25, John Doe Contractors 1 - 50; and John Doe Suppliers 1 - 25. These are fictitious names to represent those architects, engineers, contractors and supplies who provided such services at the Development
[19] State Court Complaint, ¶ 24.

reasonable care owed to the Association by the [Defendants], the Association has suffered, and will continue to suffer, severe, direct and consequential damage to its property."[20]

Count Two of the State Court Complaint (Breach of Express Warranties) alleges that "the Developer made certain warranties in the individual Subscription and Purchase Agreements between it and Members of the Association, and in the Public Offering Statement incorporated into those Agreements, that the Common Elements at Cooks Bridge would be free from defects and fit for their intended purpose,"[21] and that the Defendants breached those express warranties.

Count Three of the State Court Complaint (Breach of Implied Warranties) alleges that the "Developer impliedly warranted to the Association and the Members that the Common Elements of Cooks Bridge would be free from defects, built in a workmanlike manner and would be reasonably fit for their intended purpose,"[22] and the Defendants breached the implied warranties.

Count Four of the State Court Complaint (Breach of Fiduciary Duty) alleges that "[i]n selecting the members of the governing board of the Association, the Developer implicitly and/or explicitly agreed and undertook to act as a fiduciary and to give the benefit of its best care and judgment on behalf of, and to exercise its power in the interests of, the Association and its Members,"[23] and, prior to the Transition, the Developer and the board members "intentionally acted in the best interests of the Developer, rather than in the best interests of the Association."[24]

Count Five of the State Court Complaint (Breach of PREDFDA Warranties) alleges, *inter alia*, that, pursuant to N.J.A.C. 5:26-7.2(b) the Developer warranted that construction of the

---

[20] State Court Complaint, ¶ 32.
[21] State Court Complaint, ¶ 34.
[22] State Court Complaint, ¶ 42.
[23] State Court Complaint, ¶ 52. *See also* State Court Complaint, ¶ 54 (citing the New Jersey Condominium Act, N.J.S.A. § 46:8B-1 *et seq.*, and the Planned Real Estate Development Full Disclosure Act, N.J.S.A. § 45:22A-21 *et seq.*), and State Court Complaint, ¶ 55 (citing N.J. Admin. Code Tit. 5, §26-8.3(b)).
[24] State Court Complaint, ¶ 56.

common elements would be free from defects for a period of two years from the date of completion of each portion of the common areas, and that the Developer would repair or correct any defect in the construction, material or workmanship in the common areas installed by the Developer within a reasonable time after notification of the defect.[25]

### DISCUSSION

The Debtors argue that the Plan's Discharge and Injunction bars creditors, such as the Association, from "commencing or continuing in any manner" any litigation against the Reorganized Debtors arising from pre-petition claims. Section 9.2 of the Plan states, in part:

> [A]ll Holders of Claims . . . arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Debtors, the Estates, the Reorganized Debtors, . . ., their successors, or the Assets, any of the following actions on account of such Claim . . . : (a) commencing or continuing in any manner any action or other proceeding on account of such . . . Claim . . . against . . . the property of any of the Reorganized Debtors . . . other than to enforce any right to distribution with respect to such property under the Plan . . . ."[26]

The Third Circuit's decision in *In re Grossman's, Inc.* instructs that a claim arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a "right to payment" under the Bankruptcy Code.[27] The conduct underlying the Association's claims occurred prior to the Debtors' bankruptcy filing on March 1, 2010. The undisputed facts state that the sale of the units at the Development started in 2005 and the last unit sold in May 2009. The Transition of the Association occurred in August 2008. Under the plain language of the discharge injunction, the Association was barred from commencing or continuing any action against the Reorganized Debtors based upon the pre-petition claims.

---

[25] State Court complaint, ¶ 61.
[26] Plan, § 9.2.
[27] *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010).

The Association argues, however, that another provision of the Plan provides that certain agreements relating to the Development survived bankruptcy, thereby allowing the Association's claims to be pursued post-petition. Section 1.163 of the Plan included the Cooks Bridge Development in the list of "Revesting Developments." Article VII of the Plan, entitled Executory Contracts, includes Section 7.14 (the "Revesting Provision"), which provides:

> 7.14   **Agreements Related to the Developments.** Unless otherwise specifically rejected or lawfully terminated by the Debtors, all (a) agreements relating to any of the Revesting Developments embodied in development orders, city and/or county ordinances, zoning approvals, permits, and/or other related documents or any other official action of a governmental unit, quasi-governmental unit, and/or utility granting certain development rights, property interests, and/or entitlements to the Debtors; and (b) those governmental and quasi-governmental approvals, agreements, waivers, permits, licenses, variances, special exceptions, and water and sewer reservations as are necessary, appropriate, beneficial, or required, to permit the continued construction and development of any of the Revesting Developments entered into prior to the Petition Date by any Debtor, shall be (i) treated as Executory Contracts under the Plan and shall be assumed on the Confirmation Date, subject to the occurrence of the Effective Date, pursuant to the provisions of the Bankruptcy Code §§ 365 and 1123 or (ii) otherwise deemed assumed on the Confirmation Date, subject to the occurrence of the Effective Date. Any failure by the Debtor to list any particular agreement or other document referred to in this Plan Section 7.14 on any schedule of Executory Contracts to be assumed under the Plan (either contained in the Disclosure Statement, including, without limitation, Exhibit D thereto, the Plan Supplement, or otherwise) shall not in any way impair the Debtors' ability to assume such agreement and/or other document, and instead, any and all such agreements and documents shall be deemed assumed (to the extent any such agreements or documents constitute Executory Contracts) and/or otherwise shall remain in full force and effect on and after the Effective Date in accordance with this Plan Section 7.14. Without limiting the generality of the foregoing, all of the Debtors' rights in or related to any of the Revesting Developments shall revest in the Reorganized Debtors on and subject to the occurrence of the Effective Date, but the Non-Revesting Developments shall not revest in the Reorganized Debtors and all applicable agreements, related thereto shall be deemed rejected or terminated, as applicable, as of, and subject to the occurrence of, the Effective date provided, however, that the Debtors shall be entitled to revise the respective lists of the Revesting Developments and the Non-Revesting Developments at any time up to the occurrence of the Effective Date.[28]

---

[28] Plan, § 7.14.

The Association argues that the Debtors included the Revesting Provision in the Plan to ensure the post-confirmation effectiveness of any agreements of a "governmental nature" that are related to the Revesting Developments. The Association contends that the New Jersey Development Act requires the Developer to issue a Public Offering Statement and, because the Public Offering Statement contains a warranty about construction of the common areas, any claims to recover for common area defects are based on the Debtors' agreement with a quasi-governmental unit that falls under the plain language of the Revesting Provision.

In response, the Reorganized Debtors argue that the Association is reading the Revesting Provision too broadly. Instead, the Reorganized Debtors insist that the provision covers only a specific and narrowly-circumscribed set of governmental and quasi-governmental rights of the Reorganized Debtors - - not the assumption of any continuing liability of the Reorganized Debtors to third parties, such as the Association, who are not parties to an agreement. For an agreement to be assumed under the Revesting Development Provision, the Reorganized Debtors argue that the agreement must: (1) relate to a Revesting Development; (2) be embodied in one of the listed types of documents (i.e., development orders, city/county ordinances, zoning approvals, permits, and/or other related documents); (3) constitute an "official action of a governmental unit or quasi-governmental unit, and/or utility;" and (4) grant the Debtors "development rights, property interests, and /or entitlements."

The Development Act provides that "[n]o developer may offer or dispose of any interest in a planned real estate development, prior to the registration of such development with the agency," and "[n]o developer may dispose of any lot, parcel, unit or interest in a planned real estate development, unless he: delivers to the purchaser a current public offering statement, on or

before the contract date of such disposition."[29] To assist in implementing the Development Act, applicable regulations require the Public Offering Statement to contain specific information, including "a statement explaining the warranty or guarantee given by the developer and the rights and remedies of the purchaser."[30] The Regulations also require the Developer to provide a warranty for the Development's common facilities as follows:

> (a) The developer of a planned real estate development or retirement community shall warrant the construction of the common facilities for a period of two years from the date of the completion of each of the common facilities;
>
> (b) The developer shall warrant that the common facilities are fit for their intended use;
>
> (c) The developer shall repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.[31]

The Developer incorporated these warranties into the Public Offering Statement, stating (in pertinent part) that the Developer "further warrants the construction of the Common Elements for a period of two (2) years from the date of completion of the Common Elements provided the drainage is not altered during the construction of the Units."[32]

Relying on the regulations, the Association argues that the Plan's discharge injunction does not bar it from filing claims post-confirmation to enforce the common area warranty, which - - as part of the Public Offering Statement - - is deemed assumed by the Plan's Revesting Provision.

---

[29] N.J. Stat. Ann. § 45:22A-26(a)(1) and (2) (punctuation in original). "Agency" is defined as the Division of Housing and Urban Renewal, State Department of Community Affairs. N.J. Stat. Ann. § 45:22A-3.

[30] N.J. Admin. Code §§ 5:26-1.1, 5:26-4.2 (21). The Regulations define "agency" as "the Division of Codes and Standards of the State Department of Community Affairs." N.J. Admin. Code § 5:26-1.3.

[31] N.J.A.C. 526-7.2.

[32] Association Objection, Ex. B at 22.

before the contract date of such disposition."[29] To assist in implementing the Development Act, applicable regulations require the Public Offering Statement to contain specific information, including "a statement explaining the warranty or guarantee given by the developer and the rights and remedies of the purchaser."[30] The Regulations also require the Developer to provide a warranty for the Development's common facilities as follows:

> (a) The developer of a planned real estate development or retirement community shall warrant the construction of the common facilities for a period of two years from the date of the completion of each of the common facilities;
>
> (b) The developer shall warrant that the common facilities are fit for their intended use;
>
> (c) The developer shall repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.[31]

The Developer incorporated these warranties into the Public Offering Statement, stating (in pertinent part) that the Developer "further warrants the construction of the Common Elements for a period of two (2) years from the date of completion of the Common Elements provided the drainage is not altered during the construction of the Units."[32]

Relying on the regulations, the Association argues that the Plan's discharge injunction does not bar it from filing claims post-confirmation to enforce the common area warranty, which - - as part of the Public Offering Statement - - is deemed assumed by the Plan's Revesting Provision.

---

[29] N.J. Stat. Ann. § 45:22A-26(a)(1) and (2) (punctuation in original). "Agency" is defined as the Division of Housing and Urban Renewal, State Department of Community Affairs. N.J. Stat. Ann. § 45:22A-3.

[30] N.J. Admin. Code §§ 5:26-1.1, 5:26-4.2 (21). The Regulations define "agency" as "the Division of Codes and Standards of the State Department of Community Affairs." N.J. Admin. Code § 5:26-1.3.

[31] N.J.A.C. 526-7.2.

[32] Association Objection, Ex. B at 22.

After carefully reviewing the relevant Plan provisions, along with the New Jersey Development Act and regulations, I agree with the Reorganized Debtors that the Association's reading of the Revesting Provision is too broad. The Revesting Provision applies to agreements (or ordinances, permits or approvals) between the Debtors and governmental or quasi-governmental units (or utilities), that "are necessary, appropriate, beneficial, or required, to permit the continued construction and development of any of the Revesting Development . . . ." For example, the Agency issues an order registering the subdivision or community lands after reviewing the statement of record from the Developer, which attaches a number of documents, including the Public Offering Statement.[33] The Agency's order registering the Developer would be the type of agreement that falls within the Revesting Provision. However, the Association's attempt to drill down and apply the Revesting Provision to any agreements contained or mentioned within the agreements or approvals or permits issued by a governmental or quasi-governmental unit invents a byzantine complexity to the Plan provisions. The Revesting Provision cannot be read so broadly to incorporate agreements within agreements that grant rights to non-governmental third parties.

The Reorganized Debtors also argue that the Plan's Exculpation provision bars the State Court Complaint claims against the Individual Defendants who were appointed by the Debtor to serve as the Association's initial Board of Trustees.

The Exculpation provision in Section 9.9 of the Plan provides:

9.9   **Exculpation.**  No Released Party shall have or incur, and each Released Party here is exculpated from any liability (whether arising under contract, tort, or federal or state securities laws, whether known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity or otherwise) to any Person for any pre-Petition Date or post-Petition Date act or omission taken or not taken (as the

---

[33] N.J. Stat. Ann. §§ 45:22A-6; 45:22A-9. "Agency" is defined as the Division of Housing and Urban Renewal, State Department of Community Affairs. N.J. Stat. Ann. § 45:22A-3.

case may be), or any other transaction, event, or occurrence in any way in connection with, arising from or relating to the Debtors, these Cases (and the commencement or administration thereof); the Disclosure Statement, the Plan (either prior to Confirmation or approval of same, or as same may be confirmed or otherwise approved by the Bankruptcy Court), or any orders of the Bankruptcy Court related thereto, the Plan Documents or the transaction contemplated thereby, or the formulation, negotiation, preparation, dissemination, implementation, or administration of any of the foregoing documents; the solicitation of votes in connection with, and the pursuit of, Confirmation of the Plan; the consummation of the Plan; the Effective Date,; any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; any other act taken or omitted to be taken in connection with, or in contemplation of, any of the restructuring or other transaction contemplated by the Plan; and the property to be distributed or otherwise transferred under the Plan; <u>provided, however,</u> that nothing in this Plan Section 9.9 shall exculpate or release any Released Party from its obligations arising under confidentiality agreements and common-interest agreements; <u>provided, further, however,</u> that nothing in this Plan Section 9.9 shall release any entity from any claims, obligations, rights, causes of action, or liabilities arising out of such entity's willful misconduct or fraud. Each Released Party shall be entitled reasonably to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan.

"Released Parties" is defined to include "[c]ollectively, (a) the Debtors, the Reorganized Debtors, . . . (e) the current and former directors, officers, professionals, agents, and employees of the Debtors and the Reorganized Debtors, solely in their capacities as such . . . (i) with respect to each of the foregoing Persons, such Person's predecessors, successors, and assigns, and current and former directors, officers employees, stockholders, members, subsidiaries, affiliates, principals, agents, advisors, financial advisors, attorneys, accountants, investment bankers, consultants, underwriters, appraisers, representatives, and other professionals, in each case, in their respective capacities as such; . . . ."

In its Objection, the Association does not directly address this argument. I agree with the Debtors that the Individual Defendants are "Released Parties" when acting - - at the Debtor's direction - - as the Board of the Association pre-transition. The State Court Claims against the Individual Defendants are barred by the Exculpation provision.

Finally, the Reorganized Debtors argue that sanctions are warranted for the Association's willful violation of the Plan's discharge and injunction. I will schedule a further hearing to consider the Reorganized Debtors' request for sanctions.

## CONCLUSION

For the reasons set forth above, I conclude that the claims against the Reorganized Debtors and the Individual Defendants in the State Court Complaint are barred by the Plan's Discharge and Injunction provision (Section 9.2) and the Exculpation provision (Section 9.9).

An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED: November 21, 2016